IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOUGLAS JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) 22 CV 3718 |
| COOK COUNTY SHERIFF THOMAS | ) |
| DART , in his official capacity, | ) Judge Robert W. Gettleman |
| ANTWAUN BACON, a CCDOC officer, | ) |
| and COOK COUNTY, a municipal | ) |
| corporation, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT SHERIFF THOMAS J. DART, AND COOK COUNTY'S RULE 56.1 STATEMENT OF UNDISPUTED MATERAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendant, SHERIFF THOMAS J. DART, and COOK COUNTY, by their Attorney, EILEEN O'NEILL BURKE, State's Attorney of Cook County, through her Assistant State's Attorney, Rebecca J. Laue, submit the following statement of undisputed material facts and exhibits in support of their Motion for Summary Judgement.

**I.  List of Exhibits**

1. Deposition Transcript of Plaintiff, Douglas Johnson, dated February 6, 2024.

2. Plaintiff Douglas Johnson's Booking Card under booking 20190508253.

3. Plaintiff Douglas Johnson's Grievances under Booking 20190508253.

4. Plaintiff Douglas Johnson's Bed Assignments and Movement History under booking 20190508253.

5. Plaintiff Douglas Johnson's Disciplinary Incident Reports under booking 20190508253.

6. Plaintiff Douglas Johnson's Inmate Alerts under booking 20190508253.

7. Plaintiff Douglas Johnson's Medical Records from Cook County under booking 20190508253.

8. CCDOC Policy 708: Control of Inmate Movement CCDOC

9. CCDOC Policy 709: Use of Restraints.

10. Deposition Transcript of Defendant Officer Antwaun Bacon, dated February 14, 2024.

11. Deposition Transcript of Dr. Patrick Ennis, M.D., dated March 7, 2024

12. Deposition Transcript of First Assistant Executive Director Larry Gavin, dated April 24, 2024.

13. Electronic Tier Log - DIV 8 Tier 2G dated July 19, 2020.

## II.     Description of the Parties

1. Plaintiff, Douglas Johnson (hereafter "Johnson") is a resident of Chicago, Illinois and was previously a detainee of Cook County Department of Corrections (hereafter "CCDOC"). (Ex. 1. at page 19 line 10-22).

2. Between November 6, 2020, and December 8, 2022, Plaintiff was pretrial detainee and incarcerated at the Cook County Department of Corrections ("CCDOC"), located at 2700 South California Avenue, Chicago, Illinois 60608. (Ex. 2.)

3. On July 19, 2020, and at all relevant times herein, Defendant Officer Antwaun Bacon was employed by Cook County Sheriff's Office at the Department of Corrections as a Correctional Officer. (Ex. 9 at page 12 line 24-page 13 line11.)

4. Defendant Sheriff Thomas J. Dart was, at all times relevant to this lawsuit, the duly sworn Cook County Sheriff. (Dkt. 1 at ¶10.)

5. Defendant Cook County is the indemnifying agent in this lawsuit. Dkt 1 at ¶12.)

## III.     Facts Supporting Venue and Jurisdiction in this Court.

6. Plaintiff's lawsuit is brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983. Accordingly, this Court has jurisdiction over this action under 28 U.S.C. § 1343. (Dkt. 1 at ¶2 ).

7. Venue is proper pursuant to 28 U.S.C. § 1391(b) because all events giving rise to this claim occurred in this district. (Dkt 1).

## IV.     Undisputed Material Facts.

**Johnson at CCDOC**

8. On May 8, 2019, Johnson entered CCDOC. (Ex. 2).

9. From May 8, 2021, to January 8, 2021, Johnson was housed in Division 8, Tier 2G, in cell D3, bed number 8. (Ex. 4).

10. Johnson prior to arriving at CCDOC Johnson had received an injection in his right hand for carpal tunnel syndrome. (Ex. 1 p. 85 line 11-20)

11. From December 8, 2019, to December 9, 2021, Johnson had an inmate alert for a cane. (Ex. 6 at CCSAO Johnson 000066).

12. During his time at CCDOC, Johnson was found guilty of participating in a riot and refused to receive medical attention at various times. (Ex. 5 at CCSAO Johnson 000065).

**Cook County Department of Corrections Policies**

**Policy**

**708: Movement of Inmates**

13. Sworn members should be vigilant in the control and movement of inmates between areas within the Department and when transporting inmates outside confined areas of the Department. Control may be by direct or indirect visual observation. All sworn members should consider all inmate movement as a high-risk activity. (Ex. 8. at CCSAO Johnson 000062-62).

14. Inmates should be restrained during movement based upon individual security classification, with higher risk inmates in handcuffs, waist chains and leg irons. An exception to this procedure is when an inmate has a physical disability where restraint devices may cause serious injury. (Ex. 8. at CCSAO Johnson 000062-63).

15. Johnson did not know the particulars of the policy regarding restraints. (Ex 1 at p. 102 lines 17-23 - p. 103 lines 1-2).

16. The wheelchair mandate for long distances was not put into Johnson's file until a year after this incident, although Johnson stated he was granted use of a wheelchair for long distances such as a court visit. (Ex. 1 at p. 106 line 19-p. 108 line 7 and Ex. 1 at p. 105 lines 22-24, and p. 105 lines 1-9.).

17. Johnson was able to walk with his cane, while cuffed in front, and took an elevator to the visit at issue. (Ex. 1 at p. 46 lines 7-15.)

18. Director Gavin stated that Policy 708.4 regarding inmate movement does not have guidance for movement of a detainee utilizing a cane and how they should be handcuffed, and that no policy speaks to every conceivable situation. Further Gavin stated that the policy does not preclude use of restraints on

3

those with a physical disability (Ex. 13 at p. 12 lines 11-20, and p. 24 lines 21-p. 25 line 6.).

19. Director Gavin also stated that there is not a policy that prevents a detainee who uses a cane to walk from being handcuffed. (Ex. 13 at p. 16 lines 11-16.).

**Policy 709: Use of Restraints**

20. Sworn members shall conduct direct face-to-face observation to check the inmate's physical well-being and behavior. When feasible, restraints shall be checked to verify correct application and to ensure they do not compromise circulation. (Ex. 8 at CCSAO Johnson 000156-000163).

21. A physical disability (e.g., visually impaired, hearing impaired, paraplegic) does not preclude the use of restraints on an inmate. (Ex. 8 at CCSAO Johnson 000156-000163).

22. When applying restraints to a disabled inmate, the responsible sworn member shall promptly notify his/her immediate on-duty supervisor. (Ex. 8 at CCSAO Johnson 000156-000163).

23. When restraints are used on a disabled inmate, the appropriate incident report shall be completed by the assigned sworn member. The report shall document the totality of the circumstances. (Ex. 8 at CCSAO Johnson 000156-000163).

24. Director Garvin testimony regarding knowledge of Policy 708 and Policy 709 at issue here, in addition to Policy 148 Communication and Interaction with individuals with Disabilities, Policy 705 Prohibition Against Discrimination on the Basis of Disability Procedure, Policy 801 Inmates with Disabilities, Policy 807 Inmate Non-Discrimination, Policy 1103 Inmate Visitation Procedure, Policy 1210 Inmate Visitation. (Ex. 13 at p. 8, line 5-24.)

25. There is not a written policy regarding use of two fingers to test if restraints are too tight, but rather it is the concept of an individual officer understanding if the restraints are too loose or tight. (Ex. 8 at p. 104 lines 2-24- p. 23 lines 1-8.)

26. Johnson had knowledge of the existence of Restraint and Movement policies. Ex. 1 at p. 101, lines 9 - p. 103 line 2, and p. 103 line 24 – p. 104 line 2.).

**July 19, 2020, at CCDOC**

27. On July 19, 2020, Officer Bacon was assigned to Division 1, with the specific duty of transporting inmates between Division 8 and Division 1 for visitation purposes. (Ex. 9 at Page 13 line 7-18).

28. On July 19, 2020, Johnson was scheduled for an in-person inmate visit. (Ex. 1 at page 21 line 11-13).

29. On July 19, 2020, Officer Orr and Sergeant Purcell were assigned to Division 8 RTU. (Ex. 14).

4

### Handcuffing

30. On July 19, 2020, Johnson was summoned from his cell for a scheduled in-person visit and was escorted from his housing unit, where he encountered Officer Bacon. (Ex. 1 at p 27 line 11-16)

31. Officer Bacon attempted to apply handcuffs to Johnson in preparation for transportation to his in-person visit. Johnson asserted that he had a no-handcuff order. Officer Bacon asked Johnson to produce documentation confirming the alleged restriction, but Johnson was unable to provide any such documentation. (Ex. 1 at p 27 line 16-23; Ex. 9 at page 1516–23).

32. Officer Bacon advised Johnson that, in accordance with standard departmental protocol, it was necessary to secure an inmate with handcuffs during transport unless valid medical documentation exempting such restraint was provided. (Ex. 9 at page 15 line 21-23, Ex. 9 at page 17 line 23-p 18 line 10).

33. After explaining the handcuffing policy, Officer Bacon applied handcuffs to Johnson, engaged the double-lock mechanism to prevent accidental tightening, and performed a finger check to confirm that the restraints were properly fitted and not causing unnecessary discomfort. (Ex. 9 at page 15 line 21–23; Ex. 9 at p 17 line 23–p 18 line 10).

34. The "finger test," as taught by the Sheriff's Training Academy, is used to confirm that handcuffs are not applied too tightly. After applying the handcuffs, the officer attempts to insert one or more fingers between the cuff and the detainee's wrist. If a finger can be inserted, the handcuffs are considered properly fitted. If not, the cuffs must be loosened to avoid restricting blood flow. (Ex. 9 at page 17 line 23-24; page 18 lines 1-10; Ex 13 at p. 19 line 23-p 20 line 5; ex 13 at p. 55 line 10-16).

35. Johnson contends that he notified Officer Bacon that the handcuffs were applied too tightly, and that it would affect his ability to walk. (Ex. 1 at page 29 line 4-7).

36. Johnson admitted his handcuffs were placed in front, which allowed him to hold and use his cane with his right hand while restrained. (Ex. 1 at page 46 line 8–11; page 47 line17–19).

### Transportation to and from the Visit

37. After applying the handcuffs, Officer Bacon escorted Johnson and several other detainees to the elevator. Upon exiting the elevator, Officer Bacon continued escorting the group down the hallway and turned toward Division 1. (Ex. 9 at page 19 line 5–p 26 line 2).

38. Johnson used his cane for the visit and was walking with his cane. (Exh. 1 at pg. 29 lines 8-10.

39. As he walked, Johnson leaned against the wall and allegedly informed Officer Bacon that the handcuffs were too tight, requesting that they be loosened. (Ex. 1 at page 28 line 1–22).

40. Officer Bacon then directed Johnson and the other detainees up a flight of stairs toward the yard, where visitation was taking place. Johnson held the stair railing as he walked up the stairs. (Ex. 1 at page 30 line 15–23; Ex. 9 at page 19 line 5–page 26 line 2).

41. Upon reaching the top of the stairs, Johnson encountered Sergeant Purcell and reported that his handcuffs were too tight. Sergeant Purcell informed Johnson of the applicable handcuffing policy and instructed him to continue walking. (Ex. 1 at page 30 line 23–page 31 line 5).

42. At all times during the transport from the RTU to Division 1, detainees, including Johnson, were required to wear face masks in accordance with COVID-19 regulations in effect at CCDOC at the time. (Ex. 9 at page 26 line 3–22)

43. Johnson was escorted to his visit, used his cane, and had the visit with his family. (Ex. 1 at p. 27 line 11 - p 31 line 18.).

44. Further Johnson acknowledged he was cuffed in the front and had his cane, was able to walk, and took an elevator to the visit. (Ex. 1 at p. 46 lines 7-15.)

45. Johnson complains of a wrist injury due to handcuffs placed too tightly while he was escorted to his family visit. (Ex 1 at p. 31 lines 1-15-18.).

46. Upon arrival at the yard, Officer Bacon transferred custody of the detainees to the receiving officer, who escorted Johnson to his assigned table for a twenty- to thirty-minute visit. Johnson claims he was in pain but proceeded with the visit. Afterward, Officer Bacon escorted him back to the RTU. (Ex. 1 at p 31 line 15–21).

47. During the return walk to the RTU, Johnson testified that he requested a new mask from Officer Bacon, stating that his mask was wet and causing difficulty breathing. Officer Bacon did not provide a new mask, and the group continued walking. (Ex. 1 at p 32 line 2–8).

48. Johnson informed Officer Bacon that he had asthma. Officer Bacon testified that he does not recall Johnson informing him of any asthma condition. (Ex. 1 at p 65 line 6-8; Ex. 9 at p 67 line 6–9).

49. Johnson experienced an asthma attack upon entering the elevator. He acknowledged that he did not request to use his inhaler, and his grievance does not mention an inhaler request. Both Officer Bacon and Officer Orr testified that they do not recall Johnson reporting an asthma attack. (Ex. 1 at p 66 line16– p 68 line 1; Ex. 3 at 36).

### Medical Attention

50. Johnson stated the condition of his wrist deteriorated, and he made a request to see a doctor. About a week after he put in his request, Johnson received an appointment with Dr. Ennis. (Ex. 1 p 34 line 9-17).

6

51. Dr. Ennis evaluated Johnson and documented that his right wrist exhibited full range of motion and had a skin-colored nodule on the lateral ventral aspect that was soft but tender to palpation. (Ex.11-0 at p 16 line 13–22).

52. Dr. Ennis opined that the examination findings were consistent with a wrist condition but could not determine whether it was caused by an injury Johnson had sustained from any incident. (Ex.11-0 at p 18 line 23-p 23 line 23).

53. Johnson stated that he was later evaluated by another physician, who referred him for carpal tunnel surgery, which was performed in March 2021. (Ex. 1 at p 35 line 2-12).

54. Dr. Ennis stated that the patient (Mr. Johnson) reported a wrist injury, and after the work up they found some identifiable physiological abnormality, but that Dr. Ennis was not in a position to say the physiological abnormality was causally linked to the incident at issue here. (Ex. 11-0 p. 14 line 20-p. 23 line 23; Ex 7 Bates #4557, #4564, #4565 and #4568).

Respectfully Submitted,

EILEEN O'NEILL BURKE
State's Attorney of Cook County

By:/s/ *Rebecca J. Laue*
Rebecca J. Laue
Assistant State's Attorneys
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-4327
rebecca.laue@cookcountysao.org
 *Attorney for Defendants Thomas J. Dart and Cook County*

## **CERTIFICATE OF SERVICE**

    I, the undersigned, an attorney, hereby certifies that Defendant, Sheriff Thomas J. Dart, and Cook County's Statement of undisputed material facts and exhibits in support of his Motion for Summary Judgement, was served pursuant to the District Court's ECF system to all attorneys of counsel on **June 12, 2025**.

                                                                                                                        /*s/ Rebecca J. Laue*
                                                                                                                         Rebecca J. Laue