IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DOUGLAS JOHNSON**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) 22 CV 3718 |
| **COOK COUNTY SHERIFF THOMAS DART**, in his official capacity, **ANTWAUN BACON**, a CCDOC officer, and **COOK COUNTY**, a municipal corporation, | ) ) Judge Robert W. Gettleman ) ) ) ) ) |
| Defendants. | ) |

## <u>DEFENDANT SHERIFF THOMAS J. DART and COOK COUNTY'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>

Defendants, Thomas J. Dart (Sheriff"), and Cook County by and their Attorney, EILEEN O'NEILL BURKE, State's Attorney of Cook County, through her Assistant State's Attorney, Rebecca J. Laue, pursuant to Fed. R. Civ. P. 56 and N.D. Ill. Local Rule 56.1, submit this memorandum of law in support of the Motion for Summary Judgement.

## **INTRODUCTION**

Plaintiff was a pre-trial detainee at the time that he brought this lawsuit against Sheriff Thomas J. Dart, and Officer Antwaun Bacon alleging constitutions violations pursuant to U.S.C. §1983, §1988, and U.S.C §1331 and § 343 (a), the Constitution of the United States pendant jurisdiction as provided under 28 U.S.C. §1367(a) as well as §202 of the Americans with Disabilities Act, (42 U.S.C. § 12101 et. seq.), and §504 of the Rehabilitation Act, (29 U.S.C. § 794 et seq.). The Plaintiff also alleges a *Monell* claim against Sheriff Dart and violations by Sheriff Dart of the Rehabilitation Act, and the ADA. The Plaintiff claims he was injured as a result of facility wide policies or practices. Plaintiff, who utilized a cane to walk to a family visit on July 19, 2020, claims an injury to his wrist from handcuffs applied during

1

transport to the visit. Plaintiff's *Monell* claims fail as he has neglected to plead a widespread practice, custom or express policy that was the driving force behind his injury. Plaintiff's ADA and Rehabilitation Act claims fail because he was not denied the benefits of services, programs, or activities of a public entity and there was no denial or discrimination by reason of his disability. Additionally, accommodation was made for the Plaintiff as he made use of his cane during the transport to his visit. As such, there are no genuine issues of material fact for a jury to decide. Defendants are entitled to summary judgment as a matter of law.

## FACTS

On May 8, 2019, Johnson entered CCDOC. (SOF 8.) From May 8, 2021, to January 8, 2021, Johnson was housed in Division 8, Tier 2G, in cell D3, bed number 8. (SOF 9.) Prior to arriving at CCDOC Johnson had received an injection in his right hand for carpal tunnel syndrome. (SOF 10.) From December 8, 2019, to December 9, 2021, a time encompassing the incident at issue in this lawsuit, Johnson had an inmate alert for a cane. (SOF 11.) During his time at CCDOC, Johnson was found guilty of participating in a riot and refused to receive medical attention at various times. (SOF 12.)

On July 19, 2020, Officer Bacon was assigned to Division 1, with the specific duty of transporting inmates between Division 8 and Division 1 for visitation purposes. (SOF 27.) On July 19, 2020, Johnson was scheduled for an in-person inmate visit. (SOF 28.) On July 19, 2020, Johnson was summoned from his cell for a scheduled in-person visit and was escorted from his housing unit, where he encountered Officer Bacon. (SOF 30.) Officer Bacon attempted to apply handcuffs to Johnson in preparation for transportation to his in-person visit. Johnson asserted that he had a no-handcuff order. Officer Bacon asked Johnson to produce documentation confirming the alleged restriction, but Johnson was unable to provide any such documentation. (SOF 31.) After explaining the handcuffing policy, Officer Bacon applied handcuffs to Johnson, engaged the

2

double-lock mechanism to prevent accidental tightening, and performed a finger check to confirm that the restraints were properly fitted and not causing unnecessary discomfort. (SOF 33.) The "finger test," as taught by the Sheriff's Training Academy, is used to confirm that handcuffs are not applied too tightly. After applying the handcuffs, the officer attempts to insert one or more fingers between the cuff and the detainee's wrist. If a finger can be inserted, the handcuffs are considered properly fitted. If not, the cuffs must be loosened to avoid restricting blood flow. (SOF 34.)

Johnson contends that he notified Officer Bacon that the handcuffs were applied too tightly, and that it would affect his ability to walk. (SOF 35) Johnson admitted his handcuffs were placed in front, which allowed him to hold and use his cane with his right hand while restrained. (SOF 36.) After applying handcuffs, Officer Bacon escorted Johnson and several other detainees to the elevator. Upon exiting the elevator, Officer Bacon continued escorting the group down the hallway and turned toward Division 1. (SOF 37.) Johnson used his cane for the visit and was walking with his cane. (SOF 38.) As he walked, Johnson leaned against the wall and allegedly informed Officer Bacon that the handcuffs were too tight, requesting that they be loosened. (SOF 39.) Officer Bacon then directed Johnson and the other detainees up a flight of stairs toward the yard, where the visit was taking place. Johnson held the stair railing as he walked up the stairs. (SOF 40.) At all times during the transport from the RTU to Division 1, detainees, including Johnson, were required to wear face masks in accordance with COVID-19 regulations in effect at CCDOC at the time. (SOF 42.) Johnson was escorted to his visit, used his cane, and had the visit with his family. (SOF 43.) Further. Johnson acknowledged he was cuffed in the front and had his cane, was able to walk, and took an elevator to the visit. (SOF 44.) Upon arrival at the yard, Officer Bacon transferred custody of the detainees to the receiving officer, who escorted Johnson to his assigned table for a twenty-

to thirty-minute visit. Johnson claims he was in pain but proceeded with the visit. (SOF 45-46.)

During the return walk to the RTU, Johnson requested a new mask from Officer Bacon, stating that his mask was wet and causing difficulty breathing. Officer Bacon did not provide a new mask, and the group continued walking. (SOF 47.) Johnson also testified that he informed Officer Bacon that he had asthma. (SOF 48.) Johnson testified that he experienced an asthma attack upon entering the elevator. The plaintiff acknowledged that he did not request to use his inhaler, and his grievance about this incident does not mention an inhaler request. (SOF 49.)

Johnson testified that the condition of his wrist deteriorated, and he made a request to see a doctor. About a week after he put in his request, Johnson received an appointment with Dr. Ennis. (SOF 50.) Dr. Ennis evaluated Johnson and documented that his right wrist exhibited full range of motion and had a skin-colored nodule on the lateral ventral aspect that was soft but tender to palpation. (SOF 51.) Dr. Ennis opined that the examination findings were consistent with a wrist condition but could not determine whether it was caused by an injury Johnson had sustained from any incident. (SOF 52.) Johnson testified that he was later evaluated by another physician, who referred him for carpal tunnel surgery, which was performed in March 2021. (SOF 53.) Dr. Ennis testified that the patient (Mr. Johnson) reported a wrist injury, and after the work up they found some identifiable physiological abnormality, but that Dr. Ennis could not say that the physiological abnormality or any carpal tunnel was causally linked to the incident at issue here. (SOF 54.)

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP Rule 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view all facts and reasonable inferences in favor of the nonmoving party, *Samuelson v. LaPorte Cnty. Sch. Corp.,*

526 F.3d 1046, 1051 (7th Cir. 2008), but those inferences must be both reasonable and find support in the record. *See Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010); *see also Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2005) (the court is not required to accept unreasonable factual inferences). The court is not required to draw "[i]nferences that are supported by only speculation or conjecture." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008) (quoting *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004)). A motion for summary judgment "requires the responding party to come forward with the evidence that it has – it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009). Summary judgment must be entered against the non-moving party where that party "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A party who bears the burden of proof at trial may not rest on the pleadings but must affirmatively demonstrate that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 11 (1986) (citing FRCP Rule 56(e)); *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 626 (7th Cir. 2006). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

## ARGUMENT

**I.   PLAINTIFF CANNOT SUPPORT A *MONELL* CLAIM AGAINST SHERIFF DART**

The Plaintiff cannot present evidence to suggest that a policy or practice was the driving force behind the injury to his wrist. Plaintiff alleges a *Monell* claim against Sheriff Dart. (Dkt. 1 at ¶¶ 61-65.) Official capacity claims are actually claims against the governmental entity for which the officers work. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Guzman v. Sheahan*, 495 F.3d 852 (7th Cir. 2007). A governmental entity is liable for damages under Section 1983 only if the plaintiff can show that the alleged

5

constitutional deprivation occurred as a result of an official policy, custom, or practice. *See Monell.*, 436 U.S. at 692.

Official capacity claims do not allow for *respondeat superior* liability, *id*. at 690-92, and under Seventh Circuit precedent an official capacity suit can only stand where the alleged deprivation is the result of "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994) (internal quotations and citations omitted). A plaintiff must "plead factual content that allows the court to draw the reasonable inference" of an unconstitutional policy, custom, or practice. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). While there is no bright line defining a "widespread custom or practice," a single allegation of unconstitutional conduct is generally insufficient by itself to show that a policy, practice, or custom, exists. *See City of Oklahoma v Tuttle*, 471 U.S. 808, 822–23 (1985); *see also Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002). A plaintiff must also demonstrate that the practice or policy was the "moving force" or proximate cause behind the alleged injury. *County Comm'r of Bryan County v. Brown,* 117 S. Ct. 1382, 1388 (1997); *Polk County v. Dodson,* 102 S. Ct. 445, 454 (1981).

To properly make out a case that Defendant Sheriff is liable for an unconstitutional policy or custom, Plaintiff must show that Defendant Sheriff was "deliberately indifferent as to [the] known or obvious consequences." *Thomas v. Cook Cty. Sheriff's Department*, 604 F.3d 293, 303 (7th Cir. 2009). "In other words, they must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Awalt v. Marketti*, 74 F. Supp. 3d 909, 935 (N.D. Ill. 2014). Moreover, "[i]t is well established that there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [a plaintiff's] constitutional rights." *Petty v. City of Chicago*, 754 F.3d 416, 424-25 (7th Cir. 2014); *Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008).

### A. No Express Policy Violation Shown

As to an express policy, Plaintiff cannot show that an express policy caused any injury. The Plaintiff acknowledges that there exist policies regarding restraint and movement. (SOF 26.) None of these policies, however, direct officers to apply handcuffs too tightly or in a way that would cause pain, and Plaintiff cannot point to any policy that authorizes a gratuitous use of force while escorting detainees to visits.

Relatedly, Director Larry Garvin confirms his knowledge of and the existence of several policies pertaining to movement, inmates with disabilities, and visitation procedures all in place in July 2020. (SOF 24.) Director Gavin testified that Policy 708.4, (*see* Ex 8), regarding inmate movement does not have specific guidance for movement of a detainee utilizing a cane and how they should be handcuffed, and that no policy speaks to every conceivable situation. (SOF 18.) But Director Gavin also testified that there is not a policy that prevents a detainee who uses a cane to walk from being handcuffed. (SOF 19).

There can be no finding that the Cook County Sheriff adopted any policy that shows that Sheriff Dart was aware of any risk and failed to take appropriate steps to protect the Plaintiff, or that the Sheriff was deliberately indifferent as to [the] known or obvious consequences of a policy related to Plaintiff's use of a cane.

### B. No widespread Practice Shown

Much like how Plaintiff cannot show that any injury was caused by an express policy, he cannot show that any injury was caused by a widespread practice. Here, there is simply no evidence that any widespread custom caused or was the driving force behind the Plaintiff's injury. On July 19, 2020, Johnson was scheduled for an in-person inmate visit. (SOF 28.) On July 19, 2020, Johnson was summoned from his cell for a scheduled in-person visit and was escorted from his housing unit, where he encountered Officer Bacon. (SOF 30.) Johnson contends that he notified Officer Bacon that the handcuffs were applied too tightly, and that it would affect his ability to walk. (SOF 35.)

However, Plaintiff pleads but one instance in the Complaint on July 19, 2020, and as such has failed

7

to adequately illustrate a custom or practice that was widespread and thus the driving force behind an injury. See *Wang v. City of Indianapolis*, ___ F.4th ___, 2025 WL 1000158, at *5 (7th Cir. 2025)("As for custom or practice, he identifies only a single instance of an alleged falsification in probable-cause affidavits, and this is insufficient to show a widespread custom or practice."); *Roach v. City of Evansville*, 111 F.3d 544, 549 (7th Cir. 1997); *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995); *Grieveson v. Anderson*, 538 F.3d 763, 773-75 (7th Cir. 2008)("Grieveson has not presented any evidence showing that the Marion County Jail's grievance procedure--the formal policy itself and the allegedly 'sham' manner in which it was carried out--caused his injuries. Likewise, Grieveson's evidence of four incidents that he alone experienced 'fails to meet the test of a widespread unconstitutional practice by the Jail's staff that is so well settled that it constitutes a custom or usage with the force of law.'. . This simply is not enough to foster a genuine issue of material fact that the practice was widespread--from that evidence alone an inference does not arise that the county itself approved, acquiesced, or encouraged the disbursement of entire prescriptions at once."). The Complaint is bereft of any allegation of widespread practice that would denote a custom of numerous detainees with canes or handcuffing issues, which would be a necessity to plead for a successful *Monell* claim. The circumstances of a single incident of alleged unconstitutional conduct does not and cannot amount to the existence of a widespread practice. *City of Oklahoma v Tuttle*, 471 U.S. 808, 822-23 (1985). Indeed, even *three* isolated instances may be too few to show the existence of a widespread custom. *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002). Plaintiff simply does not state a plausible claim reflecting any alleged *widespread* policy or practice as a moving force behind the alleged violation. Accordingly, this Court should find that any one single instance of unconstitutional conduct alleged against one Officer, on one date, as pled here, fails to show the existence of a widespread policy or practice that was driving force behind the alleged unconstitutional conduct.

    **C.**    <u>**No Causation Shown Between Practice or Policy and the Plaintiff's Injury**</u>

Plaintiff cannot satisfy the necessary causation element either. "The central question is always whether an official policy, however expressed . . . caused the constitutional deprivation." *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017). Resolving this issue requires a plaintiff to present

evidence that the entity's policies not only caused a plaintiff's injuries but were "the moving force behind the injury alleged." *Bd. of Cty. Com'rs of Bryan Cty. v. Brown*, 520 U.S. 397,404 (1997). This "rigorous causation standard" requires "a direct causal link between the challenged municipal action and the violation of [the plaintiff's] constitutional rights." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021)

Regarding the injury, Dr. Ennis stated that he examined the plaintiff on August 19, 2020. (SOF 50-51.). Dr. Ennis also stated that the patient (Mr. Johnson) reported a wrist injury, and after the work-up they found some identifiable physiological abnormality but that he was not in a position to say that they were causally linked. (SOF 52.). What Plaintiff cannot do and has not done is adequately tie the knot between a wrist injury due to handcuffing technique by one officer and the necessary nexus that the physiological manifestation of an injury was due to the placement of handcuffs in during this one July 2020 incident. The Plaintiff cannot show that any of Defendant Sheriff's express policies or widespread practices caused an injury, and thus cannot prove a constitutional deprivation or that CCDOC policies were the driving force behind the injury. The *Monell* claim against Sheriff Dart must be dismissed.

### II. PLAINTIFF CANNOT SUPPORT VALID CLAIMS UNDER TITLE II OF THE ADA OR UNDER SECTION 504 OF THE REHABILITATION ACT

#### A. No Denial of Services, Programs, or Activities Shown by Plaintiff Based on His Disability

Plaintiff has also brought a claim pursuant to Section 202 of the Americans with Disabilities Act, (42 U.S.C. § 12101 et. seq.), and Section 504 of the Rehabilitation Act, (29 U.S.C. § 794 et seq). (Dkt. 1 at ¶2.) To prevail on a Title II claim, a plaintiff must establish: (1) that he is a "qualified individual with a disability"; (2) that he was denied "the benefits of services, programs, or activities of a public entity"; and (3) that such denial or discrimination was "by reason of" his disability. *Lacy v. Dart*, 2015 WL 5921810 at * 5-6 (N.D. Ill. Oct. 8, 2015), citing *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667 671-72 (7th Cir. 2012).

Plaintiff has failed to show that he was denied <u>any</u> "benefits of services, programs, or activities of

a public entity." As Judge Chang explained in granting a motion to dismiss ADA claims in *Harper v. Dart*, No. 14 C 1237, 2015 U.S. Dist. LEXIS 142871 at *14. (Oct. 21, 2015):

> all Harper has alleged is "great difficulty" in showering, toileting, and getting into bed. Those two words alone do not explain how Harper was denied equal access and are therefore not enough to allow a plausible inference that the failure to give Harper different accommodations denied him access equal to that of other prisoners. . . . [O]nce again Harper's allegations are just conclusions without fact, which are not enough.

Plaintiff stated the handcuffs were too tight and requested that they be loosened as he walked to a visit located in another division with his cane as he was handcuffed. (SOF 39.) Nowhere however does Plaintiff allege that he was denied the visit because he utilizes a cane. The Plaintiff acknowledges that he had a visit. A walk that is more difficult is not denial. The Plaintiff has not alleged that he was denied or prevented access to his visit with his family. Similarly, Plaintiff has failed to show that any denial was "by reason of" his disability. Indeed, to the extent Plaintiff claims he is disabled, he also says that Defendants made reasonable accommodations of that disability by providing and permitting him to use a cane. (SOF 38.) A court is not "required to ignore any facts set forth in the complaint that undermine the plaintiff's claim or assign any weight to unsupported conclusions of law." *City Nat'l Bank of Florida v. Checkers, Simon & Rosner*, 32 F.3d 277, 281 (7th Cir. 1994) (citations omitted).

Title II's implementing regulations merely call for "reasonable modifications in policies, practices, or procedures when modifications are necessary to avoid discrimination on the basis of disability." *Lacy v. Dart*, 2015 WL 5921810 at * 5-6 (N.D. Ill. Oct. 8, 2015), citing 28 C.F.R. § 35.130(b)(7). That "reasonable modification requirement can be satisfied in a number of ways." *Tennessee v. Lane*, 541 U.S. 509, 532 (2004). The purpose of the ADA is not strict compliance with precise requirements, but to "assure equality of opportunity, full participation, independent living, and economic self-sufficiency" for individuals with a disability. 42 U.S.C. § 12101. The goal should be to "allow [qualified individuals with a disability] to use the jail's facilities independently or similarly to how a non-disabled person would use similar facilities." *Bowers v. Dart*, 2017 U.S. Dist. LEXIS 160631 at *16-17.

The Plaintiff acknowledges that he was provided with a cane, escorted to his visit, and allowed

10

access to his family visit. (SOF 43.) The Plaintiff acknowledges he was cuffed in the front and had his cane, was able to walk, and took an elevator to the visit. (SOF 44.) The Plaintiff was afforded his visit with his family. The plaintiff has not shown he was denied accessibility or services because of his disability in violation of the ADA.

### B. No Showing of Injury as a Result of Failure to Accommodate

The Plaintiff complains of a wrist injury due to handcuffs placed too tightly while he was escorted to his family visit. (SOF 45.). The Plaintiff acknowledges that the handcuffs were placed in front as he was transported to his visit. (SOF 44.). However, the Plaintiff has failed to allege that any accommodation given to him caused him any significant injury or prevented him from an activity such as we have here, a visit with his family. Far from denying Plaintiff the benefits of services and programs "by reason of" his disability, Defendants have made reasonable accommodations of Plaintiff's disabilities by permitting him to use of a cane and handcuffing him in the front so that he could use and navigate the jail's facilities as independently as possible, similarly to how a non-disabled person would use the jail's facilities. Just the opposite of discriminating against Plaintiff "by reason of" his disability, Plaintiff's disabilities were reasonably accommodated. Plaintiff has failed to establish that he was denied "the benefits of services, programs, or activities of a public entity", and that such denial or discrimination was "by reason of" his disability.

Although Plaintiff now claims he should have been provided with a wheelchair for his transport, medical personnel did not authorize Plaintiff to use a wheelchair until a year after the incident at issue here. In other words, Plaintiff was not authorized to use a wheelchair at the time of this incident. While Plaintiff may disagree with that assessment, that is a claim to bring against the medical personnel who decided what assistive device Plaintiff needed. Plaintiff cannot bring an ADA or RA claim against the Sheriff for providing Plaintiff with the accommodation (the cane) medical personnel decided Plaintiff needed. The plaintiff was afforded all of the accommodation he was entitled to. (SOF 16.)

Plaintiff's claims as to an ADA violation and a Rehabilitation Act violation fail.

## CONCLUSION

WHEREFORE Defendants, for all of the foregoing reasons, respectfully request that this Honorable Court grant Defendants' motion for summary judgment as to all of Plaintiff's claims along with fees and costs.

Dated: June 12, 2025

                        Respectfully submitted,

                        EILEEN O'NEILL BURKE
                        State's Attorney of Cook County

By:     */s/ Rebecca J. Laue*
          Rebecca J. Laue
          Assistant State's Attorneys
          500 Richard J. Daley Center
          Chicago, Illinois 60602
          (312) 603-4327
          rebecca.laue@cookcountysao.org
          *Attorney for Defendants Thomas J. Dart and Cook County*

## CERTIFICATE OF SERVICE

I, Rebecca J. Laue, hereby certify on June 12, 2025, I have caused a true and correct copy of *Defendant Sheriff Dart and Cook County's Memorandum in Support of their Motion for Summary Judgment* Pursuant to Fed. R. Civ. P. 56 and N.D. Ill. Local Rule 56.1 and in accordance with Federal Rules of Civil Procedure and applicable local rules governing the electronic filing and service of documents be sent via U.S.P.S. to Plaintiff in accordance with the rules regarding the electronic filing and service of documents..

                        /s/ *Rebecca J. Laue*
                        Rebecca J. Laue
                        Assistant State's Attorneys
                        500 Richard J. Daley Center
                        Chicago, Illinois 60602
                        (312) 603-4327
                        Rebecca.laue@cookcountysao.org