

Transcript of the Deposition of
# Douglas Johnson

**Case:** Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
**Taken On:** February 6, 2024

Royal Reporting Services, Inc.
Phone:312.361.8851
Email:info@royalreportingservices.com
Website: www.royalreportingservices.com

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 1

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

DOUGLAS JOHNSON,                    )

              Plaintiff,     )

      -vs-                    )   No. 22 cv 003718

COOK COUNTY SHERIFF          )

THOMAS DART, in his          )

official capacity;           )

ANTWAUN BACON, a CCDOC       )

officer; and COOK COUNTY,    )

a municipal corporation,     )

              Defendants.    )


      The deposition of DOUGLAS JOHNSON, called for

examination, taken via videoconference before

KAREN A. FAZIO, CSR No. 84-1834, a Notary Public

within and for the County of Cook, State of

Illinois, and a Certified Shorthand Reporter of

said state, taken pursuant to the Federal Rules of

Civil Procedure of the United States District Courts

pertaining to the taking of depositions, commencing

at 10:00 a.m. on the 6th day of February, 2024.

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 2

```
 1   APPEARANCE (via videoconference):

 2         DVORAK LAW OFFICES, LLC
           MR. ADRIAN J. BLEIFUSS PRADOS
 3         1 Walker Avenue, Suite 204
           Clarendon Hills, Illinois 60602
 4         Phone: 630.590.9158
           E-mail: ableifuss@gmail.com
 5
                 appeared on behalf of the Plaintiff;
 6

 7         COOK COUNTY STATE'S ATTORNEY'S OFFICE -
           CIVIL RIGHTS/TORTS LITIGATION
 8         MR. JOEL ZEID
           500 Richard J. Daley Center
 9         Chicago, Illinois 60602
           Phone: 312.603.3374
10         E-mail: joel.zeid@cookcountysao.org

11             appeared on behalf of the Defendants
               Cook County Sheriff Thomas Dart and
12             Cook County;

13
           DEVORE RADUNSKY LLC
14         MR. JASON E. DEVORE
           230 West Monroe Street, Suite 230
15         Chicago, Illinois 60606
           Phone: 312.300.4479
16         E-mail: jdevore@devoreradunsky.com

17             appeared on behalf of the Defendant
               Antwaun Bacon.
18

19

20

21

22

23

24
```

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 3

```
 1                    I N D E X

 2    DOUGLAS JOHNSON                 EXAMINATION

 3    BY MR. ZEID                     4, 127

 4    BY MR. DEVORE                   112

 5    BY MR. PRADOS                   115

 6

 7                  E X H I B I T S

 8    Defense EXHIBIT               MARKED FOR ID

 9    No. 1                            40

10    No. 2                            74

11    No. 3                            90

12    No. 4                            100

13    No. 5                            103

14    No. 6                            104

15

16

17

18

19

20

21

22

23

24
```

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 4

1            (WHEREUPON, the witness was duly
2      sworn.)
3      MR. ZEID:  All right.  Let the record reflect
4  that the deposition of Douglas P. Johnson in case
5  Johnson v. Dart, et al., 22 cv 3718 has begun.
6            My name is Joel Zeid, and I represent
7  Cook County Sheriff Thomas Dart.
8            This deposition is being conducted in
9  accordance with the Rules of Federal Procedure,
10  Civil Procedure, and other local rules of the
11  Northern District.
12            It's now 10:03, and the court reporter
13  has just sworn the plaintiff in.
14            DOUGLAS JOHNSON,
15  called as a witness herein, having been duly sworn,
16  was examined and testified remotely as follows:
17            EXAMINATION
18  BY MR. ZEID:
19      Q.  Mr. Johnson, can you go ahead and state
20  your full name, including your middle name, and
21  spell it for the record?
22      A.  Douglas Preston Johnson, D-O-U-G-L-A-S,
23  P-R-E-S-T-O-N, J-O-H-N-S-O-N.
24      Q.  Perfect.  Mr. Johnson, have you ever

Page 5

1  participated in a deposition before?
2      A.  Yes.
3      Q.  Do you know when that was?
4      A.  It was in 2000 -- I think it was the
5  year 2000 -- yeah, I think it was 2000.  Between
6  2000 and 2001 on another case.
7      Q.  Do you know the name of the case?
8      A.  No, I don't know the name of the case.
9  It was concerning another injury.
10      Q.  Do you know if it was, like, a civil
11  case like what we're doing now or a criminal case?
12      A.  Yes.
13      Q.  Yes, it was a civil case; or yes, it was
14  a criminal case?
15      A.  It was a civil case.
16      Q.  Okay.  Well, I'm going to ask you a
17  series of questions related to your lawsuit here,
18  Johnson v. Dart, and you'll have to answer them
19  under oath.  There is a court reporter present as
20  well.  That's Karen.  The court reporter is taking
21  everything down and will prepare a written record
22  of everything that's said, which is called a
23  transcript.  So I'll need you to answer loudly and
24  with words.  So, you know, an uh-huh or uhn-uhn,

Page 6

1  sounds like that, that won't work.  Okay?
2      A.  Okay.  You can hear my voice, right?
3      Q.  I can hear perfect right now.
4      A.  Okay.
5      Q.  And the court reporter will tell us any
6  time she can't hear anything.
7            If you need to take a break at any
8  point, just let me know.  We can take a break.  I
9  would just ask that you answer any question I ask
10  before we get up to do that.
11            Does that sound okay to you?
12      A.  Okay.
13      Q.  Okay.  And then there are no judges
14  present.  This is still a formal legal proceeding.
15  It's like testifying in court, and you're under a
16  legal obligation to tell the truth.
17            Do you understand that?
18      A.  Yes, I do.
19      Q.  Okay.  If you don't understand any of my
20  questions, just feel free to say so, and I'll
21  rephrase it.
22      A.  Okay.
23      Q.  I'm going to assume that you understand
24  the questions I'm asking you unless you tell me you

Page 7

1  don't.
2            Is that okay?
3      A.  Yes.
4      Q.  Okay.  And do you have any questions
5  before we get started?
6      A.  No, sir.
7      Q.  Great.  Then, you know, obviously, we're
8  not in the same room today.  Where are you
9  currently located?
10      A.  I didn't hear you.
11      Q.  I'm sorry.  Mr. Johnson, I said,
12  obviously, we're not in the same room right now.
13  So where are you doing this deposition from?
14      A.  My house.  My living room.
15      Q.  Okay.  And is there anybody in the
16  living room with you at this moment?
17      A.  No, sir.
18      Q.  Okay.  And do you understand today that
19  while you're doing this deposition today remotely,
20  you're not allowed to communicate with anybody off
21  screen or be on an electronic device, like texting?
22      A.  Yes.
23      Q.  Okay.  All right.  The next few
24  questions may come across a little bit personal,

4  (Pages 4 to 7)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

---

Page 8

1  but we just ask them as a matter of course.  Okay?
2    A.   Okay.  Well, if I don't want to answer
3  it, do I have to answer it?  Is it --
4    Q.   You do have to answer the question, but
5  if there's really an issue, you can tell me, and if
6  I need to rephrase it, I will.
7    A.   Okay.  Great.  Okay.  Sounds good.
8    Q.   My first question is just going to be:
9  Are there any kinds of medication you take or
10  anything like that?
11    A.   Yes.
12    Q.   Okay.  And are you taking those
13  medications today?
14    A.   Yes.
15    Q.   What kind of medications?
16    A.   I'm taking medication for pain, for high
17  blood pressure, for asthma, and that's -- I was a
18  diabetic, but now I'm borderline.  And I'm just
19  taking high cholesterol medication and acid reflux
20  medication.
21    Q.   Do you know how many milligrams, by
22  chance?
23    A.   Which one?
24    Q.   Each respectively.

---

Page 9

1    A.   Okay.  The acid reflux is -- I'm taking
2  40 milligrams.  And I'm taking for my asthma
3  Singulair, 10 milligrams, and ANORO pump which I
4  pump twice a day, which is 150 grams.  And my
5  rescue inhaler, Ventolin, and I will take that
6  twice a day or as needed.  And my blood pressure
7  medication is nifedipine, 60 milligrams once a day.
8  And Singulair, and I take that once a day at night.
9  And the high cholesterol medication I take in the
10  day.  And I forget, I'm also on two other
11  medications.  One is warfarin because I have a
12  history of blood clots on the calf of my legs and
13  in my lungs, and that's 5 milligrams.  And I take
14  an aspirin which is 75 milligrams.  And gabapentin,
15  that's for nerve pain.  It's supposed to control
16  the nerves, you know, that I'm having in my body.
17  You know, the uncontrollable nerves, you know, that
18  I'm receiving now.  And I'm taking -- for the pain,
19  I'm taking hydrocodone, 5 grams by 325 milligrams.
20  And just normal Tylenol, 500 milligrams, Extra
21  Strength.
22    Q.   Okay.  Do you know in general, you know,
23  the side effects of any of these medications?
24    A.   Some of them it's -- I guess some of

---

Page 10

1  them are drowsy, but most of them are drowsiness,
2  you know.  And with my Singulair medication, you
3  know, it just has me sort of, you know, jittery,
4  but nothing serious.
5    MR. PRADOS:  I'd just advise my client to
6  listen to the question posed or finish posing the
7  question before he answers.
8  BY MR. ZEID:
9    Q.   That brings me to my next question,
10  Mr. Johnson.
11    Do you know if any of these medications
12  affect your memory?
13    A.   No.
14    Q.   No, you don't know; or no, they do not
15  affect your memory?
16    A.   Say that again.
17    Q.   I said no, you don't know if they affect
18  your memory; or no, these medications do not affect
19  your memory?
20    A.   Well, it doesn't.  To my knowledge, it
21  doesn't.
22    Q.   Okay.
23    A.   I mean, my doctor didn't tell me that
24  would be a side effect of any of the medications.

---

Page 11

1    Q.   Is there anything about the medications
2  you've taken today that would prevent you from
3  giving us full, complete, and truthful answers to
4  these questions?
5    A.   No, it's not.
6    Q.   Okay.  Are you currently under the
7  influence of any alcohol?
8    A.   No.
9    Q.   Are you under the influence of any
10  drugs?
11    A.   I never used drugs besides weed.
12    Q.   Have you ever struggled with addiction
13  in the past?
14    A.   No, not to my knowledge.
15    Q.   And you're not under the influence of
16  weed right now, right?
17    A.   No.  I haven't smoked any weed for
18  30 years.
19    Q.   Okay.  Got it.  So there's nothing that
20  would prevent you from thinking, testifying
21  truthfully and accurately today?
22    A.   No, it's not.
23    Q.   Okay.  Great.  All right, Mr. Johnson.
24  I'm going to kind of ask you about your background

---

5 (Pages 8 to 11)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

---

Page 12

1  a little bit more now.
2      Have you been known by any other names,
3  nicknames or aliases?
4      A.  Yes.  I had a nickname, Dougie Fresh.
5      Q.  And what is your date of birth?
6      A.  July 20th, 1962.
7      Q.  And do you know your Social Security
8  number?
9      A.  Yes, I do.
10     MR. ZEID:  Okay.  We can go off the record for
11 a second.
12         (WHEREUPON, a discussion was had off
13         the record.)
14 BY MR. ZEID:
15     Q.  Mr. Johnson, how tall are you?
16     A.  5'6.
17     Q.  And how much do you weigh?
18     A.  As of today, I weigh 190 pounds.
19     Q.  Prior to your detention, what was your
20 address?
21     A.  2919 West Fillmore Street.
22     Q.  And was that in Chicago?
23     A.  Yes, Chicago, Illinois 60612.
24     Q.  And did you own or rent that address?

---

Page 13

1      A.  Rent.
2      Q.  Okay.  And how long did you live there?
3      A.  I stayed there for approximately four to
4  five years.
5      Q.  And are you married?
6      A.  Huh -- yes, I'm married.
7      Q.  Okay.  How long have you been married?
8      A.  Two years.
9      Q.  What's your spouses name?
10     A.  Lavensis Mays.
11     THE COURT REPORTER:  Can you spell that,
12 please?
13     THE WITNESS:  L-A-V-E-N-S-I-S.  Mays, M-A-Y-S.
14 BY MR. ZEID:
15     Q.  Mr. Johnson, do you have any children?
16     A.  Yes.
17     Q.  What are their names?
18     A.  Yulda Robinson.
19     THE COURT REPORTER:  Can you spell these for
20 me?
21 BY THE WITNESS:
22     A.  Okay.  Yulda, L-A-Y-N-D-A -- no.  I'm
23 sorry.  It's Y-U-L-D-A, Robenson, R-O-B-E-N-S-O-N.
24 Lavida Robenson, L-A-V-I-D-A Robenson,

---

Page 14

1  R-O-B-E-N-S-O-N.  And I have a junior, Douglas
2  Preston Johnson, Jr., D-O-U-G-L-A-S, P-R-E-S-T-O-N,
3  J-O-H-N-S-O-N, J-R.  And I have Lanettra Johnson,
4  L-A-N-E-T-T-R-A, J-O-H-N-S-O-N.  Jonathan Johnson,
5  J-O-N-A-T-H-A-N, J-O-H-N-S-O-N.  That completes my
6  children.
7  BY MR. ZEID:
8      Q.  Now would you mind sharing how old each
9  of them are, Mr. Johnson?
10     A.  Okay.
11     MR. PRADOS:  Object to relevance.
12         But you can answer.
13 BY THE WITNESS:
14     A.  Okay.  Well, if it's relevance, I prefer
15 not to because I don't remember my oldests' ages
16 exactly.
17 BY MR. ZEID:
18     Q.  That's fair.  Even though your attorney
19 made an objection, you do still have to answer the
20 question, but if you don't remember exactly, you
21 know, whatever is the closest estimate you can give
22 me to their age.
23     A.  Okay.  Well, Yulda is -- I say she's
24 about 44.  Lavida, she's 36 -- 38.  Make it 38.

---

Page 15

1  And my son, Douglas is 36.  My son -- my daughter
2  Lanettra 35.  And Jonathan is 33.
3      Q.  Okay.  And do you have grandchildren --
4  strike that.
5          Are any of your children dependent upon
6  you for support at this time?
7      A.  Yeah, my youngest.  That's Jonathan
8  Johnson.
9      Q.  And do you have grandchildren,
10 Mr. Johnson?
11     A.  Yes.
12     MR. PRADOS:  Object to relevance.
13         But you should answer.
14 BY THE WITNESS:
15     A.  Yes, I do.
16 BY MR. ZEID:
17     Q.  What are their names, and I'll ask you
18 to say if they live in Chicago or not as well?
19     A.  Okay.  Because it's a lot of them.  So
20 you still want me to try to answer?  Some of them I
21 might not remember their names.  I might get their
22 names wrong.
23     Q.  Do your best, and we can always verify,
24 but I'd like you to go ahead and answer.

---

6  (Pages 12 to 15)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 16

1     A.   Okay.  Yulda, she has -- wow.  She has
2  four kids.  One named Terianna Lane.
3     THE COURT REPORTER:  I'm sorry, sir, but I'm
4  going to have to ask you to spell them for me.
5  BY THE WITNESS:
6     A.   That's gonna be -- because I don't know
7  how they spell their names.  They got these new
8  names, like Terianna, Tinasia, and -- you know,
9  these names, and I'm being truthful, I don't know
10  how to spell their names.
11  BY MR. ZEID:
12     **Q.   That's okay.**
13     A.   I can give their names.  Is that fair
14  enough?
15     **Q.   Give us as best as you can.**
16     MR. ZEID:  And then, Karen, you know,
17  it's okay to use --
18  BY THE WITNESS:
19     A.   Terianna Lane, that's the oldest.
20  Tineea Lane, that's the middle child.  Tinasia,
21  that's the third child.  And Carion or Darion
22  Lane.  That's her four, my oldest daughter.
23     My next oldest daughter, she has four
24  daughters.  One named Shaneeka Tucker, Shaleeka

Page 17

1  Tucker, Shakira Tucker, and Journey, and I can't
2  pronounce her last name.  It's by a different dad.
3  I can't remember her name -- her last name.
4     And my other son -- wow.  I can't even
5  pronounce their names.  And he has two twins and
6  one child.  He has three kids.  And I forgot their
7  names.  I'm gonna be honest with you.
8     And then my oldest daughter -- baby
9  child -- next to the baby daughter, Lanettra
10  Johnson, she has one son, and his name is Michael
11  Bennett.
12     And my last son, Jonathan Johnson, he
13  has three girls and one boy.  The girl's name is
14  Davalia.  Davalia Davis.  Jada Johnson.  And Janell
15  Johnson.  And he has a junior, Jonathan Johnson,
16  Jr.
17  BY MR. ZEID:
18     **Q.   All right.**
19     A.   That completes --
20     **Q.   Is that all?**
21     A.   Yes.
22     **Q.   Mr. Johnson, do any of these**
23  **grandchildren live in Chicago?**
24     A.   Yes.

Page 18

1     **Q.   How many of them?  Can you name the ones**
2  **that do, or do they all live in Chicago?**
3     A.   They all don't live in Chicago.  Some of
4  them live in Springfield.  The ones that live in
5  Chicago is my daughter Davida -- Lavida, her
6  daughters:  Shaneeka, Shaleeka, and Shakira, and
7  Journey.
8     And my other son -- or my other
9  daughter, her son lives in Chicago, Michael
10  Bennett.
11     And my last son, his children who I just
12  recently named, Davalia, Jada, Janell, and Jonathan
13  Jr., they all stay in the city.
14     **Q.   I know you said your youngest child was**
15  **currently dependent upon you for financial support.**
16  **Is there anyone else who is dependent**
17  **upon you?**
18     A.   No.
19     **Q.   Okay.  How far in school did you go,**
20  **Mr. Johnson?**
21     A.   I have a GED.
22     **Q.   What school did you attend?**
23     A.   What did I attend?  Austin High School.
24     **Q.   And was that in the City of Austin?**

Page 19

1     A.   Huh?
2     **Q.   Was that in the City of Austin?**
3     A.   Yes, that's in the City of Chicago.
4     **Q.   Got it.  Okay.**
5     A.   And I went -- I went to Malcolm X
6  College and got my GED.
7     **Q.   And is Malcolm X College also in**
8  **Chicago?**
9     A.   Yes, it is.
10     **Q.   Okay.  And you're not currently**
11  **incarcerated, correct?**
12     A.   Correct.  I'm not.
13     **Q.   Where were you housed on July 19th of**
14  **2020, at the time of the incident?**
15     A.   2919 West Fillmore Street.
16     **Q.   I apologize.  Where were you housed**
17  **July 19, 2020, at the time of the incident?**
18     A.   At the time of the incident, where was I
19  living at in 2020?
20     **Q.   Yeah.**
21     A.   In 2020, I was incarcerated in the Cook
22  County Corrections.
23     **Q.   Okay.  Were you making any money while**
24  **you were in jail?**

7 (Pages 16 to 19)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 20

1     A.  No, sir.
2     Q.   Okay.  And how often did you talk to
3  your family while you were incarcerated?
4     A.  Every day.
5     Q.   Who did you talk to in your family?
6     A.  I talked to my wife, my brother
7  sometimes, and my children.
8     Q.   All your children?
9     A.  Huh?  Not all of them, but some of them.
10    Q.   Which ones in particular?
11    A.  I talked to my daughter -- I talked to
12  all of them except one -- except two.  I talked to
13  Lavida, Lanettra, and Jonathan.
14    Q.   Did you talk to them about your civil
15  case at all?
16    A.  No.  I just discussed how are they
17  doing, and they asked how I was doing.  Just casual
18  conversation.
19    Q.   Do you have any tattoos or anything?
20    A.  No.
21    Q.   Okay.  And you're not presently
22  affiliated with any gang or anything like that?
23    A.  Never did.
24    Q.   Do you have any felony convictions?

Page 21

1     A.  Yes.
2     Q.   For what were you convicted?
3     MR. PRADOS:  Did you pose a question?  I
4  didn't hear.
5  BY MR. ZEID:
6     Q.   I apologize.  I said for what were you
7  convicted?
8     A.  I was -- the first one I was convicted
9  for drugs.
10    Q.   Okay.  When was that?
11    A.  Which weren't mine.  Huh?
12    Q.   When was that first conviction?
13    A.  That was the first conviction.  This was
14  in 1998.
15    Q.   Okay.
16    MR. PRADOS:  Again, I urge my client to let
17  counsel finish his question before he answers, to
18  help out the court reporter.
19  BY MR. ZEID:
20    Q.   Now you said you had another conviction
21  as well, a felony conviction?
22    A.  Yes.
23    Q.   What were you convicted of for that one?
24    A.  A danger to a youth.

Page 22

1     Q.   And when was that?
2     A.  This was in 2021.
3     Q.   Okay.  Have you ever been convicted of a
4  misdemeanor involving dishonesty or a false
5  statement?
6     A.  No -- could you strike that?  I was
7  convicted in 2023.  I'm sorry.
8     Q.   You're fine.  We won't strike it, but
9  the record --
10    A.  I'm sorry.  '22.
11    Q.   '22?
12    A.  '22.
13    Q.   So after the incident?
14    A.  Right.
15    Q.   Got it.  Okay.  Have you ever testified
16  in court before?
17    A.  Once.
18    Q.   And, I'm sorry, Mr. Johnson.  What was
19  that second conviction for again, that felony
20  conviction you mentioned?
21    A.  It was a danger to a youth.
22    Q.   Danger to a youth.  Okay.  I'm sorry.
23        And then what -- so you testified in
24  court before.  Was that in both of your criminal

Page 23

1  convictions?
2     A.  I testified -- when you said -- you said
3  testify for someone else?
4     Q.   Yeah, or testify for someone else.
5     A.  That's what I thought.  I testified for
6  someone one time, a very long time ago, and I
7  testified on my own behalf.
8     Q.   Do you remember what case that was for
9  or who it was for?
10    A.  Which one?  It was -- I forgot his name.
11  He was an associate, you know.  His last name was
12  Holmes.
13    Q.   Do you remember what the case was about?
14    A.  It was a drug case.
15    Q.   And Mr. Holmes was being charged with
16  drugs in this case?
17    A.  Yes.
18    MR. PRADOS:  Objection to relevance.
19        But over that objection, you can and
20  should answer.  Even though I'm objecting, you
21  still have to answer.
22  BY THE WITNESS:
23    A.  Okay.  I answered it yes.
24

8  (Pages 20 to 23)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 24

BY MR. ZEID:

1  BY MR. ZEID:
2      Q.   Other than this lawsuit, how many other
3  lawsuits have you filed?
4      A.   Maybe about -- maybe three.  Two of them
5  was -- the first one was I fell down some stairs,
6  slumlord.  And then an automobile accident.  And
7  the last one was within the correctional center.
8      Q.   Okay.  And aside from being a witness in
9  that one case you testified about earlier and these
10  other civil suits that you just mentioned, have you
11  been involved in any other civil lawsuit?
12      A.   No.
13      Q.   Okay.  Mr. Johnson, we're going to kind
14  of go now to your medical history here.  So I'm
15  going to ask you some questions about your medical
16  history prior to incarceration.
17          Prior to your incarceration, did you
18  drink at all?
19      A.   Did I drink?  Yeah, occasionally.
20      Q.   Okay.  And I know you said that you
21  smoked cannabis a while ago.
22          Was that a frequent thing you did or
23  just once?  Could you elaborate?
24      A.   When that was 30 years ago?

Page 25

1      Q.   That was it, 30 years ago?
2      A.   Yeah, because my asthma -- it affected
3  my asthma, and my doctors requested that I quit.
4  So I followed my doctors' orders.
5      Q.   Okay.
6      A.   You know, and I feel pretty good because
7  that was smoke -- that was the only smoke that was
8  going in my lungs.  I never smoked cigarettes.
9      Q.   Prior to your incarceration, had you
10  ever had surgery done?
11      A.   Prior to my incarceration, yes, on my
12  back.
13      Q.   Do you know when that was?
14      A.   June 30th, 2016.
15      Q.   Okay.  And what was wrong with your
16  back?
17      A.   The first -- I had a slipped disc,
18  aggravated disc.  It was due to an accident -- car
19  accident.
20      Q.   Have you ever been hospitalized prior to
21  your incarceration, aside from that surgery to your
22  back that you mentioned?
23      A.   Yes.  I've been hospitalized, yes.
24      Q.   Do you know what the cause of that was?

Page 26

1      A.   I had developed blood clots -- massive
2  blood clots around my heart, about to kill me.  And
3  this was in June of 2021.  And I had to go to the
4  hospital.  You know, I thought it was a heart
5  attack, but it wasn't.  It was three massive blood
6  clots.  So I had to be in the hospital for a while.
7  I was near death.
8      Q.   Have you ever undergone treatment for
9  mental health?
10      A.   No.
11      Q.   Okay.  Have you had an ongoing pain
12  anywhere on your body that you did not seek medical
13  attention for?
14      A.   No.
15      Q.   While incarcerated, did you drink any
16  alcohol?
17      A.   No.
18      Q.   Have you done anything to prepare for
19  today's deposition, Mr. Johnson?
20      A.   No.
21      Q.   Did you -- you didn't talk to anybody?
22      A.   No.
23      Q.   You didn't review any documents?
24      A.   No.  I don't have any documents with me.

Page 27

1      Q.   Okay.  All right.  Then I'm going to go
2  ahead and turn your attention to July 19, 2020.
3  That's the day of the incident that's the cause of
4  this lawsuit.  And I just generally want you to
5  kind of walk through your whole day, what happened
6  to you on that day.
7      MR. PRADOS:  Object to form because it calls
8  for a narrative answer.
9          But you can answer.
10  BY THE WITNESS:
11      A.   Well, I was just going throughout my
12  day, you know, waiting on my visit.  And when I was
13  called for my visit, I went to the door.  The
14  officer on the deck, he opened up the door, and
15  escorted me to the outside, to Officer Bacon.  And
16  he went back inside the tier.  And Officer Bacon,
17  well, he seemed a little agitated, and he pulled
18  his handcuffs out.
19          So when he pulled his handcuffs out, I
20  was explaining to him that I don't get handcuffed
21  because I was told by the medical physician anyone
22  that has the device that helps their mobility don't
23  get cuffed.  And I never got cuffed.  And I
24  explained to him my condition of my back, and that

9  (Pages 24 to 27)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 28

1  was the reason.  And he was just saying, well, I
2  don't want a hear that.  You're gonna get cuffed
3  today.
4          So he proceeded to put the handcuffs on
5  me, and I told him that they were tight.  And I
6  told him that I don't know how I'm going to be able
7  to walk.  And he told me that I have to do it the
8  best way I can.  So I'm walking with the handcuffs
9  on top of my wrists, squeezing the bones of my
10 wrists.  And I'm stumbling.  We went to the
11 elevator, went down the elevator.  Then that's
12 where the very long journey began.  And I stumbled
13 twice, and he just looked back at me with a smirk
14 on his face, you know, and turned back around and
15 kept walking.
16         And as we went through these iron doors,
17 then there was hallways -- long hallways.  So I
18 started leaning up against the hallway wall, you
19 know, to try to take some pressure off, which it
20 wasn't working, but I guess it prevented me from
21 falling down.  And I said, could he loosen the
22 handcuffs because they were too tight.  And he
23 said, no.  The blank handcuffs ain't too tight.  I
24 can come and put my whole hand through it.  And I

Page 29

1  told him, no, you can't.  And he said, don't worry
2  about it.  Just come on.
3          So we taking steps.  Every maybe 10 or
4  15 steps, he would turn around and look at me with
5  this crazy smile on his face, you know.  And I'm
6  sweating, and I'm in pain because I told him the
7  cuffs was causing a lot of pain because I've got --
8  I've got my cane, and I'm walking with my cane to
9  keep my mobility so I won't fall because of my back
10 injury.  And he just, come on, you know.  And he
11 did that like about three more times.
12         Then we finally got to Division 1
13 because that's where the visitors was at.  That's
14 where the visiting site was at, in the yard
15 outside.  And there was like four steps that I had
16 to go up the stairs, and I thought that he was
17 gonna unloose the handcuffs where I can hold on to
18 the railing, and he just looked at me and told me
19 to go up the stairs.  So I had to struggle up the
20 stairs with my cane.
21         You gotta excuse me, man.
22         Q.  Do you need a couple of minutes?
23 Mr. Johnson?
24         MR. PRADOS:  We can take a quick -- we can

Page 30

1  take a break.
2          MR. ZEID:  It's no big deal.  We'll take five
3  minutes.  We'll be back at 10:45.  Okay?
4          THE WITNESS:  Okay.
5          MR. ZEID:  You can always say if you need one.
6  No worries.  Let's go off the record.
7              (WHEREUPON, a recess was had.)
8          MR. ZEID:  It's now 10:45.  We're going to go
9  back on the record.
10 BY MR. ZEID:
11         Q.  Mr. Johnson, you were just telling us
12 about what happened to you on July 19th, 2020, and
13 you had just gotten to the part of the incident
14 where you were at the stairs, I believe.
15         A.  Yes.  I was at the stairs, and I thought
16 he was gonna unhandcuff me so I can grab the bar
17 and come up the stairs.  But he didn't.  He just
18 told me I need to get up there the best way I can
19 if I want my visit.
20         So I proceeded to struggle up the stairs
21 with my handcuffs and my cane and grabbing the bar
22 to hold on to get up the stairs.
23         Once I made it up the stairs, I proceed
24 out the door for my visit.  I seen a supervisor, a

Page 31

1  white shirt.  I didn't know who she was, but I
2  stopped her, and I explained to her or tried to
3  explain to her about my condition and the
4  handcuffs, and she said she don't want to hear it.
5  It's a rule.  And she kept walking, you know.
6          So Officer Bacon told me to go off to my
7  visit.  So I went -- proceeded to go to my visit,
8  and that was a long walk because I was way on the
9  end of the park area.  You know, I'd say it was
10 around a block long.  And my family was waiting on
11 me, and they seen the expression on my face, and
12 they looked at my hands and they seen that my hands
13 was swollen.  And I told them that it's because of
14 the cuffs and trying to make it to my visit.
15         So I proceeded with my visit, still in
16 my handcuffs.  You know, I was in a lot of pain,
17 but I was still trying to talk to my family because
18 the visit was 20 to 30 minutes.
19         And after the visit, I proceed -- I
20 waited until Officer Bacon came to pick me up
21 because he's the one that escorted me.  And the
22 same routine going down the stairs.  Bad attitude,
23 very rude.  Struggled down the stairs, and
24 proceeded back down the hall going to my tier, to

10  (Pages 28 to 31)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 32

1    Division 8 from Division 1.
2         And we gets halfway there, and I'm
3    sweating.  My mask got wet, and I can hardly
4    breathe out the mask.  And I asked him can I get
5    another mask because this one is wet and I can
6    barely breathe.  He tells me no.  Just put the mask
7    back on and come on.  And I proceed going down the
8    hall struggling to my tier, as he looking back with
9    the same expression on his face like I was some
10   type of a wild animal or something else.
11        When we got to the tier, he just looked,
12   and he smiled and took the handcuffs off and left.
13   By then, the tier officer where I was on, my deck,
14   he opened the door for me to come in, but I pulled
15   my mask down and asked him for another mask because
16   the mask was soaking wet.  And I hit my pump two
17   times, and I came in the tier, and I went there
18   into the bathroom, and I started putting cold water
19   on my hands because they was burning and hurting
20   and red and swelling.
21        Then I seen that it wasn't really giving
22   me too much relief.  I wiped my hands off, and I
23   wiped my face because I was doing the same thing
24   that I was just doing a few minutes ago, crying.

Page 33

1         I went to Officer Orr because that was
2    the officer on the deck.  I showed him my wrists
3    and everything, what Officer Bacon done, and I
4    requested a supervisor.  He immediately called for
5    a supervisor.  She came, Sergeant Parcell, and I
6    showed her my wrists.  My right wrist had the
7    swelling so bad it turned red, and all the back of
8    my hand.  And she looked at it, and then she got
9    the nurse, and the nurse gave me two Tylenol to
10   take.  And I explained to her my situation, what
11   was going on.  And she told me not to worry about
12   it.  She was gonna go look for this Officer Bacon,
13   and he was gonna be disciplined.  And she requested
14   I fill out a grievance, and that's what I did.
15        And I did that, and I laid down for that
16   day.  But then the next morning, Sergeant Parcell
17   called me back to the door, and with her -- she had
18   the superintendent with her, and her name was
19   Hayes.  And I proceed to show her my wrist, and she
20   asked me the officer's name, and I gave her the
21   officer's name.  And she assured me that he will be
22   disciplined.  And her herself requested that I fill
23   out a grievance.  And I told her that I already
24   did, and she said that's good.  And she just

Page 34

1    assured me that she was gonna track Officer Bacon
2    down and discipline him.  But I don't know whether
3    he was disciplined or not because no word got back
4    to me that he was being disciplined.  So I just
5    left it up to that and took her word for it.
6    Q.   I appreciate you kind of running through
7    that day.  I didn't mean to interrupt you,
8    Mr. Johnson.  Is there anything else?
9    A.   No, there's nothing else.  It's just my
10   wrist got worse, and I requested a doctor, which I
11   had put in a form, a medical slip, and wait until
12   I'm called for the doctor, which that took a week.
13   So I'm sitting here struggling, still hurting,
14   wrist is swelling up, and waiting on a doctor to
15   see me.  And when I finally got called to see the
16   doctor, you know, I went and seen the same doctor
17   that I've been seeing for my back and everything.
18   And I showed it to him, and he looked distorted
19   because he seen how swollen my wrist was all around
20   the top and took my veins in in the front, which
21   the swelling is still there, right here
22   (indicating).  I don't know if you can see it or
23   not, but it's there.
24   Q.   You're pointing to the -- to your wrist,

Page 35

1    and just kind of --
2    A.   Right here, yes.  Right below my thumb.
3    Right here.  And he said he was gonna send me to do
4    some tests.  So I had to wait until I was called to
5    go to Stroger's.  And the specialist there name was
6    Lombardi.  Lombardi or Lambardi.  And he looked at
7    my hand and he examined it.  He sent me for some
8    tests.  And then he came I guess a month later.  He
9    informed me that he needed to do surgery on me
10   called a carpal tunnel.  That's what he called it.
11   And he did the surgery.  It was on -- I think it
12   was the end of March.
13        And after that, I still was in a great
14   deal of pain.  He gave me a prescription for pain
15   medication, but the pain medication that he
16   prescribed me for, it wasn't allowed.  So they gave
17   me Tylenol 3, but then all of a sudden, there was
18   4 -- I was supposed to take it until my next visit,
19   but after a week, they discontinued.  They just
20   stopped it.  And I'm asking to try to see the
21   doctor so I can explain to the doctor how long I
22   supposed to be on the medication.  So I'll suffer
23   with only the pain medication that I was getting
24   for my back, which was tramadol and some regular

Royal Reporting Services, Inc.
312.361.8851

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 36

1    Tylenol.
2         When I went back to see Officer -- I
3    mean, Dr. Lombardi, he looked at it, and he sent me
4    back because he said the stitches wasn't ready to
5    come out. So I had to go back and wait another
6    week before I come back to him before he took the
7    stitches out. He said the swelling was gonna go
8    down, but the swelling didn't never go down. So I
9    was still in a great deal of pain because he did
10   tell me, the back of your hand, you may not get the
11   feeling back in your hand, and I won't be able to
12   get rid of all of the nerve pain that you gonna
13   have, but I'm gonna try to get rid of as much as I
14   can.
15        He cut me in three places: On the top
16   of my wrist by my thumb, he cut me here, and he cut
17   me in the middle of my hand. And I've been
18   struggling with it.
19        And when I got out, I immediately called
20   for -- I went to my doctor, and she sent me to a
21   specialist. And his name was Dr. Mikhail
22   (phonetic). And once he ran all the tests and he
23   figured out that there was a lot of damaged nerve
24   up here that should have been located and noticed

Page 37

1    when I was getting all the tests run for me at
2    Stroger's. And he told me, well, I'm gonna have to
3    do a surgery for the nerves. And he say, well, the
4    swelling should go down, but I'm not 100 percent
5    guaranteed. And he did the surgery here, and sent
6    me for therapy after that.
7         Q.   Thank you for sharing all that,
8    Mr. Johnson. That was a lot to kind of run
9    through, so we'll go over bits and pieces of it in
10   detail here.
11        I just want to go back to earlier. When
12   we went off the record, I know there was somebody
13   who comforted you. I want to make sure there's
14   nobody in the room.
15        A.   I guess that emotion, you know, came,
16   and she just came down, you know. I guess I
17   probably would have did the same thing. So I'm
18   not -- I probably would have did the exact same
19   thing.
20        Q.   I just wanted to make sure no one was in
21   the room with you currently.
22        A.   Everybody's gone. I let her know I'm
23   okay, what was wrong, and she's gone.
24        Q.   Now, Mr. Johnson, you named

Page 38

1    Officer Bacon as a defendant in this case.
2         Q.   Could you please tell me your history
3    with him prior to July 19, 2020?
4         A.   I never had any history with him. That
5    was my first time ever seeing him in my life.
6         Q.   And no prior interactions with him other
7    than --
8         A.   No prior, no.
9         Q.   Obviously, you know, after this
10   incident, how do you feel about Officer Bacon?
11        A.   Well --
12        MR. PRADOS: Object to form.
13        You can answer.
14   BY THE WITNESS:
15        A.   I don't hate him because I wasn't raised
16   to hate anyone, but I was very disappointed in the
17   way that I was treated by him, the way he just
18   abused his authority, you know, towards me, and
19   acted like I wasn't nothing. You know, he was very
20   prejudiced. And at one point I felt that he was
21   being racist, you know. But it's just the way that
22   I was treated, and he was very rude from the
23   beginning all the way to the end. He didn't care
24   about the pain that I was in, the situation or

Page 39

1    anything. He didn't even try to see was the
2    handcuffs too tight, was there any way that he
3    could make it comfortable. He didn't even do that.
4         And at the beginning, I explained to him
5    before we proceeded was that I was also on a
6    wheelchair long-distance escort, and he didn't even
7    care about that. You know, he didn't go to see was
8    there any wheelchairs available or anything. He
9    just put the handcuffs on me and just say, come on.
10   Being very rude. And to this day, it bothers me
11   every time I talk about him.
12        Q.   Have you had any interactions with him
13   since July 19th?
14        A.   No interaction at all, period. Because
15   he was upset because basically he was took from
16   one, I guess, tier or post and assigned to escort
17   the detainees. And he made it known that he didn't
18   want to be doing this. He wished that it would
19   have kept storming so he could have canceled the
20   whole thing. That's how he was talking to me,
21   loudly, in a rage, upset about the situation that
22   he had to do. You know, and that was supposed to
23   have been his job.
24        Q.   I appreciate you kind of sharing that

12  (Pages 36 to 39)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 40

1    with me.
2          I'm going to go ahead and introduce what
3    will be marked as Defense Exhibit 1, and it will be
4    the complaint you filed in this case.
5          (WHEREUPON, a certain document was
6          marked Defense Exhibit No. 1, for
7          identification, as of 2-6-24.)
8    BY MR. ZEID:
9       Q.   I'm going to go ahead and put it on my
10   screen right now, Mr. Johnson.  Just let me know if
11   you can see it, okay?
12         You should be able to see this exhibit
13   here.
14      A.   Yes, I can see it.
15      Q.   Perfect.  I'm just going to scroll
16   through it very slowly, just to make sure you can
17   see the whole document.  Let me know if I'm going
18   too fast, okay?
19      A.   Okay.  Yeah, you way too fast.
20      Q.   Okay.
21      A.   Could you come back to the other page?
22      Q.   Yeah, absolutely.  I'll go to Page 2,
23   and you just tell me when you're ready for me to
24   scroll down.

Page 41

1       A.   Okay.  I'm trying to stretch it out a
2    little bit.
3       Q.   I can also zoom in for you, Mr. Johnson.
4       A.   Okay.  You can scroll up some.  You can
5    scroll some more.  You can scroll some more.
6       Q.   All right.  This is going to be the
7    start of Page 3.
8       A.   Okay.
9       Q.   I don't want to make you read everything
10   line-by-line.  I just want to make sure you're
11   familiar with the document.  You're welcome to read
12   it all, but I just --
13      A.   Okay.  I'm familiar with the document
14   there.  I'm familiar with it.
15      Q.   I just wanted to make sure you could see
16   the whole thing.
17      A.   I read going on.  I'm familiar with
18   that.
19      Q.   Okay.  I'm going to scroll all the way
20   to the bottom so you can see the whole exhibit from
21   start to finish.  And then this is the last page.
22         So, Mr. Johnson, is this a true and
23   accurate copy of your complaint?
24      A.   Yes.

Page 42

1       Q.   Okay.  This document was filed on
2    July 18th, 2022?
3       A.   Yes.
4       Q.   Okay.  And then I'll show you the final
5    page again.
6          Do you see the signature here,
7    Mr. Johnson?
8       A.   Yes.
9       Q.   This is Page 12 of the exhibit, and it's
10   signed, Richard Dvorak.  Do you see that?
11      A.   Yes.
12      Q.   Okay.  And are you represented by
13   Richard Dvorak?
14      A.   Yes, sir.
15      Q.   Okay.  So did you help write this
16   document?
17      A.   No.
18      Q.   Were you involved in its preparation at
19   all or in sharing the allegations of the complaint?
20      MR. PRADOS:  Objection to form.
21         You can answer.
22   BY THE WITNESS:
23      A.   Yes, I -- we talked about the -- I made
24   the complaint -- making the complaint against the

Page 43

1    defendant.
2    BY MR. ZEID:
3       Q.   And as you sit here today, do you stand
4    by the allegations made in this complaint?
5       A.   Yes, I do.
6       Q.   Okay.  So everything is true?
7       A.   Yes.
8       Q.   Mr. Johnson, why were you being taken
9    for visitation on the day of July 19th, 2020?
10      A.   Because my tier was scheduled -- was all
11   day to go to the visits.  So they called people one
12   at a time thats name was on the visiting list to be
13   escorted to their visitor.
14      Q.   What time were you taken out of your
15   cell to go to visitation?
16      A.   It was sometime -- I don't know the
17   exact time, but it was in the afternoon.  Maybe --
18   between -- say between 3:00, 4:00 o'clock.  It was
19   something like that.  I can't give you an accurate
20   time.
21      Q.   That's okay.  That's a good estimate.
22         Could you tell me what you were doing
23   during that day prior to that afternoon time you
24   were taken for your visit?

13  (Pages 40 to 43)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 44

1      A.   Well, I was just sitting on my bunk
2  watching TV.
3      Q.   And did you --
4      A.   Go ahead.
5      Q.   I was going to say, did you have a mask
6  on when you were in your cell?
7      A.   No, I didn't have a mask on.  We just
8  only get a mask when we being taken out, you know.
9      Q.   Did you have a cane with you at that
10  point?
11      A.   Yes, I walked with a cane at all times.
12      Q.   Okay.  Now when you were taken to your
13  visit, did Officer Bacon come and grab you out of
14  your cell?
15      A.   No, he did not.
16      Q.   Okay.  So how did you get taken to your
17  visit at the start?
18      A.   My name was called by the tier
19  officer --
20      Q.   Okay.
21      A.   -- that it was time for my visit.  So I
22  proceeded to go to the door.  Once I got to the
23  door, he opened the door and let me out the door to
24  Officer Bacon.  And then he closed the door.

Page 45

1      Q.   Okay.  And at that point you were still
2  not handcuffed?
3      A.   I was not handcuffed yet.
4      Q.   Okay.  And you didn't have a mask on at
5  this point?
6      A.   Yes, I had a mask on then.
7      Q.   So they put a mask on you as you were
8  being taken out of the tier, and then --
9      A.   Exactly.
10      Q.   Okay.  And then once you got through the
11  door, Officer Bacon was there?
12      A.   Yes.  After I got out of the door, he
13  was standing there with the handcuffs.
14      Q.   Okay.  So he put these handcuffs on you
15  right after that?
16      A.   Not exactly right after that.  You know,
17  he was looking at me while I had my cane, you know,
18  and holding the handcuffs.  And while he was doing
19  that, I was explaining to him that I don't get
20  handcuffed because anybody that has a mobility, is
21  required to get a cane, and they don't get
22  handcuffed.  And I was also on a long-distance
23  wheelchair escort, and we were going long distance.
24        So once I got finished telling him that,

Page 46

1  and he just said that he didn't want to hear that,
2  he wasn't trying to hear it.  He was trying to see
3  how he gonna put the handcuffs on, you know.
4  Looking at my wrist and looking at the cane, you
5  know.  So then he just say forget it, and he just
6  put them on me real tight and told me to come on.
7      Q.   So he put the handcuffs on you at this
8  point, and were they in the front or behind you?
9      A.   They were in the front.  I wouldn't have
10  been able to walk at all if they were behind me
11  because I wouldn't be able to hold my cane.  But he
12  put them on me, and they were tight, and I'm
13  telling him that I'm not supposed to get
14  handcuffed, but he didn't care.  He just said, come
15  on, let's go.  And then we going down the elevator
16  and talking, and I'm telling him it's too tight.
17  And he turned around and tell me the handcuffs
18  ain't tight because he could come over and put his
19  whole damn hand in there, you know.  And I told him
20  that that was not true.  I mean, you could come and
21  do it.  And he said, just come on.
22      Q.   At this point, when you guys were having
23  this discussion, where in the walk to visitation
24  were you?

Page 47

1      A.   We had went through the iron doors, and
2  we was proceeding down the long halls trip.  It's a
3  very long haul through the County.  Lots of turns,
4  lots of halls.  We was proceeding down the hall
5  going towards, you know, Division 1 because that's
6  where visitation was, in Division 1.
7      Q.   Mr. Johnson, when he put the handcuffs
8  on you, were you holding your cane in front of you?
9      A.   My cane was next to me.  He told me,
10  give me your hands.  So I already explained to him
11  what's going on, that he didn't care.  Like he
12  said, you gonna get handcuffed today.  So he
13  handcuffed me and told me to come on.  So when he
14  put the handcuffs on me, then I grabbed my cane
15  because my cane is that I need it to balance, and I
16  was struggling going to where we need to go.
17      Q.   So were you holding your cane in your
18  right or your left hand when you were handcuffed?
19      A.   I was holding it in my right hand.
20      Q.   Okay.  And are you right-handed?
21      A.   Yes, I'm right-handed.
22      Q.   Okay.  I'm going to ask you some
23  questions about this cane that you had with you.
24        What was the body of the cane made out

14  (Pages 44 to 47)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 48

1  of?
2      A.  It was made out of wood.  It was issued
3  to me by the County.
4      Q.  Do you know what the handle was made out
5  of?
6      A.  It was made out of wood.
7      Q.  Okay.
8      A.  It was a wooden cane from top to bottom.
9      Q.  How tall is the cane?
10     A.  I'd say it was maybe about four feet.  I
11 guess it was to my waist.  A little bit under my
12 waist.  Three, four feet.  I have to say four feet.
13     Q.  Do you know how much the cane weighed?
14     A.  I guess maybe -- I'd say maybe a pound.
15 Maybe a pound or less.
16     Q.  Was it heavy for you to use?
17     A.  No, it wasn't heavy for me to use.
18     Q.  There was a rubber point at the end?
19     A.  Yes, it was.
20     Q.  Okay.  Could that rubber cap come off?
21     A.  Probably it could have, but I never
22 removed it.
23     Q.  Do you still have the cane today?
24     A.  Yes, I do.

Page 49

1      Q.  Okay.
2          MR. PRADOS:  Can we take a quick five-minute
3  break, please?
4          MR. ZEID:  Yeah, that's fine with me.
5          MR. PRADOS:  As moderator -- or host, can you
6  mute everybody?
7          MR. ZEID:  Yeah, I can mute everybody.  I'm
8  going to stop my screen sharing and go off the
9  record.
10         (WHEREUPON, a recess was had.)
11 BY MR. ZEID:
12     Q.  Mr. Johnson, you just finished
13 describing the cane a little bit that I was asking
14 you about before we went on our break.
15     A.  Uh-huh.
16     Q.  So after -- you know, after you got
17 cuffed and you're holding the cane in your right
18 hand and you guys walk down this long hallway past
19 these metallic doors, what happened?
20     A.  Well, I stumbled a couple of times, and
21 he just turned around, looked at me, and just kept
22 on walking.  So that's when I had to figure some
23 kind of way to walk and not fall.  So I used the
24 wall.  So I got the cane in my right hand, and the

Page 50

1  handcuffs are just putting pressure as I'm trying
2  to walk, and I'm up against the wall, and that's
3  how I'm walking down the hall.
4      Q.  And at the end of the hallway, is that
5  where the stairs are?
6      A.  Yes, that's where the stairs are.  In
7  Division 1, the stairs is to go outside into the
8  yard.
9      Q.  Okay.  So you were leaning against the
10 wall while you were handcuffed, kind of walking
11 along this long hallway until you got to the
12 stairs, correct?
13     A.  Yes.
14     Q.  What happened when you got to the
15 stairs?
16     A.  When I got to the stairs, I stopped, and
17 I turned to him.  I thought he was gonna take the
18 handcuffs off while I can hold on to the bannister
19 to walk up the stairs, but he didn't do that.  He
20 walked past me, and he walked up the stairs and
21 told me you got to get up here the best way you
22 can.  So I just looked at the stairs for a while,
23 and then I practically grabbed on to my cane, and I
24 clamped my hand in between the pole, and I pulled

Page 51

1  myself up, hurting, a lot of pressure, pulling
2  myself up these four stairs to get to the top of
3  the stairs.
4          Then I was on my way going out the door,
5  which I seen the female sergeant, and I called to
6  her.  She stopped.  I explained to her my condition
7  and the handcuffs, and before I could finish, she
8  said, it don't matter.  It's a rule.  And she kept
9  on walking.
10     Q.  Mr. Johnson, just going back to the
11 stairs for a moment here.  In your complaint you
12 wrote that you had to crawl up the stairs.
13     A.  Yes.
14     Q.  Did you literally mean on all fours?
15     A.  I was down -- I wasn't getting down on
16 my knees, but I was down where I had to pull myself
17 up.
18     Q.  Okay.  Did you pull yourself on the
19 stair in front of you?
20     A.  Yes.
21     Q.  Okay.  Was there a railing at all on the
22 stairs?
23     A.  That was the railing.
24     Q.  Okay.  So you were pulling yourself

15  (Pages 48 to 51)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

---

Page 52

1  along the railing?
2      A.  Yes.
3      Q.  Where was your cane in your hands when
4  this was happening?
5      A.  It was linked onto the cuffs.  I put it
6  around the cuffs, and I grabbed ahold to the --
7  because the stairs was short, and I grabbed ahold
8  to the post with the cane, and I pulled myself up.
9      Q.  Now when you say you put the cane on the
10  cuffs, did you mean, like, through the loops that
11  were around your wrist or over the --
12      A.  No.  On the chain.  There's a chain on
13  the cuffs.  So I hung my cane on the chain and
14  proceeded to struggle to get up the stairs.  So I
15  had to use two -- both of my hands getting up the
16  stairs because I grabbed the railing with both
17  hands because I had to because I'm handcuffed.  So
18  I'm still pulling --
19      MR. ZEID: I think Mr. Johnson may have cut
20  out while he was answering that question.  So we
21  might need to wait a little bit.  We can see if he
22  hops back in, but the time is 11:29.
23      MR. PRADOS: I see him as frozen.
24      MR. ZEID: I see him as frozen as well.

---

Page 53

1      Karen, we can go off the record for a
2  moment.
3      (WHEREUPON, a discussion was had off
4      the record.)
5      MR. ZEID: Mr. Johnson, the time is now 11:32.
6  We're back on the record.
7  BY MR. ZEID:
8      Q.  And I was just talking to you about
9  getting up the stairs, and you were describing how
10  you had done that.  And you had mentioned that you
11  hung your cane on your handcuffs over the chain,
12  and you were using the railing to kind of pull
13  yourself up the stairs.
14      A.  Pull myself up.  But at the same time,
15  it was still getting pressure because I had to grab
16  both railings -- the railing with both my hands to
17  get up the stairs.
18      MR. PRADOS: I would remind my client to let
19  counsel finish his question before you jump in with
20  an answer.  Okay?
21  BY MR. ZEID:
22      Q.  Mr. Johnson, was the railing on the
23  right or the left side of you when you were walking
24  up the stairs?

---

Page 54

1      A.  It was on the right side.
2      Q.  Okay.  So you didn't literally crawl on
3  all fours up the stairs?
4      A.  No, I never said I crawled.
5      Q.  Okay.
6      A.  I said I practically.
7      Q.  Got it.
8      A.  But I didn't crawl literally.  I
9  practically.  It was just that close to doing that.
10      Q.  Got it.  You were using the word "crawl"
11  to describe the exertion you had to use to pull
12  yourself up the railing?
13      A.  Yes.
14      Q.  Okay.  Did you ask Officer Bacon for
15  assistance?
16      A.  Well, I put my hand out thinking that
17  he's gonna take the handcuffs loose -- you know,
18  take them off while I go up the stairs.  But no,
19  you know.  He just told me you got to get up the
20  stairs the best way you can.  Same smirky smile on
21  his face.  Go up the stairs, you know, while he
22  watched me while I'm coming up the stairs, you
23  know, with the same look on his face.
24      Q.  Did you actually verbally ask him for

---

Page 55

1  help?
2      A.  No, I didn't verbally ask him for help,
3  but I figured going up the stairs, he would loosen
4  the -- take the handcuffs off and let me go up the
5  stairs because those are stairs that I had to climb
6  and the simple fact that I'm already on a cane.
7  But he didn't do that.  You know, he just gave me
8  the little remark and walked past me up to the
9  stairs telling me to get up the best way I can.
10  Just, come on.
11      Q.  Did anybody help you get up the stairs?
12      A.  No one helped me.  People walked past.
13  Officers walked past me up and down.  One officer
14  came, said, let me get past him before he make me
15  fall.  It was just ridiculous.  It didn't make any
16  sense to me.  It showed me that don't nobody care
17  there that I was struggling, and these were other
18  officers.
19      Q.  How many other officers did you see when
20  you were going up the stairs?
21      A.  Two.  Two walked past me.  They walked
22  down, and said, well, let me hurry up and get
23  around him, get past so he won't make me fall.
24  Because it was not wide.  It was just small stairs

---

16  (Pages 52 to 55)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 56

1   going up.
2        Q.   Do you know the names of either of the
3   two officers you --
4        A.   No.  I didn't look at their names
5   because they just walked on past me, making that
6   remark.  You know, they just wanted to get past,
7   basically not even asking, well, can I assist you,
8   or asking the Officer Bacon, hey, why you won't
9   take the handcuffs off him so he can get up the
10  stairs?  Don't you see he's struggling?  Nobody
11  said nothing.
12       Q.   Did you say anything to either of the
13  officers?
14       A.   No, I didn't say anything to this
15  officer.  I was trying to get up the stairs.
16       Q.   Okay.  So you didn't say anything to
17  Bacon or either of these two officers, but then you
18  got to the top of the stairs and there was another
19  officer, is that correct?
20       A.   When I walked -- I got outside to
21  proceed to the yard, there was a white shirt there,
22  a sergeant, and I tried to get her -- getting her
23  attention and try and explain it to her, and she
24  said she don't care.  It's a rule.  That's what she

Page 57

1   said, it's a rule, and she kept going.  She didn't
2   explain.  She just said the two words, it's a rule,
3   and she kept going.
4        Q.   Do you know how tall the stairs were?
5        A.   They were -- they wasn't tall stairs.
6   They was kind of medium stairs.
7        Q.   Do you know how many steps?
8        A.   The steps -- there was three stairs, and
9   then the top stair.
10       Q.   Could you repeat that?
11       A.   There were three stairs -- there was
12  three stairs, then the fourth stair, that's the
13  landing, the top stair.
14       Q.   Okay.  So I'm not going to ask you to
15  estimate, but the three stairs and then the fourth
16  stair, that's kind of where the incident happened,
17  right?
18       A.   Where what happened?
19       Q.   This exchange on the stairs where you
20  had to use the railing, that's the stairs and
21  the -- the four stairs?
22       A.   Yes.
23       Q.   After you got to the top of the stairs,
24  you talked to the white shirt, and she spoke back

Page 58

1   to you, is that correct?
2        A.   Yes.
3        Q.   What happened after that?
4        A.   I would proceed to my visit.  Officer
5   Bacon said, go to your visit.
6        Q.   Okay.  And who was there to visit you
7   that day?
8        A.   My wife and my two granddaughters.
9        Q.   Now I know you have a lot of
10  grandchildren.  Which two granddaughters were
11  there?
12       A.   It was Davalia Davis and Jada Johnson.
13       Q.   Okay.  And what did you guys talk about?
14       A.   Well, I was trying to talk about how
15  they were doing and how they were feeling, but, you
16  know, my wife, she was concerned about the cuffs,
17  how I was cuffed, how my hand was swollen and
18  turned red, you know.  And she was just saying was
19  that necessary and all that, you know.  And I was
20  just trying to just change the subject, and
21  let's -- tell me how you guys are doing.  What's
22  going on?  You know, and we exchanged a little
23  conversation, but she was really upset.  So we
24  couldn't -- me and her wasn't really communicating

Page 59

1   or talking about anything else because she was mad
2   about the situation with my hand, my wrist, and
3   everything.  And she just was upset about it.
4   That's all.  You know, and I was just trying to get
5   through the visit.
6        Q.   So you didn't even want to talk about
7   the cuff situation, but your wife was really upset
8   by what she could see?
9        A.   Exactly.
10       Q.   Did you tell her anything about the
11  cuffs, or did she just observe, you know, that you
12  were in pain?
13       A.   That I was in pain.  And I just told her
14  that I had to walk in cuffs to the stair, and she
15  just replied, why?  You was never cuffed before.
16  Which is true, I haven't.  And this was the first
17  time.  And that's what got me.  And that's what she
18  was upset about.
19       Q.   Were you handcuffed the entire time
20  during this visit?
21       A.   The entire time.
22       Q.   What happened after the visit?  You
23  know, did you tell the officers you were done?  Did
24  they come over and pick you up, or what happened?

17  (Pages 56 to 59)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 60

1       A.   No, they told me that the visit was
2   over.  They escorted my family out, and I had to
3   sit and wait until the officer that escorted come
4   and pick me up.  So they had left.  They escorted
5   them out, but I still had to stay there at the
6   table until Officer Bacon came and picked me up.
7       Q.   How long do you think that was?
8       A.   I'd say maybe about a good five to
9   seven minutes.
10      Q.   And did he say anything to the officers
11  at this time about the handcuffs?
12      A.   No.  Who did?  Did he?
13      Q.   Yes.
14      A.   I already told him about the handcuffs,
15  and he already let me know that he wasn't gonna do
16  anything to the handcuffs because there wasn't
17  nothing wrong with them.  So when I seen him, he
18  came out the tier, he waved for me to come, and I
19  walked over there to him to proceed to go back
20  down.
21      Q.   And did you have a mask on during your
22  visit?
23      A.   Yes, I did.
24      Q.   Okay.  And did you have a mask on after

Page 61

1   that visit as well?
2       A.   After the visit?  What you saying?
3   Going back to my tier?
4       Q.   Yes.  On your way back.
5       A.   On my way back, yes.  Everybody had to
6   be masked once you leave your tier.  You have to be
7   masked until you get back to your tier.  Then you
8   can take your mask off.  But going anywhere else in
9   the facility, you had to be masked up.
10      Q.   Now after your visit, there's an
11  elevator that comes into question.
12           What happens before you get to the
13  elevator?
14      A.   On my way back?
15      Q.   Yeah.  What does it look like?
16      A.   Well, I mean, it doesn't look like
17  anything.  I'm upset.  He doesn't care.  You know,
18  he just said, I'm glad it's over, you know.  You
19  almost there.  We got in the elevator, we rode the
20  elevator to the third floor, got off.  He escorted
21  me --
22      MR. ZEID:  I think Mr. Johnson may have cut
23  out again or something.
24      MR. PRADOS:  Can we go off the record for a

Page 62

1   quick second so I can try and see --
2       MR. ZEID:  Absolutely.  Thanks, Adrian.
3           (WHEREUPON, a discussion was had off
4            the record.)
5   BY MR. ZEID:
6       Q.   Mr. Johnson, we're back on the record.
7   You were just talking about what
8   happened after your visit, and you were describing
9   the elevator.  I just want to back up.
10           So you finished your visit.  You're
11  waiting for Officer Bacon to come.  Officer Bacon,
12  comes, and where do you walk prior to getting in
13  the elevator doors?
14      A.   We have to walk the long tier back again
15  to the medical unit, which is Division 8.  You
16  know, so I had to go back through the same thing
17  with him, walking and I'm sweating.  But then, like
18  I said, the mask had got real wet, and I pulled it
19  down, and I asked Officer Bacon can I get another
20  mask because I can't breathe barely out of this
21  mask because I'm an asthmatic.  And he said, no,
22  just put the mask on and just come on.  Let's go.
23  And doing the same thing.  Taking a few steps,
24  turning around, kept looking at me, smiling with

Page 63

1   the same old smirk on his face.  You know, I mean,
2   that's the smile that really bothered me.  And we
3   went through it all the way.
4           We get to the elevators, and we go in
5   the elevator.  He said, I'm glad this is over.
6   Walked me to my tier, and I'm holding my hands up
7   for him to take the cuffs off.  Still rude.  Just
8   the same old smirk smile on his face, you know,
9   like he did something.  I guess he did.  You know,
10  he abused his authority.  He unhandcuffed me, and
11  then just walked away and didn't say nothing else
12  before he walked away.
13           The tier officer came out and got me.
14  Like I said, I went straight -- pulled my mask
15  down, gave myself two pumps because I was having a
16  small attack at the time then, and I walked to the
17  bathroom and proceed to hold my hand under the cold
18  water.  You know, after that, it kind of stopped
19  stinging a little bit, you know.  I know it's
20  swollen real bad.
21           So I went out there, and I went to the
22  officer, Officer Orr, and I expressed to him, and
23  he told me, you look like something is wrong.  I
24  can see it.  And I asked him could I get the

                        18  (Pages 60 to 63)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 64

1  supervisor. He called the supervisor, and the
2  supervisor came. I showed him my wrist and
3  everything, my hand, you know. And she said oh, my
4  God. I said this is the reason of one of your
5  officers. And she asked me what was his name, and
6  I told her, Officer Bacon. And she told me, don't
7  worry about it. She's gonna find him, locate him,
8  and make sure he's disciplined. You know, she had
9  the nurse to give me two Tylenol because the nurse
10  came then. And I went back to my tier, and I laid
11  down. I was very upset and disappointed of the
12  whole situation.
13      Q.  Now I want to kind of back you up a
14  little bit, Mr. Johnson, to where Officer Bacon is
15  escorting you and you've got this mask on, and
16  you're taking it off to tell him that, you know,
17  you're having a hard time breathing.
18      Did he instruct you to put your mask
19  back on?
20      A.  Yes, he told me to put my mask back on.
21  He said, just put your mask back on and come on.
22      Q.  And were you complying with that order?
23      A.  And I complied with it. And I told him
24  it's hard to breathe, that I'm an asthmatic.

Page 65

1      Q.  Did he say anything --
2      A.  He didn't say anything except just the
3  "come on" with the smile on his face, you know,
4  like almost a joke. Or maybe he caught a wild
5  animal or something.
6      Q.  And this is the point where you told him
7  you were asthmatic?
8      A.  Yes.
9      Q.  And this is where you got to the
10  elevator with him?
11      A.  This is before I got into the elevator
12  with him. This is while I was walking, and I
13  pulled my mask down, and I asked him, can I get
14  another mask.
15      Q.  Was this the first time in this exchange
16  when you got out of your cell to visitation to now
17  that you had trouble breathing with your mask on?
18      A.  No, I never had trouble breathing with
19  the mask on.
20      Q.  Until now?
21      A.  Until now.
22      Q.  So then you got in the elevator. Was it
23  just you and Officer Bacon?
24      A.  Yes.

Page 66

1      Q.  And when you got into the elevator, you
2  were holding your cane in your right hand still?
3      A.  Yes. I came in the elevator. I went to
4  the front, and I was up against the wall with the
5  cane in my hand. We rolled up to the third floor,
6  and we got off, and I'm struggling to get off the
7  elevator, and that was a good thing then my tier
8  was -- when we get off the elevator, and there was a
9  left, and my tier is right there.
10      So I struggled and slowly walked up to
11  the tier. Once I got there, I held my hand up
12  waiting on him to take the cuffs off, and, again,
13  he just looked at me first with the little smirk on
14  his face, then he unhandcuffed me and he walks
15  away.
16      Q.  Did you have an asthma attack while you
17  were handcuffed?
18      A.  Yes. By the time we had got to my tier,
19  I started having an asthma attack because I
20  couldn't breathe out of the mask barely. The mask
21  was soaking wet.
22      Q.  Did you tell Officer Bacon you were
23  having an asthma attack?
24      A.  I told him that I have asthma, that I

Page 67

1  need to take it off. I'm gonna have an asthma
2  attack. By the time I got to the tier, I was
3  having an asthma attack.
4      Q.  Did you tell --
5      A.  And he knew it. He knew. He seen my
6  look in my face. He seen the sweat pouring down my
7  face, dripping in my mask wet. He seen all of
8  this, and still he stood there looking at me with
9  that smirk on his face, just laughing at me like he
10  really did something that was really on purpose
11  when it wasn't. And he unhandcuffs me, and he
12  walks away.
13      Q.  Did you tell him, I'm having an asthma
14  attack, or was it just obvious based on how you
15  looked?
16      A.  It was just obvious based on how I
17  looked. I'm breathing, gasping for air, sweat
18  dripping down my face. So he knew something was
19  wrong with me because I had already told him on the
20  way that I can barely breathe. I need another mask
21  or I'll have an asthma attack.
22      Q.  Did you ask Officer Bacon if you could
23  use your inhaler?
24      A.  Huh? No, I didn't ask Officer Bacon

19  (Pages 64 to 67)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 68

1  could I use my inhaler because right there when I
2  told him he could I get another mask, I wasn't having
3  an asthma attack then.  As I put it on and as we
4  got almost to the tier, I was having an asthma
5  attack then, going to the elevator.
6       Q.   And at this point, you were still
7  handcuffed and Officer Bacon was there?
8       A.   Smirking, looking at me on the elevator,
9  smiling.  And at that point, he knew something was
10  wrong with me because my breathing method had
11  changed.  But that didn't matter to him.
12       Q.   But you didn't actually say, I'm having
13  an asthma attack, or ask to --
14       A.   I didn't tell him that I was actually
15  having an asthma attack, but he knew what was the
16  outcome of him not giving me a mask and the mask
17  that I had was soaking wet.  He knew the outcome of
18  it because I told him clearly that I'm gonna have
19  an asthma attack.  I need another mask.  You know,
20  I can barely breathe out of that.  And we walking
21  that same -- that long distance in 90-degree
22  weather, so sweat was running off my face.  The
23  mask was wet.  My breathing method had changed
24  because now I'm having an asthma attack.

Page 69

1       Q.   Now where on your body do you keep your
2  inhaler?
3       A.   Huh?
4       MR. PRADOS:  I couldn't hear your question.
5       MR. ZEID:  I was just asking Mr. Johnson where
6  on his body he kept his inhaler on July 19th.
7  BY THE WITNESS:
8       A.   I had it in my back pocket.
9  BY MR. ZEID:
10       Q.   Have you heard of inmates at Cook County
11  Jail taking inhalers apart?
12       A.   Say that again.
13       Q.   I said have you heard of inmates at Cook
14  County Jail taking inhalers apart?
15       A.   Yes, I've seen that happen.  I've seen a
16  whole lot of things happen in the Cook County Jail,
17  and that was mainly one of them.  You know, as well
18  as a lot of authority abuse going on in the
19  facility.
20       Q.   Have you seen inmates use inhaler parts
21  as weapons before?
22       A.   Not -- yeah, I've seen it.  I've seen it
23  taken apart.  But I never needed to because I
24  didn't have no reason to.  I needed mine for my

Page 70

1  condition.
2       Q.   So you're having this asthma attack.
3  You're almost to your tier, and Officer Bacon
4  removes your handcuffs at this point?
5       A.   Once I got to my tier, yes.  I raised
6  them up for him to take them off, but I guess a few
7  seconds he's still giving me that look with the
8  smirk smile on his face for, I guess, maybe a
9  second or two.  Then he took the handcuffs off.
10       Q.   And during this interaction, you are
11  suffering from an asthma attack?
12       A.   I'm suffering from an asthma attack.  He
13  seen sweat just pouring down my face as well as off
14  the mask.
15       Q.   And --
16       A.   He didn't care.
17       Q.   Did he let you use your inhaler once he
18  took your handcuffs off?
19       A.   Once he took my handcuffs off, I grabbed
20  it myself and took it out of my back pocket, and I
21  squirted it because I needed it.  I wasn't going to
22  ask him for permission.  I figured I didn't have to
23  do that, especially the way he had treated me.  He
24  showed me that he didn't care right there.

Page 71

1       Q.   How did your wrists feel after the
2  handcuffs came off?
3       A.   They was throbbing, aching with pain,
4  and they were swollen.  Because I took the pump,
5  the inhaler, and I'm looking at my hands.  And then
6  I just went straight to the washroom and started
7  holding them under the cold water because I was
8  getting this burning feeling of pain all through my
9  wrists, all up my fingers and my hand, and the
10  tingling and the numbness right today.  As the
11  surgeon said at Stroger, you might not get all the
12  feeling back in the back of your hand, which he's
13  right because I don't.
14       Q.   Were you recuffed at all?
15       A.   No.
16       Q.   Okay.  So why did you feel the handcuffs
17  were excessively tight?
18       A.   Because of the pressure I was feeling on
19  my arm, up against the bone of my wrist, around the
20  edge of my hand -- on both hands.  And then on top
21  of that, I had to walk with my cane with both hands
22  on top of each other.  The left hand on top of it
23  putting pressure on my hand with the other cuff
24  while I'm trying to walk with the cane.

20  (Pages 68 to 71)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 72

1    Q.  All right.  Well, I appreciate you
2  answering those questions for me.  I'm going to
3  kind of shift directions now.  I'm going to ask you
4  a little bit about the grievance process.  Okay,
5  Mr. Johnson?
6    A.  Okay.
7    Q.  Do you know what an inmate handbook is?
8    A.  Yes.  I've seen -- you get one.  I
9  didn't get one, but I seen one.
10    Q.  What is an inmate handbook?
11    A.  It's a handbook that has all the rules
12  in it.
13    Q.  And did you get the handbook ever?
14    A.  I didn't never get the handbook.  I went
15  in there -- every time I got my bunk, my roll -- as
16  you call it, my roll with the blanket and the
17  sheets.  I never got a handbook.  But I was given a
18  handbook and I read -- I kept it and I read it.
19    Q.  So you got a handbook from another
20  inmate?
21    A.  Yes.
22    Q.  Okay.  But not from Cook County?  That's
23  what you were saying?
24    A.  Not from Cook County, yes.

Page 73

1    Q.  Okay.  Do you know what a grievance form
2  at Cook County Jail is?
3    A.  It's for if you -- it's for any
4  incidents that happen to you, or you not being
5  treated right by some officer or anybody within the
6  tier, that you can file a grievance.
7    Q.  Do you understand the grievance process
8  at Cook County Jail?
9    A.  Yes.  You fill it out.  You give it to
10  the social worker, and you wait until a response.
11  Once you get the response and you read the
12  response, you can accept it or you can appeal it
13  and write down the reason why you disagreeing with
14  their answer.
15    Q.  Has anyone ever withheld grievance forms
16  from you?
17    A.  Withheld them?  I wouldn't say withheld.
18  It's been a time when some things went down and --
19  request for the grievances, and they said there
20  wasn't any grievances.  Or we not able to give you
21  any grievances at this time, you know, which I was
22  told a grievance supposed to be on hand at all
23  times.
24    Q.  What about with health service request

Page 74

1  forms, did anyone try to withhold those from you?
2    A.  No.  There was requests for them in the
3  slot constantly.
4    Q.  Did anyone ever try to stop you from
5  filing a grievance or a health service request
6  form?
7    A.  No.
8    Q.  Did anybody ever threaten you to prevent
9  you from filing a health grievance request form?
10    A.  No.
11    Q.  Okay.  Did you file a grievance form
12  regarding the incident on July 19th, 2020?
13    A.  Yes, I did.
14    Q.  And did you receive a response to that
15  grievance?
16    A.  Yes, I did.
17    Q.  Do you remember if you appealed it?
18    A.  Yes, I did appeal it.
19  MR. ZEID:  Okay.  I'm going to show you what
20  will be marked as Exhibit 2.  It's Grievance
21  2020 08918, and it's the July 19, 2020 grievance.
22       (WHEREUPON, a certain document was
23       marked Defense Exhibit No. 2, for
24       identification, as of 2-6-24.)

Page 75

1  BY MR. ZEID:
2    Q.  Let me know if you can see my screen
3  here in a second, okay, Mr. Johnson?
4       You should be seeing Exhibit 2.
5    A.  Okay.  I'm seeing.  It's here.
6    Q.  Can you read the control number on the
7  top here?  I have my mouse by it.
8    A.  2020 00918.  I think that's it.  I need
9  glasses.
10    Q.  If I were to tell you that instead of a
11  second 0, it was an 8 on the control number, would
12  you take my word for it?
13    A.  Yes, I would take your word for it
14  because I'm looking at it.  I can see it a little
15  bit because I need glasses anyway, you know.  But I
16  can see now that this is looking like an 8 instead
17  of another 0 because I'm trying to adjust my eyes.
18    Q.  Well, if you need me to zoom in or zoom
19  out at any point, just let me know, okay?
20    A.  Okay.  I don't need to zoom out right
21  now.
22    Q.  I'm just going to scroll through the
23  whole document just so you can see the whole
24  exhibit real quickly, and then I'll ask you some

21  (Pages 72 to 75)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 76

1    more questions about it.  Okay?
2        A.  Okay.
3        Q.  I'm going to scroll to the end of
4    Page 1.
5        A.  Okay.  That's what I wrote.
6        Q.  This will be Page 2.
7        A.  Uh-huh.
8        Q.  And then Page 3.
9        A.  Okay.  That I wrote was my response to
10   what they -- the answer that they gave me.
11       Q.  Okay.  So you recognize this form then?
12       A.  Yes, I do.
13       Q.  Okay.  And this was your handwriting?
14       A.  Yes, it is.
15       Q.  Okay.  Mr. Johnson, do you mind reading
16   into the record what is written here in the
17   narrative section of your grievance?
18       A.  On what section?
19       Q.  This section right here, the narrative
20   section.
21       A.  I see you moving something around.
22       Q.  I'll start with where it begins.
23       A.  Okay.  Where the date -- where it
24   happened?  Because I can't see it.  The date where

Page 77

1    you were to put down what happened, the date of the
2    incident, and you have to write down the tier and,
3    I think, the reason -- I mean, the location and the
4    officer's name.
5        Q.  Okay.  And would you mind reading what
6    you said happened in this grievance?
7        A.  Okay.  "On Sunday visiting day, I was
8    call for my visit.  I went out the door.  Waiting
9    was Officer Bacon.  He see that I was on a cane.  I
10   told him, I don't get handcuffed because I'm on the
11   cane -- because of the cane.  He said that I would
12   be cuffed anyway -- I would be cuffed up -- I would
13   be cuffed up today.  I had a hard time walking, and
14   the officer -- and the cuffs was digging down in my
15   right hand, and I was suffering there and" -- let's
16   see.  "And on the way back, I told him that -- on
17   the way back, I told him that I had suffered --
18   that the cuffs hurting and I was in a lot of pain.
19   He stopped, looked, and turned around and kept
20   walking.  I was sweating so bad the mask was wet.
21   I ask him" -- I can't see that.  My eyes are
22   getting blurry now.  "I ask can I pull it down or
23   get another mask -- another mask."  Wow, I'm having
24   a hard time reading this now.

Page 78

1        Q.  That's okay.
2        A.  Well, basically, what I was saying here
3    about the mask, that it was so wet, you know, that
4    I couldn't breathe.
5        Q.  I can try to -- Mr. Johnson, I can try
6    to read it, and you can tell me if it's accurate at
7    the end.
8        A.  Okay.  There at the bottom.
9        Q.  I'll just start with, "He stop, looked,
10   and turned around and keep walking.  I was sweating
11   so bad the mask was wet.  I ask can I pull it down
12   or get another one.  He said no.  I was short of
13   breath."
14           Does that sound right?
15       A.  Yes.
16       Q.  Okay.  And did you review this grievance
17   before submitting it?
18       A.  Yes, I did.
19       Q.  Okay.  Is that your signature down there
20   under Inmate's Signature?
21       A.  Yes, it is.
22       Q.  I'm just going to scroll to the next
23   page which has the response here, and I'm just
24   going to read it into the record, okay?

Page 79

1        A.  Okay.
2        Q.  "Staff has been following safety and
3    security procedures.
4           Is that what it says there?
5        A.  Yes.  That's the response I got.
6        Q.  Okay.  And did you appeal this
7    grievance?
8        A.  Yes, I did.
9        Q.  Okay.  Did you file that appeal on
10   August 8th, 2020?
11       A.  Yes.
12       Q.  Why did you appeal this grievance?
13       A.  Because I felt that the response wasn't
14   fair.  I mean, it didn't even explain anything.  It
15   just stated that the cuffs is for safety.  That's
16   all it said.  The cuffs is for safety.  But it
17   didn't go in detail to find out, you know, my
18   condition and the point that how did you consider
19   me a threat?  I wasn't a threat.  I was barely
20   getting around with the cane.  So how could you
21   just say cuffs is for safety?  I mean, the
22   response -- I mean, it didn't even make any sense
23   to me towards me explaining what happened to me and
24   my condition because, I mean, everything is on file

22  (Pages 76 to 79)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 80

1    there. That's one thing about them. Everything is
2    noted.
3         So I wrote that grievance, and that's
4    the only response I can get meaning that you wasn't
5    really concerned of my condition and how I was
6    treated as I was going to my visit.
7    **Q.  Now, Mr. Johnson, under Inmate's Request**
8    **for an Appeal, I'm just going to read to you what**
9    **you wrote, and you can tell me if that's your**
10   **appeal or not.  Okay?**
11   A.  Okay.
12   **Q.  Okay.  You said, "I never been**
13   **handcuffed since I've been on this cane until**
14   **Officer Bacon.  I could barely walk on the cane.  I**
15   **sure was not a threat for safety.  This was a**
16   **controlling all it" -- I think that's the word**
17   **that's written there.**
18   A.  Huh?
19   **Q.  "My injury to my hand and wrist is**
20   **proof.  Officer Orr and something Prunell and**
21   **Superintendant Contic," I believe.**
22   A.  It was Hayes.  I was writing that
23   Sergeant Parcell and Superintendent Hayes witnessed
24   my injury, you know.

Page 81

1    **Q.  And was this appeal accepted?**
2    A.  It was accepted, but I never got a
3    response back after that.
4    **Q.  Do you see where it says,**
5    **"Administrator/Designee's Acceptance of Inmate's**
6    **Appeal"?**
7    A.  You say at the bottom?
8    **Q.  Do you see where my mouse is?**
9    A.  Yeah, I see where your mouse is.
10   **Q.  You see it says,**
11   **"Administrator/Designee's Acceptance of Inmate's**
12   **Appeal" here?**
13   A.  Yes.
14   **Q.  And right beside that, there's a box for**
15   **yes and a box for no, and the one for no has a**
16   **check next to it, right?**
17   A.  Yes.
18   **Q.  In response to your appeal, Inmate**
19   **Services Director wrote, "All detainees are**
20   **restrained during movement.  Original response**
21   **stands."  Is that correct?**
22   A.  Yes.
23   **Q.  I'm going to stop sharing this exhibit**
24   **now.**

Page 82

1         **Now earlier in the deposition,**
2    **Mr. Johnson, you had described your handcuffs.**
3    **They were out in front of you.**
4         **Were you shackled at all with your**
5    **ankles or anything?**
6    A.  No, I wasn't.
7    **Q.  Okay.  So it was just restraints on your**
8    **wrists?  That was it?**
9    A.  Yes.
10   **Q.  Okay.  I'm going to ask you some**
11   **questions about your injury.**
12        **Mr. Johnson, do you have any reason to**
13   **dispute the accuracy of your medical records?**
14   A.  What do you mean?
15   **Q.  Do you have any reason to think your**
16   **medical records aren't accurate?**
17   A.  No, I don't have any reason to think
18   that they aren't accurate.
19   **Q.  Okay.  And what injury are you claiming**
20   **occurred as a result of the incident on July 19th?**
21   A.  The injury to my wrist and my hand and
22   my left hand because now my left hand is starting
23   to bother me and my fingers are locking, you know.
24   So it seems like it's escalating to the other hand

Page 83

1    now, and I'm seeing a specialist for that.
2    **Q.  So do you still suffer from those**
3    **injuries today?**
4    A.  Yes, I am.  I'm still having pain.  The
5    swelling is still on my wrist, and I just -- I just
6    went to therapy.  So I'm just waiting until my next
7    doctor's appointment for them to run some tests
8    because they have their own surgeon.
9    **Q.  Okay.**
10   A.  And, of course, my left -- sorry.  I
11   didn't mean to interrupt.
12   **Q.  No, you're fine, Mr. Johnson.  I was**
13   **just going to ask, so you said your left hand**
14   **started hurting recently?**
15   A.  Yes, it started hurting recently.  Two
16   months ago, I got an injection to my hand but it
17   wasn't -- it was in, I think, June -- it was in
18   April of last year.  And I had to stop going to
19   therapy because I had -- I was scheduled for my
20   back -- back surgery.  You know, so I'm dealing
21   with a double -- triple thing now.  Due to neglect
22   that I was getting there, it damaged my L4 disc in
23   my back.  It was bone to bone, and I was constantly
24   falling, and I had to have a transplant -- a double

23  (Pages 80 to 83)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 84

1   disc transplant. So I wasn't able to go to therapy
2   then because I was laid up with 32 staples in my
3   back. Again, after I got out and started taking
4   therapy, I proceeded to go back to see my doctor
5   because my hands was -- is still worse. I can't
6   pick nothing up up to five pounds without getting
7   tremendous pain, and I'm just having trouble
8   walking around. And now I'm having trouble with my
9   cane to the point that when I go out, I have to use
10  a walker.
11      Q.   Now this injection in your wrist that
12  you mentioned about a year ago that you got, was
13  that in your right hand or your left hand?
14      A.   That was in my left hand because then my
15  left hand was starting to bother me, which is now
16  starting to rebother me. It's swollen. I'm
17  getting --
18      MR. PRADOS: Can we take -- maybe we can take
19  advantage of this -- can we go off the record for a
20  quick moment?
21      MR. ZEID: We can go off the record.
22      MR. PRADOS: He's back.
23  BY MR. ZEID:
24      Q.   Mr. Johnson, sorry. We kind of lost you

Page 85

1   there.
2       MR. PRADOS: Can we take a 20-minute break at
3   12:30?
4       MR. ZEID: Twenty is a lot, but if you need
5   it, absolutely. Of course, I'd prefer to just keep
6   things rolling.
7       MR. PRADOS: Let's do a ten-minute break then
8   at 12:30.
9       MR. ZEID: We'll keep going until 12:30 then.
10  BY MR. ZEID:
11      Q.   Mr. Johnson, you were just describing
12  the injury a little bit to me, and you were talking
13  about how you had this injection in your left hand
14  a year ago, and it was rebothering you now.
15          Had your wrists bothered you at all
16  prior to July 19th, 2020?
17      A.   Yes, somewhat. I had an injection in my
18  right hand because it was bothering me. They said
19  that was a slight carpal tunnel problem, and I got
20  an injection. And I got a brace, you know. But I
21  didn't -- it didn't bother me. It wasn't bothering
22  me. It had stopped bothering me. But when I got
23  locked up, I had the brace on my hand, and the
24  doctor when I got there told me that I couldn't

Page 86

1   come in with that brace, you know. And so I just
2   said, well, I didn't need it. I had a little
3   sensation problem, but it's gone. So I wasn't
4   treated there at all for my hand or my wrist while
5   I was incarcerated. My hand was --
6       Q.   So prior to the incident in question,
7   prior to even going to jail, you had some issues
8   with your right wrist. You had gotten an
9   injection. And then around the time when you were
10  going to jail, you were recovering from that
11  injection. You had a splint on your wrist --
12      A.   Yes.
13      Q.   -- and when you got to jail, they told
14  you you can't have that splint anymore, and it was
15  just never treated after that?
16      A.   It was just -- I didn't -- my hand
17  wasn't bothering me anymore. So I didn't push the
18  issue when she took the sling. I didn't push the
19  issue. Everything was fine. I was going about my
20  day. I wasn't having any pain. I was lifting. I
21  was able to squeeze and pick things up. So it
22  didn't matter. You know, so I wasn't treated at
23  all at that time. You know, I was more concerned
24  about my back, you know.

Page 87

1       Q.   Mr. Johnson, you previously mentioned
2   that you got diagnosed with carpal tunnel following
3   your time in jail. That was diagnosed by a medical
4   professional?
5       A.   No, not while I was in the County.
6       Q.   No, after the jail.
7       A.   Yes, after the jail. Not inside because
8   I was okay. My hand wasn't bothering me at all,
9   you know. The splint was tooken away when I got
10  in, and I left it alone because I didn't have no
11  reason to because my hand wasn't bothering me.
12      Q.   Did the medical professional that
13  diagnosed you with carpal tunnel after you spent
14  time in jail say that those injuries were a result
15  of this incident?
16      A.   They said yes.
17      Q.   They did? They told you that because
18  your handcuffs were on too tight, it caused carpal
19  tunnel?
20      A.   It caused pressure to reaggravated it.
21  I guess it reaggravated the injury that I had. You
22  know, it just made it worse. The handcuffs brought
23  it back, made it worse, caused a lot of swelling
24  and pain.

24  (Pages 84 to 87)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 88

1    Q.   Did they say --
2    A.   Where I had to have surgery.
3    Q.   I didn't mean to interrupt you there. I
4  was just going to say so it sounds like the doctors
5  said that the handcuffing incident reaggravated
6  this already existing injury, is that correct?
7    A.   Yes.
8    Q.   So you already had issues with your
9  wrist before jail?
10   A.   Yeah, before jail, and it passed.
11   Q.   Okay.  Did you see a medical
12 professional the day of the incident?
13   A.   Of the incident, no, I didn't see a
14 medical professional.  I had to wait and put in a
15 slip.
16   Q.   I'm sorry.  So you did put in a health
17 service slip?
18   A.   Yes.
19   Q.   And I think earlier you said you saw a
20 nurse that day?
21   A.   I saw the nurse that day.  She gave me
22 some Tylenol.
23   Q.   And then you put in a health service
24 slip to get further treatment?

Page 89

1    A.   Exactly.
2    Q.   Do you remember the name of the nurse
3  you spoke with that day?
4    A.   I don't remember her name.
5    Q.   Do you know what she looked like at all?
6    A.   She was tall, white, with glasses.  She
7  was real nice.
8    Q.   But that treatment that you got, that
9  just occurred on the tier, and then you put in a
10 Health Service Request form and that was it?
11   A.   That was it.
12   Q.   Okay.  What about after you put in a
13 Health Service Request form?  Did a doctor speak to
14 you?
15   A.   No.  Couldn't nobody speak with you, no
16 doctor.  I told the nurse about it, and showed the
17 nurse, and she said, well, did you put in a medical
18 slip?  I said, yes, I did.  And she said, okay.
19 You have to wait until you be called by the doctor.
20   Q.   So you never heard back about your
21 medical slip?
22   A.   I heard back from it, I'd say, maybe a
23 week, two weeks later.  Something like that.  They
24 called me to see the doctor.  Then once I went to

Page 90

1  see the doctor, I showed them what's going on.  He
2  witnessed the pain and the swelling that was going
3  on.
4    Q.   How did you fill out this Health Service
5  Request form?
6    A.   I mean, well, you put in your name, your
7  ID number, and you request to see the doctor, and
8  you describe what's going on.
9    Q.   Where did you submit it?
10   A.   You submit it into the box.
11   Q.   Okay.
12   A.   The box, the medical box.
13   THE COURT REPORTER:  I'm sorry.  You're
14 talking over each other, and then I can't hear any
15 of you.
16 BY MR. ZEID:
17   Q.   Mr. Johnson, would you just answer?
18   A.   Yes.
19   MR. ZEID:  All right.  I am going to introduce
20 what will be the medical records, and it's
21 Bates-stamped DP Johnson 2481.  I'll pull these up.
22        (WHEREUPON, a certain document was
23        marked Defense Exhibit No. 3, for
24        identification, as of 2-6-24.)

Page 91

1  BY MR. ZEID:
2    Q.   Just let me know if you can see the
3  screen, okay, Mr. Johnson?
4    A.   Okay.  Yes, I see the screen.
5    Q.   I'm just going to scroll through the
6  whole document first.  It's about nine pages.  And
7  then I'll ask you questions about it.  I just want
8  to make sure you review the whole thing.
9    A.   That's the document from the medical
10 physician, right?
11   Q.   Exactly.
12   A.   Okay.
13   MR. ZEID:  And I'll ask you questions about
14 it, but I think now is probably a good time to take
15 that break Adrian mentioned just because I don't
16 want to get into it before we're about to leave.
17        So ten minutes, does that sound good to
18 everybody?
19   MR. PRADOS:  Thank you so much.  And if you
20 could mute everybody.
21   MR. ZEID:  I actually am unable to mute
22 anyone.  But Mr. Johnson and I talked about how to
23 do it, so he should be able to do it.
24        We'll be back at 12:40.

25  (Pages 88 to 91)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 92

1           (WHEREUPON, a recess was had.)
2      MR. ZEID: It is 12:41. We'll go back on the
3  record.
4  BY MR. ZEID:
5      Q.   Mr. Johnson, if you remember, I was just
6  showing you Exhibit 3, which are medical records,
7  DP Johnson 2473 through 2481, and I'll just go
8  ahead and pull those up.
9      A.   Okay.
10     Q.   Let me know if you can see what is on
11 the screen.
12     A.   Okay. Yeah, I can see now.
13     Q.   Okay. Perfect. We had just finished
14 kind of reviewing the whole document, and I'm just
15 going to start at the top.
16          So you see how it says, "Health Service
17 Request" here at the top of the page?
18     A.   Yes.
19     Q.   Okay. And this is on Page 1 of the
20 exhibit, and I'm just going to scroll to the last
21 page now.
22          Can you see how it says, "Outpatient
23 Dental Care"?
24     A.   Yes.

Page 93

1      Q.   So that's where Health Service Request
2  forms end, Outpatient Dental starts. I'm going to
3  scroll through all these Health Service Request
4  forms. I'm going to ask you some questions.
5          Like we discussed, do you see the
6  subject here is Health Service Request?
7      A.   Yes.
8      Q.   And you see this request is entered on
9  June 4th of 2020?
10     A.   No, I don't see that. I can't see the
11 date. Is it by where you got the mouse at? Where
12 you're scrolling at?
13     Q.   I'll zoom in. Do you see where it
14 says --
15     A.   I see it now.
16     Q.   Okay. So that says June 4th, 2020?
17     A.   Yes.
18     Q.   Okay. So this is your first Health
19 Service Request form for the month of June. And it
20 goes all the way until the end of the Health
21 Service Request forms in the Outpatient Dental.
22          So this is the first page of the
23 exhibit, right?
24     A.   Uh-huh.

Page 94

1      Q.   Okay.
2      A.   Yes.
3      Q.   So this exhibit starts with the Health
4  Service Request form you filed on June 4th, and
5  goes all the way to the end of your Health Service
6  Request files on the subject of Outpatient Dental
7  CHS.
8          You saw that on the screen earlier,
9  right?
10     A.   Yes.
11     Q.   Okay. I'm going to scroll through this
12 document under each Health Service Request form,
13 and let me know if you see one dated July 19th,
14 2020, okay, Mr. Johnson?
15          This one is June 4th. It looks like the
16 next one here is June 9th, is that correct?
17     A.   Yes, June 9th.
18     Q.   Okay. I'm going to keep scrolling until
19 we get to the next one.
20          That looks like June 12th there was one
21 filed?
22     A.   Yes.
23     Q.   Scrolling. Again, June 15th it looks
24 like there was one entered?

Page 95

1      A.   Yes.
2      Q.   And June 22nd there's an entry?
3      A.   Yes.
4      Q.   Okay. And, again, June 29th there's an
5  entry?
6      A.   Yes.
7      Q.   And now this is the first July date,
8  right? This is July 1st, 2020?
9      A.   Yes, I see it.
10     Q.   Okay. And the next page is Outpatient
11 Dental, and it regards May 20th, 2019, right?
12     A.   Yes.
13     Q.   Okay. And you said the incident
14 happened on July 19th, 2020?
15     A.   Yes.
16     Q.   Okay. So you did not see a Health
17 Service Request form dated July 19th, 2020,
18 correct?
19     A.   Correct, I didn't.
20     Q.   Or any Health Service Request form filed
21 in the month of July, correct?
22     A.   No.
23     Q.   Okay. So did you not fill out a Health
24 Service Request form for this incident?

26  (Pages 92 to 95)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 96

1      A.   Yes, I filled out a health request form
2  for the incident because that's what I was told to
3  do.
4      Q.   Okay.  But you didn't --
5      A.   To go see the doctor, I had to fill out
6  a slip.
7      Q.   But you didn't see one in your medical
8  records that I just showed you, correct?
9      A.   You just only showed me July 19th, 2020.
10 I don't see anything else.
11     Q.   I actually showed you July 1st, 2020,
12 right?
13     A.   Okay.  July 1st, 2020.
14     Q.   And there's no other entry until the end
15 of the Health Service Request form?
16     MR. PRADOS:  Let me object to foundation about
17 his understanding about how these digitized records
18 are put together.
19         But over that objection, he can answer,
20 if he can, these questions.
21 BY THE WITNESS:
22     A.   Could you repeat the question?
23 BY MR. ZEID:
24     Q.   I just said so I've shown you from the

Page 97

1  month of July -- July 1st, 2020, and the next page
2  switches subjects to Outpatient Dental dated
3  May 20th, 2019, right?
4      A.   Yes.
5      MR. PRADOS:  Same objection.
6          You can answer.
7  BY THE WITNESS:
8      A.   I see that, yes.
9  BY MR. ZEID:
10     Q.   Okay.  Great.  And so there was not a
11 Health Service Request form dated July 19th or
12 later, correct?
13     MR. PRADOS:  Object as to form.
14         You can answer.
15 BY THE WITNESS:
16     A.   I don't see that, but I put one in.  So
17 I don't know why it's not there as far as a request
18 form -- the medical request form.
19 BY MR. ZEID:
20     Q.   All right.  That's all the questions I
21 have on that.
22     A.   Because what I'm seeing, these are
23 doctors' -- those were doctors' documents, right?
24     Q.   They were, but I'll just ask the

Page 98

1  questions here, Mr. Johnson.
2          I'm just going to pull up --
3      A.   Okay.  I'm sorry.
4      Q.   You're fine.  I just want to keep us
5  moving.
6          So in your complaint, Mr. Johnson, you
7  wrote that because of your use of a cane, the
8  plaintiff, per Cook County Department of
9  Corrections policy and/or customs or practice, you
10 were not required to be handcuffed when you were
11 being escorted out of Division 8 for visitation.
12         Why do you believe you shouldn't have
13 been handcuffed?
14     A.   Because that's what I was told.  Once I
15 came to the medical unit and was issued a cane, the
16 doctors explained to me, you know, you don't have
17 to worry about being handcuffed because no one gets
18 handcuffed when they have a device to help their
19 mobility.  And that's what went on.  I wasn't
20 handcuffed --
21     Q.   I'm sorry to interrupt.  I was just
22 going to ask, do you know which doctor told you
23 that?
24     A.   I don't remember her name.  It's when I

Page 99

1  came from the hospital because I was in
2  Division 10, and I left there because my legs
3  collapsed on me and I had to go to the ER.  And
4  when I came from the ER, the next day I went to the
5  medical unit, and the doctor that was there, she
6  looked at my chart, and she gave me where I was
7  going and prescriptions, and she said, you won't
8  have to worry about being cuffed because we got you
9  on the cane, and anybody get a device to help their
10 mobility don't get cuffed.  So all while procedure
11 going through, I was not cuffed.
12         And then as we going along, because it
13 was long distance, I even had a wheelchair escort
14 put into my file.  So, I mean, basically, I should
15 have been escorted, you know, or if -- even to look
16 for a wheelchair to escort me, you know.  But that
17 didn't happen.
18     Q.   Do you know what the policy regarding
19 the control of inmate movement is at Cook County
20 Jail?
21     A.   Not really.
22     MR. PRADOS:  Objection as to form.
23         But you can answer.
24

27  (Pages 96 to 99)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

---

Page 100

1  BY THE WITNESS:
2      A.  I'm not sure about it, but I was told
3  that -- well, I heard that detainees get handcuffed
4  requiring movement, but I haven't gotten
5  handcuffed.
6  BY MR. ZEID:
7      Q.  But you didn't write the policy for Cook
8  County Jail about controlled movement, right?
9      A.  No, I didn't write it.  I didn't even
10  read it.  I justy know when an officer will explain
11  the movement for detainees.
12      MR. ZEID:  I'm going to introduce to you what
13  will be Exhibit 4.  It's Bates-stamped 62 through
14  63, and it's Cook County Policy 708.
15          (WHEREUPON, a certain document was
16          marked Defense Exhibit No. 4, for
17          identification, as of 2-6-24.)
18  BY MR. ZEID:
19      Q.  Let me know if you can see my screen
20  here, Mr. Johnson.
21      A.  I can see the screen.
22      Q.  I'm just going to scroll through the
23  document.  It's two pages.
24          You have not seen this document prior to

---

Page 101

1  right now, correct?
2      A.  No.
3      Q.  Okay.  So you didn't have a copy of this
4  document on July 19th, 2020?
5      A.  No, I did not.
6      MR. PRADOS:  Objection.
7          You can answer.
8  BY MR. ZEID:
9      Q.  Okay.  I'm going to scroll down to
10  Policy 708.4, Movement of Inmates, and I'm just
11  going to have you read Paragraph 2, which I'll
12  highlight here -- or I'll put my mouse by it so you
13  can see where my mouse is.
14      A.  Okay.  You're gonna have to blow it up a
15  little bit because I can't see the little writing
16  because I don't have my glasses.
17      Q.  Completely understand.  I'm going to
18  blow it up right now.
19      A.  Right there.
20      Q.  If you need me to scroll to the right at
21  any point, just let me know.
22      A.  Just point to me where I need to read.
23      Q.  Start here, and it will just be this
24  paragraph.

---

Page 102

1      A.  Start where it says 4?
2      Q.  Where it says Inmates.
3      A.  "Inmates should be restrained during
4  movement based upon individual security" -- what's
5  that?  Defecation?
6      Q.  Classification.
7      A.  Okay.  It's kind of blurred.
8  "-- classification.  Higher risk inmates in
9  handcuffs, wrist chains, and leg irons.  An
10  exception to this procedure is when an inmate has
11  a -- procedure is when an inmate has a physical
12  disability where restraint devices may cause
13  serious injury.  Pregnant inmates should be moved in
14  accordance with the use of restraints policy."
15      Q.  Perfect.  I'm going to stop sharing my
16  screen here.
17          Mr. Johnson, do you know what the policy
18  regarding the use of restraints is at Cook County
19  Jail?
20      A.  As they say, for safety matters.
21      Q.  Could you tell me what it is?
22      MR. PRADOS:  Objection to foundation.
23          If he knows, he can answer.
24

---

Page 103

1  BY THE WITNESS:
2      A.  No, I don't really know.
3      MR. ZEID:  Okay.  I'm going to introduce what
4  will be marked as Exhibit 5.  It's Bates-stamped
5  156 through 163, and it's Cook County Policy 709 on
6  the use of restraints.
7          (WHEREUPON, a certain document was
8          marked Defense Exhibit No. 5, for
9          identification, as of 2-6-24.)
10  BY MR. ZEID:
11      Q.  Let me know when you can see the
12  document just like before.
13      A.  Yes, I see it.
14      Q.  I'm just going to scroll to the top so
15  you can see where it starts.  I'll scroll all the
16  way through the document.  There's eight pages
17  total.
18          So we got to Page 8, and that's the end
19  of the exhibit.
20      A.  Okay.
21      Q.  You have not seen this document prior to
22  today, correct?
23      A.  No, I haven't.
24      Q.  Okay.  I'm going to scroll to Page 3 and

---

28  (Pages 100 to 103)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

---

Page 104

1   just have you read the first line of Policy
2   708.3.1, Use of Restraints on Disabled Subjects.
3        A.   Could you blow it up?
4        Q.   Yes.  Is this any better?
5        A.   Okay.  It says, "A physical disability
6   (eg, visually impaired, hearing impaired,
7   paraplegic) does not preclude the use of restraints
8   on an inmate."
9        MR. ZEID:  Okay.  I'm going to stop sharing my
10  screen here, and I'll take this exhibit down.
11       And I'm going to pull up what will be
12  marked as Exhibit 6.  It's going to be Plaintiff's
13  Cook County Jail Bates-stamped 66.  It's going to
14  look like an Excel spreadsheet.
15            (WHEREUPON, a certain document was
16             marked Defense Exhibit No. 6, for
17             identification, as of 2-6-24.)
18  BY MR. ZEID:
19       Q.   So let me know if you can see it, okay?
20       A.   I see it.
21       Q.   I'll zoom in a little bit.
22       Mr. Johnson, you previously mentioned
23  that you shouldn't have been handcuffed because you
24  were supposed to have a wheelchair, correct?

---

Page 105

1        A.   No, because I was on a cane.  I
2   mentioned a wheelchair -- I mentioned a wheelchair
3   was for long distance.  I got that in my medical
4   file there for if I need -- for long distance, I
5   can request a wheelchair escort, meaning that the
6   officer supposed to look for a wheelchair and get
7   it and escort me to my long distance.  Like to
8   court, like to visiting.  Any long distance, that's
9   where the wheelchair came in at.
10       Q.   Got it.  Okay.  And so are you saying
11  that's what should have happened in this situation?
12       A.   I'm asking -- I'm saying -- I'm replying
13  that when I mentioned that to him, as well as me
14  being on the cane, I had a wheelchair escort in my
15  file.  He didn't go to look for it to find out
16  because if he'd have looked, he'd have seen it, and
17  I could have got a wheelchair escort.  But that
18  wasn't on his mind as I seen because as I was
19  explaining it to him, he didn't care.  As he state,
20  well, you gonna get cuffed today.
21       Q.   Mr. Johnson, I'm going to show you -- do
22  you see this column titled Alerts down here?
23       A.   I see where you got the mouse on it.
24       Q.   And below it, "Cast/splint, inhaler,

---

Page 106

1   medical infirmary."  Do you see that?
2        A.   Yes.  I can see a little bit, but it's
3   blurry, unless you blow it up.
4        MR. PRADOS:  Also just a standing objection as
5   to foundation with respect to this log of medical
6   alerts.  But if he knows, to the extent he can
7   answer your questions, he can answer your question.
8        I suggest you might adjust the width of
9   the columns for the dates because then you can
10  actually see the dates.
11       MR. ZEID:  We'll get there.  I'll zoom in to
12  each of them.
13  BY THE WITNESS:
14       A.   Okay.  What am I looking at?
15  BY MR. ZEID:
16       Q.   So you see that Column G right here,
17  Mr. Johnson?
18       A.   Yes.  Yes, I do.
19       Q.   Do you see under it, it says, "Alert"?
20       A.   Uh-huh.
21       Q.   Okay.  So I'm just going to have you
22  look at all of these, and tell me if you see
23  wheelchair anywhere else other than Line 7, okay?
24  Because it says wheelchair by Line 7.

---

Page 107

1        A.   Right.
2        Q.   Do you see wheelchair anywhere else?
3        A.   No.
4        Q.   All right.  I'm going to scroll down so
5   you can see all orders in here.
6        Do you see wheelchair anywhere else?
7        A.   No.
8        Q.   Okay.  So Line 7 is the only line that
9   has wheelchair listed under Alerts, right?
10       A.   Yeah.  I see to my knowledge, yeah.
11       Q.   Okay.  So I'm going to move over to --
12  do you see the column to the right that says
13  Effective Date, where my mouse is?
14       A.   Yes.  What am I looking at?  I see
15  wheelchair long distance only.
16       Q.   Okay.  And then you see where my mouse
17  is?
18       A.   Yes, I see it.
19       Q.   Okay.  And you see it says Effective
20  Date there?
21       A.   Yes.
22       Q.   Okay.  I'm going to go to Line 7 under
23  Effective Date and click, and tell me what the date
24  that's there is.

29  (Pages 104 to 107)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

---

Page 108

1  A.  That says 6/15/2021.
2  Q.  So the effective date of your wheelchair
3  long distance only alert says 6/15/2021?
4  A.  Uh-huh.
5  Q.  Okay.  And this incident occurred on
6  July 19th, 2020, correct?
7  A.  Yes.
8  Q.  Okay.  Mr. Johnson, can you hear me?
9  A.  Yes, I can hear you.
10  Q.  Okay.  I'm just going to start over.
11      I said do you believe that inmates with
12  dangerous objects should be allowed to walk around
13  Cook County Jail without restraints?
14  A.  No, they shouldn't.
15  Q.  Okay.  You previously stated you had a
16  cane when you were handcuffed in escort to and from
17  your visitation, correct?
18  A.  Yes.
19  Q.  Okay.  And you can actually see -- I'm
20  going to scroll to Line 16 here, and you can see it
21  says Cane under Alert, correct?
22  A.  Yeah.  What now?  I see cane.
23  Q.  Yeah, so you see that under Alert under
24  Line 16?

---

Page 109

1  A.  No.  I just see cane.  You got the cane.
2  Q.  Do you see Line 16 is next to that
3  column?
4  A.  Line 16 is next to my -- it's next to my
5  name where you got it highlighted.  It's a medical
6  cane.
7  Q.  Okay.  And to the right of the cane it
8  says, "Ranking alert 10," right?
9  A.  No.  You got a list of numbers, 10, 5,
10  with like 10, 05.
11  Q.  What is the alert right here?
12  MR. PRADOS:  Object to form.
13  BY THE WITNESS:
14  A.  That's just the thing.  I'm not
15  seeing -- what are you showing me?  I see where you
16  got it lit up, but the only thing it's showing is
17  the date and a time.
18  BY MR. ZEID:
19  Q.  Okay.  And what does it say the date is?
20  A.  It says the date 12/8/2020 -- no, 2019,
21  2:01 p.m.
22  Q.  Okay.  So the effective date of your
23  cane alert was 12/8/2019, and it's set to expire on
24  12/9/2021, right?

---

Page 110

1  A.  Yes.  Wherever -- any time my cane
2  expired, the doctor reevaluated it, reissued it out
3  for the date for the the next time.  They redid it.
4  That's why I had my cane throughout the facility.
5  I never got my cane tooken from me because I needed
6  it.  So it was never tooken from me.
7  Q.  So that's all to say you had the cane
8  the whole time of the incident?
9  A.  Yes, the whole time.
10  Q.  Okay.  And do you consider a cane a
11  weapon?
12  A.  No, I do not.  But to show disability,
13  you have to -- you know, if there's a person using
14  it that needs it, he's not a threat.  But if a
15  person just got it just to use it as a weapon, then
16  that's what you consider a threat.  I wasn't
17  considered a threat because I feel if I was a
18  threat, every time I would call to go somewhere, I
19  would have been handcuffed.
20  Q.  So a cane could be used as a weapon?
21  A.  Yes, it --
22  MR. PRADOS:  Objection, incomplete
23  hypothetical.  Objection also as to form.
24      But you can answer.

---

Page 111

1  BY MR. ZEID:
2  Q.  Mr. Johnson, can a cane be used as a
3  weapon?
4  MR. PRADOS:  Same objection.
5      You can answer.
6  BY THE WITNESS:
7  A.  Yes.
8  BY MR. ZEID:
9  Q.  Okay.  Have you ever seen anyone use a
10  cane as a weapon?
11  MR. PRADOS:  Objection, relevance.
12      You can answer.
13  BY THE WITNESS:
14  A.  Yes, I have.
15  BY MR. ZEID:
16  Q.  Okay.  Have you seen them use it as a
17  weapon at Cook County Jail?
18  MR. PRADOS:  Same objection.
19      You can answer.
20  BY THE WITNESS:
21  A.  Yes.
22  BY MR. ZEID:
23  Q.  Can you describe that incident, please?
24  MR. PRADOS:  Objection, relevance.

---

30  (Pages 108 to 111)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 112

1    Over that objection, you can answer.
2    BY THE WITNESS:
3        A.  Okay.  I've seen it used in a brawl.  I
4    mean, the guys, they call, the debt went up, as
5    they say.  I mean, I don't understand it, but
6    that's what it meant.  The debt went up.  That
7    means some guys got into a fight over in the
8    area -- in the dayroom or in the bathroom.  But I
9    just seen someone that was issued a cane that
10   didn't even need the cane.  And as time and days
11   went by, as they was reviewing on video, the nurses
12   came and took the cane because they seen that they
13   didn't need it.
14       But I needed mine, and I didn't have no
15   reason to use it as a weapon because I'm not a
16   violent person.
17       MR. ZEID:  Well, I think that concludes all
18   the questions I have, Mr. Johnson.  But I know --
19   I'm sure Jason has questions as well.  So I will go
20   ahead and end my part of the deposition and pass it
21   to defense counsel here.
22       EXAMINATION
23   BY MR. DEVORE:
24       Q.  Good afternoon.  I just have a couple

Page 113

1    questions in relation to Mr. Bacon putting the
2    handcuffs on you.
3        Did Officer Bacon -- did he check the
4    handcuffs in any way when he was applying them on
5    your wrists?
6        A.  No, he didn't.  He just clamped them on
7    me, click, and say, let's go.  Never was they loose
8    or tight.  He just clamped them on me.
9        Q.  Can you recall if he put them on -- the
10   handcuffs on your right hand first or your left
11   hand first?
12       A.  I don't remember.  That, I don't
13   remember.
14       Q.  Okay.
15       A.  I don't know which hand he put them on
16   first, but I remember he clamped them down.  But as
17   we proceed, as we walking to the elevator, I'm
18   telling him that they tight.
19       Q.  So when he put the first cuff on, was it
20   a single click, or was it like a click, click,
21   click, or do you remember?
22       A.  No, it wasn't just a single click, no.
23   Then I would know.  It was click, click, click.
24   Click, click, click, which I know did -- I could

Page 114

1    feel it, but he wasn't concerned about that.
2        Q.  And when you -- when Officer Bacon was
3    putting on the handcuffs, at that time did you ask
4    him or did you suggest to him that you had a
5    wheelchair alert?
6        A.  Yes, I was explaining all that to him
7    before he put the handcuffs on.  But when I got
8    finished explaining that to him, he said, well, you
9    gonna get handcuffed today, and he handcuffed me.
10       Q.  And at the time when you were having
11   this conversation, were there any other officers or
12   detainees in the immediate area?
13       A.  No.
14       Q.  And do you know if the handcuffs have
15   any additional locking mechanism to make it so the
16   handcuffs don't get too tight?
17       A.  No.  I'm not aware of that.
18       Q.  Okay.  And I believe you described
19   there's a handcuff, then a chain, and then another
20   handcuff as well, correct?
21       A.  Right.  Normal handcuffs, you know.
22       Q.  About how long was the chain?
23       A.  Maybe -- not a good foot.  I mean, I
24   guess maybe inches.  Between -- I'd say between

Page 115

1    three to five inches.  Something like that.  Three
2    inches.
3        MR. DEVORE:  That's all I have.
4        MR. PRADOS:  I don't have very many questions,
5    but I have to ask for another ten-minute break so I
6    can look over my notes.  If we can reconvene at
7    1:21.
8        MR. ZEID:  That works for me.
9        MR. PRADOS:  Mr. Johnson, you can mute
10   yourself again, please.
11       (WHEREUPON, a recess was had.)
12       MR. ZEID:  We're back at 1:21.
13       EXAMINATION
14   BY MR. PRADOS:
15       Q.  We're now back on the record.  The time
16   is 1:21 p.m.  I might just have a few questions for
17   you, Douglas.
18       You testified earlier today about some
19   deposition dates -- or you had been deposed once
20   before, and I think you said around 2001.
21       Do you mean 2021?
22       A.  Yes, 2021, yes.
23       Q.  Okay.  And, again, on the 17th, as you
24   were going to this visit, were you worried that

31  (Pages 112 to 115)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 116

1    your family would be worried if you didn't show up
2    for the visit?
3        A.   Yeah.  They would be worried.
4        Q.   Was that part of the motivation that
5    made you want to complete the visit?
6        A.   Yes.
7        Q.   While you were in the visitors area, you
8    knew that you would have to wait for Bacon to
9    return before you could go back to your division,
10   right?
11       A.   Yes.
12       Q.   So you were dependent on his schedule,
13   basically?
14       A.   Yes.
15       Q.   You weren't able to go back to your
16   housing by yourself, correct?
17       A.   No.  I had to be escorted to my housing.
18       Q.   And you had to be escorted by the same
19   personnel that took you out, is your understanding?
20       A.   Yes.
21       Q.   Okay.  What did your hands and wrists
22   look like when you got to the visiting area?
23       A.   They were red and swollen.
24       Q.   Were they -- did your family immediately

Page 117

1    notice that there was something wrong with your
2    wrists?
3        A.   Yes.
4        Q.   Would it take some special medical
5    expertise to figure out there was something wrong
6    with your wrists, or were they so screwed up that
7    everyone could tell there was something wrong?
8        A.   Everyone could tell that something was
9    wrong.
10       Q.   Did your hands look puffy, or can you
11   describe the swelling in more detail?
12       A.   They were puffy.  My wrist was puffy,
13   and my finger right by my thumb area, and my hands
14   were real red.
15       Q.   Were both of your hands very red?
16       A.   Yes.
17       Q.   Okay.  You described in your previous
18   testimony today Defendant Bacon smirking and having
19   a crazy smile as he was escorting you, is that
20   right?
21       A.   Yes.  Throughout the whole journey and
22   back.
23       Q.   Was he smiling as if he was enjoying
24   your ordeal?

Page 118

1        A.   Yes.
2        Q.   Did he laugh or chuckle?
3        A.   Yes, he did.
4        Q.   And how many times did he laugh or
5    chuckle as he was escorting you through the tunnel?
6        A.   I'd say maybe four or five times on the
7    way there, and basically the same on the way back.
8        Q.   He would pause and look back?
9        A.   Yes.
10       Q.   You were walking in short stages,
11   correct?
12       A.   Yes.
13       Q.   Can you describe that process a little
14   bit more?
15       A.   I was just walking.  I wasn't walking
16   fast because I was taking little steps because the
17   first few steps I took on the way there, I
18   stumbled.  Basically, I kind of stumbled, tripping
19   over my cane.  So I started going slow up against
20   the wall, just moving slow, at a slow pace.  My
21   whole body, my right side, was against the wall.  I
22   had the cane on the right side as well.
23       Q.   When you took your little pauses, would
24   you ask Bacon to loosen your cuffs or remove them?

Page 119

1        A.   I did twice.
2        Q.   Okay.  And what did he say to those
3    requests?
4        A.   He said no, they not tight.  The second
5    time, he replied, no, they not tight.  I could fit
6    my whole damn hand in the cuff.
7        Q.   Okay.
8        A.   Just, come on.
9        Q.   And did he say that with the same smirk
10   you described before?
11       A.   Yes.
12       Q.   Okay.  Is it difficult to talk while
13   you're having an asthma attack?
14       A.   A little, you know.  All depends on the
15   stages of it.  But when it got to my stage, I was
16   able to -- I could have talked a little bit, but I
17   was -- I mean, the anger, what he done.
18       Q.   You had the full-blown asthma attack at
19   the end of the process, right, when you were
20   back --
21       A.   Yes.
22       Q.   -- in Division 8?
23       A.   Yes.
24       Q.   And at that point did you think it was

32  (Pages 116 to 119)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 120

1    **futile to ask him to -- to beg him to take off your**
2    **cuffs?**
3        A.  Well, I basically didn't have to ask,
4    you know.  I just put my hands up, and he just took
5    them off with the same smirk smile on his face.
6    Once he took them off, he left.
7        **Q.  Okay.  And then you ran cold water on**
8    **the wrists?**
9        A.  Yes, I ran cold water on the wrists
10   after I pulled my mask down and took two puffs of
11   my inhaler.
12       **Q.  Okay.  Did the cold water make them feel**
13   **better at all?**
14       A.  Just a little bit.  It felt a little
15   bit.  But the sting was still there, you know.  So
16   I just took my hands off the water, dried them off,
17   and went to talk to the tier officer.
18       **Q.  Was the pain initially in both hands**
19   **when you removed the handcuffs?**
20       A.  Yes.  The pain was initially in both
21   hands, but it was, like, the right hand and wrist
22   was throbbing.  So once I left the sink that it was
23   throbbing and it was swollen, then I knew that
24   something was wrong.  My left hand, it was just

Page 121

1    hurting a little bit, but the main issue was my
2    right hand and wrist because it was swollen and to
3    the point where it was pushing on my vein here.
4        **Q.  So in terms of correctional personnel**
5    **that were on the scene when you got back there, who**
6    **was present?**
7        A.  The officer -- tier officer.  His name
8    was Orr.
9        **Q.  Okay.  And what did he say to you when**
10   **he saw your wrist?**
11       A.  He just said I knew something was wrong.
12   Your wrist is swollen.  I could see the swelling.
13   And I asked him to speak with a supervisor.
14       **Q.  Okay.  And had you seen Orr before?**
15       A.  Yes, I've seen him before.  He comes
16   from time to time.  I guess substitute when the
17   original officer on the tier, I guess, call in or
18   whatever.
19       **Q.  Okay.  Had he ever facilitated your**
20   **escort to the visiting area?**
21       A.  No.
22       **Q.  Okay.  And what did Parcell say when she**
23   **arrived?**
24       A.  She asked me what was wrong, and I

Page 122

1    showed her my wrists, you know.  And she said, oh,
2    that looks bad.  I'm, like, yeah, one of your
3    officers handcuffed me real tight and had me to
4    walk all the way to Division 1 and back.
5        **Q.  And what did she say?**
6       A.  And what she did, I don't know, because
7    when she went, she said, hold up, and she walked
8    away, and then she came back, you know.  And she
9    said, I'm sorry this happened to you.  When I
10   walked away, I was checking to see your status for
11   being handcuffed.  And she was saying, I didn't see
12   it, you know, on no note or nothing like that.  You
13   know, so what you gonna do is you can fill out a
14   grievance because I see that your arm and your
15   wrist -- your hand and your wrist is injured, and
16   I'm gonna find Officer Bacon, and I'm gonna make
17   sure he be disciplined.
18       **Q.  Okay.  This event happened at the height**
19   **of COVID, in the summer of 2020, right?**
20       A.  Yes.
21       **Q.  And so were there fewer visits earlier**
22   **in the year because of the pandemic?**
23       A.  The pandemic, there wasn't no visits --
24   no outside visits like that.  It was, like, Zoom.

Page 123

1        **Q.  Okay.  So then at some point in-person**
2    **visits became possible again in 2020, correct?**
3       A.  Yes.
4       **Q.  And about how many visits had you had**
5    **prior -- in-person visits had you had prior to**
6    **July 19th, 2020?**
7       A.  I had, like, either three or four.
8       **Q.  Okay.**
9       A.  Probably about four.  I'd say about
10   four.
11       **Q.  And on any of those occasions did they**
12   **handcuff you as they took you to Division 1?**
13       A.  No.
14       **Q.  Were you handcuffed at all in 2020 prior**
15   **to July 19th, 2020?**
16       A.  No.
17       **Q.  And did guards repeatedly explain to you**
18   **that that was because of your cane?**
19       A.  No guards.  They didn't -- they didn't
20   say anything.  When I went out there, they just
21   say, come on.  You know, you on a cane.  And we
22   proceeded to go where I needed to go.  I didn't get
23   handcuffed until later on in the year when they was
24   switching officers and I was having a Zoom visit,

33  (Pages 120 to 123)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 124

1  and I didn't have no handcuffs. And the guy came,
2  and he said, you supposed to be handcuffed, you
3  know. And I was explaining about my braces. He
4  said, I don't care about the braces. Give him some
5  handcuffs. Get the big handcuffs and just put it
6  on real light, and keep the hands in the front.
7      Q.  And these other handcuffs were put on
8  after the incidents described in this complaint?
9      A.  Yes.
10     Q.  And it was a special set of handcuffs
11 that they placed on you, is that right?
12     A.  Yes, special set of handcuffs. They
13 were some giant handcuffs. I guess maybe they go
14 on the feet or something like that. I don't know.
15 But they were big handcuffs.
16     Q.  And these handcuffs put less pressure on
17 your hands, on your wrists?
18     A.  Right, right.
19     Q.  Okay. And at some point prior to
20 July 19th, 2020, you had been wheelchaired between
21 divisions, correct?
22     A.  Yes.
23     Q.  Had you ever been handcuffed while you
24 were wheelchaired?

Page 125

1      A.  No.
2      Q.  Okay. And on some other occasions you
3  were brought from Division 8 to Division 1 on your
4  own -- by your own -- on your own two feet with a
5  cane, correct?
6      A.  Yes.
7      Q.  But you did not have handcuffs, right?
8      A.  I didn't have no handcuffs.
9      Q.  And can you explain why it's easier to
10 walk with a cane without handcuffs, if it is?
11     A.  Without handcuffs?
12     Q.  Yeah.
13     A.  Because I'm able -- even though I'm
14 struggling with the pain, I'm able to balance
15 myself. And it's walking with the cane in one
16 hand, and I'm walking with my other hand freely,
17 you know, just in case my legs buckle so I can
18 catch myself.
19     Q.  You were shown some written policies
20 that the sheriff has promulgated with regard to
21 restraining detainees earlier in this deposition.
22     Had you ever seen those before?
23     A.  No.
24     Q.  So your understanding of policy comes

Page 126

1  from what guards have done and said, correct?
2      A.  Exactly.
3      Q.  And you found Officer Bacon's conduct
4  very surprising on July 19th, 2020, correct?
5      A.  Yes, I did.
6      Q.  Okay. And did Orr communicate to you
7  that he thought Officer Bacon had made some error
8  in how he escorted you?
9      A.  Yes. He made the statement that I
10 shouldn't have been handcuffed because I had a
11 cane.
12     Q.  Okay. Then did Parcell say anything
13 along those lines?
14     A.  She replied, but then she -- like I
15 said, she left, and I guess she went to try to find
16 some type of something in the computer real quick.
17 But then she came back, and she just, you know,
18 explained that was wrong, you know, what he did to
19 me, and he would be disciplined.
20     Q.  Okay. And you testified earlier today
21 that you had had problems with your right wrist
22 prior to July 19th, 2020, correct?
23     A.  Yes.
24     Q.  So if there's any statement in the

Page 127

1  complaint that was filed in this lawsuit that says
2  otherwise, that your right wrist was perfectly fine
3  beforehand, is that an error your lawyers made?
4      A.  Yes.
5      MR. PRADOS:  Okay. I don't have anything
6  else.
7          FURTHER EXAMINATION
8  BY MR. ZEID:
9      Q.  Just one minor correction just for the
10 record.
11     Mr. Johnson, you were asked on July 17th
12 when you had visited your family, and I just wanted
13 to correct and state the incident was on July 19th,
14 right?
15     A.  Exactly correct.
16     MR. ZEID:  No further questions. Jason, if
17 you have anything else. If not, I'm all done.
18     MR. DEVORE:  Nope. I have nothing further.
19 Thank you.
20     MR. PRADOS:  Thank you very much. We waive.
21     MR. ZEID:  Great. We'll go ahead and order a
22 copy then.
23     THE COURT REPORTER:  Does anybody need a copy?
24     MR. PRADOS:  Can I have your contact

34  (Pages 124 to 127)

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 128

1      information, Karen?
2         THE COURT REPORTER:  It's
3      info@royalreporting.com.
4         MR. PRADOS:  Okay.  And are you Chicago-based?
5         MR. ZEID:  Yes.
6         MR. PRADOS:  It's info@royalreporting.com?
7         THE COURT REPORTER:
8      info@royalreportingservices.com.
9            Are you going to send the exhibits?
10        MR. ZEID:  I will, Karen.  I'll email them.
11           (The deposition concluded at 1:40 p.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24

Royal Reporting Services, Inc.
312.361.8851

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 129

1              I, KAREN A. FAZIO, CSR No. 84-1834, a

2     Notary Public within and for the County of Cook,

3     State of Illinois, and a Certified Shorthand

4     Reporter of said state, do hereby certify:

5

6              That previous to the commencement of the

7     examination of the witness, the witness was duly

8     sworn to testify the whole truth concerning the

9     matters herein;

10

11             That the foregoing deposition transcript

12    was reported stenographically by me, was thereafter

13    reduced to typewriting under my personal direction

14    and constitutes a true record of the testimony

15    given and the proceedings had;

16

17             That the said deposition was taken

18    remotely before me on the date and time specified;

19

20             That I am not a relative or employee or

21    attorney or counsel, nor a relative or employee of

22    such attorney or counsel for any of the parties

23    hereto, nor interested directly or indirectly in

24    the outcome of this action.

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 130

1          IN WITNESS WHEREOF, I do hereunto set my

2    hand of office at Chicago, Illinois, this 28th day

3    of February, 2024.

4

5

6

7

8

9    _____

10      KAREN A. FAZIO, CSR No. 84-1834

11      Notary Public, Cook County, Illinois.

12      My commission expires 5/10/24

13

14

15

16

17

18

19

20

21

22

23

24

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 131

## A

**a.m** 1:23
**able** 28:6 36:11
  40:12 46:10,11
  73:20 84:1
  86:21 91:23
  116:15 119:16
  125:13,14
**ableifuss@gm...**
  2:4
**absolutely** 40:22
  62:2 85:5
**abuse** 69:18
**abused** 38:18
  63:10
**accept** 73:12
**Acceptance** 81:5
  81:11
**accepted** 81:1,2
**accident** 24:6
  25:18,19
**accuracy** 82:13
**accurate** 41:23
  43:19 78:6
  82:16,18
**accurately**
  11:21
**aching** 71:3
**acid** 8:19 9:1
**acted** 38:19
**action** 129:24
**addiction** 11:12
**additional**
  114:15
**address** 12:20
  12:24
**adjust** 75:17
  106:8
**Administrato...**
  81:5,11
**Adrian** 2:2 62:2
  91:15
**advantage** 84:19
**advise** 10:5

**affect** 10:12,15
  10:17,18
**affiliated** 20:22
**afternoon** 43:17
  43:23 112:24
**age** 14:22
**ages** 14:15
**aggravated**
  25:18
**agitated** 27:17
**ago** 23:6 24:21
  24:24 25:1
  32:24 83:16
  84:12 85:14
**ahead** 4:19
  15:24 27:2
  40:2,9 44:4
  92:8 112:20
  127:21
**ahold** 52:6,7
**ain't** 28:23
  46:18
**air** 67:17
**al** 4:5
**alcohol** 11:7
  26:16
**alert** 106:19
  108:3,21,23
  109:8,11,23
  114:5
**alerts** 105:22
  106:6 107:9
**aliases** 12:3
**allegations**
  42:19 43:4
**allowed** 7:20
  35:16 108:12
**and/or** 98:9
**anger** 119:17
**animal** 32:10
  65:5
**ankles** 82:5
**ANORO** 9:3
**answer** 5:18,23
  6:9 8:2,3,4

  14:12,19 15:13
  15:20,24 23:20
  23:21 27:8,9
  38:13 42:21
  53:20 73:14
  76:10 90:17
  96:19 97:6,14
  99:23 101:7
  102:23 106:7,7
  110:24 111:5
  111:12,19
  112:1
**answered** 23:23
**answering** 52:20
  72:2
**answers** 10:7
  11:3 21:17
**Antwaun** 1:10
  2:17
**anybody** 7:15,20
  26:21 45:20
  55:11 73:5
  74:8 99:9
  127:23
**anymore** 86:14
  86:17
**anyway** 75:15
  77:12
**apart** 69:11,14
  69:23
**apologize** 19:16
  21:6
**appeal** 73:12
  74:18 79:6,9
  79:12 80:8,10
  81:1,6,12,18
**appealed** 74:17
**APPEARANCE**
  2:1
**appeared** 2:5,11
  2:17
**applying** 113:4
**appointment**
  83:7
**appreciate** 34:6

  39:24 72:1
**approximately**
  13:3
**April** 83:18
**area** 31:9 112:8
  114:12 116:7
  116:22 117:13
  121:20
**arm** 71:19
  122:14
**arrived** 121:23
**aside** 24:8 25:21
**asked** 20:17
  32:4,15 33:20
  62:19 63:24
  64:5 65:13
  121:13,24
  127:11
**asking** 6:24
  35:20 49:13
  56:7,8 69:5
  105:12
**aspirin** 9:14
**assigned** 39:16
**assist** 56:7
**assistance** 54:15
**associate** 23:11
**assume** 6:23
**assured** 33:21
  34:1
**asthma** 8:17 9:2
  25:2,3 66:16
  66:19,23,24
  67:1,3,13,21
  68:3,4,13,15
  68:19,24 70:2
  70:11,12
  119:13,18
**asthmatic** 62:21
  64:24 65:7
**attack** 26:5
  63:16 66:16,19
  66:23 67:2,3
  67:14,21 68:3
  68:5,13,15,19

  68:24 70:2,11
  70:12 119:13
  119:18
**attend** 18:22,23
**attention** 26:13
  27:2 56:23
**attitude** 31:22
**attorney** 14:18
  129:21,22
**ATTORNEY'S**
  2:7
**August** 79:10
**Austin** 18:23,24
  19:2
**authority** 38:18
  63:10 69:18
**automobile** 24:6
**available** 39:8
**Avenue** 2:3
**aware** 114:17

## B

**B** 3:7
**baby** 17:8,9
**back** 25:12,16
  25:22 27:16,24
  28:13,14 29:9
  30:3,9 31:24
  32:7,8 33:7,17
  34:3,17 35:24
  36:2,4,5,6,10
  36:11 37:11
  40:21 51:10
  52:22 53:6
  57:24 60:19
  61:3,4,5,7,14
  62:6,9,14,16
  64:10,13,19,20
  64:21 69:8
  70:20 71:12,12
  77:16,17 81:3
  83:20,20,23
  84:3,4,22
  86:24 87:23
  89:20,22 91:24

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 132

92:2 115:12,15
116:9,15
117:22 118:7,8
119:20 121:5
122:4,8 126:17
**background**
11:24
**Bacon** 1:10 2:17
27:15,16 31:6
31:20 33:3,12
34:1 38:1,10
44:13,24 45:11
54:14 56:8,17
58:5 60:6
62:11,11,19
64:6,14 65:23
66:22 67:22,24
68:7 70:3 77:9
80:14 113:1,3
114:2 116:8
117:18 118:24
122:16 126:7
**Bacon's** 126:3
**bad** 31:22 33:7
63:20 77:20
78:11 122:2
**balance** 47:15
125:14
**bannister** 50:18
**bar** 30:16,21
**barely** 32:6
62:20 66:20
67:20 68:20
79:19 80:14
**based** 67:14,16
102:4
**basically** 39:15
56:7 78:2
99:14 116:13
118:7,18 120:3
**Bates-stamped**
90:21 100:13
103:4 104:13
**bathroom** 32:18
63:17 112:8

**beg** 120:1
**began** 28:12
**beginning** 38:23
39:4
**begins** 76:22
**begun** 4:5
**behalf** 2:5,11,17
23:7
**believe** 30:14
80:21 98:12
108:11 114:18
**Bennett** 17:11
18:10
**best** 15:23 16:15
28:8 30:18
50:21 54:20
55:9
**better** 104:4
120:13
**big** 30:2 124:5
124:15
**birth** 12:5
**bit** 7:24 12:1
41:2 48:11
49:13 52:21
63:19 64:14
72:4 75:15
85:12 101:15
104:21 106:2
118:14 119:16
120:14,15
121:1
**bits** 37:9
**blank** 28:23
**blanket** 72:16
**BLEIFUSS** 2:2
**block** 31:10
**blood** 8:17 9:6
9:12 26:1,2,5
**blow** 101:14,18
104:3 106:3
**blurred** 102:7
**blurry** 77:22
106:3
**body** 9:16 26:12

47:24 69:1,6
118:21
**bone** 71:19
83:23,23
**bones** 28:9
**borderline** 8:18
**bother** 82:23
84:15 85:21
**bothered** 63:2
85:15
**bothering** 85:18
85:21,22 86:17
87:8,11
**bothers** 39:10
**bottom** 41:20
48:8 78:8 81:7
**box** 81:14,15
90:10,12,12
**boy** 17:13
**brace** 85:20,23
86:1
**braces** 124:3,4
**brawl** 112:3
**break** 6:7,8 30:1
49:3,14 85:2,7
91:15 115:5
**breath** 78:13
**breathe** 32:4,6
62:20 64:24
66:20 67:20
68:20 78:4
**breathing** 64:17
65:17,18 67:17
68:10,23
**brings** 10:9
**brother** 20:6
**brought** 87:22
125:3
**buckle** 125:17
**bunk** 44:1 72:15
**burning** 32:19
71:8
_____
**C**
**calf** 9:12

**call** 72:16 77:8
110:18 112:4
121:17
**called** 1:15 4:15
5:22 27:13
33:4,17 34:12
34:15 35:4,10
35:10 36:19
43:11 44:18
51:5 64:1
89:19,24
**calls** 27:7
**canceled** 39:19
**cane** 29:8,8,20
30:21 44:9,11
45:17,21 46:4
46:11 47:8,9
47:14,15,17,23
47:24 48:8,9
48:13,23 49:13
49:17,24 50:23
52:3,8,9,13
53:11 55:6
66:2,5 71:21
71:24 77:9,11
77:11 79:20
80:13,14 84:9
98:7,15 99:9
105:1,14
108:16,21,22
109:1,1,6,7,23
110:1,4,5,7,10
110:20 111:2
111:10 112:9
112:10,12
118:19,22
123:18,21
125:5,10,15
126:11
**cannabis** 24:21
**cap** 48:20
**capacity** 1:9
**car** 25:18
**care** 38:23 39:7
46:14 47:11

55:16 56:24
61:17 70:16,24
92:23 105:19
124:4
**Carion** 16:21
**carpal** 35:10
85:19 87:2,13
87:18
**case** 4:4 5:6,7,8
5:11,11,13,14
5:15 20:15
23:8,13,14,16
24:9 38:1 40:4
125:17
**Cast/splint**
105:24
**casual** 20:17
**catch** 125:18
**caught** 65:4
**cause** 25:24 27:3
102:12
**caused** 87:18,20
87:23
**causing** 29:7
**CCDOC** 1:10
**cell** 43:15 44:6
44:14 65:16
**center** 2:8 24:7
**certain** 40:5
74:22 90:22
100:15 103:7
104:15
**Certified** 1:19
129:3
**certify** 129:4
**chain** 52:12,12
52:13 53:11
114:19,22
**chains** 102:9
**chance** 8:22
**change** 58:20
**changed** 68:11
68:23
**charged** 23:15
**chart** 99:6

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 133

**check** 81:16
113:3
**checking** 122:10
**Chicago** 2:9,15
12:22,23 15:18
17:23 18:2,3,5
18:9 19:3,8
130:2
**Chicago-based**
128:4
**child** 16:20,21
17:6,9 18:14
**children** 13:15
14:6 15:5
18:11 20:7,8
**cholesterol** 8:19
9:9
**CHS** 94:7
**chuckle** 118:2,5
**cigarettes** 25:8
**city** 18:13,24
19:2,3
**civil** 1:21 2:7
4:10 5:10,13
5:15 20:14
24:10,11
**claiming** 82:19
**clamped** 50:24
113:6,8,16
**Clarendon** 2:3
**classification**
102:6,8
**clearly** 68:18
**click** 107:23
113:7,20,20,20
113:21,22,23
113:23,23,24
113:24,24
**client** 10:5 21:16
53:18
**climb** 55:5
**close** 54:9
**closed** 44:24
**closest** 14:21
**clots** 9:12 26:1,2

26:6
**cold** 32:18 63:17
71:7 120:7,9
120:12
**collapsed** 99:3
**College** 19:6,7
**column** 105:22
106:16 107:12
109:3
**columns** 106:9
**come** 7:24 28:24
29:2,10 30:17
32:7,14 36:5,6
39:9 40:21
44:13 46:6,14
46:18,20,21
47:13 48:20
55:10 59:24
60:3,18 62:11
62:22 64:21
65:3 86:1
119:8 123:21
**comes** 61:11
62:12 121:15
125:24
**comfortable**
39:3
**comforted** 37:13
**coming** 54:22
**commencement**
129:6
**commencing**
1:22
**commission**
130:12
**communicate**
7:20 126:6
**communicating**
58:24
**complaint** 40:4
41:23 42:19,24
42:24 43:4
51:11 98:6
124:8 127:1
**complete** 11:3

116:5
**Completely**
101:17
**completes** 14:5
17:19
**complied** 64:23
**complying**
64:22
**computer**
126:16
**concerned** 58:16
80:5 86:23
114:1
**concerning** 5:9
129:8
**concluded**
128:11
**concludes**
112:17
**condition** 27:24
31:3 51:6 70:1
79:18,24 80:5
**conduct** 126:3
**conducted** 4:8
**consider** 79:18
110:10,16
**considered**
110:17
**constantly** 74:3
83:23
**constitutes**
129:14
**contact** 127:24
**Contic** 80:21
**control** 9:15
75:6,11 99:19
**controlled** 100:8
**controlling**
80:16
**conversation**
20:18 58:23
114:11
**convicted** 21:2,7
21:8,23 22:3,7
**conviction** 21:12

21:13,20,21
22:19,20
**convictions**
20:24 23:1
**Cook** 1:7,11,18
2:7,11,12 4:7
19:21 69:10,13
69:16 72:22,24
73:2,8 98:8
99:19 100:7,14
102:18 103:5
104:13 108:13
111:17 129:2
130:11
**copy** 41:23
101:3 127:22
127:23
**corporation**
1:12
**correct** 19:11,12
50:12 56:19
58:1 81:21
88:6 94:16
95:18,19,21
96:8 97:12
101:1 103:22
104:24 108:6
108:17,21
114:20 116:16
118:11 123:2
124:21 125:5
126:1,4,22
127:13,15
**correction** 127:9
**correctional**
24:7 121:4
**Corrections**
19:22 98:9
**counsel** 21:17
53:19 112:21
129:21,22
**County** 1:7,11
1:18 2:7,11,12
4:7 19:22 47:3
48:3 69:10,14

69:16 72:22,24
73:2,8 87:5
98:8 99:19
100:8,14
102:18 103:5
104:13 108:13
111:17 129:2
130:11
**couple** 29:22
49:20 112:24
**course** 8:1 83:10
85:5
**court** 1:1 4:12
5:19,20 6:5,15
13:11,19 16:3
21:18 22:16,24
90:13 105:8
127:23 128:2,7
**Courts** 1:21
**COVID** 122:19
**crawl** 51:12 54:2
54:8,10
**crawled** 54:4
**crazy** 29:5
117:19
**criminal** 5:11,14
22:24
**crying** 32:24
**CSR** 1:17 129:1
130:10
**cuff** 59:7 71:23
113:19 119:6
**cuffed** 27:23,23
28:2 49:17
58:17 59:15
77:12,12,13
99:8,10,11
105:20
**cuffs** 29:7 31:14
52:5,6,10,13
58:16 59:11,14
63:7 66:12
77:14,18 79:15
79:16,21
118:24 120:2

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 134

currently 7:9
11:6 18:15
19:10 37:21
customs 98:9
cut 36:15,16,16
52:19 61:22
cv 1:6 4:5

**D**

D 3:1
D-O-U-G-L-A...
4:22 14:2
dad 17:2
Daley 2:8
damaged 36:23
83:22
damn 46:19
119:6
danger 21:24
22:21,22
dangerous
108:12
Darion 16:21
Dart 1:8 2:11
4:5,7 5:18
date 12:5 76:23
76:24 77:1
93:11 95:7
107:13,20,23
107:23 108:2
109:17,19,20
109:22 110:3
129:18
dated 94:13
95:17 97:2,11
dates 106:9,10
115:19
daughter 15:1
16:22,23 17:8
17:9 18:5,9
20:11
daughters 16:24
18:6
Davalia 17:14
17:14 18:12

58:12
Davida 18:5
Davis 17:14
58:12
day 1:23 9:4,6,7
9:8,10 20:4
27:3,5,6,12
33:16 34:7
39:10 43:9,11
43:23 58:7
77:7 86:20
88:12,20,21
89:3 99:4
130:2
dayroom 112:8
days 112:10
deal 30:2 35:14
36:9
dealing 83:20
death 26:7
debt 112:4,6
deck 27:14
32:13 33:2
Defecation
102:5
defendant 2:17
38:1 43:1
117:18
Defendants 1:13
2:11
defense 3:8 40:3
40:6 74:23
90:23 100:16
103:8 104:16
112:21
Dental 92:23
93:2,21 94:6
95:11 97:2
Department
98:8
dependent 15:5
18:15,16
116:12
depends 119:14
deposed 115:19

deposition 1:15
4:4,8 5:1 7:13
7:19 26:19
82:1 112:20
115:19 125:21
128:11 129:11
129:17
depositions 1:22
describe 54:11
90:8 111:23
117:11 118:13
described 82:2
114:18 117:17
119:10 124:8
describing
49:13 53:9
62:8 85:11
detail 37:10
79:17 117:11
detainees 39:17
81:19 100:3,11
114:12 125:21
detention 12:19
developed 26:1
device 7:21
27:22 98:18
99:9
devices 102:12
DEVORE 2:13
2:14 3:4
112:23 115:3
127:18
diabetic 8:18
diagnosed 87:2
87:3,13
different 17:2
difficult 119:12
digging 77:14
digitized 96:17
direction 129:13
directions 72:3
directly 129:23
Director 81:19
disability
102:12 104:5

110:12
Disabled 104:2
disagreeing
73:13
disappointed
38:16 64:11
disc 25:17,18
83:22 84:1
discipline 34:2
disciplined
33:13,22 34:3
34:4 64:8
122:17 126:19
discontinued
35:19
discussed 20:16
93:5
discussion 12:12
46:23 53:3
62:3
dishonesty 22:4
dispute 82:13
distance 45:23
68:21 99:13
105:3,4,7,8
107:15 108:3
distorted 34:18
District 1:1,2,21
4:11
division 1:3
29:12 32:1,1
47:5,6 50:7
62:15 98:11
99:2 116:9
119:22 122:4
123:12 125:3,3
divisions 124:21
doctor 10:23
34:10,12,14,16
34:16 35:21,21
36:20 84:4
85:24 89:13,16
89:19,24 90:1
90:7 96:5
98:22 99:5

110:2
doctor's 83:7
doctors 25:3
88:4 98:16
doctors' 25:4
97:23,23
document 40:5
40:17 41:11,13
42:1,16 74:22
75:23 90:22
91:6,9 92:14
94:12 100:15
100:23,24
101:4 103:7,12
103:16,21
104:15
documents
26:23,24 97:23
doing 5:11 7:13
7:19 20:17,17
32:23,24 39:18
43:22 45:18
54:9 58:15,21
62:23
door 27:13,14
30:24 32:14
33:17 44:22,23
44:23,23,24
45:11,12 51:4
77:8
doors 28:16 47:1
49:19 62:13
double 83:21,24
Dougie 12:4
Douglas 1:4,15
3:2 4:4,14,22
14:1 15:1
115:17
DP 90:21 92:7
Dr 36:3,21
dried 120:16
drink 24:18,19
26:15
dripping 67:7
67:18

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 135

drowsiness 10:1
drowsy 10:1
drug 23:14
drugs 11:10,11
    21:9 23:16
due 25:18 83:21
duly 4:1,15
    129:7
Dvorak 2:2
    42:10,13

**E**

E 2:14 3:1,7
E-mail 2:4,10,16
earlier 24:9
    37:11 82:1
    88:19 94:8
    115:18 122:21
    125:21 126:20
easier 125:9
EASTERN 1:3
edge 71:20
effect 10:24
effective 107:13
    107:19,23
    108:2 109:22
effects 9:23
eight 103:16
either 56:2,12
    56:17 123:7
elaborate 24:23
electronic 7:21
elevator 28:11
    28:11 46:15
    61:11,13,19,20
    62:9,13 63:5
    65:10,11,22
    66:1,3,7,8 68:5
    68:8 113:17
elevators 63:4
email 128:10
emotion 37:15
employee
    129:20,21
enjoying 117:23

entered 93:8
    94:24
entire 59:19,21
entry 95:2,5
    96:14
ER 99:3,4
error 126:7
    127:3
escalating 82:24
escort 39:6,16
    45:23 99:13,16
    105:5,7,14,17
    108:16 121:20
escorted 27:15
    31:21 43:13
    60:2,3,4 61:20
    98:11 99:15
    116:17,18
    126:8
escorting 64:15
    117:19 118:5
especially 70:23
estimate 14:21
    43:21 57:15
et 4:5
event 122:18
everybody 49:6
    49:7 61:5
    91:18,20
Everybody's
    37:22
exact 37:18
    43:17
exactly 14:16,20
    45:9,16 59:9
    89:1 91:11
    126:2 127:15
examination
    1:16 3:2 4:17
    112:22 115:13
    127:7 129:7
examined 4:16
    35:7
Excel 104:14
exception

102:10
excessively
    71:17
exchange 57:19
    65:15
exchanged
    58:22
excuse 29:21
exertion 54:11
exhibit 3:8 40:3
    40:6,12 41:20
    42:9 74:20,23
    75:4,24 81:23
    90:23 92:6,20
    93:23 94:3
    100:13,16
    103:4,8,19
    104:10,12,16
exhibits 128:9
existing 88:6
expertise 117:5
expire 109:23
expired 110:2
expires 130:12
explain 31:3
    35:21 56:23
    57:2 79:14
    100:10 123:17
    125:9
explained 27:24
    31:2 33:10
    39:4 47:10
    51:6 98:16
    126:18
explaining
    27:20 45:19
    79:23 105:19
    114:6,8 124:3
expressed 63:22
expression
    31:11 32:9
extent 106:6
Extra 9:20
eyes 75:17 77:21

**F**

face 28:14 29:5
    31:11 32:9,23
    54:21,23 63:1
    63:8 65:3
    66:14 67:6,7,9
    67:18 68:22
    70:8,13 120:5
facilitated
    121:19
facility 61:9
    69:19 110:4
fact 55:6
fair 14:18 16:13
    79:14
fall 29:9 49:23
    55:15,23
falling 28:21
    83:24
false 22:4
familiar 41:11
    41:13,14,17
family 20:3,5
    31:10,17 60:2
    116:1,24
    127:12
far 18:19 97:17
fast 40:18,19
    118:16
FAZIO 1:17
    129:1 130:10
February 1:23
    130:3
Federal 1:20 4:9
feel 6:20 25:6
    38:10 71:1,16
    110:17 114:1
    120:12
feeling 36:11
    58:15 71:8,12
    71:18
feet 48:10,12,12
    124:14 125:4
fell 24:5

felony 20:24
    21:21 22:19
felt 38:20 79:13
    120:14
female 51:5
fewer 122:21
fight 112:7
figure 49:22
    117:5
figured 36:23
    55:3 70:22
file 73:6 74:11
    79:9,24 99:14
    105:4,15
filed 24:3 40:4
    42:1 94:4,21
    95:20 127:1
files 94:6
filing 74:5,9
fill 33:14,22
    73:9 90:4
    95:23 96:5
    122:13
filled 96:1
Fillmore 12:21
    19:15
final 42:4
finally 29:12
    34:15
financial 18:15
find 64:7 79:17
    105:15 122:16
    126:15
fine 22:8 49:4
    83:12 86:5,19
    98:4 127:2
finger 117:13
fingers 71:9
    82:23
finish 10:6 21:17
    41:21 51:7
    53:19
finished 45:24
    49:12 62:10
    92:13 114:8

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 136

**first** 8:8 21:8,12
21:13 24:5
25:17 38:5
59:16 65:15
66:13 91:6
93:18,22 95:7
104:1 113:10
113:11,16,19
118:17
**fit** 119:5
**five** 13:4 30:2
60:8 84:6
115:1 118:6
**five-minute** 49:2
**floor** 61:20 66:5
**followed** 25:4
**following** 79:2
87:2
**follows** 4:16
**foot** 114:23
**foregoing**
129:11
**forget** 9:10 46:5
**forgot** 17:6
23:10
**form** 27:7 34:11
38:12 42:20
73:1 74:6,9,11
76:11 89:10,13
90:5 93:19
94:4,12 95:17
95:20,24 96:1
96:15 97:11,13
97:18,18 99:22
109:12 110:23
**formal** 6:14
**forms** 73:15
74:1 93:2,4,21
**found** 126:3
**foundation**
96:16 102:22
106:5
**four** 13:3 16:2
16:22,23 29:15
48:10,12,12

51:2 57:21
118:6 123:7,9
123:10
**fours** 51:14 54:3
**fourth** 57:12,15
**free** 6:20
**freely** 125:16
**frequent** 24:22
**Fresh** 12:4
**front** 34:20 46:8
46:9 47:8
51:19 66:4
82:3 124:6
**frozen** 52:23,24
**full** 4:20 11:3
**full-blown**
119:18
**further** 88:24
127:7,16,18
**futile** 120:1

_____
**G**
**G** 106:16
**gabapentin** 9:14
**gang** 20:22
**gasping** 67:17
**GED** 18:21 19:6
**general** 9:22
**generally** 27:4
**getting** 35:23
37:1 51:15
52:15 53:9,15
56:22 62:12
71:8 77:22
79:20 83:22
84:6,17
**giant** 124:13
**girl's** 17:13
**girls** 17:13
**give** 14:21 16:13
16:15 43:19
47:10 64:9
73:9,20 124:4
**given** 72:17
129:15

**giving** 11:3
32:21 68:16
70:7
**glad** 61:18 63:5
**glasses** 75:9,15
89:6 101:16
**go** 4:19 12:10
15:24 18:19
24:14 26:3
27:1 29:16,19
30:6,8 31:6,7
33:12 35:5
36:5,7,8 37:4,9
37:11 39:7
40:2,9,22
43:11,15 44:4
44:22 46:15
47:16 49:8
50:7 53:1
54:18,21 55:4
58:5 60:19
61:24 62:16,22
63:4 79:17
84:1,4,9,19,21
92:2,7 96:5
99:3 105:15
107:22 110:18
112:19 113:7
116:9,15
123:22,22
124:13 127:21
**God** 64:4
**goes** 93:20 94:5
**going** 5:16 6:23
8:8 11:24 16:4
24:13,15 25:8
27:1,11 28:6
30:8 31:22,24
32:7 33:11
40:2,9,15,17
41:6,17,19
44:5 45:23
46:15 47:5,11
47:16,22 49:8
51:4,10 55:3

55:20 56:1
57:1,3,14
58:22 61:3,8
68:5 69:18
70:21 72:2,3
74:19 75:22
76:3 78:22,24
80:6,8 81:23
82:10 83:13,18
85:9 86:7,10
86:19 88:4
90:1,2,8,19
91:5 92:15,20
93:2,4 94:11
94:18 98:2,22
99:7,11,12
100:12,22
101:9,11,17
102:15 103:3
103:14,24
104:9,11,12,13
105:21 106:21
107:4,11,22
108:10,20
115:24 118:19
128:9
**gonna** 16:6 17:7
28:2 29:17
30:16 33:12,13
34:1 35:3 36:7
36:12,13 37:2
46:3 47:12
50:17 54:17
60:15 64:7
67:1 68:18
101:14 105:20
114:9 122:13
122:16,16
**good** 8:7 25:6
33:24 43:21
60:8 66:7
91:14,17
112:24 114:23
**gotta** 29:21
**gotten** 30:13

86:8 100:4
**grab** 30:16
44:13 53:15
**grabbed** 47:14
50:23 52:6,7
52:16 70:19
**grabbing** 30:21
**grams** 9:4,19
**grandchildren**
15:3,9 17:23
58:10
**granddaughters**
58:8,10
**great** 7:7 8:7
11:23 35:13
36:9 97:10
127:21
**grievance** 33:14
33:23 72:4
73:1,6,7,15,22
74:5,9,11,15
74:20,21 76:17
77:6 78:16
79:7,12 80:3
122:14
**grievances**
73:19,20,21
**guaranteed** 37:5
**guards** 123:17
123:19 126:1
**guess** 9:24 28:20
35:8 37:15,16
39:16 48:11,14
63:9 70:6,8
87:21 114:24
121:16,17
124:13 126:15
**guy** 124:1
**guys** 46:22
49:18 58:13,21
112:4,7

_____
**H**
**H** 3:7
**halfway** 32:2

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 137

**hall** 31:24 32:8
47:4 50:3
**halls** 47:2,4
**hallway** 28:18
49:18 50:4,11
**hallways** 28:17
28:17
**hand** 28:24 33:8
35:7 36:10,11
36:17 46:19
47:18,19 49:18
49:24 50:24
54:16 58:17
59:2 63:17
64:3 66:2,5,11
71:9,12,20,22
71:23 73:22
77:15 80:19
82:21,22,22,24
83:13,16 84:13
84:13,14,15
85:13,18,23
86:4,16 87:8
87:11 113:10
113:11,15
119:6 120:21
120:24 121:2
122:15 125:16
125:16 130:2
**handbook** 72:7
72:10,11,13,14
72:17,18,19
**handcuff** 114:19
114:20 123:12
**handcuffed**
27:20 45:2,3
45:20,22 46:14
47:12,13,18
50:10 52:17
59:19 66:17
68:7 77:10
80:13 98:10,13
98:17,18,20
100:3,5 104:23
108:16 110:19

114:9,9 122:3
122:11 123:14
123:23 124:2
124:23 126:10
**handcuffing**
88:5
**handcuffs** 27:18
27:19 28:4,8
28:22,23 29:17
30:21 31:4,16
32:12 39:2,9
45:13,14,18
46:3,7,17 47:7
47:14 50:1,18
51:7 53:11
54:17 55:4
56:9 60:11,14
60:16 70:4,9
70:18,19 71:2
71:16 82:2
87:18,22 102:9
113:2,4,10
114:3,7,14,16
114:21 120:19
124:1,5,5,7,10
124:12,13,15
124:16 125:7,8
125:10,11
**handle** 48:4
**hands** 31:12,12
32:19,22 47:10
52:3,15,17
53:16 63:6
71:5,20,21
84:5 116:21
117:10,13,15
120:4,16,18,21
124:6,17
**handwriting**
76:13
**happen** 69:15,16
73:4 99:17
**happened** 27:5
30:12 49:19
50:14 57:16,18

58:3 59:22,24
62:8 76:24
77:1,6 79:23
95:14 105:11
122:9,18
**happening** 52:4
**happens** 61:12
**hard** 64:17,24
77:13,24
**hate** 38:15,16
**haul** 47:3
**Hayes** 33:19
80:22,23
**health** 26:9
73:24 74:5,9
88:16,23 89:10
89:13 90:4
92:16 93:1,3,6
93:18,20 94:3
94:5,12 95:16
95:20,23 96:1
96:15 97:11
**hear** 6:2,3,6
7:10 21:4 28:2
31:4 46:1,2
69:4 90:14
108:8,9
**heard** 69:10,13
89:20,22 100:3
**hearing** 104:6
**heart** 26:2,4
**heavy** 48:16,17
**height** 122:18
**held** 66:11
**help** 21:18 42:15
55:1,2,11
98:18 99:9
**helped** 55:12
**helps** 27:22
**hereto** 129:23
**hereunto** 130:1
**hey** 56:8
**high** 8:16,19 9:9
18:23
**Higher** 102:8

**highlight** 101:12
**highlighted**
109:5
**Hills** 2:3
**history** 9:12
24:14,16 38:2
38:4
**hit** 32:16
**hold** 29:17 30:22
46:11 50:18
63:17 122:7
**holding** 45:18
47:8,17,19
49:17 63:6
66:2 71:7
**Holmes** 23:12
23:15
**honest** 17:7
**hops** 52:22
**hospital** 26:4,6
99:1
**hospitalized**
25:20,23
**host** 49:5
**house** 7:14
**housed** 19:13,16
**housing** 116:16
116:17
**Huh** 13:6 19:1
20:9 21:11
67:24 69:3
80:18
**hung** 52:13
53:11
**hurry** 55:22
**hurting** 32:19
34:13 51:1
77:18 83:14,15
121:1
**hydrocodone**
9:19
**hypothetical**
110:23

_____
**I**

**ID** 3:8 90:7
**identification**
40:7 74:24
90:24 100:17
103:9 104:17
**Illinois** 1:2,19
2:3,9,15 12:23
129:3 130:2,11
**immediate**
114:12
**immediately**
33:4 36:19
116:24
**impaired** 104:6
104:6
**in-person** 123:1
123:5
**incarcerated**
19:11,21 20:3
26:15 86:5
**incarceration**
24:16,17 25:9
25:11,21
**inches** 114:24
115:1,2
**incident** 19:14
19:17,18 22:13
27:3 30:13
38:10 57:16
74:12 77:2
82:20 86:6
87:15 88:5,12
88:13 95:13,24
96:2 108:5
110:8 111:23
127:13
**incidents** 73:4
124:8
**including** 4:20
**incomplete**
110:22
**indicating** 34:22
**indirectly**
129:23
**individual** 102:4

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 138

| | | | | |
|---|---|---|---|---|
| **infirmary** 106:1 | 39:14 70:10 | **jittery** 10:3 | **Jr** 14:2 17:16 | 24:13 27:5 |
| **influence** 11:7,9 | **interactions** | **job** 39:23 | 18:13 | 34:6 35:1 37:8 |
| 11:15 | 38:6 39:12 | **Joel** 2:8 4:6 | **judges** 6:13 | 39:24 49:23 |
| **info@royalre...** | **interested** | **joel.zeid@coo...** | **July** 12:6 19:13 | 50:10 53:12 |
| 128:3,6 | 129:23 | 2:10 | 19:17 27:2 | 57:6,16 63:18 |
| **info@royalre...** | **interrupt** 34:7 | **Johnson** 1:4,15 | 30:12 38:3 | 64:13 72:3 |
| 128:8 | 83:11 88:3 | 3:2 4:4,5,14,19 | 39:13 42:2 | 84:24 92:14 |
| **information** | 98:21 | 4:22,24 5:18 | 43:9 69:6 | 102:7 118:18 |
| 128:1 | **introduce** 40:2 | 7:11 10:10 | 74:12,21 82:20 | **kinds** 8:9 |
| **informed** 35:9 | 90:19 100:12 | 11:23 12:15 | 85:16 94:13 | **knees** 51:16 |
| **inhaler** 9:5 | 103:3 | 13:15 14:2,3,4 | 95:7,8,14,17 | **knew** 67:5,5,18 |
| 67:23 68:1 | **involved** 24:11 | 14:9 15:8,10 | 95:21 96:9,11 | 68:9,15,17 |
| 69:2,6,20 | 42:18 | 17:10,12,14,15 | 96:13 97:1,1 | 116:8 120:23 |
| 70:17 71:5 | **involving** 22:4 | 17:15,22 18:20 | 97:11 101:4 | 121:11 |
| 105:24 120:11 | **iron** 28:16 47:1 | 22:18 24:13 | 108:6 123:6,15 | **know** 5:3,7,8,10 |
| **inhalers** 69:11 | **irons** 102:9 | 26:19 29:23 | 124:20 126:4 | 5:24 6:8 7:7 |
| 69:14 | **issue** 8:5 86:18 | 30:11 34:8 | 126:22 127:11 | 8:21 9:16,17 |
| **initially** 120:18 | 86:19 121:1 | 37:8,24 40:10 | 127:13 | 9:17,22,22 |
| 120:20 | **issued** 48:2 | 41:3,22 42:7 | **jump** 53:19 | 10:2,3,3,11,14 |
| **injection** 83:16 | 98:15 112:9 | 43:8 47:7 | **June** 25:14 26:3 | 10:17 12:7 |
| 84:11 85:13,17 | **issues** 86:7 88:8 | 49:12 51:10 | 83:17 93:9,16 | 14:21 16:6,8,9 |
| 85:20 86:9,11 | | 52:19 53:5,22 | 93:19 94:4,15 | 16:16 18:14 |
| **injured** 122:15 | _____ | 58:12 61:22 | 94:16,17,20,23 | 23:11 24:20 |
| **injuries** 83:3 | **J** | 62:6 64:14 | 95:2,4 | 25:6,13,24 |
| 87:14 | **J** 2:2,8 | 69:5 72:5 75:3 | **junior** 14:1 | 26:4 27:12 |
| **injury** 5:9 29:10 | **J-O-H-N-S-O-N** | 76:15 78:5 | 17:15 | 28:6,14,19 |
| 80:19,24 82:11 | 4:23 14:3,4,5 | 80:7 82:2,12 | **justy** 100:10 | 29:5,10 31:1,5 |
| 82:19,21 85:12 | **J-O-N-A-T-H...** | 83:12 84:24 | | 31:9,16 34:2 |
| 87:21 88:6 | 14:5 | 85:11 87:1 | _____ | 34:16,22 37:12 |
| 102:13 | **J-R** 14:3 | 90:17,21 91:3 | **K** | 37:15,16,22 |
| **inmate** 72:7,10 | **Jada** 17:14 | 91:22 92:5,7 | **Karen** 1:17 5:20 | 38:9,18,19,21 |
| 72:20 81:18 | 18:12 58:12 | 94:14 98:1,6 | 16:16 53:1 | 39:7,22 40:10 |
| 99:19 102:10 | **jail** 19:24 69:11 | 100:20 102:17 | 128:1,10 129:1 | 40:17 43:16 |
| 102:11 104:8 | 69:14,16 73:2 | 104:22 105:21 | 130:10 | 44:8 45:16,17 |
| **Inmate's** 78:20 | 73:8 86:7,10 | 106:17 108:8 | **keep** 29:9 69:1 | 46:3,5,19 47:5 |
| 80:7 81:5,11 | 86:13 87:3,6,7 | 111:2 112:18 | 78:10 85:5,9 | 48:4,13 49:16 |
| **inmates** 69:10 | 87:14 88:9,10 | 115:9 127:11 | 94:18 98:4 | 54:17,19,21,23 |
| 69:13,20 | 99:20 100:8 | **joke** 65:4 | 124:6 | 55:7 56:2,6 |
| 101:10 102:2,3 | 102:19 104:13 | **Jonathan** 14:4 | **kept** 28:15 31:5 | 57:4,7 58:9,16 |
| 102:8,13 | 108:13 111:17 | 15:2,7 17:12 | 39:19 49:21 | 58:18,19,22 |
| 108:11 | **Janell** 17:14 | 17:15 18:12 | 51:8 57:1,3 | 59:4,11,23 |
| **inside** 27:16 | 18:12 | 20:13 | 62:24 69:6 | 60:15 61:17,18 |
| 87:7 | **Jason** 2:14 | **journey** 17:1 | 72:18 77:19 | 62:16 63:1,8,9 |
| **instruct** 64:18 | 112:19 127:16 | 18:7 28:12 | **kids** 16:2 17:6 | 63:18,19,19 |
| **interaction** | **jdevore@dev...** | 117:21 | **kill** 26:2 | 64:3,8,16 65:3 |
| | 2:16 | | **kind** 8:15 11:24 | |

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 139

68:19 69:17
72:7 73:1,21
75:2,15,19
78:3 79:17
80:24 82:23
83:20 85:20
86:1,22,23,24
87:9,22 89:5
91:2 92:10
94:13 97:17
98:16,22 99:15
99:16,18
100:10,19
101:21 102:17
103:2,11
104:19 110:13
112:18 113:15
113:23,24
114:14,21
119:14 120:4
120:15 122:1,6
122:8,12,13
123:21 124:3
124:14 125:17
126:17,18
**knowledge**
10:20 11:14
107:10
**known** 12:2
39:17
**knows** 102:23
106:6

___

**L**

**L-A-N-E-T-T-...**
14:4
**L-A-V-E-N-S-...**
13:13
**L-A-V-I-D-A**
13:24
**L-A-Y-N-D-A**
13:22
**L4** 83:22
**laid** 33:15 64:10
84:2

**Lambardi** 35:6
**landing** 57:13
**Lane** 16:2,19,20
16:22
**Lanettra** 14:3
15:2 17:9
20:13
**laugh** 118:2,4
**laughing** 67:9
**Lavensis** 13:10
**Lavida** 13:24
14:24 18:5
20:13
**LAW** 2:2
**lawsuit** 5:17
24:2,11 27:4
127:1
**lawsuits** 24:3
**lawyers** 127:3
**leaning** 28:18
50:9
**leave** 61:6 91:16
**left** 32:12 34:5
47:18 53:23
60:4 66:9
71:22 82:22,22
83:10,13 84:13
84:14,15 85:13
87:10 99:2
113:10 120:6
120:22,24
126:15
**leg** 102:9
**legal** 6:14,16
**legs** 9:12 99:2
125:17
**let's** 30:6 46:15
58:21 62:22
77:15 85:7
113:7
**life** 38:5
**lifting** 86:20
**light** 124:6
**line** 104:1
106:23,24

107:8,8,22
108:20,24
109:2,4
**line-by-line**
41:10
**lines** 126:13
**linked** 52:5
**list** 43:12 109:9
**listed** 107:9
**listen** 10:6
**lit** 109:16
**literally** 51:14
54:2,8
**LITIGATION**
2:7
**little** 7:24 12:1
27:17 41:2
48:11 49:13
52:21 55:8
58:22 63:19
64:14 66:13
72:4 75:14
85:12 86:2
101:15,15
104:21 106:2
118:13,16,23
119:14,16
120:14,14
121:1
**live** 13:2 15:18
17:23 18:2,3,4
18:4
**lives** 18:9
**living** 7:14,16
19:19
**LLC** 2:2,13
**local** 4:10
**locate** 64:7
**located** 7:9
36:24
**location** 77:3
**locked** 85:23
**locking** 82:23
114:15
**log** 106:5

**Lombardi** 35:6
35:6 36:3
**long** 13:2,7 23:6
28:12,17 31:8
31:10 35:21
45:23 47:2,3
49:18 50:11
60:7 62:14
68:21 99:13
105:3,4,7,8
107:15 108:3
114:22
**long-distance**
39:6 45:22
**look** 29:4 33:12
54:23 56:4
61:15,16 63:23
67:6 70:7
99:15 104:14
105:6,15
106:22 115:6
116:22 117:10
118:8
**looked** 28:13
29:18 31:12
32:11 33:8
34:18 35:6
36:3 49:21
50:22 66:13
67:15,17 77:19
78:9 89:5 99:6
105:16
**looking** 32:8
45:17 46:4,4
62:24 67:8
68:8 71:5
75:14,16
106:14 107:14
**looks** 94:15,20
94:23 122:2
**loops** 52:10
**loose** 54:17
113:7
**loosen** 28:21
55:3 118:24

**lost** 84:24
**lot** 15:19 29:7
31:16 36:23
37:8 51:1 58:9
69:16,18 77:18
85:4 87:23
**lots** 47:3,4
**loudly** 5:23
39:21
**lungs** 9:13 25:8

___

**M**

**M-A-Y-S** 13:13
**mad** 59:1
**main** 121:1
**making** 19:23
42:24 56:5
**Malcolm** 19:5,7
**man** 29:21
**March** 35:12
**marked** 3:8 40:3
40:6 74:20,23
90:23 100:16
103:4,8 104:12
104:16
**married** 13:5,6
13:7
**mask** 32:3,4,5,6
32:15,15,16
44:5,7,8 45:4,6
45:7 60:21,24
61:8 62:18,20
62:21,22 63:14
64:15,18,20,21
65:13,14,17,19
66:20,20 67:7
67:20 68:2,16
68:16,19,23
70:14 77:20,23
77:23 78:3,11
120:10
**masked** 61:6,7,9
**massive** 26:1,5
**matter** 8:1 51:8
68:11 86:22

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

matters 102:20
129:9
Mays 13:10,13
mean 10:23 34:7
36:3 46:20
51:14 52:10
61:16 63:1
77:3 79:14,21
79:22,24 82:14
83:11 88:3
90:6 99:14
112:4,5 114:23
115:21 119:17
meaning 80:4
105:5
means 112:7
meant 112:6
mechanism
114:15
medical 24:14
24:15 26:12
27:21 34:11
62:15 82:13,16
87:3,12 88:11
88:14 89:17,21
90:12,20 91:9
92:6 96:7
97:18 98:15
99:5 105:3
106:1,5 109:5
117:4
medication 8:9
8:16,19,20 9:7
9:9 10:2 35:15
35:15,22,23
medications
8:13,15 9:11
9:23 10:11,18
10:24 11:1
medium 57:6
memory 10:12
10:15,18,19
mental 26:9
mentioned
22:20 24:10

25:22 53:10
84:12 87:1
91:15 104:22
105:2,2,13
metallic 49:19
method 68:10
68:23
Michael 17:10
18:9
middle 4:20
16:20 36:17
Mikhail 36:21
milligrams 8:21
9:2,3,7,13,14
9:19,20
mind 14:8 76:15
77:5 105:18
mine 21:11
69:24 112:14
minor 127:9
minutes 29:22
30:3 31:18
32:24 60:9
91:17
misdemeanor
22:4
mobility 27:22
29:9 45:20
98:19 99:10
moderator 49:5
moment 7:16
51:11 53:2
84:20
money 19:23
Monroe 2:14
month 35:8
93:19 95:21
97:1
months 83:16
morning 33:16
motivation
116:4
mouse 75:7 81:8
81:9 93:11
101:12,13

105:23 107:13
107:16
move 107:11
moved 102:13
movement
81:20 99:19
100:4,8,11
101:10 102:4
moving 76:21
98:5 118:20
municipal 1:12
mute 49:6,7
91:20,21 115:9

## N

N 3:1
name 4:6,20,20
5:7,8 13:9 17:2
17:3,3,10,13
18:1 23:10,11
33:18,20,21
35:5 36:21
43:12 44:18
64:5 77:4 89:2
89:4 90:6
98:24 109:5
121:7
named 16:2,24
18:12 37:24
names 12:2
13:17 15:17,21
15:22 16:7,8,9
16:10,13 17:5
17:7 56:2,4
narrative 27:8
76:17,19
near 26:7
necessary 58:19
need 5:23 6:7
8:6 29:22 30:5
30:18 47:15,16
52:21 67:1,20
68:19 75:8,15
75:18,20 85:4
86:2 101:20,22

105:4 112:10
112:13 127:23
needed 9:6 35:9
69:23,24 70:21
110:5 112:14
123:22
needs 110:14
neglect 83:21
nerve 9:15 36:12
36:23
nerves 9:16,17
37:3
never 11:11
20:23 25:8
27:23 36:8
38:4 48:21
54:4 59:15
65:18 69:23
72:14,17 80:12
81:2 86:15
89:20 110:5,6
113:7
new 16:7
nice 89:7
nickname 12:4
nicknames 12:3
nifedipine 9:7
night 9:8
nine 91:6
Nope 127:18
normal 9:20
114:21
Northern 1:2
4:11
Notary 1:17
129:2 130:11
note 122:12
noted 80:2
notes 115:6
notice 117:1
noticed 36:24
number 12:8
75:6,11 90:7
numbers 109:9
numbness 71:10

nurse 33:9,9
64:9,9 88:20
88:21 89:2,16
89:17
nurses 112:11

## O

o'clock 43:18
oath 5:19
object 14:11
15:12 27:7
38:12 96:16
97:13 109:12
objecting 23:20
objection 14:19
23:18,19 42:20
96:19 97:5
99:22 101:6
102:22 106:4
110:22,23
111:4,11,18,24
112:1
objects 108:12
obligation 6:16
observe 59:11
obvious 67:14
67:16
obviously 7:7,12
38:9
occasionally
24:19
occasions
123:11 125:2
occurred 82:20
89:9 108:5
office 2:7 130:2
officer 1:11
27:14,15,16
31:6,20 32:13
33:1,2,3,12
34:1 36:2 38:1
38:10 44:13,19
44:24 45:11
54:14 55:13
56:8,15,19

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 141

| | | | | |
|---|---|---|---|---|
| 58:4 60:3,6 | 43:6,21 44:12 | 120:12 121:9 | **P** 4:4 | **people** 43:11 |
| 62:11,11,19 | 44:16,20 45:1 | 121:14,19,22 | **P-R-E-S-T-O-N** | 55:12 |
| 63:13,22,22 | 45:4,10,14 | 122:18 123:1,8 | 4:23 14:2 | **percent** 37:4 |
| 64:6,14 65:23 | 47:20,22 48:7 | 124:19 125:2 | **p.m** 109:21 | **perfect** 4:24 6:3 |
| 66:22 67:22,24 | 48:20 49:1 | 126:6,12,20 | 115:16 128:11 | 40:15 92:13 |
| 68:7 70:3 73:5 | 50:9 51:18,21 | 127:5 128:4 | **pace** 118:20 | 102:15 |
| 77:9,14 80:14 | 51:24 53:20 | **old** 14:8 63:1,8 | **page** 40:21,22 | **perfectly** 127:2 |
| 80:20 100:10 | 54:2,5,14 | **oldest** 16:19,22 | 41:7,21 42:5,9 | **period** 39:14 |
| 105:6 113:3 | 56:16 57:14 | 16:23 17:8 | 76:4,6,8 78:23 | **permission** |
| 114:2 120:17 | 58:6,13 60:24 | **oldests'** 14:15 | 92:17,19,21 | 70:22 |
| 121:7,7,17 | 71:16 72:4,6 | **once** 9:7,8 22:17 | 93:22 95:10 | **person** 110:13 |
| 122:16 126:3,7 | 72:22 73:1 | 24:23 30:23 | 97:1 103:18,24 | 110:15 112:16 |
| **officer's** 33:20 | 74:11,19 75:3 | 36:22 44:22 | **pages** 91:6 | **personal** 7:24 |
| 33:21 77:4 | 75:5,19,20 | 45:10,24 61:6 | 100:23 103:16 | 129:13 |
| **officers** 55:13,18 | 76:1,2,5,9,11 | 66:11 70:5,17 | **pain** 8:16 9:15 | **personnel** |
| 55:19 56:3,13 | 76:13,15,23 | 70:19 73:11 | 9:18 26:11 | 116:19 121:4 |
| 56:17 59:23 | 77:5,7 78:1,8 | 89:24 98:14 | 29:6,7 31:16 | **pertaining** 1:22 |
| 60:10 64:5 | 78:16,19,24 | 115:19 120:6 | 35:14,14,15,23 | **Phone** 2:4,9,15 |
| 114:11 122:3 | 79:1,6,9 80:10 | 120:22 | 36:9,12 38:24 | **phonetic** 36:22 |
| 123:24 | 80:11,12 82:7 | **ones** 18:1,4 | 59:12,13 71:3 | **physical** 102:11 |
| **OFFICES** 2:2 | 82:10,19 83:9 | 20:10 | 71:8 77:18 | 104:5 |
| **official** 1:9 | 87:8 88:11 | **ongoing** 26:11 | 83:4 84:7 | **physician** 27:21 |
| **oh** 64:3 122:1 | 89:12,18 90:11 | **opened** 27:14 | 86:20 87:24 | 91:10 |
| **okay** 5:16 6:1,2 | 91:3,4,12 92:9 | 32:14 44:23 | 90:2 120:18,20 | **pick** 31:20 59:24 |
| 6:4,11,12,13 | 92:12,13,19 | **ordeal** 117:24 | 125:14 | 60:4 84:6 |
| 6:19,22 7:2,4 | 93:16,18 94:1 | **order** 64:22 | **pandemic** | 86:21 |
| 7:15,18,23 8:1 | 94:11,14,18 | 127:21 | 122:22,23 | **picked** 60:6 |
| 8:2,7,7,12 9:1 | 95:4,10,13,16 | **orders** 25:4 | **paragraph** | **pieces** 37:9 |
| 9:22 10:22 | 95:23 96:4,13 | 107:5 | 101:11,24 | **placed** 124:11 |
| 11:6,19,23 | 97:10 98:3 | **original** 81:20 | **paraplegic** | **places** 36:15 |
| 12:10 13:2,7 | 101:3,9,14 | 121:17 | 104:7 | **plaintiff** 1:5 2:5 |
| 13:22 14:10,14 | 102:7 103:3,20 | **Orr** 33:1 63:22 | **Parcell** 33:5,16 | 4:13 98:8 |
| 14:23 15:3,19 | 103:24 104:5,9 | 80:20 121:8,14 | 80:23 121:22 | **Plaintiff's** |
| 16:1,12,17 | 104:19 105:10 | 126:6 | 126:12 | 104:12 |
| 18:19 19:4,10 | 106:14,21,23 | **outcome** 68:16 | **park** 31:9 | **please** 13:12 |
| 19:23 20:2,21 | 107:8,11,16,19 | 68:17 129:24 | **part** 30:13 | 38:2 49:3 |
| 21:10,15 22:3 | 107:22 108:5,8 | **Outpatient** | 112:20 116:4 | 111:23 115:10 |
| 22:15,22 23:23 | 108:10,15,19 | 92:22 93:2,21 | **participated** 5:1 | **pocket** 69:8 |
| 24:8,13,20 | 109:7,19,22 | 94:6 95:10 | **particular** 20:10 | 70:20 |
| 25:5,15 26:11 | 110:10 111:9 | 97:2 | **parties** 129:22 | **point** 6:8 38:20 |
| 27:1 30:3,4 | 111:16 112:3 | **outside** 27:15 | **parts** 69:20 | 44:10 45:1,5 |
| 37:23 40:11,18 | 113:14 114:18 | 29:15 50:7 | **pass** 112:20 | 46:8,22 48:18 |
| 40:19,20 41:1 | 115:23 116:21 | 56:20 122:24 | **passed** 88:10 | 65:6 68:6,9 |
| 41:4,8,13,19 | 117:17 119:2,7 | | **pause** 118:8 | 70:4 75:19 |
| 42:1,4,12,15 | 119:12 120:7 | **P** | **pauses** 118:23 | 79:18 84:9 |

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 142

101:21,22
119:24 121:3
123:1 124:19
**pointing** 34:24
**pole** 50:24
**policies** 125:19
**policy** 98:9
  99:18 100:7,14
  101:10 102:14
  102:17 103:5
  104:1 125:24
**pose** 21:3
**posed** 10:6
**posing** 10:6
**possible** 123:2
**post** 39:16 52:8
**pound** 48:14,15
**pounds** 12:18
  84:6
**pouring** 67:6
  70:13
**practically**
  50:23 54:6,9
**practice** 98:9
**PRADOS** 2:2
  3:5 10:5 14:11
  15:12 21:3,16
  23:18 27:7
  29:24 38:12
  42:20 49:2,5
  52:23 53:18
  61:24 69:4
  84:18,22 85:2
  85:7 91:19
  96:16 97:5,13
  99:22 101:6
  102:22 106:4
  109:12 110:22
  111:4,11,18,24
  115:4,9,14
  127:5,20,24
  128:4,6
**preclude** 104:7
**prefer** 14:14
  85:5

**Pregnant**
  102:13
**prejudiced**
  38:20
**preparation**
  42:18
**prepare** 5:21
  26:18
**prescribed**
  35:16
**prescription**
  35:14
**prescriptions**
  99:7
**present** 5:19
  6:14 121:6
**presently** 20:21
**pressure** 8:17
  9:6 28:19 50:1
  51:1 53:15
  71:18,23 87:20
  124:16
**Preston** 4:22
  14:2
**pretty** 25:6
**prevent** 11:2,20
  74:8
**prevented** 28:20
**previous** 117:17
  129:6
**previously** 87:1
  104:22 108:15
**prior** 12:19
  24:16,17 25:9
  25:11,20 38:3
  38:6,8 43:23
  62:12 85:16
  86:6,7 100:24
  103:21 123:5,5
  123:14 124:19
  126:22
**probably** 37:17
  37:18 48:21
  91:14 123:9
**problem** 85:19

86:3
**problems**
  126:21
**procedure** 1:21
  4:9,10 99:10
  102:10,11
**procedures** 79:3
**proceed** 30:23
  31:19 32:7
  33:19 56:21
  58:4 60:19
  63:17 113:17
**proceeded** 28:4
  30:20 31:7,15
  31:24 39:5
  44:22 52:14
  84:4 123:22
**proceeding** 6:14
  47:2,4
**proceedings**
  129:15
**process** 72:4
  73:7 118:13
  119:19
**professional**
  87:4,12 88:12
  88:14
**promulgated**
  125:20
**pronounce** 17:2
  17:5
**proof** 80:20
**Prunell** 80:20
**Public** 1:17
  129:2 130:11
**puffs** 120:10
**puffy** 117:10,12
  117:12
**pull** 51:16,18
  53:12,14 54:11
  77:22 78:11
  90:21 92:8
  98:2 104:11
**pulled** 27:17,19
  32:14 50:24

52:8 62:18
  63:14 65:13
  120:10
**pulling** 51:1,24
  52:18
**pump** 9:3,4
  32:16 71:4
**pumps** 63:15
**purpose** 67:10
**pursuant** 1:20
**push** 86:17,18
**pushing** 121:3
**put** 28:4,24 32:6
  34:11 39:9
  40:9 45:7,14
  46:3,6,7,12,18
  47:7,14 52:5,9
  54:16 62:22
  64:18,20,21
  68:3 77:1
  88:14,16,23
  89:9,12,17
  90:6 96:18
  97:16 99:14
  101:12 113:9
  113:15,19
  114:7 120:4
  124:5,7,16
**putting** 32:18
  50:1 71:23
  113:1 114:3

**Q**

**question** 6:9 8:4
  8:8 10:6,7,9
  14:20 21:3,17
  52:20 53:19
  61:11 69:4
  86:6 96:22
  106:7
**questions** 5:17
  6:20,24 7:4,24
  11:4 24:15
  47:23 72:2
  76:1 82:11

91:7,13 93:4
  96:20 97:20
  98:1 106:7
  112:18,19
  113:1 115:4,16
  127:16
**quick** 29:24 49:2
  62:1 84:20
  126:16
**quickly** 75:24
**quit** 25:3

**R**

R-O-B-E-N-S-...
  13:23 14:1
**racist** 38:21
**RADUNSKY**
  2:13
**rage** 39:21
**railing** 29:18
  51:21,23 52:1
  52:16 53:12,16
  53:22 54:12
  57:20
**railings** 53:16
**raised** 38:15
  70:5
**ran** 36:22 120:7
  120:9
**Ranking** 109:8
**read** 41:9,11,17
  72:18,18 73:11
  75:6 78:6,24
  80:8 100:10
  101:11,22
  104:1
**reading** 76:15
  77:5,24
**ready** 36:4
  40:23
**reaggravated**
  87:20,21 88:5
**real** 46:6 62:18
  63:20 75:24
  89:7 117:14

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 143

122:3 124:6
126:16
**really** 8:5 32:21
58:23,24 59:7
63:2 67:10,10
80:5 99:21
103:2
**reason** 28:1 64:4
69:24 73:13
77:3 82:12,15
82:17 87:11
112:15
**rebother** 84:16
**rebothering**
85:14
**recall** 113:9
**receive** 74:14
**receiving** 9:18
**recess** 30:7
49:10 92:1
115:11
**recognize** 76:11
**reconvene** 115:6
**record** 4:3,21
5:21 12:10,13
22:9 30:6,9
37:12 49:9
53:1,4,6 61:24
62:4,6 76:16
78:24 84:19,21
92:3 115:15
127:10 129:14
**records** 82:13
82:16 90:20
92:6 96:8,17
**recovering**
86:10
**recuffed** 71:14
**red** 32:20 33:7
58:18 116:23
117:14,15
**redid** 110:3
**reduced** 129:13
**reevaluated**
110:2

**reflect** 4:3
**reflux** 8:19 9:1
**regard** 125:20
**regarding** 74:12
99:18 102:18
**regards** 95:11
**regular** 35:24
**reissued** 110:2
**related** 5:17
**relation** 113:1
**relative** 129:20
129:21
**relevance** 14:11
14:14 15:12
23:18 111:11
111:24
**relief** 32:22
**remark** 55:8
56:6
**remember**
14:15,20 15:21
17:3 23:8,13
74:17 89:2,4
92:5 98:24
113:12,13,16
113:21
**remind** 53:18
**remotely** 4:16
7:19 129:18
**remove** 118:24
**removed** 48:22
120:19
**removes** 70:4
**rent** 12:24 13:1
**repeat** 57:10
96:22
**repeatedly**
123:17
**rephrase** 6:21
8:6
**replied** 59:15
119:5 126:14
**replying** 105:12
**reported** 129:12
**reporter** 1:19

4:12 5:19,20
6:5 13:11,19
16:3 21:18
90:13 127:23
128:2,7 129:4
**represent** 4:6
**represented**
42:12
**request** 73:19,24
74:5,9 80:7
89:10,13 90:5
90:7 92:17
93:1,3,6,8,19
93:21 94:4,6
94:12 95:17,20
95:24 96:1,15
97:11,17,18
105:5
**requested** 25:3
33:4,13,22
34:10
**requests** 74:2
119:3
**required** 45:21
98:10
**requiring** 100:4
**rescue** 9:5
**respect** 106:5
**respectively**
8:24
**response** 73:10
73:11,12 74:14
76:9 78:23
79:5,13,22
80:4 81:3,18
81:20
**restrained** 81:20
102:3
**restraining**
125:21
**restraint** 102:12
**restraints** 82:7
102:14,18
103:6 104:2,7
108:13

**result** 82:20
87:14
**return** 116:9
**review** 26:23
78:16 91:8
**reviewing** 92:14
112:11
**Richard** 2:8
42:10,13
**rid** 36:12,13
**ridiculous** 55:15
**right** 4:3 6:2,3
7:12,23 11:16
11:16,23 17:18
22:14 27:1
33:6 34:21
35:2,2,3 40:10
41:6 45:15,16
47:18,19 49:17
49:24 53:23
54:1 57:17
66:2,9 68:1
70:24 71:10,13
72:1 73:5
75:20 76:19
77:15 78:14
81:14,16 84:13
85:18 86:8
90:19 91:10
93:23 94:9
95:8,11 96:12
97:3,20,23
100:8 101:1,18
101:19,20
106:16 107:1,4
107:9,12 109:7
109:8,11,24
113:10 114:21
116:10 117:13
117:20 118:21
118:22 119:19
120:21 121:2
122:19 124:11
124:18,18
125:7 126:21

127:2,14
**right-handed**
47:20,21
**RIGHTS/TO...**
2:7
**risk** 102:8
**Robenson** 13:18
13:23,24,24
**rode** 61:19
**roll** 72:15,16
**rolled** 66:5
**rolling** 85:6
**room** 7:8,12,14
7:16 37:14,21
**routine** 31:22
**rubber** 48:18,20
**rude** 31:23
38:22 39:10
63:7
**rule** 31:5 51:8
56:24 57:1,2
**rules** 1:20 4:9,10
72:11
**run** 37:1,8 83:7
**running** 34:6
68:22

_____

**S**

**S** 3:7
**safety** 79:2,15
79:16,21 80:15
102:20
**saw** 88:19,21
94:8 121:10
**saying** 28:1
58:18 61:2
72:23 78:2
105:10,12
122:11
**says** 79:4 81:4
81:10 92:16,22
93:14,16 102:1
102:2 104:5
106:19,24
107:12,19

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 144

108:1,3,21
109:8,20 127:1
scene 121:5
schedule 116:12
scheduled 43:10
83:19
school 18:19,22
18:23
screen 7:21
40:10 49:8
75:2 91:3,4
92:11 94:8
100:19,21
102:16 104:10
screwed 117:6
scroll 40:15,24
41:4,5,5,19
75:22 76:3
78:22 91:5
92:20 93:3
94:11 100:22
101:9,20
103:14,15,24
107:4 108:20
scrolling 93:12
94:18,23
second 12:11
22:19 62:1
70:9 75:3,11
119:4
seconds 70:7
section 76:17,18
76:19,20
security 12:7
79:3 102:4
see 34:15,15,22
35:20 36:2
39:1,7 40:11
40:12,14,17
41:15,20 42:6
42:10 46:2
52:21,23,24
55:19 56:10
59:8 62:1
63:24 75:2,14

75:16,23 76:21
76:24 77:9,16
77:21 81:4,8,9
81:10 84:4
88:11,13 89:24
90:1,7 91:2,4
92:10,12,16,22
93:5,8,10,10
93:13,15 94:13
95:9,16 96:5,7
96:10 97:8,16
100:19,21
101:13,15
103:11,13,15
104:19,20
105:22,23
106:1,2,10,16
106:19,22
107:2,5,6,10
107:12,14,16
107:18,19
108:19,20,22
108:23 109:1,2
109:15 121:12
122:10,11,14
seeing 34:17
38:5 75:4,5
83:1 97:22
109:15
seek 26:12
seen 30:24 31:11
31:12 32:21
34:16,19 51:5
60:17 67:5,6,7
69:15,15,20,22
69:22 70:13
72:8,9 100:24
103:21 105:16
105:18 111:9
111:16 112:3,9
112:12 121:14
121:15 125:22
send 35:3 128:9
sensation 86:3
sense 55:16

79:22
sent 35:7 36:3
36:20 37:5
sergeant 33:5,16
51:5 56:22
80:23
series 5:17
serious 10:4
102:13
service 73:24
74:5 88:17,23
89:10,13 90:4
92:16 93:1,3,6
93:19,21 94:4
94:5,12 95:17
95:20,24 96:15
97:11
Services 81:19
set 109:23
124:10,12
130:1
seven 60:9
shackled 82:4
Shakira 17:1
18:6
Shaleeka 16:24
18:6
Shaneeka 16:24
18:6
sharing 14:8
37:7 39:24
42:19 49:8
81:23 102:15
104:9
sheets 72:17
sheriff 1:7 2:11
4:7 125:20
shift 72:3
shirt 31:1 56:21
57:24
short 52:7 78:12
118:10
Shorthand 1:19
129:3
show 33:19 42:4

74:19 105:21
110:12 116:1
showed 33:2,6
34:18 55:16
64:2 70:24
89:16 90:1
96:8,9,11
122:1
showing 92:6
109:15,16
shown 96:24
125:19
side 9:23 10:24
53:23 54:1
118:21,22
signature 42:6
78:19,20
signed 42:10
simple 55:6
single 113:20,22
Singulair 9:3,8
10:2
sink 120:22
sir 7:6,17 16:3
20:1 42:14
sit 43:3 60:3
site 29:14
sitting 34:13
44:1
situation 33:10
38:24 39:21
59:2,7 64:12
105:11
slight 85:19
sling 86:18
slip 34:11 88:15
88:17,24 89:18
89:21 96:6
slipped 25:17
slot 74:3
slow 118:19,20
118:20
slowly 40:16
66:10
slumlord 24:6

small 55:24
63:16
smile 29:5 54:20
63:2,8 65:3
70:8 117:19
120:5
smiled 32:12
smiling 62:24
68:9 117:23
smirk 28:13
63:1,8 66:13
67:9 70:8
119:9 120:5
smirking 68:8
117:18
smirky 54:20
smoke 25:7,7
smoked 11:17
24:21 25:8
soaking 32:16
66:21 68:17
social 12:7 73:10
somebody 37:12
somewhat 85:17
son 15:1,1 17:4
17:10,12 18:8
18:9,11
sorry 7:11 13:23
16:3 22:7,10
22:18,22 83:10
84:24 88:16
90:13 98:3,21
122:9
sort 10:3
sound 6:11
78:14 91:17
sounds 6:1 8:7
88:4
speak 89:13,15
121:13
special 117:4
124:10,12
specialist 35:5
36:21 83:1
specified 129:18

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 145

spell 4:21 13:11
13:19 16:4,7
16:10
spent 87:13
splint 86:11,14
87:9
spoke 57:24
89:3
spouses 13:9
spreadsheet
104:14
Springfield 18:4
squeeze 86:21
squeezing 28:9
squirted 70:21
Staff 79:2
stage 119:15
stages 118:10
119:15
stair 51:19 57:9
57:12,13,16
stairs 24:5 29:16
29:19,20 30:14
30:15,17,20,22
30:23 31:22,23
50:5,6,7,12,15
50:16,19,20,22
51:2,3,11,12
51:22 52:7,14
52:16 53:9,13
53:17,24 54:3
54:18,20,21,22
55:3,5,5,9,11
55:20,24 56:10
56:15,18 57:4
57:5,6,8,11,12
57:15,19,20,21
57:23
stand 43:3
standing 45:13
106:4
stands 81:21
staples 84:2
start 41:7,21
44:17 76:22

78:9 92:15
101:23 102:1
108:10
started 7:5
28:18 32:18
66:19 71:6
83:14,15 84:3
118:19
starting 82:22
84:15,16
starts 93:2 94:3
103:15
state 1:18,20
4:19 105:19
127:13 129:3,4
STATE'S 2:7
stated 79:15
108:15
statement 22:5
126:9,24
States 1:1,21
status 122:10
stay 18:13 60:5
stayed 13:3
stenographica...
129:12
steps 29:3,4,15
57:7,8 62:23
118:16,17
sting 120:15
stinging 63:19
stitches 36:4,7
stood 67:8
stop 49:8 74:4
78:9 81:23
83:18 102:15
104:9
stopped 31:2
35:20 50:16
51:6 63:18
77:19 85:22
storming 39:19
straight 63:14
71:6
Street 2:14

12:21 19:15
Strength 9:21
stretch 41:1
strike 15:4 22:6
22:8
Stroger 71:11
Stroger's 35:5
37:2
struggle 29:19
30:20 52:14
struggled 11:12
31:23 66:10
struggling 32:8
34:13 36:18
47:16 55:17
56:10 66:6
125:14
stumbled 28:12
49:20 118:18
118:18
stumbling 28:10
subject 58:20
93:6 94:6
subjects 97:2
104:2
submit 90:9,10
submitting
78:17
substitute
121:16
sudden 35:17
suffer 35:22
83:2
suffered 77:17
suffering 70:11
70:12 77:15
suggest 106:8
114:4
Suite 2:3,14
suits 24:10
summer 122:19
Sunday 77:7
Superintendant
80:21
superintendent

33:18 80:23
supervisor
30:24 33:4,5
64:1,1,2
121:13
support 15:6
18:15
supposed 9:15
35:18,22 39:22
46:13 73:22
104:24 105:6
124:2
sure 37:13,20
40:16 41:10,15
64:8 80:15
91:8 100:2
112:19 122:17
surgeon 71:11
83:8
surgery 25:10
25:21 35:9,11
37:3,5 83:20
88:2
surprising 126:4
sweat 67:6,17
68:22 70:13
sweating 29:6
32:3 62:17
77:20 78:10
swelling 32:20
33:7 34:14,21
36:7,8 37:4
83:5 87:23
90:2 117:11
121:12
switches 97:2
switching
123:24
swollen 31:13
34:19 58:17
63:20 71:4
84:16 116:23
120:23 121:2
121:12
sworn 4:2,13,15

129:8

────────

T

T 3:7
table 60:6
take 6:7,8 8:9
9:5,8,9,13
28:19 29:24
30:1,2 33:10
35:18 49:2
50:17 54:17,18
55:4 56:9 61:8
63:7 66:12
67:1 70:6
75:12,13 84:18
84:18 85:2
91:14 104:10
117:4 120:1
taken 1:16,20
11:2 43:8,14
43:24 44:8,12
44:16 45:8
69:23 129:17
talk 20:2,5,14
26:21 31:17
39:11 58:13,14
59:6 119:12
120:17
talked 20:6,11
20:11,12 42:23
57:24 91:22
119:16
talking 39:20
46:16 53:8
59:1 62:7
85:12 90:14
tall 12:15 48:9
57:4,5 89:6
tattoos 20:19
tell 6:5,16,24 8:5
10:23 36:10
38:2 40:23
43:22 46:17
58:21 59:10,23
64:16 66:22

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 146

67:4,13 68:14
75:10 78:6
80:9 102:21
106:22 107:23
117:7,8
**telling** 30:11
45:24 46:13,16
55:9 113:18
**tells** 32:6
**ten** 91:17
**ten-minute** 85:7
115:5
**Terianna** 16:2,8
16:19
**terms** 121:4
**testified** 4:16
22:15,23 23:2
23:5,7 24:9
115:18 126:20
**testify** 23:3,4
129:8
**testifying** 6:15
11:20
**testimony**
117:18 129:14
**tests** 35:4,8
36:22 37:1
83:7
**texting** 7:21
**Thank** 37:7
91:19 127:19
127:20
**Thanks** 62:2
**thats** 43:12
**therapy** 37:6
83:6,19 84:1,4
**thing** 24:22
32:23 37:17,19
39:20 41:16
62:16,23 66:7
80:1 83:21
91:8 109:14,16
**things** 69:16
73:18 85:6
86:21

**think** 5:4,5
35:11 52:19
60:7 61:22
75:8 77:3
80:16 82:15,17
83:17 88:19
91:14 112:17
115:20 119:24
**thinking** 11:20
54:16
**third** 16:21
61:20 66:5
**Thomas** 1:8
2:11 4:7
**thought** 23:5
26:4 29:16
30:15 50:17
126:7
**threat** 79:19,19
80:15 110:14
110:16,17,18
**threaten** 74:8
**three** 17:6,13
24:4 26:5
29:11 36:15
48:12 57:8,11
57:12,15 115:1
115:1 123:7
**throbbing** 71:3
120:22,23
**thumb** 5:2
36:16 117:13
**tier** 27:16 31:24
32:8,11,13,17
39:16 43:10
44:18 45:8
60:18 61:3,6,7
62:14 63:6,13
64:10 66:7,9
66:11,18 67:2
68:4 70:3,5
73:6 77:2 89:9
120:17 121:7
121:17
**tight** 28:5,22,23

39:2 46:6,12
46:16,18 71:17
87:18 113:8,18
114:16 119:4,5
122:3
**time** 6:6 15:6
19:14,17,18
23:6,6 38:5
39:11 43:12,14
43:17,20,23
44:21 52:22
53:5,14 59:17
59:19,21 60:11
63:16 64:17
65:15 66:18
67:2 72:15
73:18,21 77:13
77:24 86:9,23
87:3,14 91:14
109:17 110:1,3
110:8,9,18
112:10 114:3
114:10 115:15
119:5 121:16
121:16 129:18
**times** 29:11
32:17 44:11
49:20 73:23
118:4,6
**Tinasia** 16:8,20
**Tineea** 16:20
**tingling** 71:10
**titled** 105:22
**today** 7:8,18,19
8:13 11:2,21
12:18 28:3
43:3 47:12
48:23 71:10
77:13 83:3
103:22 105:20
114:9 115:18
117:18 126:20
**today's** 26:19
**told** 27:21 28:5
28:6,7 29:1,6

29:18 30:18
31:6,13 33:11
33:23 37:2
46:6,19 47:9
47:13 50:21
54:19 59:13
60:1,14 63:23
64:6,6,20,23
65:6 66:24
67:19 68:2,18
73:22 77:10,16
77:17 85:24
86:13 87:17
89:16 96:2
98:14,22 100:2
**tooken** 87:9
110:5,6
**top** 28:9 34:20
36:15 48:8
51:2 56:18
57:9,13,23
71:20,22,22
75:7 92:15,17
103:14
**total** 103:17
**track** 34:1
**tramadol** 35:24
**transcript** 5:23
129:11
**transplant**
83:24 84:1
**treated** 38:17,22
70:23 73:5
80:6 86:4,15
86:22
**treatment** 26:8
88:24 89:8
**tremendous**
84:7
**tried** 31:2 56:22
**trip** 47:2
**triple** 83:21
**tripping** 118:18
**trouble** 65:17,18
84:7,8

**true** 41:22 43:6
46:20 59:16
129:14
**truth** 6:16 129:8
**truthful** 11:3
16:9
**truthfully** 11:21
**try** 15:20 28:19
35:20 36:13
39:1 56:23
62:1 74:1,4
78:5,5 126:15
**trying** 31:14,17
41:1 46:2,2
50:1 56:15
58:14,20 59:4
71:24 75:17
**Tucker** 16:24
17:1,1
**tunnel** 35:10
85:19 87:2,13
87:19 118:5
**turn** 27:2 29:4
**turned** 28:14
33:7 46:17
49:21 50:17
58:18 77:19
78:10
**turning** 62:24
**turns** 47:3
**TV** 44:2
**Twenty** 85:4
**twice** 9:4,6
28:13 119:1
**twins** 17:5
**two** 9:10 13:8
17:5 20:12
24:4 32:16
33:9 52:15
55:21,21 56:3
56:17 57:2
58:8,10 63:15
64:9 70:9
83:15 89:23
100:23 120:10

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 147

125:4
**Tylenol** 9:20
33:9 35:17
36:1 64:9
88:22
**type** 32:10
126:16
**typewriting**
129:13

**U**

**uh-huh** 5:24
49:15 76:7
93:24 106:20
108:4
**uhn-uhn** 5:24
108:4
**unable** 91:21
**uncontrollable**
9:17
**undergone** 26:8
**understand** 6:17
6:19,23 7:18
73:7 101:17
112:5
**understanding**
96:17 116:19
125:24
**unhandcuff**
30:16
**unhandcuffed**
63:10 66:14
**unhandcuffs**
67:11
**unit** 62:15 98:15
99:5
**United** 1:1,21
**unloose** 29:17
**upset** 39:15,21
58:23 59:3,7
59:18 61:17
64:11
**urge** 21:16
**use** 16:17 48:16
48:17 52:15
54:11 57:20

67:23 68:1
69:20 70:17
84:9 98:7
102:14,18
103:6 104:2,7
110:15 111:9
111:16 112:15

**V**

**v** 4:5 5:18
**vein** 121:3
**veins** 34:20
**Ventolin** 9:5
**verbally** 54:24
55:2
**verify** 15:23
**video** 112:11
**videoconference**
1:16 2:1
**violent** 112:16
**visit** 27:12,13
30:19,24 31:7
31:7,14,15,18
31:19 35:18
43:24 44:13,17
44:21 58:4,5,6
59:5,14,20,22
60:1,22 61:1,2
61:10 62:8,10
77:8 80:6
115:24 116:2,5
123:24
**visitation** 43:9
43:15 46:23
47:6 65:16
98:11 108:17
**visited** 127:12
**visiting** 29:14
43:12 77:7
105:8 116:22
121:20
**visitor** 43:13
**visitors** 29:13
116:7
**visits** 43:11

122:21,23,24
123:2,4,5
**visually** 104:6
**voice** 6:2
**vs-** 1:6

**W**

**waist** 48:11,12
**wait** 34:11 35:4
36:5 52:21
60:3 73:10
88:14 89:19
116:8
**waited** 31:20
**waiting** 27:12
31:10 34:14
62:11 66:12
77:8 83:6
**waive** 127:20
**walk** 27:5 28:7
31:8 46:10,23
49:18,23 50:2
50:19 59:14
62:12,14 71:21
71:24 80:14
108:12 122:4
125:10
**walked** 44:11
50:20,20 55:8
55:12,13,21,21
56:5,20 60:19
63:6,11,12,16
66:10 122:7,10
**walker** 2:3
84:10
**walking** 28:8,15
29:8 31:5
49:22 50:3,10
51:9 53:23
62:17 65:12
68:20 77:13,20
78:10 84:8
113:17 118:10
118:15,15
125:15,16

**walks** 66:14
67:12
**wall** 28:18 49:24
50:2,10 66:4
118:20,21
**want** 8:2 15:20
27:4 28:2
30:19 31:4
37:11,13 39:18
41:9,10 46:1
59:6 62:9
64:13 91:7,16
98:4 116:5
**wanted** 37:20
41:15 56:6
127:12
**warfarin** 9:11
**washroom** 71:6
**wasn't** 26:5
28:20 32:21
35:16 36:4
38:15,19 46:2
48:17 51:15
57:5 58:24
60:15,16 67:11
68:2 70:21
73:20 79:13,19
80:4 82:6
83:17 84:1
85:21 86:3,17
86:20,22 87:8
87:11 98:19
105:18 110:16
113:22 114:1
118:15 122:23
**watched** 54:22
**watching** 44:2
**water** 32:18
63:18 71:7
120:7,9,12,16
**waved** 60:18
**way** 28:8 30:18
31:8 38:17,17
38:21,23 39:2
40:19 41:19

49:23 50:21
51:4 54:20
55:9 61:4,5,14
63:3 67:20
70:23 77:16,17
93:20 94:5
103:16 113:4
118:7,7,17
122:4
**we'll** 30:2,3 37:9
85:9 91:24
92:2 106:11
127:21
**we're** 5:11 7:7
7:12 24:13
30:8 53:6 62:6
91:16 115:12
115:15
**weapon** 110:11
110:15,20
111:3,10,17
112:15
**weapons** 69:21
**weather** 68:22
**weed** 11:11,16
11:17
**week** 34:12
35:19 36:6
89:23
**weeks** 89:23
**weigh** 12:17,18
**weighed** 48:13
**welcome** 41:11
**went** 19:5,5
27:13,16 28:10
28:11,16 31:7
32:17 33:1
34:16 36:2,20
37:12 47:1
49:14 63:3,14
63:21,21 64:10
66:3 71:6
72:14 73:18
77:8 83:6
89:24 98:19

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

Page 148

99:4 112:4,6
112:11 120:17
122:7 123:20
126:15
**weren't** 21:11
116:15
**West** 2:14 12:21
19:15
**wet** 32:3,5,16
62:18 66:21
67:7 68:17,23
77:20 78:3,11
**wheelchair** 39:6
45:23 99:13,16
104:24 105:2,2
105:5,6,9,14
105:17 106:23
106:24 107:2,6
107:9,15 108:2
114:5
**wheelchaired**
124:20,24
**wheelchairs**
39:8
**WHEREOF**
130:1
**white** 31:1 56:21
57:24 89:6
**wide** 55:24
**width** 106:8
**wife** 20:6 58:8
58:16 59:7
**wild** 32:10 65:4
**wiped** 32:22,23
**wished** 39:18
**withheld** 73:15
73:17,17
**withhold** 74:1
**witness** 4:1,15
13:13,21 14:13
15:14 16:5,18
23:22 24:8
27:10 30:4
38:14 42:22
69:7 96:21

97:7,15 100:1
103:1 106:13
109:13 111:6
111:13,20
112:2 129:7,7
130:1
**witnessed** 80:23
90:2
**wood** 48:2,6
**wooden** 48:8
**word** 34:3,5
54:10 75:12,13
80:16
**words** 5:24 57:2
**work** 6:1
**worker** 73:10
**working** 28:20
**works** 115:8
**worried** 115:24
116:1,3
**worries** 30:6
**worry** 29:1
33:11 64:7
98:17 99:8
**worse** 34:10
84:5 87:22,23
**wouldn't** 46:9
46:11 73:17
**wow** 16:1 17:4
77:23
**wrist** 33:6,19
34:10,14,19,24
36:16 46:4
52:11 59:2
64:2 71:19
80:19 82:21
83:5 84:11
86:4,8,11 88:9
102:9 117:12
120:21 121:2
121:10,12
122:15,15
126:21 127:2
**wrists** 28:9,10
33:2,6 71:1,9

82:8 85:15
113:5 116:21
117:2,6 120:8
120:9 122:1
124:17
**write** 42:15
73:13 77:2
100:7,9
**writing** 80:22
101:15
**written** 5:21
76:16 80:17
125:19
**wrong** 15:22
25:15 37:23
60:17 63:23
67:19 68:10
117:1,5,7,9
120:24 121:11
121:24 126:18
**wrote** 51:12
76:5,9 80:3,9
81:19 98:7

---
**X**
**X** 3:1,7 19:5,7

---
**Y**
**Y-U-L-D-A**
13:23
**yard** 29:14 50:8
56:21
**yeah** 5:5 15:7
19:20 23:4
24:19 25:2
40:19,22 49:4
49:7 61:15
69:22 81:9
88:10 92:12
107:10,10
108:22,23
116:3 122:2
125:12
**year** 5:5 83:18
84:12 85:14

122:22 123:23
**years** 11:18 13:4
13:8 24:24
25:1
**youngest** 15:7
18:14
**youth** 21:24
22:21,22
**Yulda** 13:18,22
14:23 16:1

---
**Z**
**Zeid** 2:8 3:3 4:3
4:6,18 10:8
12:10,14 13:14
14:7,17 15:16
16:11,16 17:17
21:5,19 24:1
30:2,5,8,10
40:8 43:2 49:4
49:7,11 52:19
52:24 53:5,7
53:21 61:22
62:2,5 69:5,9
74:19 75:1
84:21,23 85:4
85:9,10 90:16
90:19 91:1,13
91:21 92:2,4
96:23 97:9,19
100:6,12,18
101:8 103:3,10
104:9,18
106:11,15
109:18 111:1,8
111:15,22
112:17 115:8
115:12 127:8
127:16,21
128:5,10
**zoom** 41:3 75:18
75:18,20 93:13
104:21 106:11
122:24 123:24

---
**0**
**0** 75:11,17
**003718** 1:6
**00918** 75:8
**05** 109:10
**08918** 74:21

---
**1**
**1** 2:3 3:9 29:12
32:1 40:3,6
47:5,6 50:7
76:4 92:19
122:4 123:12
125:3
**1:21** 115:7,12,16
**1:40** 128:11
**10** 9:3 29:3 99:2
109:8,9,10
**10:00** 1:23
**10:03** 4:12
**10:45** 30:3,8
**100** 3:12 37:4
**103** 3:13
**104** 3:14
**11:29** 52:22
**11:32** 53:5
**112** 3:4
**115** 3:5
**12** 42:9
**12/8/2019**
109:23
**12/8/2020**
109:20
**12/9/2021**
109:24
**12:30** 85:3,8,9
**12:40** 91:24
**12:41** 92:2
**127** 3:3
**12th** 94:20
**15** 29:4
**150** 9:4
**156** 103:5
**15th** 94:23
**16** 108:20,24

Royal Reporting Services, Inc.
312.361.8851

Douglas Johnson v. Cook County Sheriff Thomas Dart; et al.
Deposition of Douglas Johnson - Taken 2/6/2024

109:2,4
**163** 103:5
**17th** 115:23
   127:11
**18th** 42:2
**19** 19:17 27:2
   38:3 74:21
**190** 12:18
**1962** 12:6
**1998** 21:14
**19th** 19:13 30:12
   39:13 43:9
   69:6 74:12
   82:20 85:16
   94:13 95:14,17
   96:9 97:11
   101:4 108:6
   123:6,15
   124:20 126:4
   126:22 127:13
**1st** 95:8 96:11
   96:13 97:1

**2**

**2** 3:10 40:22
   74:20,23 75:4
   76:6 101:11
**2-6-24** 40:7
   74:24 90:24
   100:17 103:9
   104:17
**2:01** 109:21
**20** 31:18
**20-minute** 85:2
**2000** 5:4,5,5,6
**2001** 5:6 115:20
**2016** 25:14
**2019** 95:11 97:3
   109:20
**2020** 19:14,17
   19:19,21 27:2
   30:12 38:3
   43:9 74:12,21
   74:21 75:8
   79:10 85:16

93:9,16 94:14
95:8,14,17
96:9,11,13
97:1 101:4
108:6 122:19
123:2,6,14,15
124:20 126:4
126:22
**2021** 22:2 26:3
   115:21,22
**2022** 42:2
**2023** 22:7
**2024** 1:23 130:3
**204** 2:3
**20th** 12:6 95:11
   97:3
**22** 1:6 4:5 22:10
   22:11,12
**22nd** 95:2
**230** 2:14,14
**2473** 92:7
**2481** 90:21 92:7
**28th** 130:2
**2919** 12:21
   19:15
**29th** 95:4

**3**

**3** 3:11 35:17
   41:7 76:8
   90:23 92:6
   103:24
**3:00** 43:18
**30** 11:18 24:24
   25:1 31:18
**30th** 25:14
**312.300.4479**
   2:15
**312.603.3374**
   2:9
**32** 84:2
**325** 9:19
**33** 15:2
**35** 15:2
**36** 14:24 15:1

**3718** 4:5
**38** 14:24,24

**4**

**4** 3:3,12 35:18
   100:13,16
   102:1
**4:00** 43:18
**40** 3:9 9:2
**44** 14:24
**4th** 93:9,16 94:4
   94:15

**5**

**5** 3:13 9:13,19
   103:4,8 109:9
**5'6** 12:16
**5/10/24** 130:12
**500** 2:8 9:20

**6**

**6** 3:14 104:12,16
**6/15/2021** 108:1
   108:3
**60** 9:7
**60602** 2:3,9
**60606** 2:15
**60612** 12:23
**62** 100:13
**63** 100:14
**630.590.9158**
   2:4
**66** 104:13
**6th** 1:23

**7**

**7** 106:23,24
   107:8,22
**708** 100:14
**708.3.1** 104:2
**708.4** 101:10
**709** 103:5
**74** 3:10
**75** 9:14

**8**

**8** 32:1 62:15
   75:11,16 98:11
   103:18 119:22
   125:3
**84-1834** 1:17
   129:1 130:10
**8th** 79:10

**9**

**90** 3:11
**90-degree** 68:21
**9th** 94:16,17

Royal Reporting Services, Inc.
312.361.8851