Policy
**709**

**Cook County Department of Corrections**
Custody Manual

# Use of Restraints

**709.1 PURPOSE AND SCOPE**
This policy establishes guidelines for the application, supervisory oversight and restrictions on the use of restraints on persons incarcerated in the Cook County Department of Corrections.

This policy shall apply to the use of specific types of restraints, such as four/five-point restraints, transport chairs, ambulatory restraints and similar restraint systems, as well as all other restraints, including handcuffs, waist chains and leg irons when such restraints are used to restrain any inmate for prolonged periods.

709.1.1 ISSUANCE/EFFECTIVE DATE
This policy was re-issued on Dec. 2, 2019 and shall become effective upon issuance (operational updates).

709.1.2 DEFINITIONS
Definitions related to this policy include:

**Clinical restraints** - Restraints applied when an inmate is disruptive, assaultive and/or displays self-injurious behavior related to a medical or mental illness. Clinical restraints can include leather, rubber or canvas hand and leg restraints with contact points on a specialized bed (four/five-point restraints) or a portable transport chair.

**Custody restraints** - Includes steel handcuffs (including use of handcuff safety covers) and leg restraints, polyurethane or nylon soft restraints (e.g., emergency response belt, flex cuffs), waist restraints, transport chairs or other Department-approved devices, applied to control an inmate who is assaultive, engaging in self-injurious behavior or attempting to damage property.

**Qualified health care professional** - For the purpose of this policy, a qualified health care professional is a physician, clinical psychologist, clinical social worker, clinical professional counselor, advanced practice psychiatric nurse, or registered nurse with supervisory responsibilities.

**Therapeutic seclusion** - Isolation of an agitated, vulnerable and/or severely anxious inmate with a serious mental illness as part of their treatment when clinically indicated for preventive therapeutic purposes.

**709.2 POLICY**
It is the policy of the Department that restraints shall be used only to prevent self-injury, injury to others or property damage. Restraints may also be applied according to inmate classification, such as maximum security, to control the behavior of a high-risk inmate while they are being moved outside the cell or housing unit.

Restraints shall never be used for retaliation or as punishment. Restraints shall not be utilized any longer than is reasonably necessary to control the inmate. Restraints are to be applied only

Copyright Lexipol, LLC 2020/07/01, All Rights Reserved.
Published with permission by Cook County Department of Corrections

## Use of Restraints

when less restrictive methods of controlling the dangerous behavior of an inmate have failed or appear likely to fail.

This policy does not apply to the temporary use of restraints, such as handcuffing or the use of leg irons to control an inmate during movement and transportation inside or outside a division/unit (20 Ill. Adm. Code 701.160(j)).

### 709.3 USE OF CUSTODY RESTRAINTS

Supervisors shall proactively oversee the use of restraints on any inmate. Whenever feasible, the use of restraints, other than routine use during transfer, shall require the approval of a Watch Commander prior to application. In instances where prior approval is not feasible, the Watch Commander shall be apprised of the use of restraints as soon as practicable.

A sworn member should apply handcuffs behind an inmate's back, unless a handcuff safety cover or waist restraint system is used. If an inmate must be handcuffed in front of the body (e.g., inmate using stairs, inmate has a medical restriction) a sworn member shall seek prior approval from an on-duty supervisor. The on-duty supervisor shall consider the following:

- Whether auxiliary restraints (e.g., shackles, belly chains) shall be employed.
- Whether additional sworn members shall be deployed to assist in the transportation of the inmate.

Restraint devices, such as transport chairs, shall only be used on an inmate when it reasonably appears necessary to overcome resistance, prevent escape or bring an incident under control, thereby preventing injury to the inmate or others, or eliminating the possibility of property damage. Restraints shall not be utilized any longer than is reasonably necessary to achieve the above goals.

Excluding short-term use to gain immediate control, placing an inmate in a transport chair or other restraints for extended periods requires approval from the Watch Commander prior to taking action.

The use of restraints for purposes other than for the controlled movement or transportation of an inmate shall be documented in a written report and include, at minimum, the type of restraint used, when it was applied, a detailed description of why the restraint was needed and when it was removed (20 Ill. Adm. Code 701.160(j); 20 Ill. Adm. Code 720.60(b)).

The following provisions shall be followed when utilizing restraints to control an inmate:

(a) Restraints shall not be used as punishment, placed around a person's neck or applied in a way that is likely to cause undue physical discomfort or restrict blood flow or breathing (e.g., hog-tying).

(b) Restrained inmates shall not be placed face down or in a position that inhibits breathing (e.g., positional asphyxia).

(c) Check the jail management system for any alerts (e.g., medical handcuffing restrictions).

Copyright Lexipol, LLC 2020/07/01, All Rights Reserved.
Published with permission by Cook County Department of Corrections

# Cook County Department of Corrections
## Custody Manual

### Use of Restraints

 (d) When appropriate, double lock handcuffs or shackles to prevent over-tightening.

 (e) A person who is being transported shall not be locked in any manner to any part of the transporting vehicle, except for items installed for passenger safety, such as seat belts.

 (f) Restraints shall be applied for no longer than is reasonably necessary to protect the inmate or others from harm.

 (g) Sworn members shall conduct direct face-to-face observation to check the inmate's physical well-being and behavior. When feasible, restraints shall be checked to verify correct application and to ensure they do not compromise circulation.

In the event custodial restraints cannot be applied (e.g., the inmate exhibits violent behavior, there is reasonable belief that the inmate may become violent), the responsible sworn member shall make notification to their immediate supervisor as soon as practicable.

709.3.1 USE OF RESTRAINTS ON DISABLED SUBJECTS
A physical disability (e.g., visually impaired, hearing impaired, paraplegic) does not preclude the use of restraints on an inmate.

Sworn members should take the factors outlined in this policy into consideration when determining the types of restraints used on an inmate.

Examples of appropriate restraint use include, but are not limited to:

- An emergency response belt may be used on a disabled inmate who is a danger to him/herself.
- A transport chair may be used to transport a disabled inmate who refuses to walk or is combative.
- An inmate in a wheelchair may be handcuffed in front.
- A visually impaired inmate shall be handcuffed in the front and will be physically escorted by a sworn member negating the need of a cane.
- When an inmate is in a wheelchair, leg restraints may be utilized, but no restraint system shall attach the inmate to a wheelchair.
- Hearing impaired or speech impaired inmates who communicate with hand gestures or by writing may be restrained in a manner that allows for communication without jeopardizing safety (e.g., cuffed in front, use of leg restraints).

When applying restraints to a disabled inmate, the responsible sworn member shall promptly notify his/her immediate on-duty supervisor.

When restraints are used on a disabled inmate, the appropriate incident report shall be completed by the assigned sworn member. The report shall document the totality of the circumstances.

### 709.4 RESTRAINING AN INMATE WHILE IN A HOSPITAL SETTING

Copyright Lexipol, LLC 2020/07/01, All Rights Reserved.
Published with permission by Cook County Department of Corrections

## Use of Restraints

### 709.4.1 RESTRAINT IN A MEDICAL FACILITY

When an inmate is being held at any outlying medical care facility, the inmate should be secured in a manner relative to the totality of the circumstances. In most instances, a hospital bed should be used in the following manner:

- One end of the shackles will be placed on the inmate's leg and the other end will be secured to the frame of the bed.
- The inmate's hand, opposite their shackled leg, shall be secured to the frame of the bed.
- The belly chain will then be secured to the frame of the bed with a padlock.

### 709.4.2 RESTRAINT FOR MEDICAL TRANSPORT

If an inmate needs to be transported in a hospital bed, two sworn members will be assigned. The inmate shall be restrained as necessary unless otherwise prohibited by another policy or procedure.

### 709.4.3 CONSIDERATIONS

The frame of a hospital bed shall be used, not a rail or any other moveable parts.

Restraints should not interfere with any medical procedures or tests. Sworn members should defer to health care professionals when using restraints during medical procedures or tests. However, use of restraints shall balance the safety and security of the inmate, sworn members, health care professionals and the public. Every effort to accommodate the medical procedures or tests should be made.

An inmate should be allowed to use the bathroom upon request and when it is medically safe to do so. If there is a risk to safety or security, the inmate use of a bed pan should be considered.

### 709.5 APPLICATION OF SPIT MASKS

Spit masks are temporary protective devices designed to prevent a wearer from biting and/or transferring or transmitting fluids (e.g., saliva, mucous) to others.

Spit masks may be placed upon an inmate when a sworn member reasonably believes the inmate will bite or spit, either on a person or an inappropriate place. A spit mask is generally used during the application of a physical restraint, while the inmate is restrained, or during or after transport.

A sworn member applying a spit mask should ensure it is fastened properly to allow for adequate ventilation and that the inmate can breathe normally. A sworn member should provide assistance during the movement of a restrained inmate wearing a spit mask, due to the inmate's potentially impaired or distorted vision.

## Use of Restraints

A spit mask should not be used in situations where a restrained inmate is bleeding profusely from the area around the mouth or nose, or if there are indications that the inmate has a medical condition (e.g., difficulty breathing, vomiting). If the inmate vomits while wearing a spit mask, the spit mask should be promptly removed and discarded appropriately. Inmates who have been sprayed with oleoresin capsicum (OC) spray should be thoroughly decontaminated (including the inmate's head, hair and clothing) before applying a spit mask. In such cases, prompt medical care should be obtained.

Inmates wearing a spit mask should be continually monitored and shall not be left unattended until the spit mask is removed.

Once a spit mask has been used and removed, it will be discarded in accordance with protocols relating to communicable diseases.

A sworn member should ensure that the use of a spit mask on an inmate is documented in the appropriate report. The application of a spit mask should be video recorded.

### 709.6   USE OF CLINICAL RESTRAINTS

Clinical restraints and/or therapeutic seclusion shall only be used when an inmate's safety or the safety of others cannot be protected by less restrictive means and only upon the direct order of a physician and notification of the Superintendent or the authorized designee prior to taking action (20 Ill. Adm. Code 701.160(j)). Restraints shall be used no longer than is reasonably necessary to provide for the legitimate safety concerns of the inmate, members or others. Termination of clinical restraints can only be authorized by the direct order of a physician.

### 709.7   RANGE OF MOTION

Inmates placed in restraints for longer than two hours should receive a range-of-motion procedure that will allow for the movement of the extremities. Range-of-motion exercise will consist of alternate movement of the extremities (i.e., right arm and left leg) for a minimum of 10 minutes every two hours. Exemptions from the provisions outlined in this section may be considered when an inmate:

(a) Makes imminent threats and/or presently exhibits combative or sexually inappropriate behavior;

(b) Is subject to court order to remain restrained during a specific period of time; or

(c) Is awaiting medical services at Cermak (i.e., in a staging area, in a waiting area) and is from/assigned to a rehabilitation unit.

### 709.8   FOOD AND HYDRATION

Inmates who are confined in restraints shall be given food and fluids. Provisions shall be made to accommodate any toileting needs. Food and hydration (water or juices) shall be provided during normal meal periods.

Copyright Lexipol, LLC 2020/07/01, All Rights Reserved.
Published with permission by Cook County Department of Corrections

Offering food and hydration to inmates will be documented to include the time and the inmate's response (i.e., receptive, rejected). Inmates shall be given the opportunity to clean themselves should they soil themselves or their clothing while they are in restraints.

**709.9  AVAILABILITY OF CARDIOPULMONARY RESUSCITATION EQUIPMENT**

Cardiopulmonary resuscitation (CPR) equipment such as barrier masks shall be provided by the facility and located in close proximity to the location where inmates in restraints are held.

**709.10  RESTRAINED INMATE HOLDING**

Restrained inmates should be protected from abuse by other inmates. Under no circumstances will restrained inmates be housed with inmates who are not in restraints. In most instances, restrained inmates are housed alone or in an area designated for restrained inmates.

**709.11  PREGNANT INMATES**

Leg irons, shackles or waist shackles shall not be used on any pregnant inmate regardless of security risk (55 ILCS 5/3-15003.6(b)(3)).

Inmates who are known to be pregnant will not be handcuffed behind their backs while being transported. Upon discharge from a medical facility, postpartum inmates shall be restrained only with handcuffs in front of the body.

Other restraints may be applied only when all of the following exist (55 ILCS 5/3-15003.6(b)):

(a)  There is a substantial flight risk or some other extraordinary medical or security circumstance that dictates restraints be used to ensure the safety and security of the inmate, the facility staff, other inmates or the public.

(b)  A supervisor has made an individualized determination that such restraints are necessary to prevent escape or injury.

(c)  There is no objection from the treating medical care provider.

(d)  The restraints used are the least restrictive type and are used in the least restrictive manner.

Restraints shall be immediately removed upon the written or oral request of medical personnel. Oral requests made by medical personnel shall be verified in writing as promptly as reasonably possible (55 ILCS 5/3-15003.6(b)).

Members shall refer to the Pregnant Arrestees, Detainees and Inmates Procedure for additional direction on this matter.

**709.11.1  INMATES IN LABOR**
No restraints, except for clinical restraints used by medical personnel, may be applied to inmates during labor and no leg irons, shackles or waist shackles may be used on any inmate in recovery

*Use of Restraints*

(55 ILCS 5/3-15003.6(b)(3); 20 Ill. Adm. Code 701.160(j)). Additionally, no handcuffs or restraints should be applied during recovery after delivery except in extraordinary circumstances and only when a supervisor makes an individualized determination that such restraints are necessary to prevent escape or injury.

A sworn member shall guard the inmate during transport to a medical facility for delivery and remain immediately outside the delivery room until the inmate is released from the facility, unless the sworn member is requested to be in the room by medical personnel attending to the inmate (55 ILCS 5/3-15003.6(b)(8); 730 ILCS 125/17.5).

**709.12   RESTRAINT CONTROL APPARATUS**

The Restraint Control Apparatus (RCA) is intended to aid sworn members in the removal of hand restraints through a cell door food port in order to maintain physical control of a violent or potentially violent inmate. The RCA may also be used for daily routine movement and enhanced control while removing a handcuffed inmate from a cell and during the application of auxiliary restraints in SMU housing.

The inmate's hands and arms should be assisted through the food port no further than is necessary to safely remove the restraints in order to prevent injury. If the RCA cannot be retrieved safely, due to the inmate's resistance or otherwise, the attempt should be terminated and the device removed, if practicable. The RCA shall not be affixed on the sworn member's person while being utilized.

**709.13   REQUIRED DOCUMENTATION**

If an individual is restrained and released without an arrest, a sworn member shall document the details of the detention and the need for handcuffs or other restraints.

Except for situations in which only handcuffs are used, the use of additional restraints on an arrested individual shall be documented in the appropriate related report. The report should include, as appropriate:

(a)   How long the suspect was restrained.

(b)   The factors that led to the decision to use restraints.

(c)   Supervisor notification and approval of restraint use.

(d)   The types of restraint used.

(e)   How the suspect was transported and the position of the suspect during transport.

(f)   Observations of the suspect's behavior and any signs of physiological problems.

(g)   Any known or suspected drug use or other medical problems.

**709.14   TRAINING**

Subject to available resources, the Executive Director of the Training Academy or the authorized designee should ensure that sworn members receive periodic training on the proper use of handcuffs and other restraints, including:

Copyright Lexipol, LLC 2020/07/01, All Rights Reserved.
Published with permission by Cook County Department of Corrections

## Use of Restraints

(a) Proper placement and fit of handcuffs and other restraint devices approved for use by the Sheriff's Office.

(b) Response to complaints of pain by restrained persons.

(c) Options for restraining those who may be pregnant without the use of leg irons, waist chains, or handcuffs behind the body.

(d) Options for restraining amputees or those with medical conditions or other physical conditions that may be aggravated by being restrained.