Page 1

1                UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF ILLINOIS

3      _____

4      DOUGLAS JOHNSON,

5                Plaintiff,

6           v.                              Civil Action

7      COOK COUNTY SHERIFF THOMAS DART,        No.

8      in his official capacity; ANTWAUN       22-cv-03718

9      BACON, a CCDOC OFFICER; and COOK

10     COUNTY, a municipal corporation,

11               Defendants.

12     _____

13              DEPOSITION OF PATRICK ENNIS, M.D.

14     DATE:          Thursday, March 7, 2024

15     TIME:          10:39 a.m.

16     LOCATION:      Cook County Jail Cermak Hospital

17                    2800 South California Avenue

18                    Chicago, IL 60608

19     REPORTED BY:   Steven Taylor

20     JOB NO.:       6578355

21

22

23

24

Page 2

1                    A P P E A R A N C E S

2    ON BEHALF OF PLAINTIFF DOUGLAS JOHNSON:

3         ADRIAN BLEIFUSS PRADOS, ESQUIRE (by

4         videoconference)

5         Dvorak Law Offices LLC

6         1 Walker Avenue, Suite 204

7         Clarendon Hills, IL 60514

8         ableifuss@gmail.com

9         (630) 590-9158

10

11   ON BEHALF OF DEFENDANT COOK COUNTY SHERIFF THOMAS

12   DART:

13        JOEL ZEID, ESQUIRE (by videoconference)

14        Cook County State's Attorney's Office

15        50 West Washington Street, Suite 500

16        Chicago, IL 60602

17        joel.zeid@cookcountysao.org

18        (984) 666-0654

19

20

21

22

23

24

```
                                                   Page 3
 1              A P P E A R A N C E S (cont'd)

 2   ON BEHALF OF DEFENDANT ANTWAUN BACON:

 3   ZACHARY STILLMAN, ESQUIRE (by videoconference)

 4        DeVore Radunsky LLC

 5        230 West Monroe Street, Suite 230

 6        Chicago, IL 60606

 7        zstillman@devoreradunsky.com

 8        (312) 300-4479

 9

10   ON BEHALF OF PATRICK ENNIS, M.D.:

11        MIGUEL LARIOS, ESQUIRE (by videoconference)

12        Cook County State's Attorney's Office

13        50 West Washington Street, Suite 2760

14        Chicago, IL 60602

15        miguel.larios@cookcountysao.org

16        (312) 603-1427

17

18

19

20

21

22

23

24
```

Page 4

1                    I N D E X

2    EXAMINATION:                              PAGE

3         By Mr. Bleifuss                        7

4         By Mr. Zeid                           32

5         By Mr. Bleifuss                       33

6

7                  E X H I B I T S

8    NO.              DESCRIPTION              PAGE

9    Exhibit 1       Ennis Group Medical Records    13

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Page 5

1               P R O C E E D I N G S

2               THE REPORTER:  Good morning.  My name

3     is Steven Taylor.  I'm the reporter assigned by

4     Veritext to take the record of this proceeding.  We

5     are now on the record at 10:39 a.m.

6               This is the deposition of Dr. Patrick

7     Ennis taken in the matter of Douglas Johnson vs. Cook

8     County Sheriff Thomas Dart, in his official capacity;

9     Antwuan Bacon, a CCDOC officer; and Cook County, a

10    municipal corporation, on Thursday, March 7, 2024, at

11    2800 South California Avenue, Chicago, Illinois 60608.

12              I'm a notary authorized to take

13    acknowledgements and administer oaths in Illinois.

14    Parties agree that I will swear in the witness

15    remotely.

16              Additionally, absent an objection on

17    the record before the witness is sworn, all parties

18    and the witness understand and agree that any

19    certified transcript produced from the recording of

20    this proceeding:

21                    - is intended for all uses permitted

22                      under applicable procedural and

23                      evidentiary rules and laws in the

24                      same manner as a deposition recorded

Page 6

1          by stenographic means; and

2              - shall constitute written stipulation

3                  of such.

4              At this time will everyone in

5     attendance please identify yourself for the record,

6     starting with counsel for the plaintiff.

7              MR. BLEIFUSS:  Good morning.  Adrian

8     Bleifuss, B-L-E-I-F-U-S-S, for the plaintiff.

9              MR. LARIOS:  Good morning.  Assistant

10    State's Attorney Miguel Larios for the witness, Dr.

11    Ennis.

12             MR. ZEID:  Good morning.  Assistant

13    State's Attorney Joel Zeid here on behalf of defendant

14    Sheriff Dart.

15             MR. STILLMAN:  Zachary Stillman on

16    behalf of Defendant Bacon.

17             THE REPORTER:  Thank you.  Hearing no

18    objection, I'll swear in the witness.

19             Doctor, please raise your right hand.

20    WHEREUPON,

21             PATRICK ENNIS, M.D.,

22    called as a witness and having been first duly sworn

23    to tell the truth, the whole truth, and nothing but

24    the truth, was examined and testified as follows:

Page 7

 1                THE REPORTER:  Thank you.  You may
 2   lower your right hand.
 3                Counsel, you may proceed.
 4                     EXAMINATION
 5   BY MR. BLEIFUSS:
 6        Q     Good morning, Doctor.  Could you please
 7   state your name, pronounce it, and spell it for the
 8   record, your full name?
 9        A     My name is Patrick K. Ennis.  Last name is
10   spelled E, N as in Nancy, N as in Nancy, I-S.
11        Q     And are you currently at the Cook County
12   Jail?
13        A     I am.
14        Q     Okay.  Doctor, have you been deposed before?
15        A     I have.
16        Q     Okay.  Just to emphasize a few rules, some
17   of which we've already heard from the court reporter,
18   do your best to let any attorney posing a question
19   finish their question before interjecting because it's
20   very natural in human conversation to jump in when you
21   anticipate the question.
22                So I just ask that you please wait for
23   whoever is asking you a question to finish their
24   sentence before you jump in.  Does that make sense?

```
                                              Page 8
 1         A    It does.
 2         Q    And also, if any question that I pose or any
 3    other attorney poses to you is confusing or unclear, I
 4    just ask that you please ask us to restate the
 5    question or clarify.  Does that make sense?
 6         A    It does.
 7         Q    Otherwise, I will assume that you understand
 8    my question.  Does that make sense?
 9         A    Yes.
10         Q    Okay.  How many depositions do you imagine
11    you've testified in before, if you can estimate?
12         A    This is my second.
13         Q    Okay.  Apart from -- well, obviously you've
14    heard the court reporter read out the case caption.
15    Do you know any -- have you looked at the complaint
16    filed in this lawsuit?
17         A    I did.
18         Q    Okay.  And apart from -- or without getting
19    into the substance of any conversation you've had with
20    your attorneys, how have you prepared for this
21    deposition?
22         A    I read the complaint, and I read the
23    exhibits that you provided.
24         Q    Okay.  And did you speak with either ASA
```

Page 9

1    Joel Zeid or ASA O'Connor regarding this matter?

2         A    No.

3         Q    Okay.  Doctor, where did you attend high

4    school?

5         A    High school, I went to St. Joseph's

6    Preparatory School in Philadelphia, Pennsylvania.

7         Q    Is that on Lancaster Avenue?

8         A    No, it's on Girard Avenue.

9         Q    Okay.  And where did you go to medical

10   school?  Or sorry.  Where did you go to college for

11   undergrad?

12        A    Yeah.  I went to Loyola University Chicago.

13        Q    And what did you study there?

14        A    I double-majored in biology and psychology,

15   and I minored in bioethics.

16        Q    And what year did you graduate from Loyola?

17        A    2010.

18        Q    Okay.  And where did you subsequently go to

19   medical school?

20        A    I went to New York Medical College.

21        Q    And what year did you get your M.D.?

22        A    2014.

23        Q    And did you subsequently do a residency at a

24   hospital?

Page 10

1        A     I did.

2        Q     And where was that?

3        A     I did residency at West Suburban Medical

4    Center in Oak Park, Illinois.

5        Q     And how many years is that as a --

6        A     Three years.

7        Q     Thank you.  And after those three years,

8    where were you employed?

9        A     At Cermak Health Services.

10       Q     And have you worked at Cermak Health

11   Services since then?

12       A     Correct.

13       Q     Can you explain where Cermak Health Services

14   is physically?

15       A     Yeah, it's physically within the walls of

16   the Cook County Jail, the main compound of the Cook

17   County Jail.

18       Q     And when people refer to Division 8 in Cook

19   County Jail, what is the relationship between Division

20   8 and Cermak?

21       A     Division 8 is sort of a nebulous term here.

22   So it could mean either the Cermak building, or it

23   could mean the RTU building.

24       Q     The RTU building?

Page 11

1      A     Correct.

2      Q     Okay.  And what is your official position

3  today at Cermak?

4      A     My official title per the county health

5  system is attending physician VII.

6      Q     I'm sorry.  That's attending physician what?

7      A     Seven.

8      Q     That's number 7?

9      A     It's usually written out the Roman numeral

10 VII.

11     Q     Okay.  Roman numeral VII.  Okay.  And what

12 does the Roman numeral signify by that?  I'm sorry.

13 What does that mean?

14     A     Yeah, the Roman numeral corresponds to the K

15 grade that I have within the county pay scale.

16     Q     Okay.  And were you an attending physician

17 VII in the summer of 2020?

18     A     I was.

19     Q     And have your duties changed substantially

20 from the summer of 2020 until today?

21     A     Yes.

22     Q     Can you explain how they've changed?

23     A     Okay.  Well, I mean, a lot has changed,

24 right, during the COVID pandemic.  So I guess the main

Page 12

1   change in my duties has been that I assumed the role

2   of medical director of the Cermak Opioid Treatment

3   Program.  But my primary care clinical assignments

4   have also changed since that time.

5        Q    Has the load lightened as you've undertaken

6   the role of medical director for opioid treatment?

7        A    No.  In fact, it has become the opposite.

8        Q    Okay.  What does an attending physician do?

9   What does that mean?

10       A    So attending physician means that you have

11  completed medical school, completed residency.  So it

12  is what most people think of as a doctor.

13       Q    And for persons detained or incarcerated in

14  the Cook County Jail, do you function as a general

15  practitioner?  Is that terminology that would make

16  sense?

17       A    I don't like to use the word "general

18  practitioner."  I'm a family physician.  I'm also

19  board certified in addiction medicine.  So depending

20  on the context in which I'm seeing the patient, I

21  could be functioning as their family physician or in

22  an addiction-based setting.

23       Q    Okay.  And do you see patients at Stroger or

24  any other facility within the Cook County Health

Page 13

1    System?

2         A    No.

3         Q    I am going to share a large document with

4    you that I'm going to call Group -- I'm sorry.  Was it

5    Ennis or Ennis, Doctor?

6         A    Ennis.

7         Q    I'm going to call it Ennis Group Exhibit 1.

8    And this is a body of medical records that are Bates

9    stamped 4162 through 6807 that's produced by Johnson.

10                  (Ennis Group Exhibit 1 was marked for

11                  identification.)

12             And the first page I'm going to show you is

13   Bates numbered 4557, if I can just get the sharing to

14   work.  Do you see -- am I successfully showing you a

15   portion of a medical chart?

16        A    Yes, I see that.

17        Q    Okay.  And is this one of the documents you

18   reviewed in preparation for this deposition?

19        A    It appears to be so.  Would you mind

20   scrolling up so I can see the date at the top?  Yeah,

21   I believe I reviewed this document.

22        Q    Okay.  I'm going to -- can you explain how a

23   document like this is composed?  Because it seems to

24   me like there are inputs from different providers.  Is

Page 14

1    that fair to say?

2        A    Yeah.  So, I mean, so this is my clinical

3    notes.  Some of the information is being pulled in.

4    So of course our clinical notes are -- are done in

5    electronic medical record.  Right?

6            So some of this data was entered by various

7    other people -- I'm seeing RNs, et cetera -- over time

8    that -- that this patient has been within the Cook

9    County Health System, not necessarily just limited to

10   the Cermak encounter.  But the note in general, the

11   substance of the note, is composed by -- by myself.

12       Q    And you composed this document upon

13   reviewing other information entered by personnel in

14   the Cook County Health System?

15       A    So this note is created when I'm seeing a

16   patient.  And yeah, I'm pulling in labs that are done.

17   Or I saw there was a radiology report, so of course

18   that would have been read by the attending radiologist

19   at Stroger Hospital.  Some of this just auto pulls in.

20       Q    Okay.  And I'm looking at -- we're now at

21   Bates number 4564.  And there's a signature block

22   there dated August 19, 2020; is that correct?

23       A    That's what it says.

24       Q    When is the -- when do you electronically

1  sign this document?  Is it at the end of the visit

2  with the patient?

3      A    It's when I'm done writing the note.

4      Q    Okay.  Is that typically after you see the

5  patient?

6      A    Absolutely.

7      Q    And is it fair to say that on the date of

8  this document you examined or you had a encounter with

9  Douglas Johnson?

10     A    Yes.

11     Q    And his injury at the time was an injury to

12 his wrist that occurred after being cuffed by Cook

13 County Jail personnel; correct?

14     A    That's what he reported to me.

15     Q    Okay.  Did he exhibit an injury to his

16 wrist?

17     A    He complained of an injury to his wrist.

18     Q    Okay.  And what did you do with respect to

19 his reported injury to a wrist?

20     A    I took a history, which you'll see here in

21 the history of present illness, and then I examined

22 it.

23     Q    What did the examination indicate?

24     A    Could you scroll down to that please?

Page 16

1      Q     Sure.   Is that what we're looking at now?
2  Or do you want me to go further down?
3      A     No, you're looking at the history, so please
4  go down.
5      Q     Okay.   Okay.
6      A     This is all the medications that would have
7  been pulled in automatically.   So now we have the
8  exam.
9      Q     Okay.   And what does it tell us?
10      A     It tells us that he was in no acute
11  distress, that he didn't have any icterus in his eyes,
12  and that he was walking with a cane on the left.
13          His right wrist had full range of motion,
14  but he was guarded on exam.   It was non-erythematous.
15  The skin was not warm.   And there was a skin-colored
16  nodule located in the lateral ventral aspect of the
17  right wrist which was soft but tender to palpation.
18      Q     Okay.   And what is a nodule?
19      A     A nodule is a small growth of the skin.
20      Q     Okay.   And what does tender to palpation
21  signify?
22      A     It's painful to the patient when touched.
23      Q     Okay.   And how do you determine that it's
24  painful?   Does the patient report that to you?

Page 17

1        A    The patient reports that.  But other times,

2    patients could wince or there would be some sort of

3    communication, whether it be verbal or paraverbal.

4        Q    Okay.  And what does the neurologic entry

5    there mean?

6        A    That means that his hand grip was less than

7    normal.

8        Q    Okay.  And his mental status was that he

9    appeared alert and oriented; correct?

10       A    Correct.

11       Q    And what does the factor of three mean

12   there?

13       A    Person, place, and time.

14       Q    Okay.  You are not disputing the fact that

15   he suffered this injury -- you're not disputing the

16   fact that he presented with a wrist injury, are you,

17   Doctor?

18                   MR. LARIOS:  Objection to form.

19                   You can answer if you understand the

20   question.

21                   THE WITNESS:  I'm not disputing that he

22   presented with a wrist complaint.

23   BY MR. BLEIFUSS:

24       Q    Okay.  And how is that distinct from a wrist

Page 18

1    injury?

2        A    An injury would imply some sort of trauma or

3    other force that caused the normal functioning of the

4    wrist to be different.

5        Q    Okay.  And are you saying that you're not

6    making any -- you have no position on that question?

7        A    What I'm saying is I'm not -- I was not

8    present when he reported that what he said was an

9    injury occurred.  So I listened to him.  I took his

10   word.  But I --

11       Q    You took his word.  Would you say your

12   examination was consistent with what he reported to

13   you?

14       A    His exam was consistent with some problem

15   with the wrist.

16       Q    Okay.  I'm scrolling down to page 4565,

17   Bates numbered page 4565.  This is also a medical note

18   authored by you; correct?

19       A    That's correct.

20       Q    Okay.  And this was authored in September of

21   2020; correct?

22       A    That's what it says.

23       Q    And what was this appointment for?

24       A    So this was a -- a scheduled follow-up to --

1    it was likely -- if it's chronologically after the

2    last encounter, then it was scheduled to follow up.

3    But we had talked about that one.  And it says that he

4    presents with follow-up of his right wrist pain.

5         Q    Okay.  And what does "pain is stable" mean?

6         A    It hasn't changed in quality, nature,

7    description.

8         Q    Okay.  Am I now looking at the notes of the

9    examination?  This is Bates number 4568.

10        A    That's correct.

11        Q    And what did you record at this examination?

12        A    So about his wrist -- well, musculoskeletal,

13   again, he's ambulating with a cane.  And he has a

14   persistent tender non-erythematous non-warm

15   non-fluctuate nodule of the right lateral radiocarpal

16   joint.

17        Q    Okay.  And what does non-erythematous mean?

18        A    It is not red.

19        Q    Okay.  And what does non-fluctuate mean?

20        A    It -- it doesn't move in a waterlike pattern

21   as would be characteristic of an abscess.

22        Q    Okay.  What would it be characteristic of?

23   Or what might it -- what would it indicate to you as a

24   physician?

Page 20

1       A    It would only indicate that it would not

2    lead me to think it's an abscess.  It could be any of

3    the other things that could cause a nodule.

4       Q    For example?

5       A    Inflammation, growth.

6       Q    Okay.  Inflammation or a growth?

7       A    Yeah.

8       Q    Would it be consistent with a wrist injury?

9       A    In certain circumstances.

10      Q    Did you consider his -- I'm looking here at

11   the plan.  What does the plan indicate?  Or what does

12   the plan refer to in a medical note?

13      A    It's what we're going to do.

14      Q    Okay.  And what was your plan for Mr.

15   Johnson at this point?

16      A    Would you mind scrolling up so I could see

17   what the assessment was?

18      Q    Sure.

19      A    'Cause they usually go together.

20      Q    Impression and plan?

21      A    Yes.  So I gave him a diagnosis of effusion

22   of the right wrist.  We skipped the radiology report,

23   so I don't -- I likely would not have given that

24   diagnosis without some sort of radiology.  Yes, so in

Page 21

1   the CT scan, there was a radiocarpal joint effusion

2   seen.

3       Q    Okay.  And what is a radiocarpal joint

4   effusion?

5       A    So the radiocarpal is where the radius bone

6   meets the carpal bone.  And so at that joint, there

7   was some collection of fluid.

8       Q    And you indicated it's likely on the basis

9   of remote trauma; correct?

10      A    I did not indicate that.  That's what the

11  radiologist indicated.

12      Q    Okay.  And but that's information you relied

13  upon to craft this note; correct?

14      A    Correct.

15      Q    Okay.  And you then made the diagnosis of

16  effusion of the right wrist.  And so effusion is a

17  collection of fluid?

18      A    Correct.

19      Q    Okay.  Is that the same as inflammation?

20      A    It's not the same, but they are related.

21      Q    Okay.  Can you explain the relationship

22  between the two?

23      A    Sure.  So inflammation can cause an

24  effusion.

Page 22

1    Q   Okay.  And is this consistent with an injury

2  to the right wrist?

3    A   In certain circumstances.

4    Q   Okay.  And under these circumstances, was it

5  consistent with an injury to the right wrist?

6    A   There was a probability.  It -- it's unclear

7  at this time whether it could have been.  You know,

8  it's -- it's related.  Right?  But it's not

9  necessarily a linear pattern.

10       So putting together the patient's report

11  plus the radiologist's read, one could make that

12  assumption.  But together, an effusion and an injury

13  are not going to be one and the same.  Does that make

14  sense?

15    Q   Okay.  It does.  But when you say there's a

16  probability, that means there is some discernible

17  causal relationship or potential causal relationship

18  between the one and the other?  And --

19    A   There --

20    Q   I'm sorry.  Go ahead.

21    A   Sorry.  Sorry.  There is potential, but the

22  presence of an effusion needs to be further --

23  the -- the effusion needs to be better discerned.

24    Q   Okay.  You would agree that -- I'm sorry.

Page 23

1    Go ahead.

2         A    That's all.

3         Q    You would agree that there's nothing in your

4    note here that indicates any doubt or any question as

5    to the relationship between the handcuffing incident

6    he described and his complaint; correct?

7                        MR. LARIOS:  Objection to form.

8                        You can answer if you understand the

9    question.

10                       THE WITNESS:  Can you restate the

11   question, please?

12   BY MR. BLEIFUSS:

13        Q    Yes.  There's nothing in your notes that

14   indicates any doubt on your part between the

15   handcuffing injury he described and the injury or the

16   complaint he presented with; correct?

17                       MR. LARIOS:  Same objection.

18                       You can answer if you understand.

19                       THE WITNESS:  The patient reported that

20   he had sustained an injury.  And after this workup, we

21   found that there was some identifiable physiologic

22   abnormality.  But I am not now nor was I then in a

23   position to say that they were causally related.

24   //

Page 24

1   BY MR. BLEIFUSS:

2        Q    Okay.  How often do you interact with

3   sheriff's employees in the course of your day?  First

4   of all, would you consider yourself a sheriff's

5   employee?

6        A    No.

7        Q    Okay.  How often do you interact with

8   sheriff's employees throughout the course of your day

9   at Cermak?

10       A    Pretty much the whole workday.

11       Q    Okay.  And how long are your shifts?

12       A    Eight hours.

13       Q    Okay.  And do you work with other

14  physicians, or are there PAs or nurses that work with

15  you?

16       A    Yes, all those people work here.

17       Q    Okay.  And when you examine a patient, is

18  there typically a sheriff's employee in the room?

19       A    No.

20       Q    Okay.  Where are the sheriff's employees

21  when you examine a patient?

22            MR. LARIOS:  Objection to form of the

23  question.

24            You can answer if you understand.

1          THE WITNESS:  Sheriff's --

2   BY MR. BLEIFUSS:

3      Q    Physically --

4      A    They're physically outside the room.

5      Q    Okay.  They're physically outside the room.

6   How many feet are they away from you when you examine

7   the patient?

8      A    That depends on the room.

9      Q    Okay.  Are they within a ten-second walk of

10  where you are examining the patient?

11          MR. LARIOS:  Objection.  Form of the

12  question.

13          You can answer if you know.

14          THE WITNESS:  I -- I can't say with

15  scientific certainly the amount of time, but they are

16  close enough that if there was an issue, they could

17  respond in a timely fashion.

18  BY MR. BLEIFUSS:

19     Q    And is their relative proximity important

20  for your safety and security?

21     A    Yes.

22     Q    Okay.  Do you know the defendant, Bacon?

23     A    No.

24     Q    Have you ever heard of Defendant Bacon

Page 26

1    before you becoming aware of this lawsuit?

2         A    I don't recall him at all.

3         Q    Okay.  How, physically, do you enter the

4    jail facility, when you do?  Or what gate do you use

5    to enter the jail facility?

6         A    Post 5.

7         Q    Okay.  And are you checked in by sheriff's

8    personnel at that point?

9         A    Can you define what you mean by "checked

10   in"?

11        Q    Do they review your bags or review an ID or

12   anything like that?

13        A    Yes, I go through the metal detector.  I put

14   my bag on the x-ray machine.  And -- and they pat me

15   down.

16        Q    Okay.  And are you escorted to Cermak, or

17   are you able to walk there on your own?

18        A    No, I walk independently.

19        Q    Okay.  And when you get to the Cermak

20   building, do you again present any sort of ID?

21        A    At times.

22        Q    Okay.  And let's go back to the summer of

23   2020.  What sort of examination rooms were you working

24   in?  Can you describe the number of rooms or the

Page 27

1    physical layout of the space where you were seeing

2    patients?

3         A    Yeah.  So on this floor, I used one of two

4    exam rooms.

5         Q    Okay.  And is there sort of a waiting area?

6    Or can you describe the layout of this workspace?

7         A    Yeah.  So in the RTU building, which is

8    where I saw Mr. Johnson, there is no waiting area.

9    The -- the tiers are up against the walls of the

10   building.

11            And then there's a hallway.  And then

12   there's a central area where we have the exam rooms,

13   nurse's stations, dental has their exam space, mental

14   health.  There's, you know, medical storage rooms.

15   That's within the center of the -- if you think of the

16   building like a center column.  Right?  Yeah.

17        Q    Okay.  And at any given time during your

18   shift, how many other medical support staff are

19   working with you in that space?

20        A    It would be hard for me to give you an exact

21   number, but I could tell you that there are several

22   nursing staff.  And depending on the day, there may or

23   may not be a mental health professional present as

24   well.

Page 28

1      Q    Okay.  And in that same space, how many

2   sheriff's employees are there, if there's any

3   consistency -- well, strike that.  Let me rephrase the

4   question.

5           How many sheriff's employees staff the space

6   where you examine patients?

7      A    I could not give you a reliable answer to

8   that question.

9      Q    Are there two people on hand or one person

10  on hand or what?  Just, what arrangements are made to

11  ensure your safety with respect to staffing by

12  sheriff's employees?

13                  MR. LARIOS:  Objection to form.

14                  You can answer if you understand the

15  question.

16                  THE WITNESS:  To ensure my safety,

17  there's at least one officer present to be mindful of

18  the exam space.

19  BY MR. BLEIFUSS:

20     Q    Okay.  And is that officer within hollering

21  distance, to put it the vernacular?

22     A    Yes.  Colloquially, yes, I'd say he's in

23  hollering -- he or she is in hollering distance.

24     Q    Okay.  Great.  I'm showing you another note.

Page 29

1    This is part of the same group exhibit.  This one
2    appears to have been authored approximately a year
3    later in August of 2021.  Is that correct?
4         A    Yes.
5         Q    Okay.
6                   MR. ZEID:  Adrian, I'm sorry to
7    interrupt.
8                   MR. BLEIFUSS:  Sure.
9                   MR. ZEID:  Do you know what the
10   Bates --
11                  MR. BLEIFUSS:  I apologize.  It's
12   starting on page 4660.
13   BY MR. BLEIFUSS:
14        Q    And am I right that part of the plan
15   involves replacing a wrist splint at this point?
16        A    That's what it says.
17        Q    Okay.  And would that indicate that, at this
18   point a year later, the patient continued to present
19   with wrist complaints?
20        A    That's correct.
21        Q    Do you have any independent recollection or
22   recollection independent of these records of meeting
23   with Douglas Johnson?
24        A    I do.

1      Q     Okay.  And are your medical records

2   consistent with your recollection of your appointments

3   with him?

4      A     They are.

5      Q     Okay.  And in your recollection, how did Mr.

6   Johnson describe his pain in your meeting in the

7   summer of 2020, his wrist pain specifically?

8      A     I could not tell you, almost four years

9   later, how he exactly described it unless you put the

10  note in front of me and whatever I wrote.  Yeah.

11     Q     Okay.  All right.  So you don't have a

12  specific recollection of what he told you, I take it?

13     A     Not of an encounter like that.  I have a

14  recollection of the patient as a whole.

15     Q     Okay.  And what is your recollection of him

16  as a whole?

17     A     My recollection of him is that he was a -- a

18  middle-aged older gentleman who had a number of

19  serious health problems that he never really wanted to

20  focus on.

21           And he instead spent the vast majority of

22  our visits really focused on this -- these

23  musculoskeletal complaints, despite the fact that he

24  literally had life-threatening medical problems.  And

Page 31

1    I could never really get him to focus on them.

2         Q    And again, this appears to have been signed

3    electronically on August 23, 2021; correct?

4         A    Correct.

5              MR. BLEIFUSS:  All right.  I don't

6    think I have that many more questions.  If we could

7    take just a quick ten-minute break.

8              MR. LARIOS:  Sure.

9              THE REPORTER:  We're off the record at

10   11:17.

11             (Off the record.)

12             THE REPORTER:  We're on the record at

13   11:31 a.m.

14   BY MR. BLEIFUSS:

15        Q    Dr. Ennis, you testified earlier this

16   morning that there's a probability that the symptoms

17   that Mr. Johnson presented when he was examined by you

18   were caused by the handcuffing incident he described;

19   correct?

20        A    I believe I said that.  Yes.

21             MR. BLEIFUSS:  Okay.  That is it for

22   me.  No further questions.

23             MR. LARIOS:  Joel?

24             Zach?

1          MR. ZEID:  I have a few brief ones, but

2     if anybody else wants to go first -- otherwise --

3          MR. STILLMAN:  I'm okay.

4          MR. ZEID:  All right.

5                    EXAMINATION

6     BY MR. LARIOS:

7          Q    Dr. Ennis, my name is ASA Joel Zeid.  I'm

8     just going to ask you a couple questions here.

9     Doctor, you do not know if the wrist injury the

10    plaintiff reported was caused by the handcuffing

11    incident he described; correct?

12         A    I'm unable to make that temporal

13    relationship or causal relationship.

14         Q    Have you ever had a patient who claimed an

15    injury when, in fact, there was no injury?

16         A    Yes.

17         Q    So it's possible for patients to claim

18    they're injured when, in fact, they are not; correct?

19         A    That's correct.

20         Q    If a patient is instructed to treat an

21    injury and chooses not to do so, do you expect that

22    injury would get any better?

23         A    No.

24         Q    If someone had injured their wrist prior to

Page 33

1    entering the jail and never treated that injury, could

2    that injury still exist while they were then in the

3    jail?

4        A    That's correct.

5                    MR. ZEID:  I have no further questions

6    for you, Doctor.  I appreciate your time today.

7                    MR. LARIOS:  Zach, anything?

8                    MR. STILLMAN:  I'm good.

9                        EXAMINATION

10   BY MR. BLEIFUSS:

11       Q    Doctor, a preexisting injury can be

12   aggravated by a subsequent trauma; is that correct?

13       A    That's correct.

14       Q    Okay.  And you make no reference in your

15   medical notes to any suspicion that Mr. Johnson is

16   malingering, do you?

17       A    No, I believed him to have actual pain.

18                    MR. BLEIFUSS:  Okay.  No further

19   questions, I guess.

20                    MR. LARIOS:  Joel, Zach, anything based

21   on that?

22                    MR. ZEID:  Nothing.  Thanks, though.

23                    MR. LARIOS:  I have no further

24   questions.  We'll waive signature.

1                    MR. BLEIFUSS:  Thank you, Doctor, for

2    your time.

3                    THE WITNESS:  You're welcome.

4                    MR. LARIOS:  Thank you, Doctor.

5    Pleasure.

6                    THE REPORTER:  Before going off the

7    record, Counsel, I'd like to take transcript orders,

8    starting with Mr. Bleifuss.

9                    MR. BLEIFUSS:  We will not order at

10   this time.

11                    THE REPORTER:  Mr. Stillman?

12                    MR. STILLMAN:  We are okay.

13                    THE REPORTER:  Mr. Zeid?

14                    MR. ZEID:  We're okay for now as well.

15                    THE REPORTER:  And Mr. Larios?

16                    MR. LARIOS:  No, thank you.

17                    THE REPORTER:  Thank you.  We're off

18   the record at 11:35 a.m.

19                    (Signature waived.)

20                    (Whereupon, at 11:35 a.m., the

21                    proceeding was concluded.)

22

23

24

Page 35

1        CERTIFICATE OF DEPOSITION OFFICER

2         I, STEVEN TAYLOR, the officer before whom

3 the foregoing proceedings were taken, do hereby

4 certify that any witness(es) in the foregoing

5 proceedings, prior to testifying, were duly sworn;

6 that the proceedings were recorded by me and

7 thereafter reduced to typewriting by a qualified

8 transcriptionist; that said digital audio recording of

9 said proceedings are a true and accurate record to the

10 best of my knowledge, skills, and ability; that I am

11 neither counsel for, related to, nor employed by any

12 of the parties to the action in which this was taken;

13 and, further, that I am not a relative or employee of

14 any counsel or attorney employed by the parties

15 hereto, nor financially or otherwise interested in the

16 outcome of this action.

17

18                         STEVEN TAYLOR

19              Notary Public in and for the

20                      State of Illinois

21

22

23

24

Page 36

1               CERTIFICATE OF TRANSCRIBER

2          I, DAVID SHAHVERDIAN, do hereby certify that

3 this transcript was prepared from the digital audio

4 recording of the foregoing proceeding, that said

5 transcript is a true and accurate record of the

6 proceedings to the best of my knowledge, skills, and

7 ability; that I am neither counsel for, related to,

8 nor employed by any of the parties to the action in

9 which this was taken; and, further, that I am not a

10 relative or employee of any counsel or attorney

11 employed by the parties hereto, nor financially or

12 otherwise interested in the outcome of this action.

13

14

15                     DAVID SHAHVERDIAN

16

17

18

19

20

21

22

23

24

**[03718 - aspect]**

| 0 | 4 | a | |
|---|---|---|---|
| **03718** 1:8 | **4162** 13:9 | **a.m.** 1:15 5:5 | **ahead** 22:20 23:1 |
| **1** | **4557** 13:13 | 31:13 34:18,20 | **alert** 17:9 |
| **1** 2:6 4:9 13:7 13:10 | **4564** 14:21 | **ability** 35:10 36:7 | **ambulating** 19:13 |
| **10:39** 1:15 5:5 | **4565** 18:16,17 | **able** 26:17 | **amount** 25:15 |
| **11:17** 31:10 | **4568** 19:9 | **ableifuss** 2:8 | **answer** 17:19 |
| **11:31** 31:13 | **4660** 29:12 | **abnormality** 23:22 | 23:8,18 24:24 25:13 28:7,14 |
| **11:35** 34:18,20 | **5** | **abscess** 19:21 20:2 | **anticipate** 7:21 |
| **13** 4:9 | **5** 26:6 | **absent** 5:16 | **antwaun** 1:8 3:2 |
| **19** 14:22 | **50** 2:15 3:13 | **absolutely** 15:6 | **antwuan** 5:9 |
| **2** | **500** 2:15 | **accurate** 35:9 36:5 | **anybody** 32:2 |
| **2010** 9:17 | **590-9158** 2:9 | **acknowledge...** 5:13 | **apart** 8:13,18 |
| **2014** 9:22 | **6** | **action** 1:6 | **apologize** 29:11 |
| **2020** 11:17,20 14:22 18:21 26:23 30:7 | **603-1427** 3:16 | 35:12,16 36:8 36:12 | **appeared** 17:9 |
| **2021** 29:3 31:3 | **60514** 2:7 | **actual** 33:17 | **appears** 13:19 29:2 31:2 |
| **2024** 1:14 5:10 | **60602** 2:16 3:14 | **acute** 16:10 | **applicable** 5:22 |
| **204** 2:6 | **60606** 3:6 | **addiction** 12:19 12:22 | **appointment** 18:23 |
| **22** 1:8 | **60608** 1:18 5:11 | **additionally** 5:16 | **appointments** 30:2 |
| **23** 31:3 | **630** 2:9 | **administer** 5:13 | **appreciate** 33:6 |
| **230** 3:5,5 | **6578355** 1:20 | **adrian** 2:3 6:7 29:6 | **approximately** 29:2 |
| **2760** 3:13 | **666-0654** 2:18 | **aged** 30:18 | **area** 27:5,8,12 |
| **2800** 1:17 5:11 | **6807** 13:9 | **aggravated** 33:12 | **arrangements** 28:10 |
| **29016** 35:17 | **7** | **agree** 5:14,18 22:24 23:3 | **asa** 8:24 9:1 32:7 |
| **3** | **7** 1:14 4:3 5:10 11:8 | | **asking** 7:23 |
| **300-4479** 3:8 | **8** | | **aspect** 16:16 |
| **312** 3:8,16 | **8** 10:18,20,21 | | |
| **32** 4:4 | **9** | | |
| **32489** 36:14 | **984** 2:18 | | |
| **33** 4:5 | | | |

**assessment**
20:17
**assigned** 5:3
**assignments**
12:3
**assistant** 6:9,12
**assume** 8:7
**assumed** 12:1
**assumption**
22:12
**attend** 9:3
**attendance** 6:5
**attending** 11:5
11:6,16 12:8
12:10 14:18
**attorney** 6:10
6:13 7:18 8:3
35:14 36:10
**attorney's** 2:14
3:12
**attorneys** 8:20
**audio** 35:8 36:3
**august** 14:22
29:3 31:3
**authored** 18:18
18:20 29:2
**authorized**
5:12
**auto** 14:19
**automatically**
16:7
**avenue** 1:17 2:6
5:11 9:7,8
**aware** 26:1

**b**

**b** 4:7 6:8
**back** 26:22
**bacon** 1:9 3:2
5:9 6:16 25:22
25:24
**bag** 26:14
**bags** 26:11
**based** 12:22
33:20
**basis** 21:8
**bates** 13:8,13
14:21 18:17
19:9 29:10
**becoming** 26:1
**behalf** 2:2,11
3:2,10 6:13,16
**believe** 13:21
31:20
**believed** 33:17
**best** 7:18 35:10
36:6
**better** 22:23
32:22
**bioethics** 9:15
**biology** 9:14
**bleifuss** 2:3 4:3
4:5 6:7,8 7:5
17:23 23:12
24:1 25:2,18
28:19 29:8,11
29:13 31:5,14
31:21 33:10,18
34:1,8,9

**block** 14:21
**board** 12:19
**body** 13:8
**bone** 21:5,6
**break** 31:7
**brief** 32:1
**building** 10:22
10:23,24 26:20
27:7,10,16

**c**

**c** 2:1 3:1 5:1
**california** 1:17
5:11
**call** 13:4,7
**called** 6:22
**cane** 16:12
19:13
**capacity** 1:8
5:8
**caption** 8:14
**care** 12:3
**carpal** 21:6
**case** 8:14
**causal** 22:17,17
32:13
**causally** 23:23
**cause** 20:3,19
21:23
**caused** 18:3
31:18 32:10
**ccdoc** 1:9 5:9
**center** 10:4
27:15,16
**central** 27:12

**cermak** 1:16
10:9,10,13,20
10:22 11:3
12:2 14:10
24:9 26:16,19
**certain** 20:9
22:3
**certainly** 25:15
**certificate** 35:1
36:1
**certified** 5:19
12:19
**certify** 35:4
36:2
**cetera** 14:7
**change** 12:1
**changed** 11:19
11:22,23 12:4
19:6
**characteristic**
19:21,22
**chart** 13:15
**checked** 26:7,9
**chicago** 1:18
2:16 3:6,14
5:11 9:12
**chooses** 32:21
**chronologica...**
19:1
**circumstances**
20:9 22:3,4
**civil** 1:6
**claim** 32:17
**claimed** 32:14

clarendon 2:7
clarify 8:5
clinical 12:3
   14:2,4
close 25:16
collection 21:7
   21:17
college 9:10,20
colloquially
   28:22
colored 16:15
column 27:16
communication
   17:3
complained
   15:17
complaint 8:15
   8:22 17:22
   23:6,16
complaints
   29:19 30:23
completed
   12:11,11
composed
   13:23 14:11,12
compound
   10:16
concluded
   34:21
confusing 8:3
consider 20:10
   24:4
consistency
   28:3

consistent
   18:12,14 20:8
   22:1,5 30:2
constitute 6:2
cont'd 3:1
context 12:20
continued
   29:18
conversation
   7:20 8:19
cook 1:7,9,16
   2:11,14 3:12
   5:7,9 7:11
   10:16,16,18
   12:14,24 14:8
   14:14 15:12
cookcountys...
   2:17 3:15
corporation
   1:10 5:10
correct 10:12
   11:1 14:22
   15:13 17:9,10
   18:18,19,21
   19:10 21:9,13
   21:14,18 23:6
   23:16 29:3,20
   31:3,4,19
   32:11,18,19
   33:4,12,13
corresponds
   11:14
counsel 6:6 7:3
   34:7 35:11,14
   36:7,10

county 1:7,10
   1:16 2:11,14
   3:12 5:8,9 7:11
   10:16,17,19
   11:4,15 12:14
   12:24 14:9,14
   15:13
couple 32:8
course 14:4,17
   24:3,8
court 1:1 7:17
   8:14
covid 11:24
craft 21:13
created 14:15
ct 21:1
cuffed 15:12
currently 7:11
cv 1:8

## d

d 4:1 5:1
dart 1:7 2:12
   5:8 6:14
data 14:6
date 1:14 13:20
   15:7
dated 14:22
david 36:2,15
day 24:3,8
   27:22
defendant 2:11
   3:2 6:13,16
   25:22,24
defendants
   1:11

define 26:9
dental 27:13
depending
   12:19 27:22
depends 25:8
deposed 7:14
deposition 1:13
   5:6,24 8:21
   13:18 35:1
depositions
   8:10
describe 26:24
   27:6 30:6
described 23:6
   23:15 30:9
   31:18 32:11
description 4:8
   19:7
despite 30:23
detained 12:13
detector 26:13
determine
   16:23
devore 3:4
devoreraduns...
   3:7
diagnosis 20:21
   20:24 21:15
different 13:24
   18:4
digital 35:8
   36:3
director 12:2,6
discerned
   22:23

**[discernible - foregoing]**                    Page 4

**discernible**
  22:16
**disputing**  17:14
  17:15,21
**distance**  28:21
  28:23
**distinct**  17:24
**distress**  16:11
**district**  1:1,2
**division**  10:18
  10:19,21
**doctor**  6:19 7:6
  7:14 9:3 12:12
  13:5 17:17
  32:9 33:6,11
  34:1,4
**document**  13:3
  13:21,23 14:12
  15:1,8
**documents**
  13:17
**double**  9:14
**doubt**  23:4,14
**douglas**  1:4 2:2
  5:7 15:9 29:23
**dr**  5:6 6:10
  31:15 32:7
**duly**  6:22 35:5
**duties**  11:19
  12:1
**dvorak**  2:5

**e**

**e**  2:1,1 3:1,1 4:1
  4:7 5:1,1 6:8
  7:10

**earlier**  31:15
**effusion**  20:21
  21:1,4,16,16,24
  22:12,22,23
**eight**  24:12
**either**  8:24
  10:22
**electronic**  14:5
**electronically**
  14:24 31:3
**emphasize**  7:16
**employed**  10:8
  35:11,14 36:8
  36:11
**employee**  24:5
  24:18 35:13
  36:10
**employees**  24:3
  24:8,20 28:2,5
  28:12
**encounter**
  14:10 15:8
  19:2 30:13
**ennis**  1:13 3:10
  4:9 5:7 6:11,21
  7:9 13:5,5,6,7
  13:10 31:15
  32:7
**ensure**  28:11
  28:16
**enter**  26:3,5
**entered**  14:6,13
**entering**  33:1
**entry**  17:4

**erythematous**
  16:14 19:14,17
**es**  35:4
**escorted**  26:16
**esquire**  2:3,13
  3:3,11
**estimate**  8:11
**et**  14:7
**evidentiary**
  5:23
**exact**  27:20
**exactly**  30:9
**exam**  16:8,14
  18:14 27:4,12
  27:13 28:18
**examination**
  4:2 7:4 15:23
  18:12 19:9,11
  26:23 32:5
  33:9
**examine**  24:17
  24:21 25:6
  28:6
**examined**  6:24
  15:8,21 31:17
**examining**
  25:10
**example**  20:4
**exhibit**  4:9 13:7
  13:10 15:15
  29:1
**exhibits**  8:23
**exist**  33:2
**expect**  32:21

**explain**  10:13
  11:22 13:22
  21:21
**eyes**  16:11

**f**

**f**  6:8
**facility**  12:24
  26:4,5
**fact**  12:7 17:14
  17:16 30:23
  32:15,18
**factor**  17:11
**fair**  14:1 15:7
**family**  12:18,21
**fashion**  25:17
**feet**  25:6
**filed**  8:16
**financially**
  35:15 36:11
**finish**  7:19,23
**first**  6:22 13:12
  24:3 32:2
**floor**  27:3
**fluctuate**  19:15
  19:19
**fluid**  21:7,17
**focus**  30:20
  31:1
**focused**  30:22
**follow**  18:24
  19:2,4
**follows**  6:24
**force**  18:3
**foregoing**  35:3
  35:4 36:4

**[form - issue]**　　　　　　　　　　　　　　　　　Page 5

**form**  17:18
　23:7 24:22
　25:11 28:13
**found**  23:21
**four**  30:8
**front**  30:10
**full**  7:8 16:13
**function**  12:14
**functioning**
　12:21 18:3
**further**  16:2
　22:22 31:22
　33:5,18,23
　35:13 36:9

**g**

**g**  5:1
**gate**  26:4
**general**  12:14
　12:17 14:10
**gentleman**
　30:18
**getting**  8:18
**girard**  9:8
**give**  27:20 28:7
**given**  20:23
　27:17
**gmail.com**  2:8
**go**  9:9,10,18
　16:2,4 20:19
　22:20 23:1
　26:13,22 32:2
**going**  13:3,4,7
　13:12,22 20:13
　22:13 32:8
　34:6

**good**  5:2 6:7,9
　6:12 7:6 33:8
**grade**  11:15
**graduate**  9:16
**great**  28:24
**grip**  17:6
**group**  4:9 13:4
　13:7,10 29:1
**growth**  16:19
　20:5,6
**guarded**  16:14
**guess**  11:24
　33:19

**h**

**h**  4:7
**hallway**  27:11
**hand**  6:19 7:2
　17:6 28:9,10
**handcuffing**
　23:5,15 31:18
　32:10
**hard**  27:20
**health**  10:9,10
　10:13 11:4
　12:24 14:9,14
　27:14,23 30:19
**heard**  7:17 8:14
　25:24
**hearing**  6:17
**hereto**  35:15
　36:11
**high**  9:3,5
**hills**  2:7
**history**  15:20
　15:21 16:3

**hollering**  28:20
　28:23,23
**hospital**  1:16
　9:24 14:19
**hours**  24:12
**human**  7:20

**i**

**icterus**  16:11
**identifiable**
　23:21
**identification**
　13:11
**identify**  6:5
**il**  1:18 2:7,16
　3:6,14
**illinois**  1:2 5:11
　5:13 10:4
　35:20
**illness**  15:21
**imagine**  8:10
**imply**  18:2
**important**
　25:19
**impression**
　20:20
**incarcerated**
　12:13
**incident**  23:5
　31:18 32:11
**independent**
　29:21,22
**independently**
　26:18
**indicate**  15:23
　19:23 20:1,11

　21:10 29:17
**indicated**  21:8
　21:11
**indicates**  23:4
　23:14
**inflammation**
　20:5,6 21:19
　21:23
**information**
　14:3,13 21:12
**injured**  32:18
　32:24
**injury**  15:11,11
　15:15,17,19
　17:15,16 18:1
　18:2,9 20:8
　22:1,5,12
　23:15,15,20
　32:9,15,15,21
　32:22 33:1,2
　33:11
**inputs**  13:24
**instructed**
　32:20
**intended**  5:21
**interact**  24:2,7
**interested**
　35:15 36:12
**interjecting**
　7:19
**interrupt**  29:7
**involves**  29:15
**issue**  25:16

**[jail - n]**

| j | | m | |
|---|---|---|---|
| **jail** 1:16 7:12 10:16,17,19 12:14 15:13 26:4,5 33:1,3 | 25:11 28:13 31:8,23 32:6 33:7,20,23 34:4,15,16 | **m.d.** 1:13 3:10 6:21 9:21 | 27:14,18 30:1 30:24 33:15 |

**j**

**jail** 1:16 7:12
  10:16,17,19
  12:14 15:13
  26:4,5 33:1,3
**job** 1:20
**joel** 2:13 6:13
  9:1 31:23 32:7
  33:20
**joel.zeid** 2:17
**johnson** 1:4 2:2
  5:7 13:9 15:9
  20:15 27:8
  29:23 30:6
  31:17 33:15
**joint** 19:16
  21:1,3,6
**joseph's** 9:5
**jump** 7:20,24

**k**

**k** 7:9 11:14
**know** 8:15 22:7
  25:13,22 27:14
  29:9 32:9
**knowledge**
  35:10 36:6

**l**

**l** 6:8
**labs** 14:16
**lancaster** 9:7
**large** 13:3
**larios** 3:11 6:9
  6:10 17:18
  23:7,17 24:22

25:11 28:13
31:8,23 32:6
33:7,20,23
34:4,15,16
**lateral** 16:16
  19:15
**law** 2:5
**laws** 5:23
**lawsuit** 8:16
  26:1
**layout** 27:1,6
**lead** 20:2
**left** 16:12
**life** 30:24
**lightened** 12:5
**likely** 19:1
  20:23 21:8
**limited** 14:9
**linear** 22:9
**listened** 18:9
**literally** 30:24
**llc** 2:5 3:4
**load** 12:5
**located** 16:16
**location** 1:16
**long** 24:11
**looked** 8:15
**looking** 14:20
  16:1,3 19:8
  20:10
**lot** 11:23
**lower** 7:2
**loyola** 9:12,16

**m**

**m.d.** 1:13 3:10
  6:21 9:21
**machine** 26:14
**made** 21:15
  28:10
**main** 10:16
  11:24
**majored** 9:14
**majority** 30:21
**make** 7:24 8:5
  8:8 12:15
  22:11,13 32:12
  33:14
**making** 18:6
**malingering**
  33:16
**manner** 5:24
**march** 1:14
  5:10
**marked** 13:10
**matter** 5:7 9:1
**mean** 10:22,23
  11:13,23 12:9
  14:2 17:5,11
  19:5,17,19
  26:9
**means** 6:1
  12:10 17:6
  22:16
**medical** 4:9 9:9
  9:19,20 10:3
  12:2,6,11 13:8
  13:15 14:5
  18:17 20:12

27:14,18 30:1
30:24 33:15
**medications**
  16:6
**medicine** 12:19
**meeting** 29:22
  30:6
**meets** 21:6
**mental** 17:8
  27:13,23
**metal** 26:13
**middle** 30:18
**miguel** 3:11
  6:10
**miguel.larios**
  3:15
**mind** 13:19
  20:16
**mindful** 28:17
**minored** 9:15
**minute** 31:7
**monroe** 3:5
**morning** 5:2
  6:7,9,12 7:6
  31:16
**motion** 16:13
**move** 19:20
**municipal** 1:10
  5:10
**musculoskele...**
  19:12 30:23

**n**

**n** 2:1 3:1 4:1
  5:1 7:10,10

**[name - patrick]**

**name** 5:2 7:7,8 7:9,9 32:7
**nancy** 7:10,10
**natural** 7:20
**nature** 19:6
**nebulous** 10:21
**necessarily** 14:9 22:9
**needs** 22:22,23
**neither** 35:11 36:7
**neurologic** 17:4
**never** 30:19 31:1 33:1
**new** 9:20
**nodule** 16:16 16:18,19 19:15 20:3
**non** 16:14 19:14,14,15,17 19:19
**normal** 17:7 18:3
**northern** 1:2
**notary** 5:12 35:19
**note** 14:10,11 14:15 15:3 18:17 20:12 21:13 23:4 28:24 30:10
**notes** 14:3,4 19:8 23:13 33:15

**number** 11:8 14:21 19:9 26:24 27:21 30:18
**numbered** 13:13 18:17
**numeral** 11:9 11:11,12,14
**nurse's** 27:13
**nurses** 24:14
**nursing** 27:22

**o**

**o** 5:1
**o'connor** 9:1
**oak** 10:4
**oaths** 5:13
**objection** 5:16 6:18 17:18 23:7,17 24:22 25:11 28:13
**obviously** 8:13
**occurred** 15:12 18:9
**office** 2:14 3:12
**officer** 1:9 5:9 28:17,20 35:1 35:2
**offices** 2:5
**official** 1:8 5:8 11:2,4
**okay** 7:14,16 8:10,13,18,24 9:3,9,18 11:2 11:11,11,16,23 12:8,23 13:17

13:22 14:20 15:4,15,18 16:5,5,9,18,20 16:23 17:4,8 17:14,24 18:5 18:16,20 19:5 19:8,17,19,22 20:6,14 21:3 21:12,15,19,21 22:1,4,15,24 24:2,7,11,13,17 24:20 25:5,9 25:22 26:3,7 26:16,19,22 27:5,17 28:1 28:20,24 29:5 29:17 30:1,5 30:11,15 31:21 32:3 33:14,18 34:12,14
**older** 30:18
**ones** 32:1
**opioid** 12:2,6
**opposite** 12:7
**order** 34:9
**orders** 34:7
**oriented** 17:9
**outcome** 35:16 36:12
**outside** 25:4,5
**own** 26:17

**p**

**p** 2:1,1 3:1,1 5:1

**page** 4:2,8 13:12 18:16,17 29:12
**pain** 19:4,5 30:6,7 33:17
**painful** 16:22 16:24
**palpation** 16:17,20
**pandemic** 11:24
**paraverbal** 17:3
**park** 10:4
**part** 23:14 29:1 29:14
**parties** 5:14,17 35:12,14 36:8 36:11
**pas** 24:14
**pat** 26:14
**patient** 12:20 14:8,16 15:2,5 16:22,24 17:1 23:19 24:17,21 25:7,10 29:18 30:14 32:14,20
**patient's** 22:10
**patients** 12:23 17:2 27:2 28:6 32:17
**patrick** 1:13 3:10 5:6 6:21 7:9

**pattern** 19:20
22:9
**pay** 11:15
**pennsylvania**
9:6
**people** 10:18
12:12 14:7
24:16 28:9
**permitted** 5:21
**persistent**
19:14
**person** 17:13
28:9
**personnel**
14:13 15:13
26:8
**persons** 12:13
**philadelphia**
9:6
**physical** 27:1
**physically**
10:14,15 25:3
25:4,5 26:3
**physician** 11:5
11:6,16 12:8
12:10,18,21
19:24
**physicians**
24:14
**physiologic**
23:21
**place** 17:13
**plaintiff** 1:5 2:2
6:6,8 32:10

**plan** 20:11,11
20:12,14,20
29:14
**please** 6:5,19
7:6,22 8:4
15:24 16:3
23:11
**pleasure** 34:5
**plus** 22:11
**point** 20:15
26:8 29:15,18
**portion** 13:15
**pose** 8:2
**poses** 8:3
**posing** 7:18
**position** 11:2
18:6 23:23
**possible** 32:17
**post** 26:6
**potential** 22:17
22:21
**practitioner**
12:15,18
**prados** 2:3
**preexisting**
33:11
**preparation**
13:18
**preparatory**
9:6
**prepared** 8:20
36:3
**presence** 22:22
**present** 15:21
18:8 26:20

27:23 28:17
29:18
**presented**
17:16,22 23:16
31:17
**presents** 19:4
**pretty** 24:10
**primary** 12:3
**prior** 32:24
35:5
**probability**
22:6,16 31:16
**problem** 18:14
**problems** 30:19
30:24
**procedural**
5:22
**proceed** 7:3
**proceeding** 5:4
5:20 34:21
36:4
**proceedings**
35:3,5,6,9 36:6
**produced** 5:19
13:9
**professional**
27:23
**program** 12:3
**pronounce** 7:7
**provided** 8:23
**providers**
13:24
**proximity**
25:19

**psychology**
9:14
**public** 35:19
**pulled** 14:3
16:7
**pulling** 14:16
**pulls** 14:19
**put** 26:13 28:21
30:9
**putting** 22:10

**q**

**qualified** 35:7
**quality** 19:6
**question** 7:18
7:19,21,23 8:2
8:5,8 17:20
18:6 23:4,9,11
24:23 25:12
28:4,8,15
**questions** 31:6
31:22 32:8
33:5,19,24
**quick** 31:7

**r**

**r** 2:1 3:1 5:1
**radiocarpal**
19:15 21:1,3,5
**radiologist**
14:18 21:11
**radiologist's**
22:11
**radiology**
14:17 20:22,24

**radius**  21:5
**radunsky**  3:4
**raise**  6:19
**range**  16:13
**ray**  26:14
**read**  8:14,22,22
  14:18 22:11
**really**  30:19,22
  31:1
**recall**  26:2
**recollection**
  29:21,22 30:2
  30:5,12,14,15
  30:17
**record**  5:4,5,17
  6:5 7:8 14:5
  19:11 31:9,11
  31:12 34:7,18
  35:9 36:5
**recorded**  5:24
  35:6
**recording**  5:19
  35:8 36:4
**records**  4:9
  13:8 29:22
  30:1
**red**  19:18
**reduced**  35:7
**refer**  10:18
  20:12
**reference**  33:14
**regarding**  9:1
**related**  21:20
  22:8 23:23
  35:11 36:7

**relationship**
  10:19 21:21
  22:17,17 23:5
  32:13,13
**relative**  25:19
  35:13 36:10
**reliable**  28:7
**relied**  21:12
**remote**  21:9
**remotely**  5:15
**rephrase**  28:3
**replacing**  29:15
**report**  14:17
  16:24 20:22
  22:10
**reported**  1:19
  15:14,19 18:8
  18:12 23:19
  32:10
**reporter**  5:2,3
  6:17 7:1,17
  8:14 31:9,12
  34:6,11,13,15
  34:17
**reports**  17:1
**residency**  9:23
  10:3 12:11
**respect**  15:18
  28:11
**respond**  25:17
**restate**  8:4
  23:10
**review**  26:11
  26:11

**reviewed**  13:18
  13:21
**reviewing**
  14:13
**right**  6:19 7:2
  11:24 14:5
  16:13,17 19:4
  19:15 20:22
  21:16 22:2,5,8
  27:16 29:14
  30:11 31:5
  32:4
**rns**  14:7
**role**  12:1,6
**roman**  11:9,11
  11:12,14
**room**  24:18
  25:4,5,8
**rooms**  26:23,24
  27:4,12,14
**rtu**  10:23,24
  27:7
**rules**  5:23 7:16

**s**

**s**  2:1 3:1 4:7 5:1
  6:8,8 7:10
**safety**  25:20
  28:11,16
**saw**  14:17 27:8
**saying**  18:5,7
**says**  14:23
  18:22 19:3
  29:16
**scale**  11:15

**scan**  21:1
**scheduled**
  18:24 19:2
**school**  9:4,5,6
  9:10,19 12:11
**scientific**  25:15
**scroll**  15:24
**scrolling**  13:20
  18:16 20:16
**second**  8:12
  25:9
**security**  25:20
**see**  12:23 13:14
  13:16,20 15:4
  15:20 20:16
**seeing**  12:20
  14:7,15 27:1
**seems**  13:23
**seen**  21:2
**sense**  7:24 8:5,8
  12:16 22:14
**sentence**  7:24
**september**
  18:20
**serious**  30:19
**services**  10:9
  10:11,13
**setting**  12:22
**seven**  11:7
**several**  27:21
**shahverdian**
  36:2,15
**share**  13:3
**sharing**  13:13

| | | | t |
|---|---|---|---|

**sheriff** 1:7 2:11 5:8 6:14
**sheriff's** 24:3,4 24:8,18,20 25:1 26:7 28:2 28:5,12
**shift** 27:18
**shifts** 24:11
**show** 13:12
**showing** 13:14 28:24
**sign** 15:1
**signature** 14:21 33:24 34:19 35:17 36:14
**signed** 31:2
**signify** 11:12 16:21
**skills** 35:10 36:6
**skin** 16:15,15 16:19
**skipped** 20:22
**small** 16:19
**soft** 16:17
**sorry** 9:10 11:6 11:12 13:4 22:20,21,21,24 29:6
**sort** 10:21 17:2 18:2 20:24 26:20,23 27:5
**south** 1:17 5:11
**space** 27:1,13 27:19 28:1,5

28:18
**speak** 8:24
**specific** 30:12
**specifically** 30:7
**spell** 7:7
**spelled** 7:10
**spent** 30:21
**splint** 29:15
**st** 9:5
**stable** 19:5
**staff** 27:18,22 28:5
**staffing** 28:11
**stamped** 13:9
**starting** 6:6 29:12 34:8
**state** 7:7 35:20
**state's** 2:14 3:12 6:10,13
**states** 1:1
**stations** 27:13
**status** 17:8
**stenographic** 6:1
**steven** 1:19 5:3 35:2,18
**stillman** 3:3 6:15,15 32:3 33:8 34:11,12
**stipulation** 6:2
**storage** 27:14
**street** 2:15 3:5 3:13

**strike** 28:3
**stroger** 12:23 14:19
**study** 9:13
**subsequent** 33:12
**subsequently** 9:18,23
**substance** 8:19 14:11
**substantially** 11:19
**suburban** 10:3
**successfully** 13:14
**suffered** 17:15
**suite** 2:6,15 3:5 3:13
**summer** 11:17 11:20 26:22 30:7
**support** 27:18
**sure** 16:1 20:18 21:23 29:8 31:8
**suspicion** 33:15
**sustained** 23:20
**swear** 5:14 6:18
**sworn** 5:17 6:22 35:5
**symptoms** 31:16
**system** 11:5 13:1 14:9,14

**t** 4:7
**take** 5:4,12 30:12 31:7 34:7
**taken** 5:7 35:3 35:12 36:9
**talked** 19:3
**taylor** 1:19 5:3 35:2,18
**tell** 6:23 16:9 27:21 30:8
**tells** 16:10
**temporal** 32:12
**ten** 25:9 31:7
**tender** 16:17,20 19:14
**term** 10:21
**terminology** 12:15
**testified** 6:24 8:11 31:15
**testifying** 35:5
**thank** 6:17 7:1 10:7 34:1,4,16 34:17
**thanks** 33:22
**things** 20:3
**think** 12:12 20:2 27:15 31:6
**thomas** 1:7 2:11 5:8
**threatening** 30:24

three   10:6,7
   17:11
thursday   1:14
   5:10
tiers   27:9
time   1:15 6:4
   12:4 14:7
   15:11 17:13
   22:7 25:15
   27:17 33:6
   34:2,10
timely   25:17
times   17:1
   26:21
title   11:4
today   11:3,20
   33:6
together   20:19
   22:10,12
told   30:12
took   15:20 18:9
   18:11
top   13:20
touched   16:22
transcriber
   36:1
transcript   5:19
   34:7 36:3,5
transcriptionist
   35:8
trauma   18:2
   21:9 33:12
treat   32:20
treated   33:1

treatment   12:2
   12:6
true   35:9 36:5
truth   6:23,23
   6:24
two   21:22 27:3
   28:9
typewriting
   35:7
typically   15:4
   24:18

**u**

u   6:8
unable   32:12
unclear   8:3
   22:6
under   5:22
   22:4
undergrad
   9:11
understand
   5:18 8:7 17:19
   23:8,18 24:24
   28:14
undertaken
   12:5
united   1:1
university   9:12
use   12:17 26:4
used   27:3
uses   5:21
usually   11:9
   20:19

**v**

v   1:6
various   14:6
vast   30:21
ventral   16:16
verbal   17:3
veritext   5:4
vernacular
   28:21
videoconfere...
   2:4,13 3:3,11
vii   11:5,10,11
   11:17
visit   15:1
visits   30:22
vs   5:7

**w**

wait   7:22
waiting   27:5,8
waive   33:24
waived   34:19
walk   25:9
   26:17,18
walker   2:6
walking   16:12
walls   10:15
   27:9
want   16:2
wanted   30:19
wants   32:2
warm   16:15
   19:14
washington
   2:15 3:13

waterlike   19:20
we've   7:17
welcome   34:3
went   9:5,12,20
west   2:15 3:5
   3:13 10:3
wince   17:2
witness   5:14,17
   5:18 6:10,18
   6:22 17:21
   23:10,19 25:1
   25:14 28:16
   34:3 35:4
word   12:17
   18:10,11
work   13:14
   24:13,14,16
workday   24:10
worked   10:10
working   26:23
   27:19
workspace
   27:6
workup   23:20
wrist   15:12,16
   15:17,19 16:13
   16:17 17:16,22
   17:24 18:4,15
   19:4,12 20:8
   20:22 21:16
   22:2,5 29:15
   29:19 30:7
   32:9,24
writing   15:3

| |
|---|
| **written**   6:2 |
| 11:9 |
| **wrote**   30:10 |
| **x** |
| **x**   4:1,7 26:14 |
| **y** |
| **yeah**   9:12 |
| 10:15 11:14 |
| 13:20 14:2,16 |
| 20:7 27:3,7,16 |
| 30:10 |
| **year**   9:16,21 |
| 29:2,18 |
| **years**   10:5,6,7 |
| 30:8 |
| **york**   9:20 |
| **z** |
| **zach**   31:24 33:7 |
| 33:20 |
| **zachary**   3:3 |
| 6:15 |
| **zeid**   2:13 4:4 |
| 6:12,13 9:1 |
| 29:6,9 32:1,4,7 |
| 33:5,22 34:13 |
| 34:14 |
| **zstillman**   3:7 |

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.

(2)  Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.