Page 1

1        IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
2                  EASTERN DIVISION

3

   DOUGLAS JOHNSON,              )
4                                )
                  Plaintiff,     )
5                                )
            -vs-                 ) No. 22-cv-03718
6                                )
   COOK COUNTY SHERIFF           )
7  THOMAS DART, in his           )
   official capacity,            )
8  ANTWAUN BACON, a CCDOC        )
   officer, and COOK             )
9  COUNTY, a municipal           )
   corporation,                  )
10                               )
                  Defendants.    )
11

12              The ZOOM deposition of MAURICE ORR,

13  called for examination, pursuant to the Federal

14  Rules of Civil Procedure for the United States

15  District Courts pertaining to the taking of

16  depositions, taken before Suzanne Burke, a

17  Certified Shorthand Reporter in the State of

18  Illinois, on March 26, 2024, A.D., commencing at

19  the hour of 1:01 p.m.

20

21

22

23

24

```
 1   APPEARANCES:
 2   DVORAK LAW OFFICES, LLC
     BY:  MR. ADRIAN BLEIFUSS PRADOS
 3   One Walker Avenue
     Suite 204
 4   Clarendon Hills, Illinois  60514
     (630) 590-9158
 5   Ableifuss@gmail.com,
 6       appeared on behalf of the plaintiff;
 7   COOK COUNTY STATE'S ATTORNEY
     BY:  MR. JAMES O'CONNOR
 8   69 West Washington Street
     Suite 2030
 9   Chicago, Illinois  60602
     (312) 603-1880
10   James.Oconnor@cookcountysao.org,
11       appeared on behalf of the Cook County
         defendants;
12

     DEVORE RADUNSKY, LLC
13   BY:  MR. ZACHARY STILLMAN
     230 West Monroe Street
14   Suite 230
     Chicago, Illinois  0606
15   (312) 300-4479
     Zstillman@devoreradunsky.com,
16
         appeared on behalf of the defendant
17       Antwaun Bacon.
18
19
20
21
22
23
24
```

Page 3

                    I N D E X


WITNESS:                                    PAGE


MAURICE ORR


Examination By Mr. Bleifuss Prados          4
Examination By Mr. O'Connor                 21
Further Examination By Mr. Bleifuss Prados  24


                  E X H I B I T S

DEPOSITION EXHIBIT NOS.                      PAGE

Exhibit 1                                    10

NOTE:  Exhibit retained by counsel

```
                                          Page  4
 1              (Witness sworn.)
 2                    MAURICE ORR,
 3    called as a witness herein, having been first
 4    duly sworn, was examined and testified as follows:
 5                    EXAMINATION
 6    BY MR. BLEIFUSS PRADOS:
 7        Q.   Good afternoon, sir.  Could you please
 8    state your full name and spell it for the record?
 9        A.   It is Maurice Orr, M-a-u-r-i-c-e, last
10    name O-r-r.
11        Q.   Okay.  And have you ever been deposed
12    before?
13        A.   No.
14        Q.   Okay.  Well, as the court reporter just
15    explained, it's important that we not talk over
16    one another, and I just reemphasize that, because
17    it's very easy to anticipate the question that
18    you're about to hear.  And in natural
19    conversation, we kind of jump in when there's a
20    gap.  Does that make sense?
21        A.   Yes.
22        Q.   So if we could, please, and I'll try my
23    best as well, to just let the lawyer finish
24    posing their question before you answer.  Does
```

```
                                              Page 5
 1    that make sense?
 2         A.   Yes.
 3         Q.   If at any point I pose a question in a
 4    way that is confusing or doesn't make sense to
 5    you, could you please just let me know that you
 6    need to have the question reframed?
 7         A.   Yes.
 8         Q.   Otherwise I will assume that you
 9    understand my question.  Does that make sense?
10         A.   Yes, it does.
11         Q.   Sir, where are you currently sitting?
12         A.   In building 2 in a room.
13         Q.   Is that in the Cook County Jail complex?
14         A.   Yes.
15         Q.   And are you currently employed by the
16    Cook County Sheriff?
17         A.   Yes.
18         Q.   And what is your rank within the sheriff
19    department?
20         A.   Deputy sheriff.
21         Q.   And when were you -- where did you
22    attend high school?
23         A.   '86.
24         Q.   And where was that?
```

Page 6

1    A.   Chicago.

2    Q.   And what was the high school?

3    A.   John Marshall.

4    Q.   And do you have any college background?

5    A.   No.

6    Q.   Have you ever served in the armed

7  forces?

8    A.   No.

9    Q.   Have you ever served with any law

10  enforcement agency other than the Cook County

11  Sheriff?

12    A.   No.

13    Q.   When were you hired by the Cook County

14  Sheriff?

15    A.   2017.

16    Q.   Okay.  And was there some probationary

17  period after you were hired?

18    A.   Yes.

19    Q.   And at that point did you -- after that

20  point, did you become a full deputy sheriff?

21    A.   Yes.

22    Q.   And that's the rank that you hold today,

23  correct?

24    A.   Correct.

1    Q.   Okay.  What are your current duties at

2  the Sheriff's department?

3    A.   Transportation.

4    Q.   And what does that entail?

5    A.   Transporting IICs to and from court.

6    Q.   And what are IICs?

7    A.   Inmates in custody.

8    Q.   And is that to the court at 26th and

9  California or to other courts around Cook County?

10    A.   Around Cook County and outside of.

11    Q.   What were your duties -- well, before we

12  get into that, what have you done to prepare for

13  today's deposition?

14    A.   Nothing too much.  Just be on time.

15    Q.   And have you reviewed any documents in

16  preparation for today's deposition?

17    A.   No, sir.

18    Q.   Have you read the complaint in this

19  lawsuit?

20    A.   No, sir.

21    Q.   Do you know the name of the defendant in

22  this lawsuit?

23    A.   Yes, sir.

24    Q.   And do you know Antwaun Bacon

Page 8

1  personally?

2      A.   No, sir.

3      Q.   Does the name ring a bell?

4      A.   No.

5      Q.   So do you have any idea what this

6  lawsuit is about?

7      A.   No, I do not.

8      Q.   Okay.  Does the name Douglas Johnson

9  ring any bell?

10     A.   Yes.

11     Q.   Okay.  You have some recollection of

12  Mr. Johnson?

13     A.   Yes, sir.

14     Q.   Okay.  And have you talked to any --

15  apart from the attorney for the sheriff, have you

16  talked to anybody else at the jail or the

17  Sheriff's department about this deposition?

18     A.   No.

19     Q.   What were your duties in the -- in July

20  of 2020, if you remember?

21     A.   Well, 2020, I'm pretty sure I was

22  working on the tier or something inside the jail.

23     Q.   Okay.  And what does it mean to work on

24  the tier?

Page 9

```
 1        A.    Can you rephrase that?

 2        Q.    What does it mean to work on the tier;

 3   what does that involve?

 4        A.    Overseeing the IICs, their comings,

 5   their goings, overseeing the med pass or tending

 6   to their needs, I would say.

 7        Q.    Okay.  And what is a med pass?

 8        A.    Medical, if the nurse comes and pass out

 9   meds of some sort.

10        Q.    Okay.  So it's the point in the day when

11   medications are distributed?

12        A.    Yes, sir.

13        Q.    Okay.  Do you know Dr. Patrick Ennis or

14   Ennis?

15        A.    No.

16        Q.    I'm sorry, I couldn't hear you.

17        A.    No.

18        Q.    Okay.  The name doesn't ring a bell?

19        A.    No.

20        Q.    Okay.  In preparation for today's

21   deposition, did you review any written policies

22   that the sheriff has promulgated?

23        A.    No.

24        Q.    Okay.  I'd like to show you a document,
```

1    and maybe you can help me understand it a little

2    bit more.  It is Bates number -- it's Bates No. 6

3    and we're going to call it Orr Exhibit No. 1.

4    Let me just figure out how to share this.

5                   (Document marked as Deposition

6                    Exhibit 1 for identification.)

7    BY MR. BLEIFUSS PRADOS:

8        Q.   Can you see the document I'm sharing

9    here?

10       A.   Yes.

11       Q.   And do you know what this is?

12       A.   It says Tier Log Inquiry on it.

13       Q.   Okay.  And do you know what a Tier Log

14   Inquiry is?

15       A.   No, sir.

16       Q.   Okay.  When you log in -- I'm sorry, and

17   the date we have here under officer arrival time

18   is 7/19/2020, and the division is 8.  Is that

19   consistent with your recollection that on

20   July 19th you were working in division 8?

21       A.   Yes, sir.

22       Q.   Okay.  And when you punch in, is there

23   some -- how do you indicate your arrival time?

24   Is it when you arrive at the jail or when you

Page 11

1   arrive at the division?

2       A.   As far as clocking in?  There's a time

3   clock.  I don't know at that particular time was

4   we still using fingerprint or just the ID or our

5   numbers.

6       Q.   Okay.  And does it seem about right that

7   you would have clocked in at about 6:00 a.m.?

8       A.   Yes.

9       Q.   Okay.  And how long would your shift be,

10  12 hours?

11      A.   At that time, if it -- 2020, I believe,

12  so 12-hour shift at that particular time.

13      Q.   Do you recall working with Karen Purcell

14  during this period?

15      A.   She was my supervisor at that particular

16  time.

17      Q.   And what was her -- what would you be

18  doing?  What would your duties have been in

19  division 8 on July 19th, 2020?

20      A.   Excuse me, I didn't hear the first part.

21      Q.   I'm sorry, what were your duties on

22  division 8 in July 19th of 2020?

23      A.   Most likely working a tier.

24      Q.   And that would be what you described

1    before of providing security at med pass and that

2    sort of thing?

3        A.   Yes, sir.

4        Q.   What would your duties have been with

5    respect to -- is the term IIC?

6        A.   Yes, yes, IIC.

7        Q.   With respect to IICs coming and going

8    from division 8 to other parts of the jail?

9        A.   If they were to leave off the jail, if

10   someone was to come get them, I mark it down in

11   my log that they were leaving out, where they was

12   going.  When they come back, log them back in,

13   that sort of thing.

14       Q.   Okay.  And would you play any role in

15   assuring that the inmates with disabilities were

16   being safely transported?

17       A.   Well, it's not my particular job to do

18   so.  I can, you know, inquire or suggest; but the

19   officers that bring them and come get them, that

20   would be their particular job to do so.

21       Q.   Okay.  And what would you suggest in --

22   for example, an example an inmate with a cane or

23   an IIC with a cane, what would you suggest for

24   such a situation?

Page 13

1              MR. O'CONNOR:  Objection to the form.

2                   You may answer.

3    BY MR. BLEIFUSS PRADOS:

4        Q.   You can answer.

5        A.   Okay.  As far as if they have a cane,

6    they are to use a cane up until a certain point

7    to walk.  Once they are positioned where they

8    need to be, they can sit down; or if they're

9    sitting down at their walk of destination, then

10   they are to be supposedly handcuffed or what have

11   you.

12       Q.   And that's when they arrive at their

13   destination they're handcuffed?

14       A.   They should be.

15       Q.   Is that because walking is difficult for

16   a person with a cane when they're in handcuffs?

17       A.   Yes.

18       Q.   Okay.  And have you observed that on

19   previous instances, where persons with a cane are

20   handcuffed when they arrive at their destination?

21       A.   One more time.

22       Q.   Yeah.  Have you observed that, occasions

23   when an IIC with a cane is handcuffed when they

24   arrive at their destination?

1      A.   Well, I have seen that if they are
2  handcuffed, they usually don't have a cane.
3      Q.   Okay.  And if they have a cane, they're
4  not handcuffed, correct?
5      A.   Correct.
6      Q.   And is there an option of using a
7  wheelchair for a person with a cane?
8      A.   That would depend on, I believe, what's
9  in their file as far as short or long distance
10  travel, as far as cane or even a wheelchair.
11      Q.   Okay.  And anyone with a cane must have
12  some documentation that a cane is appropriate for
13  them, I assume; is that fair to say?
14      A.   They should, yes.
15      Q.   Okay.  And have you ever been
16  responsible -- I think this was not your duty on
17  this day, I mean, July 19th, 2020.  But have you
18  ever been responsible for transporting IICs to
19  and from different divisions?
20      A.   Yes.
21      Q.   Okay.  And when you've been responsible
22  for that, have you followed that policy of
23  handcuffing a person with a cane once they get to
24  their destination?

```
                                          Page 15
 1      A.   If I find out that it's in their file as
 2   far as them using a cane, yes.
 3      Q.   Okay.  Do you have any -- you indicated
 4   you remember Douglas Johnson.  Do you remember
 5   any incident on July 19th, 2020?
 6      A.   If that is the incident we're speaking
 7   of.
 8      Q.   What do you recall?
 9      A.   Mr. Johnson left off the tier.  I can't
10   recall where he went exactly.  I don't know if it
11   was a court visit or what have you.  He came back
12   sometime later.  What I noticed was when he did
13   come back, it appeared that he was in distress,
14   some pain, a lot of sweating, and I believe that
15   he was crying.
16      Q.   Okay.  Do you recall him complaining
17   about his wrists?
18      A.   Yes, sir.
19      Q.   And did he show you his wrists?
20      A.   Yes, sir.
21      Q.   And did you notice any redness or
22   anything unusual about his wrists?
23      A.   Yes, sir.
24      Q.   And can you describe that?
```

1      A.   It was just some redness from the

2  handcuffs, whether they was too tight or the way

3  his hand was positioned in the cuffs.

4      Q.   Okay.  And is there any way in your mind

5  that he could have faked that injury or anything

6  like that?

7      A.   I don't --

8          MR. O'CONNOR:  Objection to the form.

9               You may answer the question.

10 BY THE WITNESS:

11     A.   I don't think so.

12 BY MR. BLEIFUSS PRADOS:

13     Q.   Okay.  And did he also complain to Karen

14 Purcell?

15     A.   He did complain to her about, you know,

16 the situation.

17     Q.   And he showed her his wrists?

18     A.   Yes, he did.

19     Q.   Do you recall him running his wrists

20 under cold water immediately after he got back to

21 division 8?

22     A.   I can't recall that.

23     Q.   Okay.  Is there anything else you can

24 recall about that incident?

1    A.    No.   Just when he got back and the

2    distress, like I said, the complaining of his

3    wrists and, you know, he wanting a sergeant.  And

4    that's when I called Sergeant Purcell, and I

5    believe she took over from there and I think got

6    medical attention, I believe.

7    Q.    And was he seen by a nurse?

8    A.    I believe so.

9    Q.    Okay.  And I assume you don't recall

10   what the nurse did or whether any aspirin was

11   prescribed or anything like that?

12   A.    No, sir.

13   Q.    Okay.  Do you recall working on

14   division 8 in the subsequent days and weeks?

15   A.    Excuse me?

16   Q.    Do you recall working in division 8 in

17   the subsequent days and weeks?  I'm just not sure

18   if you were there for more than one day or what

19   your arrangement was.

20   A.    Yeah, that was my home division.

21   Q.    Okay.  And do you recall Mr. Johnson

22   complaining about his wrists in the subsequent

23   days and weeks?

24   A.    If I did see him, he mentioned his

Page 18

1    wrists.

2        Q.   Okay, all right.  In terms of training

3    you've received -- I'm going to shop share.

4                 Off of the top of your head, are you

5    familiar with Policy 708 and Policy 709 of the

6    Department of Corrections?

7        A.   No, not off the top of my head, no.

8        Q.   Okay.  And do you know how -- when the

9    Department of Corrections communicates policies

10   or trains staff in policies, is it true that they

11   will send an email to Sheriff's personnel with

12   the attached policy?

13       A.   Yeah, they should.

14       Q.   And is there then a check mark that you

15   check off to indicate that you've read the

16   policy?

17       A.   Yes.

18       Q.   Okay.  And to your knowledge, is there

19   any way that they know for sure whether staff

20   have read, have actually read, the text of the

21   policy, if you know?

22       A.   I don't know.

23       Q.   I'm sorry.  I couldn't hear your answer.

24       A.   No, sir, I don't know about that part.

1    Q.  Okay.  In terms of the situation in the

2  jail in the summer of 2020, that would have been,

3  is it fair to say, the height of COVID?

4    A.  Yes.

5    Q.  Okay.  And were IICs expected to wear

6  masks as they moved between divisions?

7    A.  I don't know in terms of the height --

8  I'm not sure about at that particular time.

9    Q.  Okay.  Do you have any recollection of

10  Mr. Johnson complaining about an asthmatic attack

11  or anything like that on the date we discussed

12  before?

13    A.  No, sir.

14    Q.  Okay, all right.  And have you -- did

15  you discuss Mr. Johnson's situation with any

16  personnel apart from Sergeant Purcell?  When I

17  mean this situation, I mean this incident with

18  the wrists.

19    A.  No.

20    Q.  Did you bring it up with any superior,

21  any of your superiors, in the Department of

22  Corrections?

23    A.  Just Sergeant Purcell.

24    Q.  Okay, all right.  I have -- oh, in terms

Page 20

1   of the protocol with a cane, how were you trained

2   and when and where to apply handcuffs to a

3   person, an IIC, with a cane?

4       A.   Like I said, from my understanding, from

5   my knowledge, is that, first of all, you have to

6   find out if the cane is for short or long

7   distance.  If it is for such, once they get to

8   their destination, they are to be handcuffed and

9   secured.

10      Q.   Okay.  And do you remember where you

11  were trained in how that's supposed to work?

12      A.   I believe it was in the academy and as

13  the years went on.

14      Q.   Okay.

15      A.   And, you know.

16      Q.   And has that been consistently what

17  you've observed is the practice at the Cook

18  County Jail?

19      A.   Yes.

20           MR. BLEIFUSS PRADOS:  Okay.  I do not

21  have any further questions.

22           MR. O'CONNOR:  Just very briefly.

23

24

                                                    Page 21

 1                          EXAMINATION

 2   BY MR. O'CONNOR:

 3       Q.   Good afternoon, Officer Orr.

 4       A.   Good afternoon.

 5       Q.   On the date in question, when plaintiff

 6   was brought back to the tier, did you see him in

 7   the handcuffs while he was still wearing the

 8   handcuffs?

 9       A.   Yes.

10       Q.   Okay.  And were you up close with him

11   when you saw him in the handcuffs, when he was

12   brought back to the tier?

13       A.   Yes.

14       Q.   And were you able to observe the

15   tightness of the handcuffs?

16       A.   From what -- not exactly, but because

17   the officer took them off his self.

18       Q.   Do you recall, did you notice anything

19   unusual about the tightness of the handcuffs when

20   he was brought back to the tier?

21       A.   That as soon as the cuffs came off, he

22   grabbed his wrists.

23       Q.   Okay.  Was that the only thing that you

24   would describe as potentially unusual about the

Page 22

1    tightness of the cuffs?

2        A.    About the cuffs, yes.

3        Q.    Okay.  Did you see -- sorry.  So now I'm

4    stepping back a little bit further.

5                Did you see handcuffs that were

6    applied to him when he left the tier?

7        A.    I can't recall that.

8        Q.    Okay.  Do you recall noticing anything

9    unusual about the handcuffs that were placed on

10   him or if, in fact, they were placed on him when

11   he left the tier?

12       A.    One more time.

13       Q.    I apologize.  That was a bit of a messy

14   question.

15       A.    That's all right.  I couldn't hear you.

16       Q.    Do you recall if handcuffs were placed

17   on him as he left the tier?

18       A.    I want to say yes.

19       Q.    And do you recall there being anything

20   unusual about the tightness of the handcuffs that

21   were placed on him when he left the tier?

22           MR. BLEIFUSS PRADOS:  I would just

23   object on the basis that he previously testified

24   that he wants to answer yes, so I just object on

Page 23

1    the basis of foundation.

2            But you can answer.

3    BY MR. O'CONNOR:

4       Q.   Officer Orr, you can answer the

5    question.

6       A.   I don't know how tight it was placed

7    once he left the tier.

8       Q.   Okay.  And just to clarify, do you have

9    actual recollection of him being placed in

10   handcuffs as he left the tier?

11      A.   Say that louder for me.

12      Q.   Sure.  I just want to clarify, do you

13   have actual recollection of him being placed in

14   handcuffs when he left the tier?

15      A.   Yes.

16      Q.   Okay.  And based on those actual

17   recollections, do you recall anything unusual

18   about the tightness of those handcuffs that he

19   was placed in when he left the tier?

20      A.   No.

21           MR. BLEIFUSS PRADOS:  Objection,

22   foundation.

23           You can answer.  I'm sorry, I made

24   an objection, but you should answer.

Page 24

1    BY THE WITNESS:

2        A.    No, not the tightness of them.

3            MR. O'CONNOR:  Okay.  I have no further

4    questions.

5            MR. BLEIFUSS PRADOS:  Zachary.

6            MR. STILLMAN:  I have nothing.

7            MR. BLEIFUSS PRADOS:  Okay.

8                    FURTHER EXAMINATION

9    BY MR. BLEIFUSS PRADOS:

10       Q.    Sir, you testified earlier that you did

11   observe redness on his wrists when the handcuffs

12   were removed, correct?

13       A.    Yes.

14       Q.    And you don't change any of that

15   testimony, correct?

16       A.    No.

17           MR. BLEIFUSS PRADOS:  Okay.  Thank you.

18              Nothing else.

19           THE REPORTER:  Signature?

20           MR. O'CONNOR:  Officer Orr, your

21   testimony today has completed.  The only thing

22   left to determine is whether or not you wish to

23   review the transcript of your testimony prior to

24   providing signature.  The only purpose for

Page 25

1    reviewing the transcript would be to correct

2    spelling or any mistakes such as that, such as,

3    if a name was misspelled.  You can't change any

4    of the actual content of the transcript.  But,

5    otherwise, you could waive your signature if you

6    wish and not review it prior to signing it.

7                THE WITNESS:  Okay.

8                MR. O'CONNOR:  Are you comfortable with

9    waiving signature today?

10               THE WITNESS:  Yes.

11               MR. O'CONNOR:  Okay.  We will waive

12   signature.

13                    (Discussion off the record.)

14               THE REPORTER:  Are you ordering the

15   transcript?

16               MR. BLEIFUSS PRADOS:  No, not today.

17               MR. O'CONNOR:  We would be ordering the

18   transcript.

19               MR. STILLMAN:  We will also order a

20   copy.

21                    (Whereupon, the deposition was

22                     concluded at 1:27 p.m.)

23                    (Signature was waived.)

24

```
                                                    Page 26

 1   STATE OF ILLINOIS   )
                         )  SS:
 2   COUNTY OF C O O K   )

 3                  I, Suzanne Burke, Illinois CSR
 4   No. 084-002573, do hereby certify that MAURICE
 5   ORR was duly sworn to testify the whole truth,
 6   and that the foregoing deposition was recorded
 7   stenographically by me and was reduced to
 8   typewriting by me, and that the said deposition
 9   constitutes a true record of the testimony given
10   by said witness.
11                  I further certify that the
12   reading and signing of said deposition was waived
13   by the witness and his attorney.
14                  I further certify that I am not
15   a relative or employee or attorney or counsel of
16   any of the parties, or a relative or employee of
17   such attorney or counsel, or financially
18   interested directly or indirectly in this action.
19                  IN WITNESS WHEREOF, I have
20   hereunto set my hand and affixed my seal of
21   office at Chicago, Illinois, 3rd of April, A.D.,
22   2024.

23                  Certified Shorthand Reporter

24
```

**[03718 - believe]**

**0**

03718   1:5
0606   2:14
084-002573
 26:4

**1**

1   3:9 10:3,6
10   3:9
12   11:10,12
19th   10:20
 11:19,22 14:17
 15:5
1:01   1:19
1:27   25:22

**2**

2   5:12
2017   6:15
2020   8:20,21
 11:11,19,22
 14:17 15:5
 19:2
2024   1:18
 26:22
2030   2:8
204   2:3
21   3:5
2108   26:23
22   1:5
230   2:13,14
24   3:5
26   1:18
26th   7:8

**3**

300-4479   2:15
312   2:9,15
3rd   26:21

**4**

4   3:4

**5**

590-9158   2:4

**6**

6   10:2
603-1880   2:9
60514   2:4
60602   2:9
630   2:4
69   2:8
6:00   11:7

**7**

7/19/2020
 10:18
708   18:5
709   18:5

**8**

8   10:18,20
 11:19,22 12:8
 16:21 17:14,16
86   5:23

**a**

a.d.   1:18 26:21
a.m.   11:7
able   21:14
ableifuss   2:5

academy   20:12
action   26:18
actual   23:9,13
 23:16 25:4
actually   18:20
adrian   2:2
affixed   26:20
afternoon   4:7
 21:3,4
agency   6:10
answer   4:24
 13:2,4 16:9
 18:23 22:24
 23:2,4,23,24
anticipate   4:17
antwaun   1:8
 2:17 7:24
anybody   8:16
apart   8:15
 19:16
apologize   22:13
appearances
 2:1
appeared   2:6
 2:11,16 15:13
applied   22:6
apply   20:2
appropriate
 14:12
april   26:21
armed   6:6
arrangement
 17:19
arrival   10:17
 10:23

arrive   10:24
 11:1 13:12,20
 13:24
aspirin   17:10
assume   5:8
 14:13 17:9
assuring   12:15
asthmatic
 19:10
attached   18:12
attack   19:10
attend   5:22
attention   17:6
attorney   2:7
 8:15 26:13,15
 26:17
avenue   2:3

**b**

b   3:7
back   12:12,12
 15:11,13 16:20
 17:1 21:6,12
 21:20 22:4
background
 6:4
bacon   1:8 2:17
 7:24
based   23:16
basis   22:23
 23:1
bates   10:2,2
behalf   2:6,11
 2:16
believe   11:11
 14:8 15:14

**[believe - deposition]**

17:5,6,8 20:12
**bell** 8:3,9 9:18
**best** 4:23
**bit** 10:2 22:4,13
**bleifuss** 2:2 3:4
3:5 4:6 10:7
13:3 16:12
20:20 22:22
23:21 24:5,7,9
24:17 25:16
**briefly** 20:22
**bring** 12:19
19:20
**brought** 21:6
21:12,20
**building** 5:12
**burke** 1:16
26:3

**c**

**c** 4:9 26:2
**california** 7:9
**call** 10:3
**called** 1:13 4:3
17:4
**cane** 12:22,23
13:5,6,16,19,23
14:2,3,7,10,11
14:12,23 15:2
20:1,3,6
**capacity** 1:7
**ccdoc** 1:8
**certain** 13:6
**certified** 1:17
26:23

**certify** 26:4,11
26:14
**change** 24:14
25:3
**check** 18:14,15
**chicago** 2:9,14
6:1 26:21
**civil** 1:14
**clarendon** 2:4
**clarify** 23:8,12
**clock** 11:3
**clocked** 11:7
**clocking** 11:2
**close** 21:10
**cold** 16:20
**college** 6:4
**come** 12:10,12
12:19 15:13
**comes** 9:8
**comfortable**
25:8
**coming** 12:7
**comings** 9:4
**commencing**
1:18
**communicates**
18:9
**complain** 16:13
16:15
**complaining**
15:16 17:2,22
19:10
**complaint** 7:18
**completed**
24:21

**complex** 5:13
**concluded**
25:22
**confusing** 5:4
**consistent**
10:19
**consistently**
20:16
**constitutes**
26:9
**content** 25:4
**conversation**
4:19
**cook** 1:6,8 2:7
2:11 5:13,16
6:10,13 7:9,10
20:17
**cookcountys...**
2:10
**copy** 25:20
**corporation**
1:9
**correct** 6:23,24
14:4,5 24:12
24:15 25:1
**corrections**
18:6,9 19:22
**counsel** 3:10
26:15,17
**county** 1:6,9
2:7,11 5:13,16
6:10,13 7:9,10
20:18 26:2
**court** 1:1 4:14
7:5,8 15:11

**courts** 1:15 7:9
**covid** 19:3
**crying** 15:15
**csr** 26:3
**cuffs** 16:3
21:21 22:1,2
**current** 7:1
**currently** 5:11
5:15
**custody** 7:7
**cv** 1:5

**d**

**d** 3:1
**dart** 1:7
**date** 10:17
19:11 21:5
**day** 9:10 14:17
17:18
**days** 17:14,17
17:23
**defendant** 2:16
7:21
**defendants**
1:10 2:11
**department**
5:19 7:2 8:17
18:6,9 19:21
**depend** 14:8
**deposed** 4:11
**deposition** 1:12
3:8 7:13,16
8:17 9:21 10:5
25:21 26:6,8
26:12

**[depositions - handcuffs]**                                    Page 3

**depositions**
1:16
**deputy** 5:20
6:20
**describe** 15:24
21:24
**described**
11:24
**destination**
13:9,13,20,24
14:24 20:8
**determine**
24:22
**devore** 2:12
**devoreraduns...**
2:15
**different** 14:19
**difficult** 13:15
**directly** 26:18
**disabilities**
12:15
**discuss** 19:15
**discussed** 19:11
**discussion**
25:13
**distance** 14:9
20:7
**distress** 15:13
17:2
**distributed**
9:11
**district** 1:1,1
1:15
**division** 1:2
10:18,20 11:1

11:19,22 12:8
16:21 17:14,16
17:20
**divisions** 14:19
19:6
**document** 9:24
10:5,8
**documentation**
14:12
**documents**
7:15
**doing** 11:18
**douglas** 1:3 8:8
15:4
**dr** 9:13
**duly** 4:4 26:5
**duties** 7:1,11
8:19 11:18,21
12:4
**duty** 14:16
**dvorak** 2:2

**e**

**e** 3:1,7 4:9
**earlier** 24:10
**eastern** 1:2
**easy** 4:17
**email** 18:11
**employed** 5:15
**employee** 26:15
26:16
**enforcement**
6:10
**ennis** 9:13,14
**entail** 7:4

**exactly** 15:10
21:16
**examination**
1:13 3:4,5,5
4:5 21:1 24:8
**examined** 4:4
**example** 12:22
12:22
**excuse** 11:20
17:15
**exhibit** 3:8,9,10
10:3,6
**expected** 19:5
**explained** 4:15

**f**

**fact** 22:10
**fair** 14:13 19:3
**faked** 16:5
**familiar** 18:5
**far** 11:2 13:5
14:9,10 15:2
**federal** 1:13
**figure** 10:4
**file** 14:9 15:1
**financially**
26:17
**find** 15:1 20:6
**fingerprint**
11:4
**finish** 4:23
**first** 4:3 11:20
20:5
**followed** 14:22
**follows** 4:4

**forces** 6:7
**foregoing** 26:6
**form** 13:1 16:8
**foundation**
23:1,22
**full** 4:8 6:20
**further** 3:5
20:21 22:4
24:3,8 26:11
26:14

**g**

**gap** 4:20
**given** 26:9
**gmail.com** 2:5
**going** 10:3 12:7
12:12 18:3
**goings** 9:5
**good** 4:7 21:3,4
**grabbed** 21:22

**h**

**h** 3:7
**hand** 16:3
26:20
**handcuffed**
13:10,13,20,23
14:2,4 20:8
**handcuffing**
14:23
**handcuffs**
13:16 16:2
20:2 21:7,8,11
21:15,19 22:5
22:9,16,20
23:10,14,18

**[handcuffs - n]**

24:11
**head**  18:4,7
**hear**  4:18 9:16
  11:20 18:23
  22:15
**height**  19:3,7
**help**  10:1
**hereunto**  26:20
**high**  5:22 6:2
**hills**  2:4
**hired**  6:13,17
**hold**  6:22
**home**  17:20
**hour**  1:19
  11:12
**hours**  11:10

**i**

**idea**  8:5
**identification**
  10:6
**iic**  12:5,6,23
  13:23 20:3
**iics**  7:5,6 9:4
  12:7 14:18
  19:5
**illinois**  1:1,18
  2:4,9,14 26:1,3
  26:21
**immediately**
  16:20
**important**  4:15
**incident**  15:5,6
  16:24 19:17
**indicate**  10:23
  18:15

**indicated**  15:3
**indirectly**
  26:18
**injury**  16:5
**inmate**  12:22
**inmates**  7:7
  12:15
**inquire**  12:18
**inquiry**  10:12
  10:14
**inside**  8:22
**instances**  13:19
**interested**
  26:18
**involve**  9:3

**j**

**jail**  5:13 8:16
  8:22 10:24
  12:8,9 19:2
  20:18
**james**  2:7
**james.oconnor**
  2:10
**job**  12:17,20
**john**  6:3
**johnson**  1:3 8:8
  8:12 15:4,9
  17:21 19:10
**johnson's**
  19:15
**july**  8:19 10:20
  11:19,22 14:17
  15:5
**jump**  4:19

**k**

**k**  26:2
**karen**  11:13
  16:13
**kind**  4:19
**know**  5:5 7:21
  7:24 9:13
  10:11,13 11:3
  12:18 15:10
  16:15 17:3
  18:8,19,21,22
  18:24 19:7
  20:15 23:6
**knowledge**
  18:18 20:5

**l**

**law**  2:2 6:9
**lawsuit**  7:19,22
  8:6
**lawyer**  4:23
**leave**  12:9
**leaving**  12:11
**left**  15:9 22:6
  22:11,17,21
  23:7,10,14,19
  24:22
**likely**  11:23
**little**  10:1 22:4
**llc**  2:2,12
**log**  10:12,13,16
  12:11,12
**long**  11:9 14:9
  20:6
**lot**  15:14

**louder**  23:11

**m**

**m**  4:9
**made**  23:23
**make**  4:20 5:1
  5:4,9
**march**  1:18
**mark**  12:10
  18:14
**marked**  10:5
**marshall**  6:3
**masks**  19:6
**maurice**  1:12
  3:3 4:2,9 26:4
**mean**  8:23 9:2
  14:17 19:17,17
**med**  9:5,7 12:1
**medical**  9:8
  17:6
**medications**
  9:11
**meds**  9:9
**mentioned**
  17:24
**messy**  22:13
**mind**  16:4
**misspelled**  25:3
**mistakes**  25:2
**monroe**  2:13
**moved**  19:6
**municipal**  1:9

**n**

**n**  3:1

**[name - protocol]**                                                    Page 5

**name**   4:8,10
  7:21 8:3,8 9:18
  25:3
**natural**   4:18
**need**   5:6 13:8
**needs**   9:6
**northern**   1:1
**nos**   3:8
**note**   3:10
**notice**   15:21
  21:18
**noticed**   15:12
**noticing**   22:8
**number**   10:2
**numbers**   11:5
**nurse**   9:8 17:7
  17:10

**o**

**o**   4:10 26:2,2
**o'connor**   2:7
  3:5 13:1 16:8
  20:22 21:2
  23:3 24:3,20
  25:8,11,17
**object**   22:23,24
**objection**   13:1
  16:8 23:21,24
**observe**   21:14
  24:11
**observed**   13:18
  13:22 20:17
**occasions**   13:22
**office**   26:21
**officer**   1:8
  10:17 21:3,17

23:4 24:20
**officers**   12:19
**offices**   2:2
**official**   1:7
**oh**   19:24
**okay**   4:11,14
  6:16 7:1 8:8,11
  8:14,23 9:7,10
  9:13,18,20,24
  10:13,16,22
  11:6,9 12:14
  12:21 13:5,18
  14:3,11,15,21
  15:3,16 16:4
  16:13,23 17:9
  17:13,21 18:2
  18:8,18 19:1,5
  19:9,14,24
  20:10,14,20
  21:10,23 22:3
  22:8 23:8,16
  24:3,7,17 25:7
  25:11
**once**   13:7 14:23
  20:7 23:7
**option**   14:6
**order**   25:19
**ordering**   25:14
  25:17
**orr**   1:12 3:3 4:2
  4:9 10:3 21:3
  23:4 24:20
  26:5
**outside**   7:10

**overseeing**   9:4
  9:5

**p**

**p.m.**   1:19 25:22
**page**   3:2,8
**pain**   15:14
**part**   11:20
  18:24
**particular**   11:3
  11:12,15 12:17
  12:20 19:8
**parties**   26:16
**parts**   12:8
**pass**   9:5,7,8
  12:1
**patrick**   9:13
**period**   6:17
  11:14
**person**   13:16
  14:7,23 20:3
**personally**   8:1
**personnel**
  18:11 19:16
**persons**   13:19
**pertaining**   1:15
**placed**   22:9,10
  22:16,21 23:6
  23:9,13,19
**plaintiff**   1:4 2:6
  21:5
**play**   12:14
**please**   4:7,22
  5:5
**point**   5:3 6:19
  6:20 9:10 13:6

**policies**   9:21
  18:9,10
**policy**   14:22
  18:5,5,12,16,21
**pose**   5:3
**posing**   4:24
**positioned**   13:7
  16:3
**potentially**
  21:24
**practice**   20:17
**prados**   2:2 3:4
  3:5 4:6 10:7
  13:3 16:12
  20:20 22:22
  23:21 24:5,7,9
  24:17 25:16
**preparation**
  7:16 9:20
**prepare**   7:12
**prescribed**
  17:11
**pretty**   8:21
**previous**   13:19
**previously**
  22:23
**prior**   24:23
  25:6
**probationary**
  6:16
**procedure**   1:14
**promulgated**
  9:22
**protocol**   20:1

**[providing - state]**                                                    Page 6

| | | | |
|---|---|---|---|
| **providing** 12:1 24:24 | **record** 4:8 25:13 26:9 | **s** | **show** 9:24 15:19 |
| **punch** 10:22 | **recorded** 26:6 | **s** 3:7 | **showed** 16:17 |
| **purcell** 11:13 16:14 17:4 19:16,23 | **redness** 15:21 16:1 24:11 | **safely** 12:16 | **signature** 24:19 24:24 25:5,9 25:12,23 26:23 |
| **purpose** 24:24 | **reduced** 26:7 | **saw** 21:11 | |
| **pursuant** 1:13 | **reemphasize** 4:16 | **says** 10:12 | **signing** 25:6 26:12 |
| **q** | **reframed** 5:6 | **school** 5:22 6:2 | **sir** 4:7 5:11 7:17,20,23 8:2 8:13 9:12 10:15,21 12:3 15:18,20,23 17:12 18:24 19:13 24:10 |
| **question** 4:17 4:24 5:3,6,9 16:9 21:5 22:14 23:5 | **relative** 26:15 26:16 | **seal** 26:20 | |
| | **remember** 8:20 15:4,4 20:10 | **secured** 20:9 | |
| | | **security** 12:1 | |
| | **removed** 24:12 | **see** 10:8 17:24 21:6 22:3,5 | |
| **questions** 20:21 24:4 | **rephrase** 9:1 | **seem** 11:6 | **sit** 13:8 |
| **r** | **reporter** 1:17 4:14 24:19 25:14 26:23 | **seen** 14:1 17:7 | **sitting** 5:11 13:9 |
| **r** 4:9,10,10 | | **self** 21:17 | **situation** 12:24 16:16 19:1,15 19:17 |
| **radunsky** 2:12 | **respect** 12:5,7 | **send** 18:11 | |
| **rank** 5:18 6:22 | **responsible** 14:16,18,21 | **sense** 4:20 5:1,4 5:9 | |
| **read** 7:18 18:15 18:20,20 | | | **soon** 21:21 |
| | **retained** 3:10 | **sergeant** 17:3,4 19:16,23 | **sorry** 9:16 10:16 11:21 18:23 22:3 23:23 |
| **reading** 26:12 | **review** 9:21 24:23 25:6 | **served** 6:6,9 | |
| **recall** 11:13 15:8,10,16 16:19,22,24 17:9,13,16,21 21:18 22:7,8 22:16,19 23:17 | **reviewed** 7:15 | **set** 26:20 | |
| | **reviewing** 25:1 | **share** 10:4 18:3 | |
| | **right** 11:6 18:2 19:14,24 22:15 | **sharing** 10:8 | **sort** 9:9 12:2,13 |
| | | **sheriff** 1:6 5:16 5:18,20 6:11 6:14,20 8:15 9:22 | **speaking** 15:6 |
| | **ring** 8:3,9 9:18 | | **spell** 4:8 |
| **received** 18:3 | **role** 12:14 | | **spelling** 25:2 |
| **recollection** 8:11 10:19 19:9 23:9,13 | **room** 5:12 | **sheriff's** 7:2 8:17 18:11 | **ss** 26:1 |
| | **rules** 1:14 | **shift** 11:9,12 | **staff** 18:10,19 |
| | **running** 16:19 | **shop** 18:3 | **state** 1:17 4:8 26:1 |
| **recollections** 23:17 | | **short** 14:9 20:6 | |
| | | **shorthand** 1:17 26:23 | |

**[state's - whereof]**

**state's** 2:7
**states** 1:1,14
**stenographic...**
  26:7
**stepping** 22:4
**stillman** 2:13
  24:6 25:19
**street** 2:8,13
**subsequent**
  17:14,17,22
**suggest** 12:18
  12:21,23
**suite** 2:3,8,14
**summer** 19:2
**superior** 19:20
**superiors** 19:21
**supervisor**
  11:15
**supposed** 20:11
**supposedly**
  13:10
**sure** 8:21 17:17
  18:19 19:8
  23:12
**suzanne** 1:16
  26:3
**sweating** 15:14
**sworn** 4:1,4
  26:5

**t**

**t** 3:7
**taken** 1:16
**talk** 4:15
**talked** 8:14,16

**tending** 9:5
**term** 12:5
**terms** 18:2 19:1
  19:7,24
**testified** 4:4
  22:23 24:10
**testify** 26:5
**testimony**
  24:15,21,23
  26:9
**text** 18:20
**thank** 24:17
**thing** 12:2,13
  21:23 24:21
**think** 14:16
  16:11 17:5
**thomas** 1:7
**tier** 8:22,24 9:2
  10:12,13 11:23
  15:9 21:6,12
  21:20 22:6,11
  22:17,21 23:7
  23:10,14,19
**tight** 16:2 23:6
**tightness** 21:15
  21:19 22:1,20
  23:18 24:2
**time** 7:14 10:17
  10:23 11:2,3
  11:11,12,16
  13:21 19:8
  22:12
**today** 6:22
  24:21 25:9,16

**today's** 7:13,16
  9:20
**took** 17:5 21:17
**top** 18:4,7
**trained** 20:1,11
**training** 18:2
**trains** 18:10
**transcript**
  24:23 25:1,4
  25:15,18
**transportation**
  7:3
**transported**
  12:16
**transporting**
  7:5 14:18
**travel** 14:10
**true** 18:10 26:9
**truth** 26:5
**try** 4:22
**typewriting**
  26:8

**u**

**u** 4:9
**under** 10:17
  16:20
**understand** 5:9
  10:1
**understanding**
  20:4
**united** 1:1,14
**unusual** 15:22
  21:19,24 22:9
  22:20 23:17

**use** 13:6
**using** 11:4 14:6
  15:2
**usually** 14:2

**v**

**visit** 15:11
**vs** 1:5

**w**

**waive** 25:5,11
**waived** 25:23
  26:12
**waiving** 25:9
**walk** 13:7,9
**walker** 2:3
**walking** 13:15
**want** 22:18
  23:12
**wanting** 17:3
**wants** 22:24
**washington** 2:8
**water** 16:20
**way** 5:4 16:2,4
  18:19
**wear** 19:5
**wearing** 21:7
**weeks** 17:14,17
  17:23
**went** 15:10
  20:13
**west** 2:8,13
**wheelchair**
  14:7,10
**whereof** 26:19

**wish**   24:22 25:6
**witness**   3:2 4:1
  4:3 16:10 24:1
  25:7,10 26:10
  26:13,19
**work**   8:23 9:2
  20:11
**working**   8:22
  10:20 11:13,23
  17:13,16
**wrists**   15:17,19
  15:22 16:17,19
  17:3,22 18:1
  19:18 21:22
  24:11
**written**   9:21

**x**

**x**   3:1,7

**y**

**yeah**   13:22
  17:20 18:13
**years**   20:13

**z**

**zachary**   2:13
  24:5
**zoom**   1:12
**zstillman**   2:15

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.

(2)  Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the

foregoing transcript is a true, correct and complete

transcript of the colloquies, questions and answers

as submitted by the court reporter. Veritext Legal

Solutions further represents that the attached

exhibits, if any, are true, correct and complete

documents as submitted by the court reporter and/or

attorneys in relation to this deposition and that

the documents were processed in accordance with

our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining

the confidentiality of client and witness information,

in accordance with the regulations promulgated under

the Health Insurance Portability and Accountability

Act (HIPAA), as amended with respect to protected

health information and the Gramm-Leach-Bliley Act, as

amended, with respect to Personally Identifiable

Information (PII). Physical transcripts and exhibits

are managed under strict facility and personnel access

controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.