Page 1

1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS

2

3    DOUGLAS JOHNSON,                    )
                                         )
4                 Plaintiff,             )
                                         )
5                 -vs-                   )  No. 22-cv-03718
                                         )
6    COOK COUNTY SHERIFF THOMAS DART, )
     in his official capacity, ANTWAUN)
7    BACON, a CCDOC officer, and COOK )
     COUNTY, a municipal corporation, )
8                                        )
                  Defendants.            )

9

10

11            Zoom deposition of OFFICER KAREN PURCELL taken
12   before REGINA E. GEBERT, CSR and Notary Public, pursuant
13   to the Federal Rules of Civil Procedure for the United
14   States District Courts pertaining to the taking of
15   depositions.  The deposition commenced at 1:00 o'clock
16   p.m. on the 28th day of March, A.D. 2024.

17

18

19

20

21

22

23

24

Page 2

1              There were present at the taking of this
2    deposition the following counsel:
3              DVORAK LAW OFFICES by
               MR. ADRIAN BLEIFUSS PRADOS,
4              One Walker Avenue, Suite 204
               Clarendon Hills, Illinois 6051402
5              (630) 590-9158
               ableifuss@gmail.com,
6
7                  on behalf of the Plaintiff;
8              ASSISTANT STATE'S ATTORNEY
               CIVIL RIGHTS/TORTS LITIGATION
9              CIVIL ACTIONS BUREAU;
               COOK COUNTY STATE'S ATTORNEY'S OFFICE by
10             MR. JAMES O'CONNOR,
               500 Richard J. Daley Center
11             Chicago, Illinois 60602
               (312) 603-4327
12             rebecca.laue@cookcountysao.org,
13                 on behalf of the Defendants,
                   Cook County Sheriff Thomas Dart
14                 and Cook County;
15             DEVORE RADUNSKY by
               MR. ZACHARY STILLMAN,
16             230 West Monroe Street, Suite 230
               Chicago, Illinois 60606
17             (312) 300-4479
               zstillman@devoreradunsky.com,
18
                   on behalf of the Defendant,
19                 Officer Antwaun Bacon.
20                        - - - - -
21
22
23
24

Page 3

1                    DEPOSITION OF

                 Officer Karen Purcell

2

                   March 28, 2024

3

4    EXAMINATION BY:                          PAGE

5    Mr. Adrian Bleifuss Prados               4

6

                   *  *  *  *  *  *

7

8                      EXHIBITS

9

10   Purcell Exhibit 1 (Tier Log Inquiry)      PAGE 8

11   Purcell Group Exhibit 2 (Inmate Grievance Form)  PAGE 11

12   Purcell Exhibit 3 (Policy 708)            PAGE 17

13   Purcell Exhibit 4 (Policy 709)            PAGE 18

14                 *  *  *  *  *  *

15

16

17

18

19

20

21

22

23

24

Page 4

1                    OFFICER KAREN PURCELL,

2      called as a witness herein, having been first duly

3      sworn, was examined upon oral interrogatories and

4      testified as follows:

5                         EXAMINATION

6                    by Mr. Bleifuss Prados:

7          Q    Good afternoon, ma'am.  Thank you so much for

8      your time this afternoon.  Could you please state your

9      full name and spell it for the record?

10         A    Karen, K A R E N, Purcell, P as in Paul U R C E

11     L L.

12         Q    Okay.  And are you currently retired from

13     working for the Cook County Sheriff?

14         A    Yes.

15         Q    And when did you retire?

16         A    November of 2023.

17         Q    Congratulations.  And did you have a star number

18     or employee number associated with your work -- or with

19     your job at the sheriff's?

20         A    Yes.

21         Q    And what was that number?

22         A    758.

23         Q    Okay.  And have you ever been deposed before?

24         A    No.

```
                                                    Page 5
 1      Q    Okay.   Just a few ground rules.   It's very
 2   natural in human conversation to anticipate the question
 3   that someone's about to ask you and so you'll be tempted
 4   to jump in before the question ends and fully posed and
 5   I just ask that you try not to do that because that
 6   makes it hard for the court reporter.   Does that make
 7   sense?
 8      A    Yes.
 9      Q    And if I phrase a question in a way that's
10   confusing or doesn't make sense to you, please let me
11   know that the question is confusing or that you'd like
12   me to rephrase the question otherwise I'll assume that
13   you understood the question.   Does that make sense?
14      A    Yes.
15      Q    Okay.   When were you -- where did you attend
16   high school?
17      A    Chicago Vocational High School in Chicago.
18      Q    And when did you graduate?
19      A    1986.
20      Q    And do you have any college education after high
21   school?
22      A    Yes.
23      Q    And where did you go to college?
24      A    I went several places.   I went to Malcolm X
```

```
                                              Page 6
 1    College, I went to Kennedy King College, I went to

 2    Triton College and I went to Truman College.

 3        Q    And did you complete a degree at any or all of

 4    those institutions?

 5        A    Yes.

 6        Q    And what was that degree and when did you

 7    receive it?

 8        A    My last degree was in Christian Science.  It was

 9    received in 2013.

10        Q    Okay.  And do you have any experience working

11    for any law enforcement agency other than the Cook

12    County Sheriff?

13        A    Yes.

14        Q    And what was that employer?

15        A    I worked as a security guard at Malcolm X

16    College City Colleges.

17        Q    Okay.  And how many years did you work in that

18    position?

19        A    I believe it was 12 years.

20        Q    Okay.  And did you -- have you worked in any

21    other law enforcement capacities?

22        A    No.

23        Q    Have you ever served in the armed forces?

24        A    No.
```

Page 7

1      Q   And when were you first hired by the Cook County

2  Sheriff?

3      A   I was originally hired in April of '93 as a

4  paramedic, I left the paramedic and became a sworn

5  officer in 1998 in February, February of 1998.

6      Q   And when you became a sworn officer, what part

7  of the sheriff's operation were you working out of at

8  that time?

9      A   The Department of Corrections.

10     Q   Okay.  And did you remain with the Department of

11  Corrections until your retirement in 2023?

12     A   Yes.

13     Q   Okay.  And am I right that you retired with the

14  rank of sergeant?

15     A   No.

16     Q   All right.  What was your rank when you retired,

17  ma'am?

18     A   Lieutenant.

19     Q   Lieutenant.  Okay.  And when did you achieve

20  that rank?

21     A   2021.

22     Q   Okay.  And do you recall what your duties were

23  in July of 2020?

24     A   I had the duties of a sergeant.

Page 8

1     Q    Okay.  And what are the duties of a sergeant in

2   the Cook County Sheriff's Department of Corrections?

3     A    They vary.

4     Q    Okay.  Have you -- apart from talking to counsel

5   have you done anything to prepare for this deposition?

6     A    No.

7     Q    Have you reviewed any documents in preparation

8   for this deposition?

9     A    No.

10    Q    Have you read the Complaint in this

11  deposition -- in this lawsuit?

12    A    No.

13    Q    Do you know Defendant Antwaun Bacon?

14    A    I don't recall that person, so no.

15    Q    Do you recall Douglas Johnson, the plaintiff in

16  this lawsuit?

17    A    No.

18    Q    Do you know anything about the allegations that

19  are made in this lawsuit?

20    A    No.

21    Q    I'd like to show you what I will call Purcell --

22  we'll mark it Purcell Exhibit 1 and then you can explain

23  to me what it is exactly.  Just a second.  Let me figure

24  out the sharing.

```
                                                    Page 9
 1          Okay.  Can you see this document I'm showing?
 2     It's of an Excel sheet.
 3          A    Yes.
 4          Q    And it's titled Tier Log Inquiry, correct?
 5          A    Yes, sir.
 6          Q    And it shows Area Supervisor K. Purcell under --
 7     that would be in the middle column.  Do you see that?
 8          A    Yes, I do.
 9          Q    And there's a Supervisor star 1234.  Do you know
10     what that's about?
11          A    When -- in roll call they see the supervisors
12     that are assigned that day and they have to put a
13     supervisor's name in there in order to close the tier
14     log for the day so when I was at the roll call, then
15     they put my name.
16          Q    Okay.  And the 1234, do you know what that
17     means?
18          A    They have to put your star down but most of the
19     time they don't know your star.
20          Q    Okay.  So they just guess 1234.
21          A    Yes, in order to close the tier log, yes, sir.
22          Q    And is it your understanding this reflects the
23     fact that you were working in Division 8 on July 19,
24     2020?
```

Page 10

1     A    Yes.  That's what it says, yes, sir.

2     Q    Okay.  Do you recall working with Officer Orr in

3     Division 8?

4     A    Yes.

5     Q    Okay.  And what were your duties in July of 2020

6     working in Division 8?

7     A    I was a sergeant.

8     Q    Okay.  And what was required of you as a

9     sergeant?  What sort of work would you be doing?

10    A    I would make rounds and make sure everything was

11    going.  If there was a problem, whoever is available, if

12    a supervisor is available, I would respond to that

13    problem, to that tier, to escalate the situation.

14    Q    Okay.  And from this Tier Log Inquiry is it

15    apparent that you logged in at 6:00 a.m. that morning

16    and did a 12-hour shift?

17    A    Yes, sir.

18    Q    Okay.  So given that you don't remember Douglas

19    Johnson, and given that you don't know anything about

20    this lawsuit, is it fair to say that you don't recall

21    anything about the day -- do you recall anything about

22    the events of July 19, 2020?

23    A    No.

24    Q    Do you recall an inmate complaining about a

Page 11

1   wrist injury on that day?

2       A    No.

3       Q    Okay.

4       A    I don't recall that specific incident, no, sir.

5       Q    Okay.  And as far as you know, this day was like

6   any other day and you have no specific recollection of

7   it, correct?

8       A    That is correct, sir.

9       Q    Okay.  Were you at all responsible for

10  transporting inmates between different divisions?  Is

11  that a duty that you would have overseen?

12      A    No.  No.

13      Q    Okay.

14      A    We have a transport officer.

15      Q    Okay.  And detainees are called -- are they

16  called IICs?  Is that the right terminology?

17      A    As of today, yes.

18      Q    Okay.  And what does that mean?

19      A    Incarcerated Individuals in Custody, IIC.

20      Q    Okay.  I'm going to stop sharing.

21           I'm going to show you, I guess, what I'll call

22  Purcell Group Exhibit 2.  I'm starting here on Bates

23  number 4119.  This is a -- what does this document

24  appear to be to you?

Page 12

1      A    The Inmate Grievance Form.

2      Q    Okay.  And are you familiar with this sort of

3   document?

4      A    Yes.

5      Q    Okay.  And this document was filled out by a

6   person obviously other than yourself.  Do you mind

7   taking a second to read the narrative?  I know that it's

8   handwritten but if you could just take a moment to read

9   the narrative there if you can see it.  If you'd like, I

10  can try to make it larger.

11     A    Please.

12     Q    All right.  Is that better?

13     A    Yes, it is.

14     Q    Okay.  Yes, sir.

15     A    (Unintelligible).

16     MR. O'CONNOR:  My apologies.  The court reporter is

17  still taking down everything that you're saying so --

18  you can just read it to yourself as opposed to -- and

19  then let us know when you're finished.

20     THE WITNESS:  Okay.  I'm done.

21     MR. BLEIFUSS PRADOS:  Q    Okay.  And is there any

22  chance that grievance refreshes any recollection about

23  what happened on -- and the events that may have

24  happened on July 19, 2020?

```
                                                    Page 13
 1      A    No, sir.

 2      Q    Okay.  I'm scrolling down to the bottom of that.

 3  Do you recognize the signature at the bottom there?

 4      A    It looks like Swangen (phonetic) --

 5      Q    Okay.

 6      A    -- which was one of the social workers.  It

 7  looks like Swangen if I remember her signature

 8  correctly.

 9      Q    Okay.  Do you remember her first name?

10      A    No.

11      Q    Okay.  And I'm going to scroll down to the

12  second page of Purcell Group Exhibit 2.  I'm going to

13  zoom out a bit.  What does this -- is this the second

14  page of the same document or is this a different

15  document?

16      A    It appears to be the second page.

17      Q    Okay.  And what's the function of this second

18  page if you know?

19      A    The second page, after follow-up that's the page

20  that the supervisor would fill out, whoever is doing the

21  grievance would fill out.

22      Q    Okay.  And do you recognize the signature on

23  this second form?

24      A    It looks kind of like Superintendent Boutte,
```

Page 14

1    B-O-U-T-T-E.

2        Q    You haven't seen your signature anywhere on

3    this -- on this document, correct?

4        A    No, sir.

5        Q    Okay.  I'm going to scroll down to the third

6    page.  And this includes a request for an appeal, is

7    that correct?

8        A    I can't really see it.

9        Q    Okay.  I'm going to enlarge it.  Can you see it

10   better now?

11       A    Yes.

12       Q    Okay.  And can you take a moment to silently

13   read the inmate's request for an appeal?

14       A    Okay.

15       Q    Okay.  And again, this request for an appeal

16   doesn't refresh your recollection about this incident,

17   is that correct?

18       A    That is correct.

19       Q    Okay.  And here there's also a signature.  Do

20   you recognize that signature?

21       A    No, I do not.

22       Q    Okay.  I'll stop sharing that.

23           In your work at the Cook County Jail did you

24   ever oversee the movement of inmates with canes between

Page 15

1    different divisions or different parts of the jail?

2         A    When you say oversee the movement, do you mean

3    take them from place to place?

4         Q    For example, take them from place to place.

5         A    I would take them from -- when staff is short, I

6    would assist.  It's very rarely that I may take them to

7    a visit or something like that.

8         Q    Okay.  But it's not something you do frequently?

9         A    No, sir.

10        Q    Okay.  And in terms of restraints such as

11   handcuffs placed on persons who have to use canes, do

12   you have any recollection about what your practice was

13   with respect to that?

14        A    Yes.

15        Q    And what was that?  What's your recollection?

16        A    If they tell us that they can't be handcuffed or

17   they're not supposed to be handcuffed, we would have to

18   go into the computer or refer with Medical because

19   Medical is the only one that can say whether or not

20   they're handcuffed or not, give them the -- tell us that

21   it's okay not to handcuff them.

22        Q    Okay.

23        A    Because --

24        Q    Go ahead.  I'm sorry.

Page 16

1      A    Cook County practice is everyone gets

2   handcuffed; everyone.

3      Q    Okay.  And is it -- is it fair to say that this

4   is not something that you were involved with very

5   frequently?

6      A    That is correct, sir.

7      Q    Okay.  Is there a possibility of offering a

8   wheelchair to somebody who has to use a cane?

9      A    Anything is possible.

10     Q    Okay.  And would you agree that a chief

11  consideration in securing IICs as they move around the

12  jail is making sure that they're not injured?

13     A    I can agree to that.

14     Q    Do you have any recollection of the Department

15  of Corrections' Policy 708 or 709 regarding restraints

16  on -- the use of restraints on inmates?

17     A    I've honestly tried to forget everything since

18  I've retired.

19     Q    Okay.

20     A    Can you refresh my memory?

21     Q    Sure.  Do you think that you've -- since you

22  retired have you made an effort to kind of put the

23  details of your work at the DOC behind you?

24     A    No, sir, I wouldn't say that.

```
                                                   Page 17
  1        Q    Okay.  What would you say?

  2        A    I would say that I'm at a new chapter in my life

  3   so --

  4        Q    Okay.  I'm going to show you what I guess we'll

  5   call Purcell Exhibit 3.

  6        A    Yes, sir.

  7        Q    Do you have any recollection of seeing this

  8   Policy 708, Control of Inmate Movement?

  9        A    Yes, I've seen it.

 10        Q    Okay.  And where have you seen it?

 11        A    It's one of the policies that we have -- that

 12   they have there.

 13        Q    Okay.  And would these policies have been

 14   communicated to sheriff's personnel through email?

 15        A    Yes.

 16        Q    Okay.  And when you would have received the

 17   three emails, is that how you would have seen it?

 18        A    Probably, yes, sir.

 19        Q    Okay.  And am I right that when you would

 20   receive one of these policies from the sheriff there

 21   would be a check box on the email confirming that you've

 22   read it?

 23        A    Yes.

 24        Q    Okay.  As far as you know, is there any way that
```

```
                                              Page 18
 1    the sheriff could verify that any particular personnel

 2    had actually read the email?

 3        A   I'm sure he has a way but I don't know.  He

 4    would have to answer that.

 5        Q   So you don't know, is that fair to say?

 6        A   Yes, it is.

 7        Q   And I guess I'll show you now what we'll call

 8    Purcell Exhibit 4.  This is Policy 709 from the DOC.

 9    Have you seen this policy before?

10        A   Yes, sir.

11        Q   Do you have a specific recollection of seeing

12    this policy or do you just figure that you probably saw

13    it at some point?

14        A   I'm sure I've seen it at some point.

15        Q   Okay.  But you don't have a specific

16    recollection of seeing this policy.

17        A   No.  We have had a lot of policies ---

18        Q   Okay.

19        A   -- that --

20        Q   I'm sorry.  Go ahead.

21        A   -- that we were issued.

22        Q   Okay.  And the same is true of Policy 708 that I

23    just showed you, correct?  You have no specific

24    recollection of seeing that policy?
```

Page 19

1      A    Correct.

2      Q    Okay.  And would Policy 709 also have been

3  relayed to you through email the way that 708 probably

4  was?

5      A    Yes, sir.

6      Q    Okay.  Would you agree that an important

7  consideration in fastening handcuffs on an inmate is

8  making sure that there's enough room so that the inmate

9  is not injured?

10      A    Yes.

11      Q    And how is that determined, do you know?  If you

12  know.

13      A    Can you rephrase the question?  I don't

14  understand.

15      Q    I'll try.  I phrased it poorly.

16          How is that assured when handcuffs are being

17  fastened upon an inmate?

18      A    Are you asking me how do we assure that they're

19  not too tight or something?

20      Q    Yes, exactly right.

21      A    When you fasten them, there's a finger -- if you

22  could put your finger through, you put your finger

23  through, you test it to make sure it's not too tight on

24  them but also that they can't get out of them.

1     Q   Okay.  And so there should be enough room always

2   in the handcuff for one finger to be able to be inserted

3   through the gap?

4     A   Yes.

5     Q   Okay.  And is the concern that if they're too

6   tight they might cause an injury to the wrist.  Is that

7   part of the consideration there?

8     A   I would assume so.

9     Q   Okay.  In your entire -- if I could just take a

10  five-minute break, I don't think I have any more

11  questions but if we could just go off the record for

12  five minutes?

13    A   Okay.

14  MR. O'CONNOR:  That's fine.

15                  (break)

16  MR. BLEIFUSS PRADOS:  Thank you for indulging me

17  with that break.  I actually have no more questions.

18  MR. O'CONNOR:  I don't have any questions based on

19  that.

20  MR. STILLMAN:  I also have no questions.

21  MR. BLEIFUSS PRADOS:  Thank you so much, ma'am, for

22  your time this afternoon.  I'm sorry that we had

23  technical difficulties at the beginning.  It always

24  happens.

Page 21

1      THE WITNESS:  Okay.

2      MR. O'CONNOR:  So do you wish to review the

3   transcript prior to it being finalized or do you -- are

4   you comfortable waiving signature?

5      THE WITNESS:  I'm comfortable waiving signature.

6    (WHEREUPON the deposition was concluded at 1:40 p.m.)

7                          - - - - -

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Page 22

1    STATE OF ILLINOIS        )

                              )  SS:

2    COUNTY OF COOK           )

3             The within and foregoing deposition of the

4    aforementioned witness was taken before REGINA E.

5    GEBERT, CSR and Notary Public, at the place, date and

6    time aforementioned.

7             There were present during the taking of the

8    deposition the previously named counsel.

9             The said witness was first duly sworn and was

10   then examined upon oral interrogatories; the questions

11   and answers were taken down in shorthand by the

12   undersigned, acting as stenographer and Notary Public;

13   and the within and foregoing is a true, accurate and

14   complete record of all of the questions asked of and

15   answers made by the aforementioned witness, at the time

16   and place hereinabove referred to.

17            Before completion of the deposition, review of

18   the transcript { } was, {X} was not requested.  If

19   requested, any changes made by the deponent (and

20   provided to the reporter) during the period allowed are

21   appended hereto.

22            The undersigned is not interested in the

23   within case, nor of kin or counsel to any of the

24   parties.

Page 23

1          Witness my official signature and seal as

2    Notary Public in and for Cook County, Illinois, on this

3    4th day of December, A.D. 2024.

4

5

6                              REGINA E. GEBERT, CSR

                               Notary Public

7                              License No. 084-002972

                               One North Franklin Street,

8                              Suite 2100

                               Chicago, Illinois 60606

9                              (312) 442-9087

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**[03718 - avenue]**                                    Page 1

| **0** |
| --- |
| **03718**  1:5 |
| **084-002972** |
| 23:7 |

| **1** |
| --- |
| **1**  3:10 8:22 |
| **11**  3:11 |
| **12**  6:19 10:16 |
| **1234**  9:9,16,20 |
| **17**  3:12 |
| **18**  3:13 |
| **19**  9:23 10:22 |
| 12:24 |
| **1986**  5:19 |
| **1998**  7:5,5 |
| **1:00**  1:15 |
| **1:40**  21:6 |

| **2** |
| --- |
| **2**  3:11 11:22 |
| 13:12 |
| **2013**  6:9 |
| **2020**  7:23 9:24 |
| 10:5,22 12:24 |
| **2021**  7:21 |
| **2023**  4:16 7:11 |
| **2024**  1:16 3:2 |
| 23:3 |
| **204**  2:4 |
| **20649**  23:5 |
| **2100**  23:8 |
| **22**  1:5 |

| **230**  2:16,16 |
| --- |
| **28**  3:2 |
| **28th**  1:16 |

| **3** |
| --- |
| **3**  3:12 17:5 |
| **300-4479**  2:17 |
| **312**  2:11,17 |
| 23:9 |

| **4** |
| --- |
| **4**  3:5,13 18:8 |
| **4119**  11:23 |
| **442-9087**  23:9 |
| **4th**  23:3 |

| **5** |
| --- |
| **500**  2:10 |
| **590-9158**  2:5 |

| **6** |
| --- |
| **603-4327**  2:11 |
| **6051402**  2:4 |
| **60602**  2:11 |
| **60606**  2:16 |
| 23:8 |
| **630**  2:5 |
| **6:00**  10:15 |

| **7** |
| --- |
| **708**  3:12 16:15 |
| 17:8 18:22 |
| 19:3 |
| **709**  3:13 16:15 |
| 18:8 19:2 |
| **758**  4:22 |

| **8** |
| --- |
| **8**  3:10 9:23 |
| 10:3,6 |

| **9** |
| --- |
| **93**  7:3 |

| **a** |
| --- |
| **a.d.**  1:16 23:3 |
| **a.m.**  10:15 |
| **able**  20:2 |
| **ableifuss**  2:5 |
| **accurate**  22:13 |
| **achieve**  7:19 |
| **acting**  22:12 |
| **actions**  2:9 |
| **actually**  18:2 |
| 20:17 |
| **adrian**  2:3 3:5 |
| **aforemention...** |
| 22:4,6,15 |
| **afternoon**  4:7,8 |
| 20:22 |
| **agency**  6:11 |
| **agree**  16:10,13 |
| 19:6 |
| **ahead**  15:24 |
| 18:20 |
| **allegations** |
| 8:18 |
| **allowed**  22:20 |
| **answer**  18:4 |
| **answers**  22:11 |
| 22:15 |

| **anticipate**  5:2 |
| --- |
| **antwaun**  1:6 |
| 2:19 8:13 |
| **apart**  8:4 |
| **apologies**  12:16 |
| **apparent**  10:15 |
| **appeal**  14:6,13 |
| 14:15 |
| **appear**  11:24 |
| **appears**  13:16 |
| **appended** |
| 22:21 |
| **april**  7:3 |
| **area**  9:6 |
| **armed**  6:23 |
| **asked**  22:14 |
| **asking**  19:18 |
| **assigned**  9:12 |
| **assist**  15:6 |
| **assistant**  2:8 |
| **associated**  4:18 |
| **assume**  5:12 |
| 20:8 |
| **assure**  19:18 |
| **assured**  19:16 |
| **attend**  5:15 |
| **attorney**  2:8 |
| **attorney's**  2:9 |
| **available**  10:11 |
| 10:12 |
| **avenue**  2:4 |

| b | | | |
|---|---|---|---|
| **b**  14:1 | **capacities**  6:21 | **completion** | **correctly**  13:8 |
| **bacon**  1:7 2:19 | **capacity**  1:6 | 22:17 | **counsel**  2:2 8:4 |
| 8:13 | **case**  22:23 | **computer** | 22:8,23 |
| **based**  20:18 | **cause**  20:6 | 15:18 | **county**  1:6,7 |
| **bates**  11:22 | **ccdoc**  1:7 | **concern**  20:5 | 2:9,13,14 4:13 |
| **beginning** | **center**  2:10 | **concluded**  21:6 | 6:12 7:1 8:2 |
| 20:23 | **chance**  12:22 | **confirming** | 14:23 16:1 |
| **behalf**  2:7,13 | **changes**  22:19 | 17:21 | 22:2 23:2 |
| 2:18 | **chapter**  17:2 | **confusing**  5:10 | **court**  1:1 5:6 |
| **believe**  6:19 | **check**  17:21 | 5:11 | 12:16 |
| **better**  12:12 | **chicago**  2:11,16 | **congratulations** | **courts**  1:14 |
| 14:10 | 5:17,17 23:8 | 4:17 | **csr**  1:12 22:5 |
| **bit**  13:13 | **chief**  16:10 | **consideration** | 23:6 |
| **bleifuss**  2:3 3:5 | **christian**  6:8 | 16:11 19:7 | **currently**  4:12 |
| 4:6 12:21 | **city**  6:16 | 20:7 | **custody**  11:19 |
| 20:16,21 | **civil**  1:13 2:8,9 | **control**  17:8 | **cv**  1:5 |
| **bottom**  13:2,3 | **clarendon**  2:4 | **conversation** | |
| **boutte**  13:24 | **close**  9:13,21 | 5:2 | d |
| **box**  17:21 | **college**  5:20,23 | **cook**  1:6,7 2:9 | **daley**  2:10 |
| **break**  20:10,15 | 6:1,1,2,2,16 | 2:13,14 4:13 | **dart**  1:6 2:13 |
| 20:17 | **colleges**  6:16 | 6:11 7:1 8:2 | **date**  22:5 |
| **bureau**  2:9 | **column**  9:7 | 14:23 16:1 | **day**  1:16 9:12 |
| c | **comfortable** | 22:2 23:2 | 9:14 10:21 |
| **c**  4:10 | 21:4,5 | **cookcountys...** | 11:1,5,6 23:3 |
| **call**  8:21 9:11 | **commenced** | 2:12 | **december**  23:3 |
| 9:14 11:21 | 1:15 | **corporation** | **defendant**  2:18 |
| 17:5 18:7 | **communicated** | 1:7 | 8:13 |
| **called**  4:2 11:15 | 17:14 | **correct**  9:4 | **defendants**  1:8 |
| 11:16 | **complaining** | 11:7,8 14:3,7 | 2:13 |
| **cane**  16:8 | 10:24 | 14:17,18 16:6 | **degree**  6:3,6,8 |
| **canes**  14:24 | **complaint**  8:10 | 18:23 19:1 | **department**  7:9 |
| 15:11 | **complete**  6:3 | **corrections**  7:9 | 7:10 8:2 16:14 |
| | 22:14 | 7:11 8:2 16:15 | **deponent**  22:19 |

**[deposed - group]**

**deposed** 4:23
**deposition** 1:11
  1:15 2:2 3:1
  8:5,8,11 21:6
  22:3,8,17
**depositions**
  1:15
**details** 16:23
**detainees** 11:15
**determined**
  19:11
**devore** 2:15
**devoreraduns...**
  2:17
**different** 11:10
  13:14 15:1,1
**difficulties**
  20:23
**district** 1:1,1
  1:14
**division** 9:23
  10:3,6
**divisions** 11:10
  15:1
**doc** 16:23 18:8
**document** 9:1
  11:23 12:3,5
  13:14,15 14:3
**documents** 8:7
**doing** 10:9
  13:20
**douglas** 1:3
  8:15 10:18

**duly** 4:2 22:9
**duties** 7:22,24
  8:1 10:5
**duty** 11:11
**dvorak** 2:3

**e**

**e** 1:12 4:10,10
  14:1 22:4 23:6
**education** 5:20
**effort** 16:22
**email** 17:14,21
  18:2 19:3
**emails** 17:17
**employee** 4:18
**employer** 6:14
**ends** 5:4
**enforcement**
  6:11,21
**enlarge** 14:9
**entire** 20:9
**escalate** 10:13
**events** 10:22
  12:23
**exactly** 8:23
  19:20
**examination**
  3:4 4:5
**examined** 4:3
  22:10
**example** 15:4
**excel** 9:2
**exhibit** 3:10,11
  3:12,13 8:22

  11:22 13:12
  17:5 18:8
**exhibits** 3:8
**experience** 6:10
**explain** 8:22

**f**

**fact** 9:23
**fair** 10:20 16:3
  18:5
**familiar** 12:2
**far** 11:5 17:24
**fasten** 19:21
**fastened** 19:17
**fastening** 19:7
**february** 7:5,5
**federal** 1:13
**figure** 8:23
  18:12
**fill** 13:20,21
**filled** 12:5
**finalized** 21:3
**fine** 20:14
**finger** 19:21,22
  19:22 20:2
**finished** 12:19
**first** 4:2 7:1
  13:9 22:9
**five** 20:10,12
**follow** 13:19
**following** 2:2
**follows** 4:4
**forces** 6:23

**foregoing** 22:3
  22:13
**forget** 16:17
**form** 3:11 12:1
  13:23
**franklin** 23:7
**frequently** 15:8
  16:5
**full** 4:9
**fully** 5:4
**function** 13:17

**g**

**gap** 20:3
**gebert** 1:12
  22:5 23:6
**give** 15:20
**given** 10:18,19
**gmail.com** 2:5
**go** 5:23 15:18
  15:24 18:20
  20:11
**going** 10:11
  11:20,21 13:11
  13:12 14:5,9
  17:4
**good** 4:7
**graduate** 5:18
**grievance** 3:11
  12:1,22 13:21
**ground** 5:1
**group** 3:11
  11:22 13:12

**guard** 6:15
**guess** 9:20
　11:21 17:4
　18:7

### h

**handcuff** 15:21
　20:2
**handcuffed**
　15:16,17,20
　16:2
**handcuffs**
　15:11 19:7,16
**handwritten**
　12:8
**happened**
　12:23,24
**happens** 20:24
**hard** 5:6
**hereinabove**
　22:16
**hereto** 22:21
**high** 5:16,17,20
**hills** 2:4
**hired** 7:1,3
**honestly** 16:17
**hour** 10:16
**human** 5:2

### i

**iic** 11:19
**iics** 11:16 16:11
**illinois** 1:1 2:4
　2:11,16 22:1
　23:2,8

**important** 19:6
**incarcerated**
　11:19
**incident** 11:4
　14:16
**includes** 14:6
**individuals**
　11:19
**indulging**
　20:16
**injured** 16:12
　19:9
**injury** 11:1
　20:6
**inmate** 3:11
　10:24 12:1
　17:8 19:7,8,17
**inmate's** 14:13
**inmates** 11:10
　14:24 16:16
**inquiry** 3:10
　9:4 10:14
**inserted** 20:2
**institutions** 6:4
**interested**
　22:22
**interrogatories**
　4:3 22:10
**involved** 16:4
**issued** 18:21

### j

**j** 2:10

**jail** 14:23 15:1
　16:12
**james** 2:10
**job** 4:19
**johnson** 1:3
　8:15 10:19
**july** 7:23 9:23
　10:5,22 12:24
**jump** 5:4

### k

**k** 4:10 9:6
**karen** 1:11 3:1
　4:1,10
**kennedy** 6:1
**kin** 22:23
**kind** 13:24
　16:22
**king** 6:1
**know** 5:11 8:13
　8:18 9:9,16,19
　10:19 11:5
　12:7,19 13:18
　17:24 18:3,5
　19:11,12

### l

**l** 4:11,11
**larger** 12:10
**law** 2:3 6:11,21
**lawsuit** 8:11,16
　8:19 10:20
**left** 7:4
**license** 23:7

**lieutenant** 7:18
　7:19
**life** 17:2
**litigation** 2:8
**log** 3:10 9:4,14
　9:21 10:14
**logged** 10:15
**looks** 13:4,7,24
**lot** 18:17

### m

**ma'am** 4:7 7:17
　20:21
**made** 8:19
　16:22 22:15,19
**make** 5:6,10,13
　10:10,10 12:10
　19:23
**makes** 5:6
**making** 16:12
　19:8
**malcolm** 5:24
　6:15
**march** 1:16 3:2
**mark** 8:22
**mean** 11:18
　15:2
**means** 9:17
**medical** 15:18
　15:19
**memory** 16:20
**middle** 9:7
**mind** 12:6

[minute - problem]                                                      Page 5

**minute**  20:10
**minutes**  20:12
**moment**  12:8
  14:12
**monroe**  2:16
**morning**  10:15
**move**  16:11
**movement**
  14:24 15:2
  17:8
**municipal**  1:7

**n**

**n**  4:10
**name**  4:9 9:13
  9:15 13:9
**named**  22:8
**narrative**  12:7
  12:9
**natural**  5:2
**new**  17:2
**north**  23:7
**northern**  1:1
**notary**  1:12
  22:5,12 23:2,6
**november**  4:16
**number**  4:17
  4:18,21 11:23

**o**

**o**  14:1
**o'clock**  1:15
**o'connor**  2:10
  12:16 20:14,18
  21:2

**obviously**  12:6
**offering**  16:7
**office**  2:9
**officer**  1:7,11
  2:19 3:1 4:1
  7:5,6 10:2
  11:14
**offices**  2:3
**official**  1:6 23:1
**okay**  4:12,23
  5:1,15 6:10,17
  6:20 7:10,13
  7:19,22 8:1,4
  9:1,16,20 10:2
  10:5,8,14,18
  11:3,5,9,13,15
  11:18,20 12:2
  12:5,14,20,21
  13:2,5,9,11,17
  13:22 14:5,9
  14:12,14,15,19
  14:22 15:8,10
  15:21,22 16:3
  16:7,10,19
  17:1,4,10,13,16
  17:19,24 18:15
  18:18,22 19:2
  19:6 20:1,5,9
  20:13 21:1
**operation**  7:7
**opposed**  12:18
**oral**  4:3 22:10
**order**  9:13,21

**originally**  7:3
**orr**  10:2
**oversee**  14:24
  15:2
**overseen**  11:11

**p**

**p**  4:10
**p.m.**  1:16 21:6
**page**  3:4,10,11
  3:12,13 13:12
  13:14,16,18,19
  13:19 14:6
**paramedic**  7:4
  7:4
**part**  7:6 20:7
**particular**  18:1
**parties**  22:24
**parts**  15:1
**paul**  4:10
**period**  22:20
**person**  8:14
  12:6
**personnel**
  17:14 18:1
**persons**  15:11
**pertaining**  1:14
**phonetic**  13:4
**phrase**  5:9
**phrased**  19:15
**place**  15:3,3,4,4
  22:5,16
**placed**  15:11

**places**  5:24
**plaintiff**  1:4 2:7
  8:15
**please**  4:8 5:10
  12:11
**point**  18:13,14
**policies**  17:11
  17:13,20 18:17
**policy**  3:12,13
  16:15 17:8
  18:8,9,12,16,22
  18:24 19:2
**poorly**  19:15
**posed**  5:4
**position**  6:18
**possibility**  16:7
**possible**  16:9
**practice**  15:12
  16:1
**prados**  2:3 3:5
  4:6 12:21
  20:16,21
**preparation**
  8:7
**prepare**  8:5
**present**  2:1
  22:7
**previously**  22:8
**prior**  21:3
**probably**  17:18
  18:12 19:3
**problem**  10:11
  10:13

**[procedure - shift]**                                                      Page 6

**procedure**  1:13
**provided**  22:20
**public**  1:12
   22:5,12 23:2,6
**purcell**  1:11 3:1
   3:10,11,12,13
   4:1,10 8:21,22
   9:6 11:22
   13:12 17:5
   18:8
**pursuant**  1:12
**put**  9:12,15,18
   16:22 19:22,22

**q**

**question**  5:2,4
   5:9,11,12,13
   19:13
**questions**  20:11
   20:17,18,20
   22:10,14

**r**

**r**  4:10,10
**radunsky**  2:15
**rank**  7:14,16
   7:20
**rarely**  15:6
**read**  8:10 12:7
   12:8,18 14:13
   17:22 18:2
**really**  14:8
**rebecca.laue**
   2:12

**recall**  7:22 8:14
   8:15 10:2,20
   10:21,24 11:4
**receive**  6:7
   17:20
**received**  6:9
   17:16
**recognize**  13:3
   13:22 14:20
**recollection**
   11:6 12:22
   14:16 15:12,15
   16:14 17:7
   18:11,16,24
**record**  4:9
   20:11 22:14
**refer**  15:18
**referred**  22:16
**reflects**  9:22
**refresh**  14:16
   16:20
**refreshes**  12:22
**regarding**
   16:15
**regina**  1:12
   22:4 23:6
**relayed**  19:3
**remain**  7:10
**remember**
   10:18 13:7,9
**rephrase**  5:12
   19:13
**reporter**  5:6
   12:16 22:20

**request**  14:6,13
   14:15
**requested**
   22:18,19
**required**  10:8
**respect**  15:13
**respond**  10:12
**responsible**
   11:9
**restraints**
   15:10 16:15,16
**retire**  4:15
**retired**  4:12
   7:13,16 16:18
   16:22
**retirement**  7:11
**review**  21:2
   22:17
**reviewed**  8:7
**richard**  2:10
**right**  7:13,16
   11:16 12:12
   17:19 19:20
**rights**  2:8
**roll**  9:11,14
**room**  19:8 20:1
**rounds**  10:10
**rules**  1:13 5:1

**s**

**saw**  18:12
**saying**  12:17
**says**  10:1

**school**  5:16,17
   5:21
**science**  6:8
**scroll**  13:11
   14:5
**scrolling**  13:2
**seal**  23:1
**second**  8:23
   12:7 13:12,13
   13:16,17,19,23
**securing**  16:11
**security**  6:15
**see**  9:1,7,11
   12:9 14:8,9
**seeing**  17:7
   18:11,16,24
**seen**  14:2 17:9
   17:10,17 18:9
   18:14
**sense**  5:7,10,13
**sergeant**  7:14
   7:24 8:1 10:7,9
**served**  6:23
**several**  5:24
**sharing**  8:24
   11:20 14:22
**sheet**  9:2
**sheriff**  1:6 2:13
   4:13 6:12 7:2
   17:20 18:1
**sheriff's**  4:19
   7:7 8:2 17:14
**shift**  10:16

**short** 15:5
**shorthand**
22:11
**show** 8:21
11:21 17:4
18:7
**showed** 18:23
**showing** 9:1
**shows** 9:6
**signature** 13:3
13:7,22 14:2
14:19,20 21:4
21:5 23:1,5
**silently** 14:12
**sir** 9:5,21 10:1
10:17 11:4,8
12:14 13:1
14:4 15:9 16:6
16:24 17:6,18
18:10 19:5
**situation** 10:13
**social** 13:6
**somebody** 16:8
**someone's** 5:3
**sorry** 15:24
18:20 20:22
**sort** 10:9 12:2
**specific** 11:4,6
18:11,15,23
**spell** 4:9
**ss** 22:1
**staff** 15:5
**star** 4:17 9:9,18
9:19

**starting** 11:22
**state** 4:8 22:1
**state's** 2:8,9
**states** 1:1,14
**stenographer**
22:12
**stillman** 2:15
20:20
**stop** 11:20
14:22
**street** 2:16 23:7
**suite** 2:4,16
23:8
**superintendent**
13:24
**supervisor** 9:6
9:9 10:12
13:20
**supervisor's**
9:13
**supervisors**
9:11
**supposed** 15:17
**sure** 10:10
16:12,21 18:3
18:14 19:8,23
**swangen** 13:4,7
**sworn** 4:3 7:4,6
22:9

**t**

**t** 14:1,1
**take** 12:8 14:12
15:3,4,5,6 20:9

**taken** 1:11 22:4
22:11
**talking** 8:4
**technical** 20:23
**tell** 15:16,20
**tempted** 5:3
**terminology**
11:16
**terms** 15:10
**test** 19:23
**testified** 4:4
**thank** 4:7 20:16
20:21
**think** 16:21
20:10
**third** 14:5
**thomas** 1:6
2:13
**three** 17:17
**tier** 3:10 9:4,13
9:21 10:13,14
**tight** 19:19,23
20:6
**time** 4:8 7:8
9:19 20:22
22:6,15
**titled** 9:4
**today** 11:17
**torts** 2:8
**transcript** 21:3
22:18
**transport**
11:14

**transporting**
11:10
**tried** 16:17
**triton** 6:2
**true** 18:22
22:13
**truman** 6:2
**try** 5:5 12:10
19:15

**u**

**u** 4:10 14:1
**under** 9:6
**undersigned**
22:12,22
**understand**
19:14
**understanding**
9:22
**understood**
5:13
**unintelligible**
12:15
**united** 1:1,13
**use** 15:11 16:8
16:16

**v**

**vary** 8:3
**verify** 18:1
**visit** 15:7
**vocational** 5:17
**vs** 1:5

**[waiving - zstillman]** Page 8

| w | zstillman   2:17 |
|---|---|
| **waiving**   21:4,5 | |
| **walker**   2:4 | |
| **way**   5:9 17:24 | |
|    18:3 19:3 | |
| **went**   5:24,24 | |
|    6:1,1,2 | |
| **west**   2:16 | |
| **wheelchair** | |
|    16:8 | |
| **wish**   21:2 | |
| **witness**   4:2 | |
|    12:20 21:1,5 | |
|    22:4,9,15 23:1 | |
| **work**   4:18 6:17 | |
|    10:9 14:23 | |
|    16:23 | |
| **worked**   6:15,20 | |
| **workers**   13:6 | |
| **working**   4:13 | |
|    6:10 7:7 9:23 | |
|    10:2,6 | |
| **wrist**   11:1 20:6 | |
| **x** | |
| **x**   5:24 6:15 | |
|    22:18 | |
| **y** | |
| **years**   6:17,19 | |
| **z** | |
| **zachary**   2:15 | |
| **zoom**   1:11 | |
|    13:13 | |

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.

(2) Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.