IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DOUGLAS JOHNSON | ) | |
| | ) | |
| Plaintiff, | ) | No. 22 C 3718 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| COOK COUNTY SHERIFF THOMAS DART, in his official capacity, ANTWAUN BACON, a CCDOC officer, and COOK COUNTY, a municipal corporation, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Douglas Johnson brings this four-count complaint against Cook County, Sherriff Thomas Dart in his official capacity as Cook County Sherriff ("Dart"), and Antuwan Bacon ("Officer Bacon"), an officer of the Cook County Department of Corrections ("CCDOC"). Count I is a claim under 42 U.S.C. § 1983 alleging that Officer Bacon acted with excessive force or deliberate indifference when he fastened plaintiff's handcuffs excessively tightly in violation of plaintiff's Fourth Amendment (or, alternatively, Eighth Amendment) rights. Count II is a Monell claim against Dart for the same conduct, which plaintiff moves to voluntarily dismiss.[1] Count III alleges a violation of the Rehabilitation Act, 29 U.S.C. § 794, against Dart. Count IV alleges a violation of the Americans with Disabilities Act, 42 U.S.C. § 12132, ("ADA") against Dart.[2] Count V is a state indemnification claim against Cook County.[3] Officer Bacon moves for

---

[1] While this count is styled as "Count I" in the complaint, the court understands this to be a typo. There already is a "Count I" preceding it, and the count that follows it is labelled "Count III." Thus, the court will refer to plaintiff's Monell claim against Dart as Count II.

[2] In the complaint, this is labelled as Count III, which the court, again, believes is an error. The Rehabilitation Act claim that precedes it is also labelled Count III. Thus, the court will refer to plaintiff's ADA claim against Dart as Count IV.

[3] In the complaint, this is labelled as Count IV. The court believes this numbering error flows from the numbering

1

summary judgment on Count I (Doc. 84).[4] For reasons explained below, that motion is denied. Cook County and Dart move for summary judgment on Counts II, III, and IV (Doc. 80). For the reasons explained below, that motion is denied. Before the court is also plaintiff's motion to strike (Doc. 128). That motion is also denied.

## BACKGROUND

Plaintiff was incarcerated as a pretrial detainee at the CCDOC beginning on May 8, 2019. At the time, Officer Bacon was employed as a CCDOC correctional officer. Prior to arriving at CCDOC, plaintiff received an injection in his right hand for carpal tunnel syndrome. From December 8, 2019, to December 9, 2021, plaintiff had an "inmate alert" for a cane. An inmate alert is a standing data entry that informs correctional officers of an inmate's status. Plaintiff's inmate alert notified CCDOC officers that plaintiff had permission to have a cane.

On July 19, 2020, Officer Bacon was assigned to the duty of transporting inmates between locations at the CCDOC for visitation purposes. Plaintiff was housed in Division 8, which is known as the "RTU" (residential treatment unit) or the medical division. Plaintiff was scheduled for an in-person family visit on that day. Officer Bacon was responsible for escorting plaintiff from Division 8 to his scheduled visit at Division 1. The distance between Division 8 and Division 1 is approximately five city blocks. When Officer Bacon went to handcuff plaintiff, plaintiff indicated to Officer Bacon that he was excused from being handcuffed because he had been issued a cane. Plaintiff stated in his deposition that on each of the approximately 12 occasions that plaintiff was escorted on long movements within CCDOC prior to this episode,

---

error that precedes it; Count IV was erroneously labelled Count III, thus Count V was erroneously labelled Count IV. The court will refer to plaintiff's indemnification claim against Cook County as Count V.
[4] As the court explained in its October 3, 2025, order (Doc. 117), it treats Officer Bacon's supplemental brief (Doc. 110) as his operative summary judgment brief.

the correctional officers escorting him permitted him to walk without handcuffs because of his cane.  According to plaintiff, Officer Bacon responded to him something along the lines of, "I don't want to hear that.  You're going to get cuffed today." According to defendants, plaintiff told Officer Bacon that he had a "no-handcuff order," which plaintiff was unable to produce.[5]

Officer Bacon then proceeded to handcuff plaintiff.  According to plaintiff, he immediately alerted Officer Bacon that the handcuffs were too tight and that he was unsure whether he would be able to walk with his cane while handcuffed.  According to plaintiff, Officer Bacon never checked the tightness of the handcuffs and refused to loosen them.  According to defendants, Officer Bacon put his fingers inside the cuffs when he applied them to ensure there was ample room for plaintiff's wrists.

Officer Bacon proceeded to lead plaintiff to his family visitation.  Plaintiff repeatedly asked Officer Bacon to remove or loosen the cuffs because he was in "a lot of pain."  Walking with handcuffs and a cane proved challenging; plaintiff states that he could not stride normally but instead had to take short steps while leaning against the wall.  The walk to the visitors' area took plaintiff forty minutes and amounted to the distance of approximately five city blocks.  Plaintiff's wife was upset by the sight of her husband's swollen wrists. The walk back to plaintiff's housing unit was similarly strenuous.  According to plaintiff, Officer Bacon laughed at plaintiff four or five times as he escorted plaintiff back.  By the time plaintiff arrived back at his tier he was weeping with pain and grasping for breath.  Officer Bacon laughed at plaintiff as he removed plaintiff's handcuffs.

---

[5] In his deposition, Officer Bacon stated that a no-handcuff order is a piece of paper that the inmate keeps on their person, but he has never seen a no-handcuff order in his career.

Plaintiff's wrists were swollen, and he felt a throbbing and burning sensation. The nursing staff provided Tylenol. The pain and swelling continued long after the July 19, 2020, incident. Plaintiff submitted a grievance reporting the incident and his physical symptoms. A month later, plaintiff visited a physician who noted a nodule on plaintiff's right wrist that was painful to the touch, and that plaintiff exhibited poor grip strength. The loss of full functionality of plaintiff's wrist continues through the present. At the time of his deposition, plaintiff was still experiencing ongoing numbness and tingling in his hands, which he attributes to the incident.

At the time of the incident, a CCDOC policy called "Policy 708" was in effect. Policy 708, Control of Inmate Movement, states, among other things:

> Inmates should be restrained during movement based upon individual security classification, with higher risk inmates in handcuffs, waist chains and leg irons. An exception to this procedure is when an inmate has a physical disability where restraint devices may cause serious injury.

At the time of the incident, another CCDOC policy called "Policy 709" was in effect, which states, among other things:

> [Correctional officers] shall conduct direct face-to-face observation to check the inmate's physical well-being and behavior. When feasible, restraints shall be checked to verify correct application and to ensure they do not compromise circulation.

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden, and the court must view all facts in the light most favorable to the nonmovant and draw all reasonable inferences in their favor. See Matsushita Elec. Indus.

Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). But the nonmovant must do more than raise "some metaphysical doubt as to the material facts." Id. at 586. Rather, the nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

**DISCUSSION**

**A. Excessive force claim against Officer Bacon (Count I)**

Count I alleges that Officer Bacon used excessive force in violation of the Fourteenth Amendment in two independent ways. The first is that Officer Bacon handcuffed plaintiff, a cane user, before a long walk. The second is that Officer Bacon handcuffed plaintiff excessively tightly and failed to loosen them.

Officer Bacon moves for summary judgment on Count I. Officer Bacon correctly states that the elements of a valid Fourteenth Amendment excessive force claim are: (1) that the defendant "intended to commit the physical act that caused the alleged injury" and (2) that the use of force was objectively unreasonable. Pittman v. Madison Cty. Ill., 108 F.4th 561, 570 (7th Cir. 2024) (citing Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015)). Officer Bacon argues that the court should grant summary judgment because his use of handcuffs was objectively reasonable as a matter of law. Officer Bacon does not dispute the first element, that he intended to handcuff plaintiff.

Plaintiff responds that a reasonable jury could find that Officer Bacon's use of force was objectively unreasonable. Plaintiff correctly states that a jail official's actions are objectively unreasonable if they are "'not rationally related to a legitimate nonpunitive governmental

5

purpose' or 'excessive in relation to that purpose.'" Mays v. Emanuele, 853 F. App'x 25, 27 (7th Cir. 2021) (quoting Kingsley, 576 U.S. at 398). In addition, the Supreme Court has explained that "objective reasonableness" turns on the "facts and circumstances of each particular case" and that "[a] court (judge or jury) cannot apply this standard mechanically." Kingsley, 576 U.S. at 398.

The court finds that Officer Bacon has not carried his burden to show there is no genuine dispute as to the facts underlying whether his use of force on plaintiff was excessive. As an initial matter, Officer Bacon's arguments focus almost exclusively on whether the decision to handcuff plaintiff was objectively reasonable. Officer Bacon's argument for summary judgment is not responsive to plaintiff's second theory of injury, that Officer Bacon handcuffed plaintiff excessively tightly. Officer Bacon does not articulate a legitimate nonpunitive government purpose for handcuffing plaintiff excessively tightly. All that Officer Bacon offers on that matter is the factual contention that the handcuffs were not too tight. But this fact is highly contested. In his deposition, plaintiff states that the handcuffs were indeed too tight and injured him. Officer Orr's deposition corroborates plaintiff's account that he complained about wrist pain after the episode with Officer Bacon. Officer Orr also observed that plaintiff's wrists were red because of the handcuffs.

To evaluate objective reasonableness, a court must analyze a situation "from the perspective of a reasonable officer on the scene." Kinglsey, 576 U.S. at 397. The Seventh Circuit has explained that "it may become clear to an arresting officer that, although a particular action would not ordinarily harm an arrestee, the action would nevertheless cause pain or injury to the particular individual being placed under arrest….[h]owever, a reasonable officer cannot be expected to accommodate an injury that is not apparent or that otherwise has not been made

6

known to him." Stainback v. Dixon, 569 F.3d 767, 772-73 (7th Cir.2009).[6] Plaintiff maintains that he made it known to Officer Bacon that the handcuffs were tightened to the point of causing injury. Consequently, the court finds that there is a genuine dispute of fact as to whether Officer Bacon's use of force was objectively unreasonable.

Officer Bacon's second argument in support of summary judgment is that he is entitled to qualified immunity. According to Officer Bacon, a constitutional violation did not occur. But even if a constitutional violation did occur, there was no clearly established law in July 2020 that would have alerted Officer Bacon that his action was unlawful. Officer Bacon correctly states that once qualified immunity is raised, the plaintiff bears the burden to show that, "(1) that a trier of fact could conclude that the officer violated a federal right, and (2) that the unlawfulness of the conduct was clearly established at the time the officer acted." Estate of Davis v. Ortiz, 987 F.3d 635, 638–39 (7th Cir. 2021).

Plaintiff responds that pretrial detainees alleging excessively tight handcuffing have survived summary judgment overcoming defenses of qualified immunity. Plaintiff references multiple cases based on claims of excessively tight handcuffs, including another case involving employees of Dart that occurred prior to the incident in this case. See Muhammad v. Dart, No. 16 C 2280, 2019 WL 1098923 at *1 (N.D. Ill. Mar. 8, 2019). Plaintiff contends that the rulings in these cases are based on well-established Seventh Circuit precedent.

The court finds that Officer Bacon is not entitled to qualified immunity. First, as discussed above, a rational trier of fact could conclude that Officer Bacon violated a federal right

---

[6] Handcuff cases involving arrestees, like Stainback, are applicable to pre-trial detainees because the objective reasonableness standard governs the treatment of both arrestees and pre-trial detainees. Compare Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015) (pre-trial detainee) and Burton v. City of Zion, 901 F.3d 772, 777 (7th Cir. 2018) (arrestee).

7

by handcuffing plaintiff excessively tightly. Officer Bacon fails to provide a reason, whether flight risk or some other threat, that justified his excessive tightening of plaintiff's handcuffs. Instead, he just denies that it ever happened.[7] As the court discussed above, that fact is disputed. Thus, on the record before the court, a reasonable trier of fact could conclude that Officer Bacon violated plaintiff's federal rights. See generally, Mickle v. Morin, 297 F.3d 114, 120 (2d Cir. 2002) (collecting cases where factual disputes "were sufficient to preclude summary judgment dismissing a § 1983 claim for excessive force").

The court also finds that the unlawfulness of the conduct at issue was clearly established at the time Officer Bacon acted. Officer Bacon's argument on qualified immunity, like his argument on excessive force, fails to address plaintiff's allegation that Officer Bacon handcuffed plaintiff excessively tightly. Instead, Officer Bacon focuses on his overall decision to handcuff plaintiff. Focusing on that theory of injury, Officer Bacon argues that there was no clearly established law in July 2020 that would have alerted an officer that handcuffing a detainee who claimed exemption but lacked the proper documentation to substantiate it was unlawful.

But as much as Officer Bacon would like to wish it away, the second theory of injury remains, and its unlawfulness was clearly established by July 2020. The Seventh Circuit has stated that, "our cases indicate that an officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury." Stainback, 569 F.3d at 772; see also Rooni v. Biser, 742 F.3d 737, 742 (7th Cir. 2014) (holding that "[a] person has the right to be free from an officer's knowing use of

---

[7] Officer Bacon explains that it is CCDOC policy to handcuff inmates who use a cane (whether this practice is followed is disputed). But this argument goes to whether it was reasonable for Officer Bacon to handcuff plaintiff at all. It is not relevant to Officer Bacon's alleged excessive tightening of plaintiff's handcuffs.

8

handcuffs in a way that would inflict unnecessary pain or injury, if that person presents little or no risk of flight or threat of injury")[8]; Herzog v. Vill. of Winnetka, Ill., 309 F.3d 1041, 1043 (7th Cir. 2002) (characterizing "refus[al] to loosen the plaintiff's chafing handcuffs" as an "instance[] of excessive force").  Thus, cases going back to at least 2002 have clearly established that the alleged use of force was unlawful.  Consequently, the court finds that plaintiff has met his burden to show that a rational trier of fact could conclude that Officer Bacon violated a federal right and that the unlawfulness of excessive handcuff tightening without a legitimate nonpunitive purpose was clearly established at the time Officer Bacon allegedly did so.

## B. Rehabilitation Act and ADA claim against Dart (Counts III and IV) and plaintiff's Motion to Strike

Defendants and plaintiff both correctly state that to prevail on his Rehabilitation Act and ADA claims, plaintiff must establish that: (1) he is a "qualified individual with a disability"; (2) he was denied "the benefits of services, programs, or activities of a public entity"; and (3) such denial or discrimination was "by reason of" his disability.  Lacy v. Dart, 2015 WL 5921810 at *2 (N.D. Ill. Oct. 8, 2015) (citing Jaros v. Ill. Dep't of Corr., 684 F.3d 667, 671-72 (7th Cir. 2012)).  Plaintiff correctly states that the Rehabilitation Act claim requires the additional showing that the defendant is an entity that received federal funds.  Jaros, 684 F.3d at 671-72.  There is no dispute

---

[8] In Rooni, the Seventh Circuit affirmed the distirct court's grant of qualified immunity to an officer who was alleged to have "used excessive force when he handcuffed" the plaintiff in that case. 742 F.3d at 743.  The Rooni court reasoned that, "[i]t is difficult in borderline cases to say that a right to be free from a particular degree of force was 'clearly established.'"  Id.  The borderline cases that Rooni refers to presented fact patterns, like in Tibbs v. City of Chicago, 469 F.3d 661, 666 (7th Cir. 2006), where the plaintiffs "complained only once to [officers], gave the officers no indication of the degree of his pain, experienced minimal (if any) injury, and sought no medical care."  See also Sow v. Fortville Police Dep't, 636 F.3d 293, 304 (7th Cir. 2011) (where plaintiff "complained once to [the office] that the handcuffs were too tight….[and] did not complain of any injury when he was taken to jail and did not receive any treatment resulting from the use of the handcuffs").  Crucially, in these cases, the courts determined that that a trier of fact could <u>not</u> conclude that the officer violated a federal right.  In contrast, here, the court does not view the degree of force alleged as "borderline."

that CCDOC receives federal funds or that plaintiff is a qualified individual with a disability. Thus, the court will analyze the ADA and Rehabilitation Act claims together because the disputed elements are identical.

Defendants argue that plaintiff was not denied the benefit of a family visit because he was, in fact, able to have his visit. Defendants stress that the cane provided to plaintiff and front-handcuffing were reasonable accommodations that allowed plaintiff to have family visitation like any other detainee. Defendants also emphasize that even though it may have taken plaintiff longer to get to his visit, he was not in any way rushed or forced to end his visit early. Defendants also argue that if plaintiff should have been given a wheelchair or other accommodation, that was due to the assessment made by the medical staff and not due to an exercise of the Sheriff's discretion, and medical malpractice is not a proper basis for an ADA or Rehabilitation Act claim. Finally, defendants argue that the excessive force claim against Officer Bacon is a separate claim from the ADA/Rehabilitation Act claims, and vicarious liability is not a proper basis for such claims.

At this point, the court must take a brief detour to address plaintiff's motion to strike (Doc. 128). Plaintiff submits that the last argument summarized above—that the excessive force claim against Officer Bacon is a separate claim from the ADA/Rehabilitation Act claims, and that vicarious liability is not a basis for such claims—was improperly raised by defendants for the first time in their reply. Defendants contend that the argument is appropriate and follows from the arguments made in their memorandum in support of summary judgment.

Specifically, defendants argue that "Defendant Sheriff argued in both the Memorandum and Reply that the Plaintiff's ADA/RA claims against the Sheriff fail as Plaintiff was

10

accommodated, and any excessive force claim is not attributable to the Sheriff under the ADA/RA claims." As the court reads it, the second part of this statement is not accurate. Defendants did not argue that "any excessive force claim is not attributable to the Sheriff under the ADA/RA claims" in their memorandum. Defendants' memorandum did not discuss the excessive force claim in relation to the ADA or Rehabilitation Act claims. In addition, defendants' memorandum did not discuss vicarious liability in relation to the ADA and Rehabilitation Act claims. Consequently, the court agrees with plaintiff that defendants' vicarious liability argument was improperly raised for the first time in reply. See United States v. Feinberg, 89 F.3d 333, 340-41 (7th Cir. 1996) (explaining that "the reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court"). That being said, the court is not inclined to grant a motion to strike because it is a disfavored remedy.[9] See Hardin v. Am. Elec. Power, 188 F.R.D. 509, 511 (S.D. Ind. 1999). Instead, the court will simply give the defendants' new arguments on reply the weight they are due.

Returning to the merits of the summary judgment motion, plaintiff argues that a reasonable jury could find that he was denied the benefit of his visit, because he was denied the right to experience the visit without experiencing severe pain and lasting injuries. Plaintiff argues that the ability to use a service does not preclude an ADA/Rehabilitation Act claim if the only way a claimant can use a service is under exceptionally painful exertion.

The court agrees with plaintiff that a reasonable jury could find that plaintiff was denied the benefit of a family visit. Plaintiff alleges he was able to have his visit, but doing so required him to suffer a great deal of pain. In addition, contrary to defendants' version of events, plaintiff

---

[9] This is not a condemnation of plaintiff's use of a motion to strike to communicate to the court that defendants improperly raised a new argument for the first time on reply.

11

alleges that his visit was cut short. In a similar case in the Western District of Wisconsin, a prisoner alleged "that he has trouble walking without a cane; although he walks over 400 yards several times a day, he does so in severe pain and at risk of further injury in order to perform basic functions such as seeking out prescribed medications." Miller v. Wisconsin Dep't of Corr., No. 08-CV-62-BBC, 2008 WL 2563154, at *5 (W.D. Wis. Apr. 22, 2008). From these allegations, the court held that "it is possible to infer that" the prison system "'denied' petitioner some of the basic services of the prison by denying him a cane when petitioner had to walk long distances in severe pain to seek out prescribed medications." Id. Of course, unlike the petitioner in that case, plaintiff here has been accommodated with a cane. But the same logic suggests that a reasonable jury could find that plaintiff was denied a benefit because he could access his family visit only by enduring severe pain.

The court need not reach the vicarious liability issue that arises from Officer Bacon's role in the alleged failure to accommodate plaintiff's disability. Plaintiff's ADA and Rehabilitation Act claims are based on the injuries described in the complaint. As discussed above, plaintiff submits two separate theories of injury: first, that he was forced to be handcuffed at all; and second, that Officer Bacon handcuffed him excessively tightly. The record contains sufficient evidence for a reasonable jury to find that plaintiff was denied the benefit of a family visit based on the first theory.

Defendants do not disavow their handcuffing policy. Instead, defendants maintain that, according to their policies, plaintiff was to be handcuffed in the front while walking long distances even though he used a cane. Plaintiff alleges that before this event, no other correctional officer enforced the policy when escorting him across the CCDOC facility. Somewhat ironically, in plaintiff's version of the facts, other correctional officers disobeyed the

12

policy in order to properly accommodate plaintiff's disability. In any event, the record does not require the court to reach the question of whether the ADA and Rehabilitation Act permit vicarious liability, which remains an open question in the Seventh Circuit. See Ravenna v. Vill. of Skokie, 388 F. Supp. 3d 999, 1005 (N.D. Ill. 2019) (explaining that "[w]hether Title II permits vicariously liability is a question that has been identified but not addressed by the Supreme Court….[and] [t]he Seventh Circuit has not addressed this question"). Consequently, the court finds that defendants have failed to carry their burden to show that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law.

## CONCLUSION

For the above reasons, Officer Bacon's motion for summary judgment on Count I is denied (Docs. 84, 110); Cook County and Sheriff Dart's motion for summary judgment on Counts II, III, and IV is denied (Doc. 80); and plaintiff's motion to strike is denied (Doc. 128). The court construes plaintiff's summary judgment response as a motion to voluntarily dismiss his Monell claim (Count II) and grants it. Plaintiff's Monell claim is dismissed with prejudice. This matter is set for a telephonic hearing on February 12, 2026, at 10:45 a.m.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: January 17, 2026**